IN **THE CIRCUIT** COURT OF THE
ELEVENTH **JUDICIAL** CIRCUIT, IN
ANDFOR MIAMI-DADE COUNTY,
FLORIDA

US BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR RASC AHL3,
FRANKLIN CREDIT MORTGAGE COMPANY

)

                    Plaintiff,

)
)
) Court case NO:

)CASE: 2010-61928-CAO1

        v.

MACK L.WELLS AND
MAURICE SYMONETTE

)

)

        Defendant.

)

## DEFENDANT MACK WELLS AND MAURICE SYMONETTE NOTICE OF REMOVAL

To: I certify that a copy hereof has been furnished

    to:

BROCK & SCOTT, PLLC
Attorney for Plaintiff
2001 NW 64th St, Suite 130Ft. Lauderdale, FL
             33309
Phone: (954) 618-6955, ext. 6133
Fax: (954) 618-6954
FLCourtDocs@.brockandscott.com

By /s/ Mehwish Yousuf
Mehwish Yousuf, Esq.

-3-

by ECF and e-Service on September 3, 2020.

2

Florida Bar No. 92171

2

YOU ARE HEREBY NOTIFIED that Defendant, MACK WELLS AND MAURICE SYMONETTE, in the above-styled action has, on this day, submitted for filing aNotice of Removal to the United States District Court for the Southern District of Florida, Miami Division. A copy of the Notice of Removal is attached hereto as Exhibit "A." The removal of the above-styled action to the United States District Court for the Southern District Florida,Miami, has been effectuated thereby. Please serve the undersigned with copies of all pleadings that may be filed by you in the United States District Court for the Southern District of Florida pursuant to the removal of thiscause and in accordance with the Federal Rules of Civil Procedure.

Dated this 31st day of JULY 2023.

Respectfully submitted,

_____
MACK WELLS
15020 S. RIVER DR.
MIAMI FL.33167

_____
MAURICE SYMONETTE
15020 S. RIVER DR.
MIAMI FL. 33167
PHONE# 786-859-9421

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31st , 2023, the foregoing Notice of Removal, and all exhibits

-4-

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:
BROCK & SCOTT, PLLC
Attorney for Plaintiff
2001 NW 64th St, Suite 130Ft. Lauderdale, FL 33309
Phone: (954) 618-6955, ext. 6133
Fax: (954) 618-6954
FLCourtDocs@.brockandscott.com


By /s/ Mehwish Yousuf
Mehwish Yousuf, Esq.
Florida Bar No. 92171

## SERVICE LIST

The following persons were served by e-mail:

Deutsche Bank National Trust Company, as Trustee for Franklin Credit
Trust Series Ic/o Jessica F. Watts, Esq.
19321 US Highway 19, Suite 512
Clearwater, FL 33764

eservice@quinnlegal.com; Km1ler@quinnlegal.com

Miami-Dade County, Floridac/o Altanese Phenelus, Esq. 111 NW 1st Street
Miami, FL 33128 yvaldes@miamdade.gov


U.S. Bank, National Association, as Trustee for RASC 005AHL3
% Michael L. Eisenband, Esq. & Nicole
R. Topper, Esq.500 E. Broward Blvd.,
Suite 100
Fort Lauderdale, FL 33394

BRFLeservice@B1ankRome.com; MEisenband@BlankRome.com; NToper@B1ankRome.com

-6-

**IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA**                  )

US BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR RASC AHL3

            Plaintiff,                                              )

                                                                 )           COURT CASE NO:
                                                                 )           2010- 61928-CA01

  v.                                                                    )

MACK L.WELLS AND                                               )
MAURICE SYMONETTE

            Defendant.                                           )

Clerk of the Circuit Court — Miami-Dade County
Dade County Courthouse
73 West Flagler Street
Miami, Florida 33130

To:

In compliance with 28 U.S.C. § 1446(d), you are hereby notified of the filing of a Notice

of Removal of the above-styled cause to the United States District Court for the Southern District of

Florida, Miami Division, a copy of which is attached hereto.

Dated this 31st day of JULY 2023.

                        Respectfully submitted,

                        MACK WELLS
                        15020 S. RIVER DR.
                        MIAMI FL. 33167

                        MAURICE SYMONETTE
                        15020 S. RIVER DR.
                        MIAMI FL. 33167

thereto, were filed via this Court's electronic filing system and that copies of same were served

upon all parties via overnight mail at the addresses listed in the Complaint:

BROCK & SCOTT, PLLC
Attorney for Plaintiff
2001 NW 64th St, Suite 130Ft. Lauderdale, FL 33309
Phone: (954) 618-6955, ext. 6133
Fax: (954) 618-6954
FLCourtDocs@.brockandscott.com

By /s/ Mehwish Yousuf
Mehwish Yousuf, Esq.
Florida Bar No. 92171

## SERVICE LIST

The following persons were served by e-mail:

Deutsche Bank National Trust Company, as Trustee for Franklin Credit
Trust Series Ic/o Jessica F. Watts, Esq.
19321 US Highway 19, Suite 512
Clearwater, FL 33764

eservice@quinnlegal.com; Kmiller@quinnlegal.com

Miami-Dade County, Floridac/o Altanese Phenelus, Esq. 111 NW 1st Street
Miami, FL 33128 yvaldes@miamdade.gov

U.S. Bank, National Association, as Trustee for RASC 005AHL3
% Michael L. Eisenband, Esq. & Nicole
R. Topper, Esq.500 E. Broward Blvd.,
Suite 100
Fort Lauderdale, FL 33394
BRFLeservice@BlankRome.com; MEisenband@BlankRome.com; NToper@BlankRome.com

CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

BROCK & SCOTT, PLLC
Attorney for Plaintiff
2001 NW 64th St, Suite 130Ft. Lauderdale, FL 33309.
Phone: (954) 618-6955, ext. 6133
Fax: (954) 618-6954
FLCourtDocs@brockandscott.com

By /s/ Mehwish Yousuf
Mehwish Yousuf, Esq.

Florida Bar No. 92171

by ECF and e-Service on September 3, 2020.

## SERVICE LIST

The following persons were served by e-mail:

Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I
c/o Jessica F. Watts, Esq.
19321 US Highway 19, Suite 512
Clearwater, FL 33764

eservice@quinnlegal.com; Km1ler@quinnlegal.com

Miami-Dade County, Floridac/o Altanese Phenelus, Esq. 111 NW 1st Street
Miami, FL 33128 yvaldes@miamdade.gov

U.S. Bank, National Association, as Trustee for RASC 2005 AHL3
% Michael L. Eisenband, Esq. & Nicole R. Topper, Esq.
500 E. Broward Blvd., Suite 100
Fort Lauderdale, FL 33394

RFLeservice@B1ankRome.com; MEisenband@BlankRome.com; NToper@B1ankRome.com

by ECF and e-Service on Septem&r 3, 2020.

3

MACK WELLS
15020 S. RIVER DR
MIAMI FL. 33167

MAURICE SYMONWTTE
15020 S. RIVER DR
MIAMI FL. 33167

4

Mack l. Wells and Maurice Symonette
15020 South River
Miami,Florida 33167
Ph: (786-859-9421/786-613-2619
Email: Bigboss1043@yahoo.com

Attorney for Defenda

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3 § § § § § § § § § § § § § § § Plaintiff, v. MACK WELLS AND MAURICE SYMONETTE Defendants. | Case No. 2010-61928-CA01 **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** ACTION FILED: Aug 19, 2022 TRIMONETTEAL DATE: NONE |

Defendant MACK L. WELLS AND MAURICE SYMONETTE

(hereinafter "Answering Defendant") hereby answers Plaintiff US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASE 2005 AHL3 CO

complaint

as follows:

## I. SUMMARY

1. In answering paragraph 1 of the complaint, Answering Defendants need not address Plaintiff's summary of the action. To the extent that any averment in paragraph 1 is deemed to require a response, Answering Defendant denies each and every allegation contained therein.

2. In answering paragraph 2 of the complaint, Answering Defendant need not address Plaintiff's summary of the action or prayer for relief. To the extent that any

- 1 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT ·

averment in Paragraph 2 is deemed to require a response, Answering Defendant denies each and every allegation contained therein.

3. In answering paragraph 3 of the complaint, Answering Defendant denies each and every allegation contained therein.

4. I In answering paragraph 4 of the complaint, Answering Defendant denies each and every allegation contained therein.

5. In answering paragraph 5 of the complaint, Answering the property is owned by Mack Wells, Maurice Symonette, and Curtis Mcneal.

6. In answering paragraph 6 of the complaint, Answering Defendant denies this Because the case was dismissed, because U.S. Bank never came up with proof of ownershIp of the Note.

7. In answering paragraph 7 of the complaint, Answering Defendant denies because Nothing is owed the Case was dismissed because they failed to bring in proof that They own the Note.

8. In answering paragraph 8 of the complaint, Answering Defendant denies because The Case was Dismissed, because they never brought in proof that they own the Note.

9. In answering paragraph 9 of the complaint, Answering Defendant denies each and every allegation contained therein.

10. In answering paragraph 10 of the complaint, Answering Defendant denies each and every allegation contained because this is not relevant.

11. In answering paragraph 11 of the complaint, Answering Defendant denies each and every allegation contained because U.S. Bank never brought in proof that they own the Note.

12. In answering paragraph 10 of the complaint, Answering N/A

13. In answering paragraph 13 of the complaint, Answering Defendant Denies Because U.S. Bank never Brought in proof that they own the Note.

14. In answering paragraph 15 of the complaint, Answering Defendant Denies Because the Case was Dismissed and U.S. Bank never brought in proof of ownership That they own the Note.

15. In answering paragraph 16 of the complaint, Answering Defendant denies each and every allegation contained therein because proof of ownership of the Note was never brought in and the Case was Dismissed.

- 2 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

17. In answering paragraph 18 of the complaint, Answering Defendant denies because U.S. Bank never brought in proof that they own the Note. And the Case was Dismissed.

18. In answering paragraph 19 of the complaint, Answering Defendant denies the property is now owned by Boss Group Ministries Mack Wells, Maurice Symonette, and Curtis Mcneal  See Exh.28 pgs1-4

19. In answering paragraph 20 of the complaint, Answering Defendant denies because the mortgage is supposed to be from Axiom to U.S. Bank

20. In answering paragraph 21 of the complaint, Answering Defendant denies each and every allegation contained therein. Because this is this one their attempts to hide their crime.

21. In answering paragraph 22 of the complaint, Answering Defendant repeats the same Answer as in question 20.

22. In answering paragraph 23 of the complaint, Answering Defendant repeats the same Answer as in question 20

23. In answering paragraph 24 of the complaint, repeats the same Answer as in question 20

## AFFIRMATIVE DEFENSES

NOW COMES, Defendants, and for their Affirmative Defenses states as follows: 1, Bankruptcy Judge Mindy Mora  After filing Bankruptcy under Judge Mindy Mora she became very hostile and already had a statement ready for a Hearing wherein she was supposed to make a decision from the testimonies of both sides but her statement was already ready to rule against the crippled old man Mack wells and she ruled in favor of U.S. Bank in opposition of what was correct and lawful in the Case and the reason for this we believe is because she is friends with Judge Laurel Isicoff who Dismissed Mack Well's Case much much earlier wrongfully because Judge Isicoff has a Horrific Financial Conflict of Interest with U.S. BANK and of almost $15 million with U.S. Bank, Exh. 47. And Judge Isicoff's brother owns the Eviction Company who took property off of our property while in Bankruptcy and said he can't get in trouble because his sister is the Chief Judge of the Federal Bankruptcy Courts. And he was right because Judge Isicoff instead of sanctioning her brother she exonerated him and kicked us out of the Bankruptcy Case. So when Mack Wells files Bankruptcy with Judge Mindy Mora's Court Who's friends with Judge Isicoff, Exh. 48. and now we ask Judge Mindy Mora to

- 3 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

her Financials and she would not Produce the information in Violation of Federal Code Sub Section 37. And then wrote

an Order to stop anybody from filing Bankruptcy to save their interest in the house so that it can be used by Judge Carlos Lopez who has a $4 million Conflict of Interest with U.S. Bank and BBC real estate holders LLC. Who owns Trexstay who buys Foreclosure properties so that the Judges can steal from your home and can Pillage your home and then take your home in Violation of Judges having Conflicts of Interest according to Federal Code 60 and Florida Stat. 2.160 they're stealing property without having to physically fight over it under Color of Law by using Judges, eviction companies and the Police. Judge Carlos according to his Form 6 Financial Statement made $2 million seventy seven dollars cash from U.S. Bank and $1.8million with BBC who is Partners with Trexstays who buys Foreclosed the Properties after Judge CARLOS LOPEZ rules in US. BANK'S FAVOR and does the Foreclosure sale which all happening in Conjunction with the Law by Governor DeSantis called the Live Local act which allow properties to be turned into 15 story Condos for profit. A Trexstays Rep. came to my house to buy the house from me and offered me $2million because I was attacking the Judges in the Newspapers, Exh. (82-Back page of News Paper ad) so that I would stop telling on them to the Public to spoil their waterfront plan to build Waterfront properties Condos on Black People's Waterfront Property. There

was a Conspiracy between the County Court using interference after **BANKRUPTCY FILING** case # 23-12048-MAM While at the Dade County Court house when we were trying to file our Bankruptcy Stay Paper to stop the Sale of our home the subject of this Case, we were told by the Clerk at the Stephen P. Clark building on the 12th floor we were we in the wrong building to bring Bankruptcy papers in to stop the Sale on any house, however there was a Woman standing right beside us who was Filing her Bankruptcy papers and stopped her Sale, Exh. See: Gods2.com Video # , not only that, there were actual signs in the room where we were at that said File your Bankruptcy here, Exh. See: gods2.com But the lady would not allow us to stop the Sale there they made the Cripple man walk, across the street to file the BANKRUPTCY WE ALMOST MISSED THE DEADLINE and got MACK WELLS SICK. Exh. See: Gods2.com Video # , Mack wells filed a

- 4 -

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

taking place that the Bankruptcy was filed 8:53am in the Southern District of Florida Case number 18-2409-RM. EXH. (46), Judge

Isicoff's brother came in and pillaged the house taking boats and property without an evicting order and said again my sister is the chief Judge of the Bankruptcy court and when we filed against them in sanctions the sale was overturned, we kept the house but got no Sanctions in Violation of Bankruptcy Stay 11. U.S.C. ss 362(A).

## FIRST AFFIRMATIVE DEFENSE:

### (Failure to State a Cause of Action)

This answering Defendant is informed and believes, and on such information and belief alleges, that the Complaint fails to state sufficient facts to constitute a cause of action against Defendant. **VIOLATION OF 12 U.S.C 6505 (E) (1) (B) WHICH IS QUALIFIED WRITTEN REQUEST (QWR) ON THE CASE 007-12407-CA01 DOCKET DATE 06/06/07, 08/24/07, AND ON THE 2010 CASE 2010-61928-CA01 ON DADE COUNTY DOCKET WE DID A (QWR) IN THIS CASE 04/11/11 CASE # 2010-61928-CA01 AND U.S. BANK NEVER RESPONDED TO NEIGTHER THE 2007 CASE OR THE 2010 CASE WHICH IS THE SAME CASE BECAUSE THE 2007 CASE WAS DISMISSED WITH PREJUDICE, EXH. 5. AND THEN DISMISSED WITH PREJUDICE AGAIN, EXH. 42. AND THEN DISMISSED WITH OUT PREJUDICE, EXH. 43. AND THEN AND THEN THE CASE WAS STARTED OVER AGAIN 12/06/10 AS CASE # 2010-61928-CA01 AND WE (DID ANOTHER (QWR) REUEST OF PROOF OF OWNERSHIP REQUEST FOR PROOF OF U.S. BANK'S OWNERSHIP OF THE NOTE EXH. 46. ON THE 2ND PAGE IS THE (QWR). AND U.S. BANK NEVER ANSWERED IN VIOLATION OF TILA AND SS 1024.35 THIS IS IN VIOLATION OF TILA LAWS UNDER 15 U.S.C SS 1692a(3) 15 U.S.C 1692a(5).**

## SECOND AFFIRMATIVE DEFENSE:

### (Unclean Hands)

This answering Defendant is informed and believes, and on such information and belief

- 5 -

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

injuries against Defendant bar recovery on Plaintiff's claims not only do we not know them but their not supposed to be doing anything in court because they are a Foreign bank from China

**3. VIOLATION OF FARA** LAWS AND VIOLATION OF FOREIGN BANKING LAWS 12 U.S.C. 632 VIOLATION OF LAWYERS FORGING JUDGES SIGNATURE ON JUDGES ORDER FEDERAL RULE 18 U.S. CODE SS 505 U.S. BANK IS A FOREIGN OWNED BY CHINA CHINESE BANK AND AS A FOREIGN AND FEDERAL **LAW 12 U.S.C. 1432b,** *U.S. Bank can do NO EVICTIONS from private residential real property in the United states under HUD Which is Fannie Mae under HUD and the Loan on this Mortgage on Mack Well's Home is a Fannie Mae Loan see the bottom of the the Note and Mortgage, Exh. ,* ( Overseas Private Investment Corporation) 22 U.S.C. 2183, NO STATE COURT PROCEEDINGS 12 U.S.C. 632, the real party of interest is Bank for International Settlement, Rothschild owns 12 U.S.C. 3105; 12 CFR

**THIRD AFFIRMATIVE DEFENSE:**

- 6 -

In order to form a valid contract under Florida law, there must be a mutual agreement between the parties. No valid contract was formed as to the terms in dispute between Plaintiff and Defendant because there was no mutual agreement between the parties as to these terms. Defendant did not agree to the terms of the purported contract alleged in Plaintiff's complaint.

<div align="center">

**FOURTH AFFIRMATIVE DEFENSE:**

(Statute of Frauds)

</div>

The contract alleged by Plaintiff is subject to the statute of frauds, Floriida Civil Code § 1624 because it cannot be performed within a year from the making thereof. The alleged contract fails to satisfy the statute of frauds because it has not been subscribed by Defendant or Defendant's agents. Because U.S. BANK DON'T OWN THE NOTE **QUIET THE TITLE TO U.S. BANK NA AS TRUSTEE FOR RASC AHL3 BECAUSE THE MORTGAGE AND NOTE ARE A FANNIE MAE MORTGAGE AND NOTES AND FANNIE MAE IS THE U.S. FEDERAL GOVERNMENT. WHICH IS FEDERAL JURISDICTION.** This is a Fannie Mae Loan and as indicated on bottom of the Note and Mortgage and Fannie Mae Loans Rules require that there must be loan the Loan number, Date and the printed name of the Signer as required by Federal Fannie Mae Rules B8-3-04 for Fannie Mae of which none of this is on the copy of the any Allonge recorded on the Docket,  Exh (19). So this Case is VOID *DADE COUNTY JUDGES ON 15020 SOUTH RIVER DR.MIAMI FL. 33167 WHO PLAYED COURT   JUDGE TAG TEAM ON ALWAYS RULING IN U.S. BANK'S FAVOR STEALING. FAVOR AND NEVER FORCING THEM TO BRING IN PROOF OF STANDING TO FORECLOSE US EG. NO NOTE OWNERSHIP BECAUSE THE NOTE ASSIGNMENT CALLED ALLONGE TO THE PROMISSORY NOTE IS SIGNED BY ASSISTANT SECRETARY IN VIOLATION OF FLORIDA STATUTE 692.01 WHICH SAYS ONLY A PRESIDENT, VICE PRESIDENT OR A CHIEF EXECUTIVE OFFICER CAN SIGN AN ALLONGE AND FLORIDA STATUTE 692.101 (3) & (4) SAYS NO SCRETARY CAN SIGN AN ALLONGE. BUT THEY HAVE THE NERVE TO HAVE AN ASSISTANT - SECRETARY AS SIGNOR WITHOUT THEIR PRINTED UNDER THEIR UNREADABLE SIGNATURE IN VIOLATION OF* FLORIDA

<div align="center">

- 7 -

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

</div>

STATUTE 695.26 (1)(A). *AND WITH NO LOAN NUMBER, FLORIDA STATUTE OF WHICH ANY ONE OF THESE VIOLATIONS VOIDS THE ALLONGE (ASSIGNMENT), EXH. SO U.S. BANK NEVER GOT THE NOTE OR THE ASSIGNMENT OF MORTGAGE WAS FROM HOMECOMINGS THE ABSOLUTE WRONG BANK!! OUR BANK IS AXIOM FINACIAL SERVICES AND 2 YEARS LATER THEY DID A CORECTIVE ASSIGNMENT IN VIOLATION OF* MCCLEAN V. JP MORGAN *THAT SAYS BANKS CAN'T DO A FORECLOSURE COMPLAINT BEFORE THEY ARE ASSIGNED THE MORTGAGE AND ALLONGED TO THE NOTE,* FLORIDA STATUTE 702.015(4),*see: the ALLONGE* Exh. 30. *BUT WE CAN NEVER GET A CHANCE TO PROVE THESE FACTS.* Fannie Mae and U.S. Bank NA who was noticed of my Claim on the Dade County Records which was before their publication of Foreclosure which by law would have stopped my Claim but the law says if they are notices up to 30 days after publication of the Foreclosure that the claim is still Good Fl. Statutes sub section 733.702 (1), and 733.2121 (3)(a) and 733.701 and cause of action with and all of this confusion is because U.S. Bank trickery. This is a Quiet Title Complaint Case which requires that U.S. Bank show a full chain of title which is Extrinsic Evidence according to 2005 Florida Code Civil Practice and Procedure Quieting Title, Fl. Stat. 65.021 and Federal 28 U.S. Code ss 2409a and Real estate; removing clouds,-- Chancery courts have jurisdiction of actions brought by any person or corporation, whether in actual possession or not, claiming legal or equitable title to land against any person or Corporation not in actual Possession, who has, appears to have claims an adverse legal or equitable estate, interest, or claim therein to determine such estate, interest, or claim and quiet or remove clouds from the title to the land. It is no bar to relief that the title has not been litigated at law or that there is only one litigant to each side of the controversy or that the adverse claim, estate, or interest is Void upon its face, or though not Void upon its face, requires Extrinsic Evidence to establish its validity (Exh.105) and 65.041(3)(4)(3) REAL ESTATE REMOVING CLOUDS; THIS CASE WAS CLOSED AFTER JUDGE VIVIAN DEL RIO RECUSED, VACATED HER ORDERS AND REVERTED THE CASE BACK TO JUDGE SARAH ZABEL'S ORDER OF DISMISSED WITH PREJUDICE IN ACCORDANCE WITH OUR **MOTION TO RECUSE VACATE ORDERS AND**

- 8 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

REOPENED ON DOCKET DATED 06/06/23. AND A NEW NOTICE OF HEARING WAS NOTICED TO US 06/29/23, EXH. 50. AFTER JUDGE VIVIAN DEL RIO'S COMPLAINT FROM OUR CASE THAT WE NEWLY DISCOVERED EVIDENCE IN ACCORDANCE WITH FEDERAL RULE 60 THAT HAS BECOME REMOVABLE TO FEDERAL COURT BECAUSE WE HAVE JUST FOUND OUT THAT THIS MORTGAGE IS A FEDERAL FANNIE MAE LOAN WHICH IS FEDERAL JURISDICTION, SEE BOTTOM OF THE NOTE AND MORTGAGE SAYS FANNIE MAE LOAN EXH. 33 AND 34. FEDERAL JURISDICTION. THIS IS WHY THEIR COMPLAINT NEVER MENTIONS THAT THE LOAN IS A FANNIE MAE LOAN TO KEEP SUITS COUNTY SO THEY CAN PAY JUDGES. BUT FANNIE MAE UNDER HUD REQUIRES THAT FANNIE MAE IS ON THE ASSIGNMENT (ALLONGE) FEDERAL FANNIE MAE RULE 8B-3-04 WHICH MAKES THIS CASE FEDERAL.

## FIFTH AFFIRMATIVE DEFENSE:
### (Prior Breach)

Defendant has performed all of the conditions of the contract on his part to be performed. Defendant had worked as an independent contractor for a full month at Plaintiff's place of business and was paid less than the agreed upon amount for that month by Plaintiff. This constitutes a prior breach of the alleged contract between Plaintiff and Defendant.

## SIXTH AFFIRMATIVE DEFENSE:

**QUIET THE TITLE TO U.S. BANK NA** AS TRUSTEE FOR RASC AHL3 BECAUSE THE MORTGAGE AND NOTE ARE A FANNIE MAE MORTGAGE AND NOTES AND FANNIE MAE IS THE U.S. FEDERAL GOVERNMENT. WHICH IS FEDERAL JURISDICTION. This is a Fannie Mae Loan and as indicated on bottom of the Note and Mortgage and Fannie Mae Loans Rules require that there must be loan the Loan number, Date and the printed name of the Signer as required by Federal Fannie Mae Rules B8-3-04 for Fannie Mae of which none of this is on the copy of the any Allonge recorded on the Docket, Exh (19). So this Case is VOID *DADE COUNTY JUDGES ON 15020 SOUTH RIVER DR.MIAMI FL. 33167 WHO PLAYED COURT   JUDGE TAG TEAM ON ALWAYS RULING IN U.S.*

- 9 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

*STANDING TO FORECLOSE US EG. NO NOTE OWNERSHIP BECAUSE THE NOTE ASSIGNMENT CALLED ALLONGE TO THE PROMISSORY NOTE IS SIGNED BY ASSISTANT SECRETARY IN VIOLATION OF FLORIDA STATUTE 692.01 WHICH SAYS ONLY A PRESIDENT, VICE PRESIDENT OR A CHIEF EXECUTIVE OFFICER CAN SIGN AN ALLONGE AND FLORIDA STATUTE 692.101 (3) & (4) SAYS* NO SCRETARY *CAN SIGN AN ALLONGE. BUT THEY HAVE THE NERVE TO HAVE AN ASSISTANT - SECRETARY AS SIGNOR WITHOUT THEIR PRINTED UNDER THEIR UNREADABLE SIGNATURE IN VIOLATION OF* FLORIDA STATUTE 695.26 (1)(A). *AND WITH NO LOAN NUMBER, FLORIDA STATUTE OF WHICH ANY ONE OF THESE VIOLATIONS VOIDS THE ALLONGE (ASSIGNMENT), EXH. SO U.S. BANK NEVER GOT THE NOTE OR THE ASSIGNMENT OF MORTGAGE WAS FROM HOMECOMINGS THE ABSOLUTE WRONG BANK!! OUR BANK IS AXIOM FINACIAL SERVICES AND 2 YEARS LATER THEY DID A CORECTIVE ASSIGNMENT IN VIOLATION OF* MCCLEAN V. JP MORGAN *THAT SAYS BANKS CAN'T DO A FORECLOSURE COMPLAINT BEFORE THEY ARE ASSIGNED THE MORTGAGE AND ALLONGED TO THE NOTE,* FLORIDA STATUTE 702.015(4),*see: the ALLONGE* Exh. 30. *BUT WE CAN NEVER GET A CHANCE TO PROVE THESE FACTS.* Fannie Mae and U.S. Bank NA who was noticed of my Claim on the Dade County Records which was before their publication of Foreclosure which by law would have stopped my Claim but the law says if they are notices up to 30 days after publication of the Foreclosure that the claim is still Good Fl. Statutes sub section 733.702 (1), and 733.2121 (3)(a) and 733.701 and cause of action with and all of this confusion is because U.S. Bank trickery. This is a Quiet Title Complaint Case which requires that U.S. Bank show a full chain of title which is Extrinsic Evidence according to 2005 Florida Code Civil Practice and Procedure Quieting Title, Fl. Stat. 65.021 and Federal 28 U.S. Code ss 2409a and Real estate; removing clouds,-- Chancery courts have jurisdiction of actions brought by any person or corporation, whether in actual

- 10 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Possession, who has, appears to have claims an adverse legal or equitable estate, interest, or claim therein to determine such estate, interest, or claim and quiet or remove clouds from the title to the land. It is no bar to relief that the title has not been litigated at law or that there is only one litigant to each side of the controversy or that the adverse claim, estate, or interest is Void upon its face, or though not Void upon its face, requires Extrinsic Evidence to establish its validity (Exh.105) and 65.041(3)(4)(3) REAL ESTATE REMOVING CLOUDS; THIS CASE WAS CLOSED AFTER JUDGE VIVIAN DEL RIO RECUSED, VACATED HER ORDERS AND REVERTED THE CASE BACK TO JUDGE SARAH ZABEL'S ORDER OF DISMISSED WITH PREJUDICE IN ACCORDANCE WITH OUR **MOTION TO RECUSE VACATE ORDERS AND REVERT BACK TO DISMISSED WITH PREJUDICE, EXH. 49.** WHEN OUR CASE WAS REOPENED ON DOCKET DATED 06/06/23. AND A NEW NOTICE OF HEARING WAS NOTICED TO US 06/29/23, EXH. 50. AFTER JUDGE VIVIAN DEL RIO'S COMPLAINT FROM OUR CASE THAT WE NEWLY DISCOVERED EVIDENCE IN ACCORDANCE WITH FEDERAL RULE 60 THAT HAS BECOME REMOVABLE TO FEDERAL COURT BECAUSE WE HAVE JUST FOUND OUT THAT THIS MORTGAGE IS A FEDERAL FANNIE MAE LOAN WHICH IS FEDERAL JURISDICTION, SEE BOTTOM OF THE NOTE AND MORTGAGE SAYS FANNIE MAE LOAN EXH. 33 AND 34. FEDERAL JURISDICTION. THIS IS WHY THEIR COMPLAINT NEVER MENTIONS THAT THE LOAN IS A FANNIE MAE LOAN TO KEEP SUITS COUNTY SO THEY CAN PAY JUDGES. BUT FANNIE MAE UNDER HUD REQUIRES THAT FANNIE MAE IS ON THE ASSIGNMENT (ALLONGE) FEDERAL FANNIE MAE RULE 8B-3-04 WHICH MAKES THIS CASE FEDERAL.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

## SEVENTH AFFIRMATIVE DEFENSE:

### (Action in Bad Faith)

Defendant is informed and believes, and on such information and belief alleges, that the Complaint was brought without reasonable cause and without a good faith belief that there was a justifiable controversy under the facts of the law warranted the filing of the Complaint against this answering Defendant. Plaintiff's Complaint and all claims therein, should therefore be dismissed and Plaintiff should be responsible for all of Defendant's necessary and reasonable defense costs, as more particularly set forth in Florida Code of Civil Procedure, Section 1038.9

## EIGHTH AFFIRMATIVE DEFENSE:

### (Frivolous Action)

This answering Defendant is informed and believes, and on such information and belief alleges, that the Complaint, and each purported cause of action contained therein, was brought without reasonable cause and without good faith belief that there was a justifiable controversy under the facts and the law warrant the filing of said Complaint against this answering Defendant. The Plaintiff is therefore responsible for all necessary and reasonable defense costs, including attorney's fees, incurred by this answering Defendant, as more particularly set forth in Florida Code of Civil Procedure, Section 128.75.

## NINTH AFFIRMATIVE DEFENSE:

US BANK ATTORNEY'S LIE TO THE BANKRUPTCY COURT AND JUDGES TRYING TO MAKE IT AS THOUGH WE WERE TH ONES THAT WERE TAKING THE TIME AND GOING SLOW BUT IT WAS ACTUALLY THEM TRYING TO HIDE THE FACT THAT THEY DO NOT OWN THE NOTE FROM 2007 UNTIL TODAY AND NOW THAT THEY HAVE A PAID OFF JUDGE THAS WILLING TO BREAK ALL LAWS TO JUST TAKE OUR HOME  THEY WANT TO GO FAST  HERE IS HOW THEY DID THAT.

1. Us bank filed a Lis Pendens without a Complaint to Foreclose on Defendants but Defendants were making all the payments and showed Judge Sarah Zabel then Judge Sarah Zabel Ordered U.S. Bank to Bring in the Note, The Allonge the Mortgage and the Assignments and the Exh  that show of all of the late

- 12 -

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

payments that they are accusing us of because we had Axiom Bank Mortgage receipts of all payments being made from up to 5 months after U.S. Bank N.A. Filed its Lis Pendens because we were not. Dead beat home owners but when you check the Docket you'll see the U.S. Bank never Complied with Sarah Zabel's Orders so She dismissed the Case with Prejudice Exh. 5 and then the three witnesses saw her sign the copies of t Exh.22pgs1-3 all backed by the Docket of case number 2007-12407-CA01 dated 04/06/10 on the right hand side of the Docket it states that the Case was Dismissed with Prejudice even though the Clerks of the Courts didn't have the file icon then one year later and then Judge Valerie Manno Schurr inserted herself into the Case now this was a Judge that we had never met never seen and never had a Hearing in front of yet she Valerie Manno Schurr Dismissed the Case with Prejudice fron a Document that I Michael personally created for Judge Zabel to sign see Exh. 5 and then see Judge Valerie Manno Schurr's ORDER which is an exact duplicate of the Order I prepared for Judge Zabel because she Requested us to prepare the Order for her to sign and she told us she would put it on the Record so because I did not trust anything I had two copies and asked her to sign one copy for me and she did in front of witnesses as stated in their Affidavits so when you look at Judge Schurr Dismissal with Prejudice you will know that the font is exactly the same as Judge Zabel's Order both served on April 11th, 2008 but Zabel's Order was put on the Docket 2007-12407-CA01

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT .

prepared 04/01/2009 and Valerie Manno Shurr's fake Order was done a year after was given to Judge Zabel but it didn't have a printed name printed under the signature as required by Fl. Stat. 695. 26 and you can clearly see that they erased Judge Zabel's signature and her printed name under the signature and put Valerie Manno Schurr's Signature without her printed name under the signature because they could not perfect that so they stamped her printed name on the side this is not a valid document this was done to circumvent the Law which says another Judge cannot change another Judges Order in the same Circuit Court Ford v. Calloway and then three months later Valerie Manno Shurr's Signature is on a Dismissal but without Prejudice to change her Order from Dismissal with Prejudice to Dismissal without Prejudice thereby hiding the real dismissal with Prejudice with the Help of the Conspiring Clerks who took the icon off of the Docket that shows Judge Zabel's Order as was on there before they took it off in fact the Conspiring Clerks took everything off the 2007 Case that was in the Defendants favor of Dismissal with Prejudice and kept everything on that was in the Plaintiffs favor for dismissal without Prejudice see Docket of case number from 2007 to 2010 this was all done so that six months later they started a new case from this Old Case when Judge Schlesinger secretly with Fraudulent documents a fake Allonge that in Violation of Fannie Mae Rule B8-3-04 and Fl. Stat. 695.26 and

- 14 -

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Purificato v. Nationstar Mortgage. LLC. Says an Allonge (Assignment) must have a Fannie Mae Acknowledgment a loan number, a date, and a printed name under the signature and must have a valid endorsement on the Allonge they have an assistant Secretary on the Allonge in Violation of Fl. Stat. 692.01 which says only a President and, Vice President or a Chief Executive Officer can sign an Allonge to Convey property and Fl. Stat. 692.101(3)(4) says no Secretary can sign an Allonge (Assignment) to Convey Property yet these U.S. Bank Lawyers has an Assistant secretary which is an absolute invalid endorsement under the UCC so this Allonge is a Fraudulent document from the Lawyers in Violation of U.S. Code 18 SS 505. This makes this Case a Federal Case and should have been brought to the Federal Courts under Fannie Mae and 18 U.S. Code SS 505. And the Assignment was from Homecomings Bank to U.S. Bank with no Preparer and no Notary because the Notary was missing the Seal and the Commission number as Required by Fl. Stat. 117.05 (3)(a) and Fl. Stat.695.26 (1) Fl Stat.695.26. See Exh.32. And Homecomings is absolutely the wrong Bank the Bank we signed with is Axiom Bank see Exh. 33 and 34. And this was admitted to by U.S: Bank Attorneys in a Corrective Assignment prepared 2 years later which Violated Mclean v.. Jp morgan which says you cant foreclose on a Note before you own it this also is Attorney Fraudulence so In the Corrective Assignment they admit that Homecomings is an invalid entity (the wrong Bank) but they used it to get a Foreclosure Judgement with Judge Schlesinger and so the Corrective Assignment destroys Homecomings Foreclosure documents but it also

- 15 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

destroyed the Axiom Bank Corrective Assignment because it had no Preparer no two Witnesses, No Notary Seal and no Commission number as required by Fl. Stat. 695.26, 117.05 (3)(a) and Fl. Stat.695.26 (1) So therefore Axiom Bank Assignment is also Fraudulent by the Attorney's and MERS V. AZIZE Fl. 2nd DCA and the 4th DCA says that a PSA is not Sufficient to prove standing but they did use Fraudulent Documents to defraud the Courts and the Defendants in Violation of 902 1996 Amendments To 18 U.S.C. SS 1001 a. 3. therefore U.S. Bank has absolutely no connection to this Loan so when the 2010 Case comes which is the case for Judge Schlesinger 2010-61928-CA01 and if you check the Docket for the 2010 Case it was U.S. Bank that was delaying the Case we were all located at 15020 S. River Dr.  but they never served us from dec.6/2012 until 2016 March 19 2012 they were threatened with dismissal for lack of Prosecution Exh.67 and Jan.30,2014 Judge Schlesinger said that U.S. Bank has not perfected service yet Default will be entered Exh. 71 U.S. Bank was Ordered to take action based on lack of Service Exh. 68 U.S. Bank asked for a Motion for Extension of time Dec.11 2017 Exh.69 pg.1 and Pg2 then Nov. 29th,2017 the Judge Schlesinger did his Ruling in favor of U.S. Bank because he made $28million with U.S. Bank and in his Ruling he gave Plaintiffs 5 days to respond to us saying that they don't own the Note and to give us a further

- 16 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

hearing Nov.29ᵗʰ, 2017 and at the next hearing Jan.10 2017 they trickedly changed Judges to start the tag team and changed the Judge to Judge Miguel De La O who under pressure was forced to not just Sale the house but to give us 5 days to respond to Plaintiff, Exh. 72. But Judge De La O wouldn't hear our reasoning as to why they don't have standing that's why U.S. Bank does not have standing and we had to ask him in a motion and remind him that he and Judge Schlesinger said they would hear that before they sold they sold the house, Exh. 73. And he gave us another hearing but when you finally get a hearing to actually hear our objection we have a new judge Thomas Rebull who acted like he was going to hear us but took a break during the Case and set a Sale date Veronica Diaz didn't set a sale and would not allow us to have a hearing to make them prove standing and would not bring in the document for inspection, Exh. 75. And then from May 29ᵗʰ, 2020 the Pandemic stopped the Foreclosure, Exh. 76. Finally Judge Vivian Del Rio set a sale , Exh. 76 and then she Recused herself and Reverted back to the Original Dismissal with Prejudice by Judge Sarah Zabel and closed the Case, Exh. 77. So as you can see from 2019 to 2020 the Bankruptcy filings were only filed to stop the Judges from playing tag team and not honoring their word when they said they would allow us to prove that U.S. Bank has no standing yet every time we got the hearing they would dismiss the Case without ever hearing the proof that U.S. Bank does not own the Note at all so this is what really happened U.S. Bank

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

was a waster o time from 2007 up until 2017 and used tricks from 2018 until 2020 to Foreclose on me without keeping their word to allow us to have a Hearing to prove that U.S. Bank does not have Standing to Foreclose. There were only 4 bankruptcys there were 5 Bankruptcies that stopped the Sale of the house one was from Curt Marin and Symonette limited Partnership A Bankruptcy for another house at 3320 ne 165th st that just so happened to effect 15020 S. River Dr. the Subject property that was filed 3/16/2018 then 11/13/2018 the Judges would not hear our Motion that Judge Schlesinger promised us and Forced us to File Bankruptcy to stop the Sale, Exh.78. and the Bank was so upset that they Violated the Bankruptcy stay and Foreclosed anyway Illegally and came in and Pillaged the house and stole everything out of the house with eviction people and what appeared to be Cops but was some kind of Security team we reported them to the Bankruptcy Court and the Bankruptcy Court contacted the U.S. Bank the plaintiffs lawyer and made them undo the Illegal eviction but did not Sanction them or give us our stolen things back because the Judge's Brother was the eviction man and bragged about how he was not getting in trouble because his sister is the Chief Judge of the Bankruptcy Court and when we protested to the Judge she made the d Lawyers do a Motion to undo the Eviction, Exh. 80. to overturn the Eviction and we were put back into the Bankruptcy, Exh. 81. And then Judge Vivianne Del Rio Promised us in a Hearing that she was going to let us get a Hearing

- 18 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

before she gave a Foreclosure date a Hearing to Dismiss U.S. Bank's Foreclosure before she would appoint a Foreclosure Sales date, See Exh. 82 pgs.5-7. but she tricked us and gave us a Sale Date and gave us a hearing to to stop the Sale but that hearing was set for after the Sale Date and forced us to have to file Bankruptcy again . then we discovered that she had a Financial Conflict of Interest with U.S. Bank, Exh.   and when she saw it in the News Paper she Recused Herself, Exh. 49.  And closed the Case So you see U.S. Bank is the one that wasted all of the time  while accusing us doing what their guilty and then U.S. Bank Attorney's reopened the Case And is now trying to Forclose on s aagain using Exh. U.S. Bank 650,000 from U.S. Bank which is Trekstays who buy Foreclosed property and Makes Money with them and uses Judges like Judge Carlos lopez . Exh. 82  and see now this is a Criminal enterprise Case using Judges and the Police to take your Property under Color of Law this is why we must be removed to Federal Court to be protected from these Banksters.

## TENTH AFFIRMATIVE DEFENSE

## FORGING 4JUDGE'S SIGNATURE ON ORDERS FEDERAL 18 U.S. CODE SS 505.

- 19 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

WHEREIN JUDGE VALERIE MANNO SCHURR'S SIGNATURE WAS ON AN ORDER TO DISMISS OUR CASE WITH PREJUDICE **EXH. 6.** AND **EXH. 44.** THEN A DISMISSAL WITHOUT PREJUDICE AND THIS 2007 CASE NUMBER 2007-12407-CA01 WHICH CHEATED AND GAVE THEM THE RIGHT TO FORECLOSE IN *2010, 010-61928-CA01* TO STEAL THE PROPERTY ANYWAY WHEREIN IN A ZOOM HEARING WHEN JUDGE VALERIE MANNO SCHURR WAS CONFRONTED BY MAURICE SYMONETTE AND MACK WELLS AS TO HOW SHE COULD CHANGE JUDGE ZABEL'S DISMISSAL WITH PREJUDICED IN VIOLATION OF FORD V. CALLOWAY, ACTING AS OUR JUDGE WHEN SHE WAS NEVER APPOINTED OUR JUDGE, EXH. OR NEVER HAD A HEARING WITH US ESPECIALLY WHEN **HER FORM 6 FINANCIAL** DISCLOSURE AFFIDAVIT SAID SHE **GOT $995,000 FROM GMAC** WHICH IS **U.S. BANK EXH. 6. LINE 8 AND EXH. 1.** AS A CONFLICT OF INTEREST. SERVICER FOR U.S. BANK, EXH. 1, AND SHE RESPONDED ON CAMERA" I DID NOT SIGN THOSE ORDER'S SIR" BUT WHEN I SHOWED HER FINANCIAL AFFIDAVIT AND HER SIGNATURE ON THE ORDER, **EXH. 6.** AND **EXH. 44.** SHE SAID "OH MY GOD, OK MR SYMONETTE IM GOING TO GIVE YOU TWO WEEKS TO FIGURE OUT WHAT YOUR GOING TO DO" AND ENDED THE ZOOM HEARING, **EXH. SEE:.GODS2.COM VIDEO C.** SEE THE EXH.G1 ON GODS2.COM OF ALL THE AO'S FROM 2010 UNDER CHIEF JUDGE JOE BROWN THE JUDGE WHO APPOINTS JUDGES TO CASES NO WHERE WAS VALERIE MANNO SHURR APPOINTED IN ANY CASE IN 2010 SHE WAS JUST A REGULAR JUDGE AND JUDGE BAILEY SAID SHE DID NOT APPOINT HER AND SHE SAID SHE DID NOT SIGN THOSE

- 20 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT .

ORDERS AND ALSO SAID SHE DID NOT SIGN THOSE ORDER AND IT ANGERED HER SO THE LAWYERS HAVE COMMITED FORGERY AND VIOLATION OF FEDERAL RULE WHEN SHE RECUSED HERSELF WHERE SHE WAS SUPPOSED TO SIGN THE DISMISSAL WITHOUT PREJUDICE AND THE DISMISSAL WITH PREJUDICE BUT WE COULD STILL SEE AND HEAR HER ON THE ZOOM SCREEN AND SHE TURNED AND SAID TO THE LAWYERS "I DON'T BELIEVE YOU LAWYERS HAVE SIGNED THOSE ORDERS FOR ME I DID NOT TELL YOU TO SIGN THOSE ORDERS FOR ME"! AND THEN THE SCREEN WENT OFF, ALL WITNESSED BY THREE PEOPLE. **EXH. 23. PAGES 1-3.** SEE WITNESSES WHO SAW AND HEARD THE JUDGE SAY THOSE WORDS **EXH.23.** AND SEE: **GODS2.COM VIDEO C.** AND SEE HER PANIC AND THE NEXT DAY SHE IMMEDIATELY RECUSED HERSELF VACATING HER ORDERS WHICH DESTROYED THE FORECLOSURE, **EXH. 8.** AND YOU KNOW WHAT I BELIEVE HER BECAUSE THE SIGNATURES DON'T MATCH HER SIGNATURES AND WE CHECKED THE RECORD FOR 2010 AND THERE IS ABSOUTELY NO ADMINISTRATING ORDER APPOINTER HER AS JUDGE ON THIS CASE SO SHE COULDN'VE SIGNED THAT ORDER THE LAWYERS SIGNED THAT ORDER YOU KNOW HOW WE KNOW BECAUSE SHE SAID SO YET THE CHINESE OWNED (U.S. BANK) LAWYERS WENT ON ILLEGALLY FORECLOSING ANYWAY, **EXH. 4.** NOW IF JUDGE VALERIE MANNO SCHURR DID NOT SIGN THOSE ORDERS OF DISMISSAL WITHOUT PREJUDICE THIS MEANS THAT JUDGE ZABEL'S ORDER OF DISMISSAL WITHOUT PREJUDICE STILL STANDS BECAUSE IT WAS THE FIRST AND IT WAS SUPPOSED TO BE THE LAST **EXH. 5**=AFFIDAVITS VERIFIED BY THE DOCKET OF **CASE 2007-12407-CA01** DOCKET DATED 04/06/2009 **EXH. 5. EXH. 1. PAGE 12.** AT THE TOP OF THE DEFAULT EXHIBIT LIST OF HOMECOMINGS / U.S. BANK EXHIBIT LIST **EXH. 1 PAGE 1.** EVENTHOUGH, WE SHOWED THE RECEIPTS FROM AXIOM BANK SHOWING OUR

- 21 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

PAYMENTS WERE ALL ON TIME, TO AXIOM BANK FIVE MONTHS AFTER THE FRAUDULENT U.S. BANK'S COMPLAINT, **EXH. 56. SAID ON THE 1ST PAGE LINE 6.** THAT WE DEFAULTED JAN. 1ST 2007 LIKE HOMECOMINGS SHOWED IN THEIR FAKE DEFAULT OF JAN. 1ST 2007 ON **EXH. 1. PAGE 12.** OF U.S. BANK, WHILE THE AXIOM PAID REAL RECEIPTS SAID MAY 30TH 07=FIVE MONTHS AFTER THEIR FORECLOSURE STARTED AND WHEN WE DISCOVERED U.S. BANK ATTYS. DID A CORRECTIVE ASSIGNMENT FROM AXIOM BANK, **EXH. 31.** WHICH SAID IN PARAGRAPH FOUR THAT HOMECOMINGS IS NOT A VALID ENTITY (THE WRONG BANK) BUT THEY'RE STILL FORECLOSING WITH A HOMECOMINGS FRAUDULENT ASSIGNMENTS TO U.S. BANK PHONEY DOCS IN THAT THE AXIOM ASSIGNMENT WHICH KILLED HOMECOMINGS ASSIGNMENT TO AXIOM BANK DOESN'T HAVE A NOTARY SEAL, NO COMMISSION NUMBER NO PREPARA AND THE NOTARY ON THE ASSIGNMENT IS A FAKE NOTARY STAMP BECAUSE THE FL. STAT. SAYS IT MUST CONTAIN THE COMMISSION OR ID NUMBER, TO IDENTIFY THE PERSON WHO MIGHT NEEDED TO VERIFY SIGNOR IN COURT, IN VIOLATION OF F.S. 117.05 (3)(A) AND F.S. 695.26 (1). SEE EXH. 31. THE POST-OFFICE ADDRESS OF EACH SUCH

PERSON IS LEGIBLY PRINTED, TYPEWRITTEN, OR STAMPED UPON SUCH INSTRUMENT ALL IN VIOLATION OF F.S. 695.01 (1) AND F.S. 695.26 (1) (A) AND F.S. 494. 0075 (5) AND F.S. 701.02(1)(2)(3), EXH. 32. SO THE AXIOM BANK ASSIGNMENT IS FRAUDULENT AND FAKE. SO THERE IS NO ASSIGNMENT TO U.S. BANK.

## TWELTH AFFIRMATIVE DEFENSE

**THEY'RE TAKING THIS PROPERTY ON A NOTE THAT'S ALREADY PAID OFF**

- 22 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

**ON THIS INSURANCE OF THE STOCK MARKET BY VIOLATION THE GAAP RULES VIOLATION OF THE GAAP, AND FAS FEDERAL RULES** U.S. BANK NA IS CLAIMING TO BE THE TRUSTEE FOR THE TRUST AND OWN THE NOTE ON THE STOCK MARKET DEFRAUDING THE S.E.C. AND THE GAAP RULES SAYS THAT ONCE THE NOTE BECOMES A STOCK OR A BOND THE NOTE MUST BE BURNED OR DESTROYED BECAUSE YOU CAN'T HAVE A STOCK AND A NOTE IN EXISTENCE AT THE SAME TIME BECAUSE THAT IS DOUBLE DIPPING AND ONCE THE STOCK IS DESTROYED THE INSURANCE FOR THE STOCK PAYS THE STOCK OFF AND YOU CAN NO LONGER FORECLOSE, SALE OR ASSIGN THAT NOTE. YET THEIR FORECLOSING.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff demands judgement against the Defendant as follows:

(1) Awarding Plaintiff damages from the Defendant's breach of the insurance contract in an amount to be determined at trial or appraisal ordered by this Court, together appropriate prejudgment interest at the maximum rate allowable by law;

(2) Awarding plaintiff costs and disbursements and reasonable allowances for the fees of Plaintiff's experts, and reimbursement's of expenses;

(3) Awarding plaintiff attorney's fees pursuant to Fla. Stat. SS 627.428; and

(4) Awarding such other and other relief the Court deems just, proper , and equitable.

- 23 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

## DEMAND FOR TRIAL

Plaintiff request a jury trial for any and all Counts for which a trial by jury is permitted by law.

- 24 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

3. For costs of suit;

4. For reasonable PRO SE s fees AND COST

5. For such other and further relief as the court deems proper.

Dated: _January 11, 2023

MACK L. WELLS
15020 S. RIVER DR.
MIAMI FL. 33167

MAURICE SYMONETTE
15020 S. RIVER DR.
MIAMI FL. 33167

- 25 -
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Filing # 161312379 E-Filed 11/16/2022 07:00:53 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR

MIAMI DADE COUNTY FLORIDA CIVIL ACTION

MACK WELLS

Plaintiff

v.

U. S. BANK  N.A. AS TRUSTEE FOR
RASC 2005AHL3

Defendants,

Case No. 2010-61928-CA01

FILED FOR RECORD
2020 FEB 13 PH 3:32

## MOTION AND AFFIDAVIT FOR RELIEF, RECUSAL, VACATION OF ORDERS AND MEMORANDUM OF LAW

Pursuant to Florida Stat. 112.131, Florida Rule 2.160 (H) and Federal Rules of Civil Procedure Rule 60, Plaintiff Mack wells hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the Dec. 19 2017 Judge John Schlesinger review of the record and Final Judgement Order, Exhibit. J. based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibits # B) Attached-U.S. Bank N.A. Special Situation Property Funds  Account Page 42, IFRS 2018 Tables 9-13, SEC Filings-US Bank Florida Subsidiaries, Judge Schlesinger  Financial Interests & Property Disclosures).

*Florida Rule 2.160 (H) Says A Judge may Vacate his orders for Conflict of Interest Theodore R. Bundy V. Judge John A. Rudd Fl. Rule 2.160 (D) (1) Fl. Code Jud. Conduct , Canon 3E(1) A Judge shall disqualify himself where impartiality might reasonably be questioned Rule 2.160 (D) (1) grounds to disqualify is party fears Judge is Biased Fl. Statue 112.312 (8) Judge can't have a conflict of Interest !*

Judge Schlesinger must Recuse himself for an open obvious Conflict of Interest because he's doing business with US Bank and helping them to make money so that he can make money by foreclosing and taking (stealing) our property while acting as the Judge on the case on our property, not on case's Merits but for to make him and them money Illegally. Here's proof. US BANK is US BANCORP, Exhibit,A. And US BANCORP is Morgan Stanley, Exhibit B1 and B2, and Morgan Stanley is Morgan Stanley Brokerage, Exhibit H. Judge John Schlesinger is doing business with US Bank (Morgan

Stanley) as seen in his FORM 6 page, 3.line,6. From Tallahassee called FULL AND PUBLIC DISCLOSURE OF FINANCIAL Exhibit, C. Which is a major Conflict of Interest. Judge John Schlesinger is worth 5.8 Million (Investigated) with Zero debt. Schlesinger has done business with MERS Exhibit, N. as seen on the public record Exhibit, F. Who is the Entity that is the entity who assigned our Mortgage to US BANK, Exhibit, G. Judge Schlesinger has ruled in favor of US Bank And That is a major Conflict of Interest as I said Judge Schlesinger is also doing business with Morgan Stanley, Exhibit, L and B. Who is the same as JP MORGAN Exhibit, D. Who is doing business and is apart of Chase Manhattan Bank, Exhibit.M. that Judge Schlesinger was doing business with and got his properties from, Exhibit.L. Judge Schlesinger is doing business with all of the entities that he's Judging on against us and there's more. I have found that our case was directed to him in this Pool who all do business with US Bank MERS and others.

## FACTUAL BACKGROUND

1. On Dec. 19, 2017, Defendant Judge John Schlesinger issued a final Judgment order Exhibit.A against Plaintiff Mack Wells for amounts due and owing on same mortgage that was dismissed with Prejudice in former case no: 07-12407CA01 where U.S. Bank could never produce the promissory Note though they were asked by the Judge several times but never did bring it forth, Exhibit. I. A judge cannot change another Judge's ORDER!

2. And also on Dec.19, 2017, Judge John Schlesinger issued the final order Judgement order acting as a quasi-defense attorney for US Bank his personal investment Partner to make money together.

3. Plaintiff Mack Wells has now subsequently provided the United States Department of Justice (DOJ) on specific newly discovered whistle blower information and records regarding millions of dollars in exposed fraudulent foreclosure claims made by the Defendants U.S. Bank, Clerks and Court officers in this action. Exhibit, O.

## MEMORANDUM OF LAW

The Defedants maintains timely Constitutional due process civil rights for Florida Rule 2.160 (H) and Federal Rule 60 Relief to close this case with the original Dismissal with Prejudice in our Defendants favor with requirement of Judge Schlesinger's Recusal based on exposed financial conflicts of interests Fla. Stat.112.312 (8)(9).

*Rule 2.160 (H) and FRCP Rule 60, relief fiom .Judgment Or Order. and to vacate Order .*

*Their is to be no conflict of interest with the Judge and the Plaintiff against DEFENDANTS.*
*LIKE*

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

3. *Fraud whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an Opposing party*

A Judge is expected to Recuse himself pursuant to 28 U.S, C. § 455 Under § 455(a), Recusal is mandatory in "any proceeding in which his impartiality might reasonably be questioned." Under § 455(b), a judge is expected to disqualify himself whenever any of the five statutorily prescribed criteria can be shown to exist in fact; even if no motion or affidavit seeking such relief has been filed, and regardless of whether a reasonable person would question the judge's impartiality.

*Section 455(b) he shall also disqualify himself in the following circumstancess.*

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings

(d)(4) "financial interest" means ownership of a legal or equitable interest, however small

## CONCLUSION

This Motion for Relief by vacating order Judgment Florida Rule 2.160 (H) and Recusal is based on new facts, related to a whistle blower's information, willful blindness, fraud, misconduct, and discovered evidence unknown at the time of the original Complaint filing Plaintiff could not reasonably know the financial dealings with Defendants of a yet to be assigned judge before the original Complaint filing As previously displayed by his Dismissal Order, due to cited improper financial conflicts of interest, Judge Schlesinger was incapable of impartially and without animus against Pro-Se Plaintiff or to exercise unbiased judicial duties required for due process justice in this case.

Judge Schlesinger has creditor loan history and business with Defendant U.S. Bank N.A.

MERS and JPMorgan that caused preferential Quid Pro *Quo* treatment by his .sua sponte review and Final Judgment Order. Judge Schlesinger has significant exposed investor financial interests in the subject matter in controversy and with Defendants U S. Bank N.A. that will be substantially negatively affected  by the outcome of that proceedings when the Plaintiff "ultimately prevails and promotes in paid for adds in the media. Because people can't win when the Judge is on the side of the Banksters to steal property and money off their Prey!

Example of Judges who already recused themselves from US Bank

1. JUDGE DARRIN P. GAYLES Exhibit, P.
2. THOMAS WILLIAMS Exhibit, Q.

## REQUIRED RELIEF

Pursuant to Federal Rules of Civil Procedure Rule 60, Plaintiff requires Relief from the Dec.19, 2017 Final judgment Order [Exhibit.J. based upon the stated facts, just terms, cited misconduct, Rule 60 grounds and newly discovered banking real estate fraud by court officers.

Said Reopening Relief would require the vacating of his order and Recusal of Judge Schlesinger from this and any future related U.S. Bank N.A.banking real estate cases in this District. The Dismissal Order Relief also requires that all parties be reinstated to their prior positions in this action (Dismissal with Prejudice) requiring Clerk issuance of Summons upon the Defendants and allow the filing of a Motion to dismiss the Final Judgment for cause, grounds and reasons stated herein filed

MACK WELLS
15020 S. RIVER DR.
MIAMI, FLA. 33167

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 12th day of Feb., 2020 a true and correct copy of the foregoing was provided via this Court's electronic filing system to the attorneys of record

MACK WELLS
15020 SOUTH RIVER DR.
MIAMI, FLA. 332167

## PART D — INCOME

Identify each separate source and amount of income which exceeded $1,000 during the year, including secondary sources of income. Or attach a complete copy of your 2016 federal income tax return, including all W2s, schedules, and attachments. Please redact any social security or account numbers before attaching your returns, as the law requires these documents be posted to the Commission's website.

☐ I elect to file a copy of my 2016 federal income tax return and all W2's, schedules, and attachments.
[If you check this box and attach a copy of your 2016 tax return, you need not complete the remainder of Part D.]

PRIMARY SOURCES OF INCOME (See instructions on page 5):

| NAME OF SOURCE OF INCOME EXCEEDING $1,000 | ADDRESS OF SOURCE OF INCOME | AMOUNT |
|---|---|---|
| Circuit Court Judge | State of Florida | $146,080.00 |
| Santander | 216-218 Santander Avenue, Coral Gables, FL | 72,000.00 |

SECONDARY SOURCES OF INCOME (Major customers, clients, etc., of businesses owned by reporting person—see instructions on page 5):

| NAME OF BUSINESS ENTITY | NAME OF MAJOR SOURCES OF BUSINESS' INCOME | ADDRESS OF SOURCE | PRINCIPAL BUSINESS ACTIVITY OF SOURCE |
|---|---|---|---|
| Quail Heights | Quail Property Rentals | PO Box 850 McAfee, NJ | Property Rentals |
| Force Hearts | Fore Hearts Property Rentals | P.O. Box 850, McAfee, NJ | Property Rentals |

## PART E — INTERESTS IN SPECIFIED BUSINESSES [Instructions on page 6]

| | BUSINESS ENTITY # 1 | BUSINESS ENTITY # 2 | BUSINESS ENTITY # 3 |
|---|---|---|---|
| NAME OF BUSINESS ENTITY | Santander, LLC | Fore Hearts, LLC | Quail Heights |
| ADDRESS OF BUSINESS ENTITY | 216-218 Santander Ave., Coral Gables, FL | P.O. Box 850 McAfee, NJ | P.O. Box 850 McAfee, NJ |
| PRINCIPAL BUSINESS ACTIVITY | Property Rentals | Property Rentals | Property Rentals |
| POSITION HELD WITH ENTITY | Partner | Partner | Partner |
| I OWN MORE THAN A 5% INTEREST IN THE BUSINESS | Yes | Yes | Yes |
| NATURE OF MY OWNERSHIP INTEREST | 50% | 33.33% | 33.33% |

## PART F - TRAINING

For officers required to complete annual ethics training pursuant to section 112.3142, F.S.

☐ **I CERTIFY THAT I HAVE COMPLETED THE REQUIRED TRAINING.**

## OATH

I, the person whose name appears at the beginning of this form, do depose on oath or affirmation and say that the information disclosed on this form and any attachments hereto is true, accurate, and complete.

_____
SIGNATURE OF REPORTING OFFICIAL OR CANDIDATE

John Schlesinger
Circuit Court Judge

STATE OF FLORIDA
COUNTY OF ___MIAMI-DADE___

Sworn to (or affirmed) and subscribed before me this __29__ day of ___June___, 20 17 by ___John Shlesinger___

_____
(Signature of Notary Public-State of Florida)

___Mercy Londono___
(Print, Type, or Stamp Commissioned Name of Notary Public)

Personally Known __✓__ OR Produced Identification _____

Type of Identification Produced _____

MERCY LONDONO
MY COMMISSION # FF 05___
EXPIRES: July 20, 201___

If a certified public accountant licensed under Chapter 473, or attorney in good standing with the Florida Bar prepared this form for you, he or she must complete the following statement:

I, _____, prepared the CE Form 6 in accordance with Art. II, Sec. 8, Florida Constitution, Section 112.3144, Florida Statutes, and the instructions to the form. Upon my reasonable knowledge and belief, the disclosure herein is true and correct.

_____          _____
Signature                                                          Date

**Preparation of this form by a CPA or attorney does not relieve the filer of the responsibility to sign the form under oath.**

**IF ANY OF PARTS A THROUGH E ARE CONTINUED ON A SEPARATE SHEET, PLEASE CHECK HERE ☐**

CE FORM 6 - Effective January 1, 2017
Incorporated by reference in Rule 34-8.002(1), F.A.C.

PAGE 2

*Exh. 1 Pg. 6*

| FORM 6 | FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTERESTS | 2017 |
|---|---|---|

**FOR OFFICE USE ONLY:**
200123

LAST NAME — FIRST NAME — MIDDLE NAME
SCHLESINGER  JOHN  CHARLES

MAILING ADDRESS:
1351 NW 12 STREET #415

| CITY: | ZIP: | COUNTY: |
|---|---|---|
| MIAMI | 33125 | MIAMI-DADE |

NAME OF AGENCY:
STATE OF FLORIDA 11TH JUDICIAL CIRCUIT

NAME OF OFFICE OR POSITION HELD OR SOUGHT:
CIRCUIT JUDGE

CHECK IF THIS IS A FILING BY A CANDIDATE ☑

**PROCESSED**

FLORIDA
COMMISSION ON ETHICS

AUG 01 2018

**RECEIVED**

## PART A — NET WORTH

Please enter the value of your net worth as of December 31, 2017 or a more current date. [Note: Net worth is not calculated by subtracting your reported liabilities from your reported assets, so please see the instructions on page 3.]

My net worth as of ___July 1___, 20 _18_ was $ $29,881,734.10

## PART B — ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry; collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use, whether owned or leased.

The aggregate value of my household goods and personal effects (described above) is $ 500,000.00

**ASSETS INDIVIDUALLY VALUED AT OVER $1,000:**

| DESCRIPTION OF ASSET (specific description is required — see instructions p.4) | VALUE OF ASSET |
|---|---|
| 1228 Alfonso Ave, Coral Gables, FL | $3,700,000.00 |
| 1991 Ben Miller rd, Deep gap, NC | $800,000.00 |
| 523 Tollgate Shores Dr, Islamorada, FL | $2,000,000.00 |
| Continued on Page two | |

## PART C — LIABILITIES

**LIABILITIES IN EXCESS OF $1,000 (See instructions on page 4):**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| None | -0- |
| | |
| | |

**JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| None | -0- |
| | |

CE FORM 6 - Effective January 1, 2018
Incorporated by reference in Rule 34-8.002(1), F.A.C.

(Continued on reverse side)

PAGE 1

Exh 1 Pg. 7

## PART D — INCOME

Identify each separate source and amount of income which exceeded $1,000 during the year, including secondary sources of income. Or attach a complete copy of your 2017 federal income tax return, including all W2's, schedules and attachments. Please redact any social security or account numbers before attaching your returns, as the law requires these documents be posted to the Commission's website.

☐ I elect to file a copy of my 2017 federal income tax return and all W2's, schedules, and attachments.
(If you check this box and attach a copy of your 2017 tax return, you need not complete the remainder of Part D.)

**PRIMARY SOURCES OF INCOME** (See instructions on page 5)

| NAME OF SOURCE OF INCOME EXCEEDING $1,000 | ADDRESS OF SOURCE OF INCOME | AMOUNT |
|---|---|---|
| Circuit Court Judge | State of Florida | $160,688.00 |
| Santander LLC (rents) | 216-218 Santander Ave. | $65,000.00 |

**SECONDARY SOURCES OF INCOME** (Major customers, clients, etc. of businesses owned by reporting person—see instructions on page 5)

| NAME OF BUSINESS ENTITY | NAME OF MAJOR SOURCES OF BUSINESS INCOME | ADDRESS OF SOURCE | PRINCIPAL BUSINESS ACTIVITY OF SOURCE |
|---|---|---|---|
| Quail Heights | Property Rental | P.O. Box 850 McAree, NJ | Property Rental |
| Four Hearts | Property rental | P.O. Box 850 McAree, NJ | Property Rental |

## PART E — INTERESTS IN SPECIFIED BUSINESSES (Instructions on page 6)

| | BUSINESS ENTITY # 1 | BUSINESS ENTITY # 2 | BUSINESS ENTITY # 3 |
|---|---|---|---|
| NAME OF BUSINESS ENTITY | Santander, LLC | Quail Heights, LLC | Fore Hearts, LLC |
| ADDRESS OF BUSINESS ENTITY | 216 Santander Ave. Coral | P.O. Box 850 McAree, NJ | P.O. Box 850 McAree, NJ |
| PRINCIPAL BUSINESS ACTIVITY | Property Rental | Property Rental | Property Rental |
| POSITION HELD WITH ENTITY | Partner | Partner | Partner |
| I OWN MORE THAN A 5% INTEREST IN THE BUSINESS | Yes | Yes | no |
| NATURE OF MY OWNERSHIP INTEREST | 50% | 3.33% | 33.33% |

## PART F — TRAINING

For officers required to complete annual ethics training pursuant to section 112.3142, F.S.

☐ I CERTIFY THAT I HAVE COMPLETED THE REQUIRED TRAINING.

**OATH**

I, the person whose name appears at the beginning of this form, do depose on oath or affirmation, and say that the information disclosed on this form and any attachments hereto is true, accurate, and complete.

SIGNATURE OF REPORTING OFFICIAL OR CANDIDATE

STATE OF FLORIDA
COUNTY OF Miami-Dade

Sworn to (or affirmed) and subscribed before me this 25th day of July, 2018 by Elena Perez

(Signature of Notary Public—State of Florida)

(Print, Type or Stamp Commissioned Name of Notary Public)

Personally Known ✓ OR Produced Identification

Type of Identification Produced

If a certified public accountant licensed under Chapter 473, or attorney in good standing with the Florida Bar prepared this form for you, he or she must complete the following statement:

I, _____, prepared the CE Form 6 in accordance with Art. II, Sec. 8, Florida Constitution, Section 112.3144, Florida Statutes, and the instructions to the form. Upon my reasonable knowledge and belief, the disclosure herein is true and correct.

_____        _____
Signature                          Date

Preparation of this form by a CPA or attorney does not relieve the filer of the responsibility to sign the form under oath.

IF ANY OF PARTS A THROUGH E ARE CONTINUED ON A SEPARATE SHEET, PLEASE CHECK HERE ☐

CE FORM 6 - Effective January 1, 2018
Incorporated by reference in Rule 34-8.009(1), F.A.C.

PAGE 2

Exh. 1 Pg. 8

## Part B Continued, Assets

| | |
|---|---|
| TOTAL FROM PREVIOUS PAGE | $7,000,000.00 |
| Quail Heights, Part Owner in Apartment Buildings 240-260 Hackensack, NJ | $2,000,000.00 |
| Trent Boyett, LLC, Part Owner in Apartment Building, 350 Prospect Ave, NJ | $300,000.00 |
| Part Owner in Suncap Investments, real estate investment group | $450,000.00 |
| Fore Hearts, Part Owner in three commercial Properties: 2650 Rt 516 Old Bridge, NJ 735 E. Hazelwood Avenue, Rahway, NJ 220 Rt 17, Hasbrouck Heights, NJ | $800,000.00 |
| Santander LLC, Owner of Duplex 216-218 Santander Ave, Coral Gables, FL | $750,000.00 |
| First Citizens Bank | $279,572.10 |
| Morgan Stanley Brokerage Account | $179,695.00 |
| State of Florida Deferred Compensation | $458,728.75 |
| Federal Thrift Savings Plan | $728,759.25 |
| Evensky and Katz Brokerage Account | $16,459,479.00 |
| 2001 Ferrari 550 Maranello | $180,000.00 |
| 2014 Porsche 911 Turbo Cabriolet | $110,000.00 |
| 2013 Mercedes Benz GL550 | $37,000.00 |
| 2019 Honda Odyssey Van | $38,000.00 |
| 2000 Honda Odyssey Van | $2,500.00 |

Exh. 1 Pg. 9

| | |
|---|---|
| 2008 Boston Whaler | $38,000.00 |
| 2015 Boston Whaler | $70,000.00 |
| TOTAL ASSETS | $29,881,734.10 |

Exh: 1 Pg. 10

| | |
|---|---|
| 2008 Boston Whaler | $38,000.00 |
| 2015 Boston Whaler | $70,000.00 |
| TOTAL ASSETS: | $29,881,734.10 |

200123

PROCESSED   FLORIDA COMMISSION ONE

AUG 01 2018

RECEIVED

**Form 6A. Disclosure of Gifts, Expense Reimbursements or Payments, and Waivers of Fees and Charges**

All judicial officers must file with the Florida Commission on Ethics a list of all reportable gifts, reimbursements or direct payments of expenses, and waivers of fees or charges accepted during the preceding calendar year as provided in Canons 5D(5)(a) and 5D(5)(h), Canon 6A(3), and Canon 6B(2) of the Code of Judicial Conduct, by date received, description (including dates, location, and purpose of event or activity for which expenses, fees, or charges were reimbursed, paid, or waived), source's name, and amount for gifts only.

Name: John Charles Schlesinger   Work Address: 1351 NW 12 Street #415 Miami Fl 33125

Work Telephone: 305 548 5718   Judicial Office Held: Circuit Judge

1.   Please identify all reportable gifts you received during the preceding calendar year, as required by Canons 5D(5)(a), 5D(5)(h), and 6B(2) of the Code of Judicial Conduct.

| DATE | DESCRIPTION | SOURCE | AMOUNT |
|------|-------------|--------|--------|
|  | NONE | NONE |  |
|  |  |  |  |
|  |  |  |  |

o Check here if continued on separate sheet

2.   Please identify all reportable reimbursements or direct payments of expenses, and waivers of fees or charges you received during the preceding calendar year, as required by Canons 6A(3) and 6B(2) of the Code of Judicial Conduct.

| DATE | DESCRIPTION (Include dates, location, and purpose of event or activity for which expenses, fees, or charges were reimbursed, paid, or waived) | SOURCE |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------|--------|
|  | NONE |  |
|  |  |  |

o Check here if continued on separate sheet.

**OATH**
State of Florida
County of Miami-Dade

I, John Charles Schlesinger , the public official filing this disclosure statement, being first duly sworn, do depose on oath and say that the facts set forth in the above statement are true, correct, and complete to the best of my knowledge and belief.

_____
(Signature of Reporting Official)

_____
(Signature of Officer Authorized to Administer Oaths)

My Commission expires: 12/16/20 18
Sworn to and subscribed before me this

30th day of July 20 18

3/18 (As prescribed in Canon 6).

Notary Public State of Florida
Reena Perez
My Commission FF 160097
Expires 12/16/2018

*Exh. 1 –*
*Exh. A.*

6:44                                               ·ıl LTE

🏛 usbank.com                ↻

usbank                                    us

Log In

## About U.S. Bank

U.S. Bancorp (NYSE: USB) is the parent company of U.S. Bank, one of the largest commercial banks in the United States, and its subsidiaries U.S. Bank Wealth Management and U.S. Bancorp Investments, Inc.. The company operates more than 3,000 banking offices and nearly 5,000 ATMs, and provides a comprehensive line of banking, brokerage, insurance, investment, mortgage, trust and payment-services products to consumers, businesses and institutions.

Investment products and services are:

**Not a Deposit • Not FDIC Insured • May Lose Value • Not Bank Guaranteed • Not Insured by any Federal Government Agency**

For U.S. Bank:

🏠 Equal Housing Lender. Credit products are offered by U.S. Bank National Association and subject to normal credit approval. Deposit products offered by U.S. Bank National Association. Member FDIC. Learn More

U.S. Bank is not responsible for and does not guarantee the products, services or performance of U.S Bancorp Investments.

For U.S. Bancorp Investments:

Investment products and services are available through U.S. Bancorp Investments, the marketing name for U.S. Bancorp Investments, Inc., member FINRA and SIPC, an investment adviser and a brokerage subsidiary of U.S. Bancorp and affiliate of U.S. Bank.

Back

Disclosure Information

Exh. 1 —
Exh. B 1

10:22   ⋯   LTE

🔒 mitchellmessenger.com

Chase & Co. raised their price objective on shares of U.S. Bancorp from $55.50 to $58.00 and gave the company a "neutral" rating in a research note on Monday, November 4th. Citigroup lowered shares of U.S. Bancorp from a "neutral" rating to a "sell" rating and decreased their price target for the stock from $54.00 to $49.00 in a research report on Tuesday, October 8th. Morgan Stanley restated a "sell" rating and issued a $62.00 price target (up previously from $61.00) on shares of U.S. Bancorp in a research report on Monday, November 18th. Credit Suisse Group restated a "hold" rating and issued a $55.00 price target on shares of U.S. Bancorp in a research report on Thursday, September 12th. Finally, UBS Group lifted their price target on shares of U.S. Bancorp from $56.00 to $58.00 and gave the stock a "neutral" rating in a research report on Monday, October 21st. Four investment analysts have rated the stock with a sell

*Exh. 1*

*Exh B 2*

10:29

globallegalchronicle.com

principal amount of 3,200% senior notes due 2029,

In addition, Equinix completed a concurrent tender offer for any and all of its outstanding 5.375% senior notes due 2022, 5.375% senior notes due 2023, and 5.750% senior notes due 2025, which were paid for with the proceeds from the senior notes offering.

Goldman Sachs & Co. LLC, BofA Securities, Inc., Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Barclays Capital Inc., Morgan Stanley & Co. LLC, MUFG Securities Americas Inc., RBC Capital Markets, LLC, SMBC Nikko Securities America, Inc., TD Securities (USA) LLC, Deutsche Bank Securities Inc., ING Financial Markets LLC, BNP Paribas Securities Corp., HSBC Securities (USA) Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, PNC Capital Markets LLC, Scotia Capital (USA) Inc., and U.S. Bancorp Investments, Inc. are all the underxriters involved in the offering.

Equinix, an American multinational company headquartered in Redwood City, California, connects more than 9,800 companies directly to their customers and partners inside the world's most interconnected data centers. Today, businesses leverage the Equinix interconnection platform in 52 strategic markets across the Americas, Asia-Pacific, Europe, the Middle East and Africa.

The Davis Polk corporate team included partners Alan F. Denenberg (Picture) and Emily Roberts and associates Ali DeGolia and Caitlin Moyles Cunnane. Partner Rachel D. Kleinberg provided tax advice and associate J. Taylor Arabian provided 1940 Act advice.

**Involved fees earner:** Taylor Arabian – Davis Polk &

Exhibit C.

200123

| FORM 6 | FULL AND PUBLIC DISCLOSURE | 2016 |
|---|---|---|
| Please print or type your name, mailing address, agency name, and position below: | OF FINANCIAL INTERESTS | FOR OFFICE USE ONLY: |

| | |
|---|---|
| LAST NAME — FIRST NAME — MIDDLE NAME:<br>SCHLESINGER      JOHN      CHARLES | **FLORIDA**<br>**COMMISSION ON ETHICS** |
| MAILING ADDRESS:<br>73 WEST FLAGLER STREET | **JUL 03 2017** |
| ROOM 1202 | **RECEIVED** |
| CITY:      ZIP:      COUNTY:<br>MIAMI      FL      33130 | |
| NAME OF AGENCY:<br>STATE OF FLORIDA – 11TH CIRCUIT | **PROCESSED** |
| NAME OF OFFICE OR POSITION HELD OR SOUGHT:<br>CIRCUIT JUDGE | |
| CHECK IF THIS IS A FILING BY A CANDIDATE  ☐ | |

## PART A -- NET WORTH

Please enter the value of your net worth as of December 31, 2016 or a more current date. [Note: Net worth is not calculated by subtracting your *reported* liabilities from your *reported* assets, so please see the instructions on page 3.]

My net worth as of __June 20,_____, 20 _17___ was $ __28,834,751.25_____.

## PART B -- ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry; collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use, whether owned or leased.

The aggregate value of my household goods and personal effects (described above) is $ __250,000.00_____

| ASSETS INDIVIDUALLY VALUED AT OVER $1,000:<br>DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| 1228 Alfonso Avenue, Coral Gables, FL | $3,700,000.00 |
| 1991 Ben Miller Road, Deep Gap, FL | 800,000.00 |
| 323 Tollgate Shores Drive, Islamorada, FL | 2,000,000.00 |
| CONTINUED ON PAGE TWO | |

## PART C -- LIABILITIES

| LIABILITIES IN EXCESS OF $1,000 (See Instructions on page 4):<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| NONE -0- | -0- |
| | |
| | |
| | |

| JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| NONE | -0- |
| | |
| | |

CE FORM 6 - Effective January 1, 2017
Incorporated by reference in Rule 34-8.002(1), F.A.C.                    (Continued on reverse side)                    PAGE 1

Exhibit D

**6:45**

## What's the relationship between JP Morgan and Morgan ...

https://www.quora.com/Whats-the-relationship-...

Apr 12, 2015 · Morgan Stanley was formed by JP Morgan's family due to a regulation that required Corp and Investment banks to be separated. JP Morgan still owns part of Morgan Stanley, though they are not major share holders. Bonus answer ...

Citigroup vs JP Morgan, whos bigger and bett...
Jun 14, 2019

Are JP Morgan and Chase the same?
May 28, 2019

Are the roots of Morgan Stanley and JPMorga...
Jul 06, 2015

Are JP Morgan, Morgan Stanley and Chase Bank ...

## Morgan Stanley
**www.morganstanley.com**

Explore Morgan Stanley's Sustainable Investing Summit, which gathered industry leaders to share ideas and insights about innovations in sustainable finance. Institute for Sustainable Investing Entrepreneurs and the Race for Plastic Waste ...



*Exh. 1—*
*Exh. D*

**chase Manhatan is Jp morgan**

Showing results for chase *Manhattan* is Jp morgan
Search Instead for chase Manhatan is Jp morgan



The current company was originally known as Chemical **Bank**, which acquired **Chase Manhattan** and assumed that company's name. The present name of company was formed in 2000, when **Chase Manhattan** Corporation merged with **J.P. Morgan & Co.**

JPMorgan Chase - Wikipedia
https://en.m.wikipedia.org › wiki › JPMo...

JPMorgan Chase - Wikipedia
https://en.m.wikipedia.org › wiki › JPMo...

The current company was originally known as Chemical Bank, which acquired Chase Manhattan and assumed that company's name. The present name of company was formed in 2000, when Chase Manhattan Corporation merged with J.P. Morgan & Co.
History · Financial data · Structure · Controversies

Headquarters: New York City, New York, United States
Total assets: US$2.765 trillion (2019)
Number of employees: 257,444 (2019)

Document Prepared By:
Steve P. Galano
ReconTrust Company
2575 W. Chandler Blvd.
Mail Stop: CHDLR-C-68
Chandler, AZ 85224
(800) 540-2684

CFN 2008R0642394
OR Bk 26512 Pg 2906 (1ps)
RECORDED 08/06/2008 14:02:40
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

*Exh 7 —*
*Exh. F*

When recorded return to:
MARILYN MILIAN, JOHN SCHLESINGER
1226 Alfonso Ave
Coral Gables, FL 33146

DOCID#0003806006842005N

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: Mortgage Electronic Registration Systems, Inc. the owner and holder of a certain mortgage deed executed by
MARILYN MILIAN, JOHN SCHLESINGER
bearing date 06/26/2003, recorded on 09/05/2003 in Official Records Book 21608, Page 1301 , Instrument # 648332 in the office of the Clerk of the Circuit Court of MIAMI-DADE County State of Florida, securing a certain note in the principal sum of $1,000,000.00 Dollars, and certain promises and obligations set forth in said mortgage deed, upon the property situated in said State and County hereby acknowledge full payment and satisfaction of said note and mortgage deed, and surrenders the same as canceled, and hereby directs the Clerk of the said Circuit Court to cancel the same of record.

IN WITNESS WHEREOF the said Corporation has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, the 16 day of July, 2008.

ATTEST:

Stacey Yarbor
Assistant Secretary

Mortgage Electronic Registration Systems, Inc.

Signed and delivered in the presence of:

Kimberly Robertson
Witness

By
Peter Lopez
Assistant Secretary

STATE OF ARIZONA
COUNTY OF MARICOPA

On 07/16/2008, before me, Ilona T. Dawidowicz, Notary Public, personally appeared Peter Lopez personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Ilona T. Dawidowicz, Notary Public
Expires: 11/30/2009

OFFICIAL SEAL
ILONA T. DAWIDOWICZ
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Nov. 30, 2009

*Exh 1 — Exh. G.*

CFN 2012R0182835
OR Bk 28033 Pg 1695; (1pg)
RECORDED 03/13/2012 16:05:04
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## CORRECTIVE ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F.S.[695.26

MERS phone number: 1-888-679-6377
MIN: 100176105062733202

FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES, ("Assignor") whose address is P.O. Box 2026, Flint, MI 48501; assigned, transferred and conveyed to; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, ("Assignee") whose address is 1100 Virginia Drive, Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005, and recorded July 29, 2005, in Official Records Book 23623, at Page 3231, of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

as the same may have been amended from time to time.

The purpose of this Corrective Assignment of Mortgage is to correct the Assignment of Mortgage recorded on 11/20/2008 at 09:41:11 in 2008R0981616, of the official records of Miami-Dade County, Florida, by Harvey Ruvin, Clerk of Court.

Changed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES as MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR HOMECOMINGS FINANCIAL LLC is not a valid entity

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on _____, 2012.

By: _____
Print Name: Jacqueline Keeley
Title: Vice President

STATE OF Pennsylvania
COUNTY OF Montgomery

The foregoing instrument was acknowledged before me this 14 day of Feb 2012 by Jacqueline Keeley for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES who is personally known to me.

_____
Notary Public:
My commission expires: 1/28/2015

Recording requested by, prepared under the supervision of and return to:
Ken Porter
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F10051160-GMAC MORTGAGE LLC

[INSERTDOC "M900105.rtf" KEEP_FONT]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original filed in this office.
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____
FLORENCE PIERRE-SIMEON #217855

F 10051160

Book28033/Page1695   CFN#20120182835                    Page 1 of 1

Exh. 1 — EXHIBIT

CFN 2008R0941616

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, on or before April 19, 1807, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC ("Assignor") whose address is _____ assigned, transferred and conveyed to U.S. BANK N.A. ("Assignee") whose address is 1100 Virginia Drive, Fort Washington, PA 19014, its successors and/or assigns, all of its right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005 and recorded July 29, 2005, in Official Records Book 23623 at Page 3211 of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 18, BISCAYNE GARDENS SECTION F PART I, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 48, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

as the same may have been extended from time to time, together with the lien and indebtedness secured thereby

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument on _____ 2008.

Witness: _____
Typed Name: Peggy Hong

Witness: _____
Typed Name: Laurie Riley

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC
By: _____
Typed Name: SHIRLEY EADS
Title: VICE PRESIDENT

Attest: _____
Typed Name: Jeffrey Stephan
Title: Assistant Secretary

(AFFIX Corporate Seal)

STATE OF Pennsylvania
COUNTY OF Montgomery

BEFORE ME, the undersigned, personally appeared SHIRLEY EADS and Jeffrey Stephan as Vice President and Assistant Secretary respectively, and known to me to be the persons executing the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that each execution was done in the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC on 23 day of December, 2008.

Notary Public
My Commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Dawn Rump, Notary Public
Horsham Twp, Montgomery County
My Commission Expires Nov 8, 2011
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Ralph McGrady
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F07012148-HOMECOMINGS MORTGAGE, LLC-1469-23317-

FILE NUMBER: F07012148

*F07012148*

DOC_ID: M001100

*M001100*

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office.
November 19, 2021

Deputy Clerk

Book26657/Page3525   CFN#20080941616         Page 1 of 1

*Exhibit H*



1:33

www.bing.com/search?q=mor...

morgan stanley brokerage account is m

ALL   NEWS   IMAGES   VIDEOS   SHOPPING

Image: bbc.co.uk

**Morgan Stanley** is both a registered **broker**-dealer and investment adviser. Your **Morgan Stanley** Access Investing ("MSAI") **account** is a discretionary investment advisory **account. Morgan Stanley** is responsible for implementing the model portfolios in your MSAI **account**, as well as any reasonable restrictions you may impose.

Access Investing | Morgan Stanley
www.morganstanley.com/what-we-do/wealth-m...

Feedback

**PEOPLE ALSO ASK**

*Exh. J - Exhibit J*

Page 1 of 6

CFN: 20170717807 BOOK 30802 PAGE 2089
DATE:12/22/2017 11:30:24 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

FJUD

U.S. Bank, National Association, as Trustee for
RASC 2005AHL3

Plaintiff,

vs.

Leroy Williams; Unknown Spouse of Leroy
Williams; James Littlejohn a/k/a James L. Jolin,
James; Unknown Spouse of James Littlejohn AKA
James L. Jolin; Hoke Williams; Unknown Spouse of
Hoke Williams; Mack Wells; Unknown Spouse of
Mack Wells; Curtis McNeil; Unknown Spouse of
Curtis McNeil; Symonette Limited Partnership;
Deutsche Bank National Trust Company, as Trustee
for Franklin Credit Trust Series I; Miami-Dade
County, Florida; State of Florida, Department of
Revenue; Unifund CCR Partners, G.P.; Suntrust
Bank; City of North Miami, Florida and Tenant #1

Defendants.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI
DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

Case No. 2010-61928-CA-01



## FINAL JUDGMENT OF FORECLOSURE

THIS ACTION was heard before the Court on Plaintiff's Final Judgment on November 29, 2017 on. On the evidence presented, IT IS ORDERED AND ADJUDGED that Plaintiff's Final Judgment is GRANTED against all Defendants listed by name: Leroy Williams; Unknown Spouse of Leroy Williams; James Littlejohn a/k/a James L. Jolin, James; Unknown Spouse of James Littlejohn AKA James L. Jolin; Hoke Williams; Unknown Spouse of Hoke Williams; Mack Wells; Unknown Spouse of Mack Wells; Curtis McNeil; Unknown Spouse of Curtis McNeil; Symonette Limited Partnership; Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I; Miami-Dade County, Florida; State of Florida, Department of Revenue; Unifund CCR Partners, G.P.; Suntrust Bank; City of North Miami, Florida.

1.   Amounts Due and Owing. Plaintiff is due:

Principal due on the note secured by the mortgage foreclosed:       $448,000.00

CFN: 20170717007 BOOK 30802 PAGE 2090

| | |
|---|---|
| Prior Servicer Escrow Advance | $160,443.94 |
| Taxes 2013 | $6,909.19 |
| Taxes 2014 | $6,901.04 |
| Taxes 2015 | $7,488.14 |
| Taxes 2016 | $7,534.96 |
| Flood Insurance 2014 | $2,301.75 |
| Flood Insurance 2015 | $6,085.68 |
| Flood Insurance 2016 | $6,021.27 |
| Flood Insurance 2017 | $1,500.00 |
| Hazard Insurance 2014 | $6,352.83 |
| Hazard Insurance 2015 | $6,146.00 |
| Hazard Insurance 2016 | $6,262.00 |
| Hazard Insurance 2017 | $2,197.36 |
| | |
| Attorney's Fees Total | $4,689.00 |
| | |
| **Court Costs, New Taxes:** | |
| Expert Affidavit | $14.00 |
| Service of Process | $1,935.00 |
| Publication, Notice of Action | $230.00 |
| **Additional Costs:** | |
| BPO | $1,302.00 |
| Property Inspection | $1,172.25 |
| Maintenance | $340.00 |
| **GRAND TOTAL** | $391,297.35 |

2.    Interest. The grand total amount referenced in Paragraph 1 shall bear interest from this date forward at the prevailing legal rate of interest in accordance with Section 55.03, Florida Statutes.

3.    Lien on Property. Plaintiff, whose address is 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33416, holds a lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami Dade County, Florida:

LOT 103, BISCAYNE GARDENS SECTION "F" PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Property address: 15020 South River Drive, Miami, FL 33167

4.    Sale of property.   If the grand total amount with interest at the rate described in Paragraph 2 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on ___JAN 9 9 2018___, 2017, at 9:00 A.M. to the highest bidder for cash after having first given notice as required by Section 45.031,

Case No. 2010-61928-CA-01                                2

CFN: 20170717907 BOOK 30602 PAGE 2091

Florida Statutes.    The subject property shall be sold by electronic sale at: www.miamidade.realforeclose.com.

5.    Costs. Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

6.    Distribution of Proceeds. On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

7.    Right of Possession. Upon filing of the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat., if any. Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the Protecting Tenants at Foreclosure Act of 2009, which was extended until 12/31/14 by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

8.    Jurisdiction. The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

9.    Attorney Fees. The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 19.8 hours and a $2,380.00 flat fee were reasonably expended by the plaintiff's counsel and that an hourly rate of $85.00-$215.00 and a flat fee of $2,380.00 is appropriate. PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 S.2d 1145 (Fla. 1985).

10.   The court finds that the legal description contained in the subject Mortgage recorded in Official Records Book 23623, at Page 3231, of the Public Records of Miami-Dade County, Florida, is incorrect. Said Mortgage is hereby reformed to reflect the correct legal description as follows:

LOT 105, BISCAYNE GARDENS SECTION "F" PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

11.   The Court finds that Plaintiff is entitled to an equitable lien against Defendant, James Littlejohn AKA James L. Jolin, Hoke Williams, Mack Wells, Curtis McNeil, Symonette Limited Partnership's interest in the subject property, superior to the interest of the Defendants.

Case No. 2019-61928-CA-01                3                File # 13-F02863

CFN: 20170717907 BOOK 30802 PAGE 2993

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

DONE AND ORDERED in Chambers in Miami Dade County, Florida, this _____ day of _____, 2017.

DEC 1 9 2017

Circuit Judge

John Schlesinger
Circuit Court Judge

Plaintiff shall serve all parties named on the service list and "occupant" at property address

**Service List**

William LaCroix, Esq,
Attorney for Plaintiff
Brock & Scott, PLLC
1501 NW 49th Street, Suite 200
Fort Lauderdale, FL 33309

Miami-Dade County, Florida
c/o Altanese Phenelus, Esq.
111 NW 1st Street
Miami, FL 33128
yvaldes@miamidade.gov

City of North Miami (City)
Jennifer L. Warren
776 N.E 125th Street
North Miami, FL 33161
cityattorney@northmiamifl.gov

Hoke Williams
L/K/A 13020 South River Drive
Miami, FL 33167

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER _____ 02
THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.       John Schlesinger
                                Circuit Court Judge

Case No. 2010-61923-CA-01                    4                    File # 13-F02363

Page 5 of 6

CFN: 20170717807 BOOK 30602 PAGE 2093

Unifund CCR Partners, G.P.
c/o CT Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I
c/o Legal Department
1751 E. St. Andrew Place
Santa Ana, CA 92705

Unknown Spouse of Hoke Williams
15020 South River Drive
Miami, FL 33167

Unknown Spouse of James Littlejohn AKA James L. Jolin
8152 NW 15th Manor, Apt FC2R
Plantation, FL 33322

Littlejohn a/k/a James L. Jolin, James
L/K/A 15020 South River Drive
Miami, FL 33167

Suntrust Bank
c/o Allaha Smith, R.A.
40 Technology Parkway South, Suite 300
Norcross, GA 30092

State of Florida, Department of Revenue
C/o Executive Director, a registered agent or any other person authorized to accept service of process
2450 Shumard Oak Boulevard
Tallahassee, FL 32399

Leroy Williams
8152 NW 15th Manor, Apt. FC2R
Plantation, FL 33322

Unknown Spouse of Mack Wells
15020 South River Drive
Miami, FL 33167

Case No. 2010-61928-CA-01                    2                    File # 13-F02868

CFN: 20170717807 BOOK 30502 PAGE 2004

The Unknown Spouse of Leroy Williams
L/K/A 15020 South River Drive
Miami, FL 33167

The Unknown Spouse of Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Mack Wells
L/K/A 15020 South River Drive
Miami, FL 33167

Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Symonette Limited Partnership
L/K/A 15020 South River Drive
Miami, FL 33167

Case No. 2010-61928-CA-01                    3                    File # 13-F02858

Exhibit "K"

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-c

US Bank ,N.A.
Plaintiff(s)

April 1,2010

Vs.

Leroy Williams
Defendant(s)

_____/

### ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution. Served on April 11,2008. The court finds that (1) notice prescribed by rule 1.40 (e) Was served on April 11,2008; (2) their was no record activity for the year preceding Service of the foregoing notice; (3) no stay has been issued or approved by the court And (4) no party has shown good cause why this action should remain pending. Accordingly,

IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice DONE AND ORDERED in chambers, at Miami, dade county, Florida this 31th day of March , 2010.

APR 06 2010     APR 06 2010

CIRCUIT COURT JUDGE

VALERIE MANNO S
CIRCUIT COURT J

IRR
DGE

CC-Allparties

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original as filed in this office.
HARVEY RUVIN, CLERK, of Circuit and County Courts
Deputy Clerk



7244 Pg 4193 CFN 20100237159 04/09/2010 12:47:17 Pg 1 of 1 Mia-Dade Cty, FL

CFN 2004R0626859
OR Bk 22514 Pa 2791¹ (1ps)
RECORDED 07/26/2004 12:36:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

*Exh. 1 - Exhibit L*

RECORDING REQUESTED BY / RETURN TO:
Pralle Management Corporation
P.O. Box 30014, Reno, NV 89520-9827

## Satisfaction Of Mortgage

WHEREAS the indebtedness secured by the mortgage described below has been fully paid and satisfied,
CHASE MANHATTAN MORTGAGE CORPORATION,
owner and holder of the debt, hereby declares that the lien of said mortgage is forever discharged and satisfied.
Original Mortgagee: CHEMICAL RESIDENTIAL MORTGAGE CORPORATION
Original Mortgagor: JOHN SCHLESINGER, MARILYN MILIAN
Recorded in Dade County, Florida, on 10/16/85 as Inst. # 85-420253 on Book 16952 on Page 3797
Tax ID: 0341180040110
Date of mortgage 10/13/85 Amount of mortgage: $334000.00
DATE OF SATISFACTION: 07/02/04

NOW THEREFORE, the recorder or clerk of said county is hereby instructed to record this instrument and to
cancel, release, and discharge the mortgage in accordance with the regulations of said state and county.
DATED: 07/16/2004
CHASE MANHATTAN MORTGAGE CORPORATION
F/K/A CHEMICAL RESIDENTIAL MORTGAGE CORPORATION

By _____       _____
Jennifer Wallace                 Witness: Shawna Thompson
Vice President

_____
Witness: Judy McColley

State of Nevada
County of Washoe
On 07/15/2004, before me, the undersigned, a Notary Public for said County and State, personally appeared
Jennifer Wallace, personally known to me to be the person that executed the foregoing instrument, and
acknowledged that she is Vice President of
CHASE MANHATTAN MORTGAGE CORPORATION,
and that she executed the foregoing instrument pursuant to a resolution of
its board of directors and that such execution was done as the free act and deed of
CHASE MANHATTAN MORTGAGE CORPORATION.

_____
Notary: Steven H Carson
My Commission Expires: 03-15-08

STEVEN R. CARSON
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No. 04-87369-2 - Expires March 15, 2008

Prepared by: E. N. Harrison, Pralle Management Corporation, 4680 Longley Lane, Suite #8, Reno, NV 89502
LN/ _____ Investor LN/ _____ P.I.F.: _____
FINAL RECON.m _____ Clt: Inv/Y09 id2 07/16/04 09-025 FL Dade 292:9 162

6:46

 Quora — Open In App | Sign In

# Are JP Morgan and Chase the same?

*Exh. 1—*
*Exhibit M*

### What are some simple steps I can take to protect my privacy online?

Many people believe that they can't do anything to protect their privacy online, but that's not true. There actually are simple...

Continue Reading     >

## · 1 Answer

 Dan Mahoney, Executive Director at JPMorgan Chase (███-present)

The basic answer is yes. JPMorgan Chase is one big company. Different names are used for branding purposes. The JP Morgan name is used for higher end LOB and products like investment banking, the largest corporate relationships and private banking for the wealthy. Chase is used for lower end products retail branch banking, business banking (less than $20M in sales) and commercial banking (annual sales less than $500M).

Exh. M pg-2



Document Prepared By:
Steve P. Gallano
ReconTrust Company
2575 W. Chandler Blvd.
Mail Stop: CHDLR-C-88
Chandler, AZ 85224
(800) 540-2684

CFN  2008R0642394
OR Bk 26512 Pg 2906 (1ps)
RECORDED 08/06/2008 14:02:40
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

*Exh. 1 - Exhibit N*

When recorded return to:
MARILYN MILIAN, JOHN SCHLESINGER
1228 Alfonso Ave
Coral Gables, FL 33146

DOCID#00038605542005N

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: Mortgage Electronic Registration Systems, Inc. the owner and holder of a certain mortgage deed executed by MARILYN MILIAN, JOHN SCHLESINGER bearing date 05/29/2003, recorded on 06/05/2003 in Official Records Book 21608, Page 1301 , Instrument # 648932  in the office of the Clerk of the Circuit Court of MIAMI-DADE County State of Florida, securing a certain note in the principal sum of $1,000,000.00 Dollars, and certain promises and obligations set forth in said mortgage deed, upon the property situated in said State and County hereby acknowledge full payment and satisfaction of said note and mortgage deed, and surrenders the same as canceled, and hereby directs the Clerk of the said Circuit Court to cancel the same of record.

IN WITNESS WHEREOF the said Corporation has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized, the 16 day of July, 2008.

ATTEST: _____
Stacey Yarber
Assistant Secretary

Mortgage Electronic Registration Systems, Inc.

Signed and delivered in the presence of:



_____
Kimberly Robertson
Witness

By _____
Peter Lopez
Assistant Secretary

STATE OF ARIZONA
COUNTY OF MARICOPA

On 07/16/2008, before me, Ilona T. Dawidowicz, Notary Public, personally appeared Peter Lopez personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Ilona T. Dawidowicz, Notary Public
Expires: 11/30/2009

OFFICIAL SEAL
ILONA T. DAWIDOWICZ
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Nov. 30, 2009

EXH. O

Case 1:18-cv-22211-DPG   Document 5   Entered on FLSD Docket 06/24/2019   Page 8 of 8

Complaint - Department of Justice

https://www.justice.gov/archive/opa/documents/complaint.pdf

1.

IN THE UNITED STATES DISTRICT COURT ... 555 4 th. Street, NW.
) Washington, DC 20530. ) ) THE STATE OF ALABAMA, ... Montgomery, AL 36130.
) ) THE STATE OF ALASKA,. ) 1031 W. 4 th. Avenue, Ste .... 420
Montgomery Street Front ... Virginia, and the District of Columbia by and through their
undersigned attorneys ...

*18 US ATTORNEYS FILED SAME COMPLAINT.*

*Exh. 1.—*

*Exhibit. P*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-CV-22211-GAYLES

CARL ERICKSON

    Plaintiff,

v.

RALPH W. CONFREDA, JR., et al.,

    Defendants.

_____/

### ORDER OF RECUSAL

PURSUANT to 28 U.S.C. § 455, the undersigned Judge to whom the above-styled cause is assigned hereby recuses himself and refers the case to the Clerk of the Court for reassignment.

DONE AND ORDERED in Chambers at Miami, Florida this 28th day of June, 2019.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

*Exhibit P. Pg. 2*

Case 1:18-cv-22211-DPG   Document 5   Entered on FLSD Docket 06/24/2019   Page 1 of 8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CARL ERICKSON,
             Plaintiff,

v.

RALPH W. CONFREDA, JR.,
US BANK NATIONAL
JP MORGAN CHASE BANK
CARL A. LUBETSKY
ALAN WASERSTEIN
KENNETH ERIC TRENT
TERRANCE W. ANDERSON et al.,
             Defendants,

Case No. 18-cv-22211-GAYLES

FILED BY _____ D.C.

JUN 24 2019

ANGELA E. NOBLE
CLERK U.S. DIST CT.
S. D. OF FLA. - MIAMI

## MOTIONS FOR RELIEF & RECUSAL AND MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure Rule 60, Plaintiff Carl Erickson hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the June 26th, 2016 Judge Darrin Gayles *sua sponte* review of the record and Dismissal Order [Document #4] based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibits Attached-JP Morgan Chase Special Situation Property Funds FRS Account Page 42, FRS 2018 Tables 9-13, SEC Filings-US Bank Florida Subsidiaries, Gayles Financial Interests & Property Disclosures)

### FACTUAL BACKGROUND

1. On June 4th, 2018, Plaintiff Carl Erickson filed a civil action Complaint [Document #1] citing Fraud causes of action for violations of Federal tort laws, banking real estate security assets regulation violations and racketeering statutes.

2. The Complaint was based upon precedent USDC related filings accepted by non-biased professional jurists that contained *verbatim* (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought under Fed. R. Civ. P. 8.

3. On June 26th 2018, Judge Gayles issued and Dismissal Order a *sua sponte* review of the

[1]

Exhibit Q

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

CASE NO. 2019-030415-CA-01
SECTION: CA 20

**JAMES BUCKMAN**
        Plaintiff(s),

vs.

**LANCASTER MORTGAGE CO**
        Defendant(s).

_____/

REASSIGNED BY BLIND FILING TO SECTION CA 01
PER ORDER OF ADM. JUDGE
THIS DATE: OCT 17 2019

FILED FOR RECORD
2019 OCT 17 PM 2:33

## ORDER OF RECUSAL

**THIS CAUSE,** came before the Court sua sponte, and the Court being fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED

1. That the undersigned Circuit Court Judge hereby recuses himself from further consideration of this case.

2. This case shall be reassigned to another section of the Circuit Civil Division in accordance with established procedures.

**DONE AND ORDERED** in chambers, at Miami, Dade County, Florida, this 17th day of October, 2019.

_____
William Thomas
**CIRCUIT COURT JUDGE**
William Thomas
Circuit Court Judge

Mailing Service List:
JAMES BUCKMAN, 1977 NE 119TH RD, MIAMI, FL 33181
MAURICE SYMONETTE, 4711 L J PARKWAY, UNIT 4208, SUGARLAND, TX 77479
LANCASTER MORTGAGE CO
ONE WEST BANK
EMC MORTGAGE BANKERS LLC
MORTGAGE ELECTRONIC REGISTRATION SYSTEM
DEUTSCHE BANK NATL TR CO
MERS
SERVICING AGREEMENT SERIES RAST 2006 A 8
RESIDENTIAL ASSET SECURITIZATION TR 2006 A8 +

Filing # 173989671 E-Filed 05/25/2023 01:46:06 PM

*Exh 4*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2021-010826-CA-01
SECTION: CA25
JUDGE: Valerie R. Manno Schurr

MAURICE SYMONETTE

Plaintiff(s)

vs.

U.S. BANK NATIONAL ASSOCIATION (TR) et al

Defendant(s)

_____

### ORDER OF RECUSAL

THIS CAUSE, came before the Court sua sponte, and the Court being fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED

1. That the undersigned Circuit Court Judge hereby recuses herself from further consideration of this case.
2. This case shall be reassigned to another section of the Circuit Civil Division in accordance with established procedures..

DONE and ORDERED in Chambers at Miami-Dade County, Florida on this 21st day of January, 2022.

2021-010826-CA-01 01-21-2022 11:24 AM
Hon. Valerie R. Manno Schurr

CIRCUIT COURT JUDGE
Electronically Signed

Case No: 2021-010826-CA-01

Page 1 of 2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2007-12407-ca1

US Bank, N.A.,
Plaintiff(s)

Vs.

Leroy Williams,
Defendant(s)

## ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution. Served on April 11 2008. The court finds that (1) notice prescribed by rule 1.40 (e) Was served on April 11 2008; (2) their was no record activity for the year preceding Service of the foregoing notice; (3) no stay has been issued or approved by the court And (4) no party has shown good cause why this action should remain pending. Accordingly;

IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice. DONE AND ORDERED in chambers, at Miami, dade county, Florida this 31th day of March 2009.

SARAH I. ZADEL
Circuit Court Judge

Filing # 143058165 E-Filed 02/01/2022 01:31:10 PM



. IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN

AND FOR

MIAMI DADE COUNTY FLORIDA CIVIL ACTION

MAURICE SYMONETTE

Plaintiff

                                              CASE NO: 2021-

                          10826-CA01

v.

U.S. BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR RASC
2005AAHL3, MERS, FRANKLYN
CREDIT MANAGEMENT CORP and
AXIOM FINANCIAL SERVICES

Defendants,

### MOTION AND AFFIDAVIT FOR RELIEF, RECUSAL, VACATION OF ORDERS AND MEMORANDUM OF LAW

Pursuant to Florida Stat. 112.131, Florida Rule 2.160 (H) and Federal Rules of Civil Procedure Rule 60, Plaintiff MAURICE SYMONETTE hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the June 25 2010 Valerie Manno Schurr Freview of the record and Final Judgement Order, Exhibit J because it injured us. based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibits # B) Attached- U.S. BANK Special Situation Property Funds Account Page 42, IFRS 2018 Tables 9-13, SEC Filings- U.S. BANK Florida Subsidiaries, Judge Valerie Manno Shurr Financial Interests & Property Disclosures). '

Exh. 6 pg2

## _Florida Rule 2.160 (H) Says A Judge must Vacate her orders for Conflict of Interest LIKE THE ORDERS JUDGE VALERIE MANNO SHURR DID IN THE ILLEGAL EXPARTE HEARING 06/25/2010 WHERE SHECHANGED THE ORDER OF DISMISSAL WITH PREJUDICE TO DISMISSAL WITHOUT PREJUDICE AND RETURN THAT BACK TO DISMISSED WITH PREUDICE AND ALL HER OTHER ORDERS SHE DID IN THE NEW CASE 2022, Theodore R. Bundy V. Judge John A. Rudd, Fl. Rule 2.160 (D) (1), Fl. Code Jud. Conduct Canon 3E (1) A Judge shall disqualify herself where impartiality might reasonably be questioned Rule 2.160 (D) (1) and grounds to disqualify is a party fears that the Judge is Biased, Fl. Statue 112.312 (8) and Judge can't have a conflict of Interest!_

Judge Valerie Schurr must Recuse herself for an open obvious Conflict of Interest because she's and was doing business with US Bank, GMAC and OCWEN and helping them to make money so that she can make money by foreclosing and taking (stealing) our property while acting as the Judge on the case on our property, not on case's Merits but for to make her and them money Illegally. Here's proof.

Exh. 6 pg3

## NOW I'M REPORTING JUDGE SHURR TO THE ADMINISTRATIVE JUDGE WHO APPOINTS JUDGES TO CASES, GOVERNOR DE SANTIS, THE JQC, THE BAR, THE US DOJ, THE FBI, THE FLORIDA STATE ATTONEY AND MEDIA  FOR OBVIOUS RACIST  MISCONDUCT, BY TOTALLY IGNORING FLORIDA STATUTES-RULES AND FOR CRAZY OBVIOUS CONFLICTS OF INTEREST

Because something strange has Happened out of nowhere! Judge Valerie *Manno Schurr's* SIGNATURE and NAME shows up on the DISMISSAL WITH PREJUDICE that was done by  Judge ZABEL*'s Order of Dismissal With PREJUDICE* 04/07/2010  THE YEAR AFTER Judge Valerie Manno Shurr BECOMES JUDGE RIGHT BEFORE SHE mistereouly dose another Dismissal with Prejudice *04/07/2010 exactly one year after Judge Zabel's 04/07/2010* Order of Dismissal With Prejudice to  take over our case to save U.S. BANK FROM US and save JUDGE ZABEL, THEIR LAWYERS FROM THE WRATH OF THEIR BOSS **GMAC (US BANK)** WHO HAD ALREADY PAID THEM TO SAVE U.S. BANK *FROM US. JUDGE VALERIE MANNO SHURR is who we're just now finding out that* THE BANKS PAID HER TO TRICK US INTO BELIEVING THAT WE WERE SAFE FROM US BANK WITH THE DISMISSAL WITH PREJUDICE AND THEN THREE MONTHS LATER JUDGE VALERIE MANNO SHURR CHANGES IT TO DISMISSAL WITHOUT PREJUDICE IN AN ILLEGAL EXPARTE HEARING WITHOUT US KNOWING SO THAT US BANK COULD AND START THE SAME CASE OVER

Exh. 6
Pg4.

WITHOUT NOTICE TO US! WHY DID **GMAC (US BANK)** PAY JUDGE VALARIE MANNO SHURR TO AKE OVER OUR CASE WAS BECAUSE JUDGE ZABEL *DISMISSED WITH PREJUDICE US BANK'S CASE 04/07/2009 AS SEEN ON THE* DOCKET CASE NUMBER 2007-12407-CA-01 LINE 10, Exh. C. And FORD MOTOR *CO. V. CALLOWAY SAYS A JUDGE CAN'T CHANGE ANOTHER JUDGE'S ORDER SO,* JUDGE VALARIE MANNO SHURR FILED HER DUPLICATE DISMISSAL WITH *PREJUDICE SAMPLE ZABEL'S ORDER FILED 04/07/2009 AND SHURR'S* DUPLICATE ORDER FILED 04/07/2010 AS SEEN ON THE DOCKET CASE NUMBER 2007-12407-CA-01 LINE 10 AND 11, Exh. C. ALL DONE SO THAT SHE COULD IN AN ILLEGAL EXPARTE HEARING IN VIOLATION OF FLORIDA STAT. 702.07 WITH THE PLAINTIFF US BANK CHANGE HER OWN ORDER TO DISMISSAL WITHOUT PREJUDICE, Exh. F. TO HELP **GMAC (US BANK). STEAL SO THEY CAN ALL MAKE MONEY OFF OF HELPLESS BLACKS. USING BIG BAD JUDGES AND LAWYERS!** The Proof that JUDGE VALARIE MANNO SHURR made MONEY to help them is on her Form 6 FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTEREST SWORN AFFIDAVIT OATH of 2008 that shows on Part C. Liabilities section that a1She has $995,000.00 and $91,498.00 from GMAC which is the Servicer and owner RESIDENTIAL FUNDING CORPORATION in their notice of transfer said they were controlling our payments as Servicer from at least 1/1/2007 on the Mortgage Payment Coupon at the bottom of the Transfer

Exh. 6
Pg 5

Letter, Exh.S. and $129,000,00 from Wells Fargo which is US BANK NATIONAL

ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3, Exh.(DD). And Judge Shurr has

$129,000,00 from Wells Fargo which is US BANK NATIONAL ASSOCIATION AS

TRUSTEE FOR RASC 2005 AHL3, Exh.(DD ) then in 2009 form 6 it shows GMAC

MORTGAGE of $410,000.00 and Credit line with GMAC, and $128,000 Wachovia

which is Wells Fargo which is US BANK, Exh.(EE) and then she allows an Illegal

Ex parte Hearing with US Bank National Attorneys to change her order which is

*really Judge Zabel's Order* from DISMISSED WITH PREJUDICE in April 6th, 2010

Exh. (F3) to change the Dismissed with Prejudice 3 months later in June 27th

2010 into DISMISSED WITHOUT PREJUDICE In this Ex Parte hearing Exh.(F).

which is only supposed to be done with only the Defendants that are about to

lose their home to the Foreclosure Sale and this must be done before the sale of

the House according to Fl. Statute 107.07, (during the interim GMAC also had a

Florida Default Letter as the Servicer) and after that wonderful gift Judgement

to US Bank National Association and helping Judge Zabel out of the mess for

doing a Judgment without a Docketed Complaint, Note, Allonge, Mortgage or an

Assignment from the Records which was literally Criminal, Thievery of our

house. Then suddenly In her 2010 Form 6 Disclosure of Financial Interest,

Exh.(FF), it shows a $400,000.00 gift from GMAC and shows $1,000,000.00 from

Wells Fargo which is US Bank, Exh. (EEE). All of this is pay to Play RICO

Conspiracy to Steal Black Peoples Houses *which they're* also doing to White

Exh. 6
Pg 7

European Gentiles! US BANKS only lawful Remedy was to Appeal the Dismissal with Prejudice within 30 days according to Florida Appelate Rule 4 (a)(1)(A). But now a case that was Dismissed with Prejudice was given life again by Judge Valerie Manno *Schurr's illegal Ex parte hearing and changing the Dismissal with Prejudice to* Dismissal without Prejudice which allowed US BANK to secretly file another Foreclosure Case against the House at 15020 South River Drive Miami Florida 33167 and US Bank did file another case which was a continuance of the same Case from 2007 which is called Case Number 2007-12407-CA01 that was Dismissed with Prejudice and Secretly changed to Dismissed without Prejudice and without any notice to us in 2010 called Case number 2010-61928-CA01 this 2010 was also done without the Original Mortgage, Assignment and Docs. Original of the Note, Allonge to the Note, and the second Allonge from Fannie Mae or indemnification info that indemnifies Fannie Mae and there must be the Loan Number, Date and the printed name of the Signer as required by Federal Fannie Mae Rules B8-3-04 for Fannie Mae of which none of this is on the copy of the Allonge recorded on the Docket, Exh. LL. And JUDGE VALERIE MANNO SHURR has taken my new Case again to finish what she started by Ruling in favor of US BANK and GMAC with worst Conflicts of Interests that *she's trying to hide so that she can Rule in the Bank's Favor to illegally. Because in her* FORM 6 - 2019 and 2020 Financial Disclosure Affidavit she has over 11,192,000.00 million, plus on line 5 she states that she has a $400,000.00 Mortgage with City National Bank that is Royal Bank of Canada which is Wells Fargo, Exh. SS. and Wells

Exh. 6
Pg 8

Fargo is US Bank the Bank Judge Valerie Manno Shurr is helping to illegally Foreclose on us, Exh. TT. *The other conflict is Shurr's $400,000.00 Mortgage Holder City* National Bank that is Royal Bank of Canada Which is Morgan Stanly/ JP MORGAN, Exh. VVV, which is US BANCORP/ US BANK, Exh. W. and Exh. X. all this is CITY NATIONAL BANK Exh. SS, Who Merged with Wachovia Bank who admitted the were SLAVE MASTERS OF BLACK PEOPLE, Exh.UU. to just take CRIPLE HELPLESS BLACK *PEOPLE'S HOMES. I will investigat how this Judge accumulated 11 million dollars on a JUDGE'S SALLARY , I Deman*d to see where all that money This is the BANK that was served my law suite by an official Servicer acknowledge by US BANK which by Florida Statute they hod only 20 days to answer but they never answered for six months while we trying to Default them the whole time, yet JUDGE VALERIE MANNO SHURR with her millions of dollars of Conflicts of interest helped US Bank by not ever Defaulting *them no matter what the laws and rules say I Really don't stand a chance in this fight* because the referee (JUDGE SHURR) is being paid by my Opponents to Rule only in *their (US BANK'S-GOLIATH'S) favor I AM Detroyed and CRUCIFIED by these Wicked* Animals who break all the Laws and kill BLACK PEOPLE and hold themselves not GUILTY by these CROOKED EVIL JUDGES like JUDGE VALERIE MANNO SHURR and I know they are Plotting to KILL me right now, K.J.V. BIBLE= ZECHARIAH 11:5!!!!! Axiom Financial <u>Services  now refered to as (AFS) is the Bank the Note was done with and (AFS) sold the Note  with the MIN. Account number 100176105062733203{M at the bottom of each page of the adjustable rate Note</u>

Exh. G.

EXHIBIT C

DOCKET #1

3/7/2014

0 Item(s) In Basket

Miami-Dade County Clerk - Civil / Probate Justice System - Docket Information

Home     Online Services     About us     Contact us

# HARVEY RUVIN
## CLERK of the COURTS
### MIAMI-DADE COUNTY, FLORIDA

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS

ALL PARTIES                                     START A NEW SEARCH
US BANK (NA) vs WILLIAMS, LEROY
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

Case Number (LOCAL): 2007-12407-CA-01          Dockets Retrieved: 48        Filing Date: 04/26/2007
Case Number (STATE): 13-2007-CA-012407-0000-01
Judicial Section: 32

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 04/07/2011 | | LETTER OF CORRESPONDENCE | FROM MACK L WELLS |
| 11/04/2010 | | NO FURTHER JUDICIAL ACTION | ORDER FILED IN CASE # 00-8186 CA01 AND IN SHARE DRIVE |
| 10/14/2010 | | MOTION | TO VACATE LAST ORDER & RETAIN ORIG. ORDER |
| 09/28/2010 | | MOTION TO VACATE DISMISSAL | |
| 08/06/2010 | | TEXT | RET'D ORIGINAL NOTE AND MORTGAGE. |
| 06/25/2010 | 27343 / 949 Pages 3 | COURT ORDER | BK:27343 PG:0949 VACATING, DISMISSING, CXL SALE RELEASE LIS PENDENS, ETC. |
| 06/20/2010 | | MOTION | ATY:00071675 R: 5058 TO DISMISS CASE, CANCEL FORECLOSURE SALE, ETC. |
| 06/18/2010 | | FINAL DISPOSITION DOCUMENT | |
| 04/07/2010 | 27244 / 4193 Pages 1 | COURT ORDER | BK:27244 PG:4193 OF DISMISSAL |
| 04/07/2009 | *Judge Zabel Dismissal with Prejudice* | TEXT | DISMISS FOR LACK OF PROSECUTION WITH PREJUDICE |
| 09/09/2008 | | OBJECTION | TO WRITTEN DISCOVERY, MTN TO STRIKE OR...ETC |
| 09/09/2008 | | NOTICE | THAT PLTFF HAS RESPONDED TO DEFENDANT...ETC |
| 08/15/2008 | | LETTER OF CORRESPONDENCE | FROM MACK WELLS TO DISMISS FR LACK OF PROSECUTION |
| 08/15/2008 | | LETTER OF CORRESPONDENCE | FROM MACK WELLS TO DISMISS FOR LACK OF PROSECUTION |
| 09/17/2007 | 25944 / 542 Pages 2 | COURT ORDER | BK:25944 PG:0542 CANCELING FORECLOSURE SALE |
| 09/14/2007 | | PROOF OF PUBLICATION | PUB DATE : |
| 09/14/2007 | | PROOF OF PUBLICATION | PUB DATE :08/31/2007 |
| 09/12/2007 | | MOTION | TO CANCEL FORECLOSURE SALE |
| 09/10/2007 | | MOTION | ATY:88888888 R: 145184 SET ASIDE FJUD AND RECONSIDER STAY |

https://www2.miami-dadeclerk.com/civil/Search.aspx

Case 1:23-cv-22848-JEM   Document 1-2   Entered on FLSD Docket 07/31/2023   Page 80 of 300

3/7/2014

Exh. 6 — Exh. C2

Miami-Dade County Clerk - Civil / Probate Justice System - Docket Information

| Date | Book/Page | Type | Description |
|---|---|---|---|
| 09/10/2007 | | TEXT | $50 FEE PD/RCPT 145184 |
| 08/30/2007 | | NOTICE OF SALE | |
| 08/24/2007 | | TEXT | WRITTEN REQUEST, DISPUT VALIDITY OF ALLEGED LOAN |
| 08/14/2007 | | CERTIFICATE OF MAILING FINAL JUDGMENT | |
| 08/13/2007 | | NOTICE OF FILING | |
| 08/13/2007 | | NOTICE OF FILING | ORIGINAL MORTGAGE AND ORIGINAL NOTE |
| 08/13/2007 | | TEXT | AFFIDAVIT OF AMOUNTS DUE AND OWING |
| 08/13/2007 | | TEXT | FINAL DISPOSITION FORM |
| 08/09/2007 | 25872 / 4163 Pages 6 | FINAL JUDGMENT | SALE DATE: 09-14-2007 J $ 491500.11 BK:25872 PG:4163 DN01 DN02 DN03 DN04 |
| 07/26/2007 | | DEFAULT | |
| 07/26/2007 | | NOTICE OF DEFAULT NOT ENTERED | DN03 |
| 07/19/2007 | | NOTICE OF HEARING | DN01 DN02 E |
| 07/19/2007 | | MOTION FOR DEFAULT | MOTIONS 08/09/2007 10:00 AM |
| 07/19/2007 | | MOTION FOR SUMMARY JUDGMENT | |
| 07/19/2007 | | NON-MILITARY AFFIDAVIT | |
| 06/12/2007 | | SERVICE RETURNED | |
| 06/12/2007 | | SERVICE RETURNED | BADGE # 1552 P 05/23/2007 DN02 |
| 06/12/2007 | | TEXT | BADGE # 1552 P 05/12/2007 DN01 |
| 06/12/2007 | | SERVICE RETURNED | SUMMONS RTD NON-SERVED UNK SPOUSE OF WILLIAMS |
| 06/12/2007 | | TEXT | BADGE # 118 P 05/02/2007 DN03 |
| 06/12/2007 | | TEXT | SERVICE RTD SERVED TENANT |
| 06/12/2007 | | SERVICE RETURNED | SERVICE RTD SERVED TENANT |
| 06/08/2007 | | TEXT | BADGE # 1300 P 05/01/2007 DN04 |
| 06/08/2007 | | TEXT | OPPOS. TO PLNFS MORT.FORECLOSURE.COMPLT ETC. |
| 05/23/2007 | | ANSWER | WRITTEN REQU.FORMAL PROTEST.&DISPUTE ETC. |
| 04/30/2007 | 25576 / 1873 Pages 1 | LIS PENDENS | ATTORNEY:00314021 DN04 |
| 04/26/2007 | | COMPLAINT | BK:25576 PG:1873 |
| 04/26/2007 | | CIVIL COVER | |
| 04/26/2007 | | SUMMONS ISSUED | DN01 DN02 DN03 DN04 |

BACK TO SEARCH RESULTS

ALL PARTIES

START A NEW SEARCH

S0142977

e://www2.miami-dadeclerk.com/civil/Search.aspx

Exh.6 —

# FORM 6 FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTERESTS

2008

**COMMISSION ON ETHICS DATE RECEIVED**

JUN 2 6 2009

FOR OFFICE USE ONLY:

PROCESSED

ID Code

ID No.   210380

Cont. Code

P. Req. Code

Manno Schurr , Valerie R.

AUTO*5-DIGIT 331 T2 P2   6
Hon Valerie R. Manno Schurr
Circuit Judge
Judicial Circuit (11Th)
Elected Constitutional Officer
Dade County Courthosue Rm 1105
73 W Flagler St
Miami, FL 33130-1731

CHECK IF THIS IS A FILING BY A CANDIDATE ☐

## PART A — NET WORTH

Please enter the value of your net worth as of December 31, 2008, or a more current date. [Note: Net worth is not calculated by subtracting your reported liabilities from your reported assets, so please see the instructions on page 3.]

My net worth as of December 31, 2008 was $ 2,860,357.00.

## PART B — ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following: if not held for investment purposes: jewelry, collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use.

The aggregate value of my household goods and personal effects (described above) is $ 150,000.00

**ASSETS INDIVIDUALLY VALUED AT OVER $1,000:**

| DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| Home located in Miami-Dade (Former Residence) | 700,000.00 |
| Home located in Miami-Dade (Residence) | 2,400,000.00 |
| Vail Colorado Condomenium / Eagle County Colorado | $ 300,000.00 |
| Bank Accounts, Stocks, Bonds / Pension Accounts | $ 600,000.00 |
| Mercedes Benz 350 ML | $25,000.00 |

## PART C — LIABILITIES

**LIABILITIES IN EXCESS OF $1,000:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| GMAC Mortgage (Former Residence) P.O. Box 900719 Louisville, Ky. | 91,438.00 |
| GMAC Mortgage (Residence) (1st & 2nd Mortgages) P.O. Box 4622 Waterloo, IA | 995,000.00 |
| Wells Fargo Home Mortgage (Vail Property) P.O. Box 650169, Dallas, Tx | 129,000.00 |
| Huntington National Bank (Mercedes) P.O. Box 182519 Columbus, Ohio 43218-2519 | 9,205.00 |

**JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| None | |

CE FORM 6 - Eff. 1/2009

(Continued on reverse side)

PAGE 1

Exh.6 — Exh. EE

# FORM 6    FULL AND PUBLIC DISCLOSURE OF    2009
## FINANCIAL INTERESTS

COMMISSION ON ETHICS
DATE RECEIVED

PROCESSED

FOR OFFICE
USE ONLY:

JUN 2 5 2010

II.
Hon Valerie R. Manno Schurr
Circuit Judge
Judicial Circuit (11Th)
Elected Constitutional Officer
73 W FLAGLER ST DADE COUNTY COURTHOSUE RM 1105
MIAMI, FL  33130

ID Code:

ID No.    210380

Conf. Code

P. Req. Code

Manno Schurr , Valerie R.

CHECK IF THIS IS A FILING BY A CANDIDATE  ☐

## PART A — NET WORTH

Please enter the value of your net worth as of December 31, 2009, or a more current date  [Note  Net worth is not calculated by subtracting your reported liabilities from your reported assets, so please see the instructions on page 3.]

My net worth as of December 31, 2009, was $ 3,351,652.00

## PART B — ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry, collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use

The aggregate value of my household goods and personal effects (described above) is $  152,000.00

**ASSETS INDIVIDUALLY VALUED AT OVER $1,000:**

| DESCRIPTION OF ASSET (specific description is required — see instructions p.4) | VALUE OF ASSET |
|---|---|
| Residence in Miami-Dade County (Pinecrest) | 2,800,000.00 |
| Vail Colorado Condominium/Eagle County | 250,000.00 |
| Bank Accts, Pers'n Brokerage Acc'nt / Bank of America  Wachovia | 650,000.00 |
| Auto, Range Rover                                       / Fidelity | 64,000.00 |

## PART C — LIABILITIES

**LIABILITIES IN EXCESS OF $1,000:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| Gmac Credit Line/P.O. Box 4622 Waterloo, I A | 410,000.00 |
| Wellsfargo P.O. Box/P.O. Box 650769, Dallas, Tx | 125,000.00 |
| Chase Firwood Group/P.O. Box 78067, Phoenix, Az 85062 | 24,350.00 |

**JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| None | |
| | |
| | |

CE FORM 6 — Eff. 1/2010         (Continued on reverse side)         PAGE 1

Exh6 — EXHĒīī

9:02     .ıll LTE

🔒 en.m.wikipedia.org

American _____ based in
_____, and incorporated in
_____. It is the parent company of **U.S.
Bank** National Association, which is the 5th
_____ The
company provides banking, investment,
mortgage, trust, and payment services
products to individuals, businesses,
governmental entities, and other financial
institutions. It has 3,106 _____ and 4,842
_____ primarily in the Midwestern
_____ and has approximately 72,400
employees. The company also owns _____,
a processor of credit card transactions. U.S.
Bancorp operates under the second-oldest
continuous national charter, originally Charter
#24, granted in 1863 following the passage of
the _____ Earlier charters have
expired as banks were closed or acquired,
raising U.S. Bank's charter number from #24 to
#2. The oldest national charter, originally
granted to the _____
_____ is held by _____, which it
obtained upon its merger with _____

**U.S. Bancorp**





Loan No:

Mortgagee: LEROY WILLIAMS

Address:    26020 SOUTH RIVER DRIVE
            MIAMI, FL 33167

Loan Amount: $ 146,000.00

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

**RESIDENTIAL FUNDING CORPORATION**

WITHOUT RECOURSE

Assistant Secretary
Axiom Financial Services

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By
Judy Faber, Vice President

Exh. e   Exh. N

**10:34 ⊀**                                   .ıl 5G ▪

🔒 bing.com

Homecomings Financial is owned by **GMAC-RFC**, an international financial services corporation which earns major profits each year, such as $2.9 billion in 2004. Register your Homecomings Financial Network Complaint

**Homecomings Financial Network – Big...**
www.bigclassaction.com/lawsuit/homecomings_fin...

Feedback

**PEOPLE ALSO ASK**

Where is the homecomings financial mortgage     ∨
company located?

When did homecomings financial go out of        ∨
business?

Is there a GMAC Bank that accepts mortgages?     ∨

**Attestation Report – GMAC Mortgage, LLC and Homecomings ....**
https://www.sec.gov/Archives/edgar/data/138332...

We have examined GMAC Mortgage, LLC (the "Company"), for itself and its affiliated servicing participant Homecomings Financial, LLC (both subsidiaries of Residential Capital, LLC), compliance with the servicing criteria set forth in Item 1122(d) ...

Homecoming
is GMAC

HOMECOMINGS FINANCIAL, LLC, a

Exh. 6 — Exh. 60

Pg.1

# AFFIDAVIT OF FACT

**STATE: OHIO**
**COUNTY: FAIRFIELD**

The undersigned, Wesley Jarvis, Trustee for CUSIPONE Trust, hereby states and confirms that he is of legal age and competent to state on belief and personal knowledge that the facts set forth herein, as duly noted below are true, correct, complete and presented in good faith, establish that:

1.   The CUSIP numbers attached for LEROY WILLIAMS, for an account bearing number 100176105062733202, were searched through independent databases, confirmed with trading desks, and at least one interest was confirmed as per the reports issued and attached as a result.

2.   The Fund Manager, or other custodian(s) of the accounts of the fund(s) may have access to internal records indicating detailed data about the percentage of interest as held for the account of LEROY WILLIAMS.

3.   More than one fund may have an interest in the accounts of LEROY WILLIAMS.

FURTHER AFFIANT SAYETH NOT.

Signed and sealed this _3rd_ day of _January_, in the Year of our Lord, two thousand twenty-two (2022).

All Rights Reserved.
For WESLEY JARVIS

Wesley J. Jarvis, Trustee

Page 1 of 2

Exh. 6 ·   Exh. 00
Pg 2.

## JURAT

State of _____ )

Subscribed and Affirmed )

County of _____ )

On _____, 2022 before me, _____ (notary public) personally appeared **Wesley J. Jarvis** [ ] personally known to me or [ ] proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to above and acknowledged to me that he executed the same in his authorized capacity.

I now affix my signature and official seal to these affirmations.

_____ (Signature)

Notary Public State of _____      Seal:

My Commission Expires: _____

Page 2 of 2

Exh.6 – Exh PP

**Your CUSIP Results are as follows:**

**LEROY WILLIAMS (ACCT 100176105062733202 [MIN])**
**Fidelity Advisor Strategic Real Return Fund**
Symbol:                     FSRAX
CUSIP:                      315912873

Inception Date:          9/7/2005
Net Assets:              $462,624,000.00 as of 12/3/2021
Portfolio Assets:        $462,624,000.00 as of 12/3/2021

**A little about the Fund:**

Fidelity Strategic Real Return Fund seeks real return consistent with reasonable investment risk by investing in domestic and foreign issuers using a neutral mix of approximately 30% of inflation-protected debt securities, 25% floating-rate loans and 20% REITs and other real estate related investments.



Exh. 6

Exh. RR pg.1

This Instrument Prepared By:

After Recording Return To:
LANCASTER MORTGAGE BANKERS
20 INDEPENDENCE BLVD
WARREN, NEW JERSEY 07059
Loan Number: 150008387

[Space Above This Line For Recording Only]

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 16, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 20, 2005, together with all Riders to this document.
(B) "Borrower" is LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is LANCASTER MORTGAGE BANKERS

Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of NEW JERSEY
Lender's address is 20 INDEPENDENCE BLVD, WARREN, NEW JERSEY 07059

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 20, 2005
The Note states that Borrower owes Lender ONE MILLION FIVE HUNDRED THOUSAND AND 00/100   Dollars (U.S. $ 1,500,000.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                    Page 1 of 15



Exh. RR pg.2

Book23966/Page3466    CFN#20051193500          Page 2 of 18



Exh. 6 —
**Exh. RR pg.12**

to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial

FLORIDA-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                                    Page 12 of 13                                    DocMagic eForms 800-649-1362
                                                                                                                 www.docmagic.com

Exh. 6 —
**Exh. RR pg.13**



proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or not, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                     Page 13 of 16

DocMagic ...



Exh.6—
Exh. RR pg.14

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
LEROY WILLIAMS              Borrower                         Borrower
1977 NE 119TH ROAD, NORTH
MIAMI, FLORIDA 33181

_____ (Seal)          _____ (Seal)
                          Borrower                         Borrower

_____ (Seal)          _____ (Seal)
                          Borrower                         Borrower

Signed, sealed and delivered in the presence of:

Michelle Askew-Iki          Peggy O'Brien

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          DocMagic
Form 3010 1/01          Page 14 of 15          www.docmagic.com

Book23966/Page3478   CFN#20051193500          Page 14 of 18

Case 1:24-cv-22413-JEM Document 1-1 Entered on FLSD Docket 06/24/2024 Page 94 of 359

JEM Document 1-2 Entered on FLSD Docket 07/31/2023 Page 94 of 300

Exh 6—
**Exh. RR pg.15**

[Space Below This Line for Acknowledgment]

STATE OF FLORIDA
COUNTY OF Broward

The foregoing instrument was acknowledged before me this 20 day of October, 2005
by LEROY WILLIAMS, a single

who is personally known to me or who has produced Valid DL
as identification. (Type of Identification)

Signature

Name of Notary

(Seal)

Title

Serial Number, if any

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 15 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

Doc#23966/Page3479  CFN#20051193500  Page 15 of 18



Exh.6—
**Exh. RR pg.16**

## Exhibit A

LOT 103, BLOCK 14, SANS SOUCI ESTATES, according to the Plat thereof as recorded in Plat Book 50, Page 86 of the Public Records of Miami-Dade County, Florida

Parcel Identification Number: 0622280113400

DoubleTimes

Book23966/Page3480   CFN#20051193500         Page: 16 of 18



Exh. 6

**Exh. RR pg.17**

## PREPAYMENT RIDER

Loan Number: 150008387

Date: OCTOBER 20, 2005

Borrower(s): LEROY WILLIAMS

THIS PREPAYMENT RIDER (the "Rider") is made this 20th day of OCTOBER 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of LANCASTER MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY ("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at:

1977 NE 119TH ROAD, MIAMI A/K/A NORTH MIAMI, FLORIDA 33181
[Property Address]

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**4. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

MULTISTATE PREPAYMENT RIDER - SFP
8/03

Page 1 of 2

DocMagic 800.649.1362
www.docmagic.com

Book23966/Page3481 CFN#20051193500



OR BK 23966 PG 3482
LAST PAGE

Exh.6—
**Exh. RR pg. 18**

If within TWELVE ( 12 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first 12 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)                    _____ (Seal)
LEROY WILLIAMS            -Borrower                                        -Borrower

_____ (Seal)                    _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)                    _____ (Seal)
                          -Borrower                                        -Borrower

MULTISTATE PREPAYMENT RIDER - SFF            Page 2 of 2            DocMagic eForms 800-649-1362
6/03                                                               www.docmagic.com

Book23966/Page3482   CFN#20051193500            Page 18 of 18

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office November 18    A.D. 20  21
HARVEY RUVIN, CLERK of Circuit and County Courts
Deputy Clerk _____
                                    28465727

Exhibit 6
Exh. SS

City National
is Wells Fargo

*Exh. 6 — Exh. TT.*

ndow   Help

en.m.wikipedia.org

☰ **WIKIPEDIA**   🔍 Search Wikipedia

# U.S. Bancorp

Article   Talk

文 A Language                                    ☆ Watch   ✎ Edit

*"US Bank" redirects here. For other uses, see Bank of the United States.*

**U.S. Bancorp** (stylized as **us bancorp**) is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware.[4] It is the parent company of U.S. Bank National Association, and is the fifth largest banking institution in the United States.[5] The company provides banking, investment, mortgage, trust, and payment services products to individuals, businesses, governmental entities, and other financial institutions. It has 3,106 branches and 4,842 automated teller machines, primarily in the Western and Midwestern United States.[2] It is ranked 117th on the Fortune 500,[6] and it is considered a systemically important bank by the Financial Stability Board. The company also owns Elavon, a processor of credit card transactions for merchants, and Elan Financial Services, a credit card issuer that issues credit card products on behalf of small credit unions and banks across the U.S.[7]

U.S. Bancorp operates under the second-oldest continuous national charter, originally Charter #24, granted in 1863 following the passage of the National Bank Act. Earlier charters have expired as banks were closed or acquired, raising U.S. Bank's charter number from #24 to #2. The oldest national charter, originally granted to the First National Bank of Philadelphia, is held by Wells Fargo, which was obtained upon its merger with Wachovia.[8]

*U.S. BANK is U.S. BanCorp which is Wells Fargo and is Wachovia*



**U.S. Bancorp**

☰ Contents

∧ **History**

The U.S. Bank name first appeared as United States National Bank of Portland, established in Portland, Oregon, in 1891.[9] In 1902, it merged with Ainsworth National Bank of Portland, but kept the U.S. National Bank name.[9] It changed its name to the United States National Bank of Oregon in 1964.[9]

The central part of the franchise dates from 1864, with the formation of First National Bank of Minneapolis.[9] In 1929, that bank merged with First National Bank of St. Paul (also formed in 1864) and several smaller Upper Midwest banks to form the First Bank

*Exh. 6 - Exh. VU*



Two predecessor banks of Wachovia Corp. owned slaves before the Civil War, the nation's fourth-largest bank said Wednesday, as it made an apology to black Americans.

"We are deeply saddened by these findings," Wachovia chairman Ken Thompson said in a statement. The Charlotte-based company said it contracted earlier this year with The History Factory, a historical research firm, to investigate the predecessor companies that eventually became Wachovia.

verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Franklin Credit Management Corporation.

**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last twelve (12) months, AND joined after signing the Note and Security Instrument now in default, please notify Franklin Credit Management Corporation immediately. When contacting Franklin Credit Management Corporation as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil, 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact David Behler toll-free at 201-604-4503 if you have questions about your rights under SCRA.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Department of Housing and Urban Development at https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 1-800-569-4287.

Sincerely,

Franklin Credit Management Corporation
101 HUDSON STREET, 24TH FLOOR
JERSEY CITY, NJ 07302
1-800-650-7162

Wiring Instructions: PNC Bank, N.A 249 Fifth Ave. Pittsburgh, PA 15222 ABA: 031 207 607 Bank Swift Code: PNCCUS33 -required for International payments- Account number: 802 636 1855 Franklin Credit Management Corp - General Depository 101 Hudson Street, 24TH FLOOR/Suite 2500 Jersey City, NJ 07302

*Exhibit 6* **Exh. VV Pg4**



**FRANKLINCREDIT**
MANAGEMENT CORPORATION

## Loss Mitigation Options and Eligibility Requirements

As your mortgage loan servicer, we understand that you may be experiencing financial difficulty with making your mortgage payments and would like to discuss your options to make your mortgage payment affordable. We will determine if you qualify based on your financial situation. Please see the workout options and eligibility requirements below for the loan that is the subject of this Notice or filing.

**Know Your Options:**

**Repayment Plan** – A temporary agreement which allows for repayment of the unpaid past-due debt along with continued regular mortgage payments. The unpaid past due debt may include principal, interest, fees and/or costs incurred by the lender.

Eligibility Requirements for this option require a portion of the unpaid past due debt as a down payment, with the remainder of the unpaid debt being spread out over a period of months. You will make the additional payment along with your regular monthly mortgage payment. In order to qualify for this option, you must be able to make the required payments as outlined in the plan.

**Deferment Plan** – A temporary agreement which allows some payments to be suspended until a future date, at which time those payments must be repaid, or arrangements made to repay them over an agreed upon period (usually 3-6 months).

Eligibility Requirements for this option are determined by the ability to pay, the current value of the home and the hardship suffered. This option is only available for mortgage loans where the property is the borrower's primary residence.

**Loan Reinstatement** – If you have the financial ability to bring your loan current, your lender/servicer will accept the funds needed to bring the loan current until the day of your foreclosure sale. In addition to the monthly mortgage payment, late charges and other amounts due on your loan obligation you may be required to pay all outstanding attorney's fees and costs of collection.

**Loan Modification** – A loan modification allows you the option to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan.

Eligibility Requirements for a loan modification are determined by the ability to pay (which may require a down payment towards the unpaid past due debt and completion of a trial period plan), the current value of the home and hardship suffered.

1 | Page



W_CFPB_45DAY    Rev. 07/2021
Page 4 of 5

*Exhibit 6*                    **Exh. V V Page 5**



**FRANKLINCREDIT**
MANAGEMENT CORPORATION

If you have explored all of the options above and are still unable to continue making your monthly mortgage payment, here are some options to assist you in avoiding foreclosure:

- **Deed-In-Lieu** – An option that allows you to voluntarily deed your property to the owner of your mortgage in order to avoid foreclosure. In return, you agree to vacate the property on an agreed upon date leaving the property in a "broom swept" condition. You must allow the lender/servicer access to inspect your property (which may include the interior of the home) should such a request be made.

  Eligibility Requirements include your inability to pay the debt. Your lender may ask you to complete a financial questionnaire (which may require a hardship letter). In addition, there can be no other liens or judgements against the property other than your mortgage obligation that is currently in default. In other words, title must be "clear and marketable". In some circumstances, your lender may want you to prove that your taxes, insurance, and utilities are current.

- **Short Sale** – This option allows you to avoid foreclosure by selling your property for less than the total amount owed on the account (subject to agreement by your servicer/lender). While the Short Sale releases the lien on the property, it does not necessarily absolve the borrower of any remaining debt. For both senior and junior liens Franklin Credit Management Corporation reserves the right to pursue the deficiency balance on behalf of its client, where state law allows.

  In order to be eligible, you must no longer be able to maintain the mortgage payments, and you must demonstrate that the current property value is below your current indebtedness. The lender may ask you to complete a financial questionnaire (which may require a hardship letter) in order to evaluate your ability to pay the debt. The property must have been listed with a real estate agent. You must also have a buyer willing to purchase the property for the current fair market value. You must provide a Real Estate Purchase Agreement (with no contingencies), Estimated Settlement Statement and Listing Agreement to the servicer for review. If requested, you must allow the lender/servicer access to appraise/value your property.

- **Settlement** – This option allows you to avoid foreclosure by settling the debt for less than the total amount owed on the account (subject to agreement by your servicer/lender); and also resulting in the release of the servicer/lender's lien on your home.

  Eligibility Requirements include your inability to pay the debt. You may be required to complete a financial questionnaire (which may require a hardship letter), provide proof of income, a copy of your financials, a payoff letter from the any other mortgages on the property, and may need to provide other documents required to establish your eligibility. All settlement agreements are also subject to client approval.

You must take the first step by contacting us, at 1-800-650-7162, Monday through Friday, 8:00am – 5:00pm ET. You may also write to us at 101 Hudson Street, 24th Floor, Jersey City, NJ 07302 or email us at *documents@franklincredit.com*. Be sure to include your name and loan number in your correspondence.

Please be advised that this letter does not constitute a commitment to approve any workout plan.

2 | P a g e

Exh. 6
Pg.9

Exh.(NN) with the Cusip Number 315912873 to Fidelity Strategic Real Return Fund according to the CUSIP search by CUSIPONE EXPERT CUSIP search service as stated by The Expert Witness Affidavit of Fact Wesley Jarvis, Trustee for CUSIPONE Trust, Exh. (OO). The (AFS) Note was sold by (AFS) 9/7/2005 three months after Leroy Williams signed the (AFS) Note and is with Fidelity Strategic Real Return Fund until this day according to The CUSIPOne Expert Witness Exh. (PP) So the (AFS) Note never went to US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005 AHL3 now referred to as (USB). So (USB) cannot Foreclose on this (AFS) Note nor anyone of the above stated Defendants because they don't own the Note and even Fidelity Strategic Real Return Fund cannot Foreclose because (USB) in 2007 did a Publigation to Foreclose on the (AFS) Note and Fidelity Strategic Real Return Fund did not Object or Intervene within 30 days of the publication of the Foreclosure of 2007 of Fidelity Strategic Real Return Fund standing to Foreclose according to Fl. Stat. ( ) Exh. (pp) or any Interest in the Note and therefore they have no standing And according to the SEC - FASB GAAP Rules once a Note is sold on the Market it must be burned and Destroyed because a Note cannot exist at the same time that a stock, bond or fund exist because that is Double Dipping using the Fund and the Note ILLEGALLY. 6.Plaintiff has had exclusive, complete, actual, open, notorious, hostile, and continuous possession of the Property adverse to defendants for more than 17 years. Plaintiff has made and paid for all repais and upkeep, on the property for the past 17 years..

Exh. 6 pg. 10

Judge Valerie Manno Schurr says that GMAC BANK on her form 6 full and public disclosure of Financial interests is a Bank she's doing business with, because she's doing business with GMAC/ U.S. BANK and helping them to make money so that she can make money by foreclosing and taking our property proof: In her Form 6, from Tallahassee called FULL AND PUBLIC DISCLOSURE OF FINANCIAL, form 6, Exh. A. Says on line 5 and 6: Judge Valerie Schurr is Doing Business with GMAC with a Mortgage from GMAC for $91,438.00 and $995,000.00, And GMAC BANK is U.S. BANK, Exh. E1. and E2. Because in her FORM 6 - 2019 and 2020 Financial Disclosure Affidavit she has over 11,192,000.00 million, plus on line 5 she states that she has a $400,000.00 Mortgage with City National Bank that is Royal Bank of Canada which is Wells Fargo, Exh. SS. and Wells Fargo is US Bank the Bank Judge Valerie Manno Shurr is helping to illegally Foreclose on us, Exh. TT. The other conflict *is Shurr's $400,000.00 Mortgage Holder City National Bank* that is Royal Bank of Canada Which is Morgan Stanly/ JP MORGAN, Exh. VVV, which is US BANCORP/ US BANK, Exh. W. and Exh. X. all this is CITY NATIONAL BANK Exh. SS, Who Merged with Wachovia Bank who admitted the were SLAVE MASTERS OF BLACK PEOPLE, Exh.UU. to All of this is a major Conflict of Interest. She and other Judges who have the same conflict of interest has ruled in favor of, U.S. Bank, EXH. C F. of these Conflict of Interest against us and there's more. I have found that our case was directed to her and other Judges in this Pool, So she must recuse herself and vacate her Order, Exh. F, So Valerie Schurr you must Recuse YOUR SELF VACTE ALL YOUR ORDERS NOW! AND I PRAY THAT YOU DON'T SPACE FOR ANNOTHER JUDGE TO ORDER THA T YOUR ORDER TO DISMISS WITHOUT PREJUDICE IS ILLEGALLY BE UPHELD!

FACTUAL BACKGROUND

Exh. 6 p11

1. Judge Zabel got very angry with U.S. Bank and decided to dismiss the case with Prejudice between 2007 and 2008 but Judge Valerie Manno Shurr some how ended up being the Judge who signed the Order On APRIL 6, 2010 Judge Valerie Schurr issued a final Judgment order Exhibit.A IN FAVOR of Leroy Williams to dismiss the Foreclosure case against him with Prejudice whose property is now Quitclaimed to Plaintiff Maurice Symonette in the former case no: 07-12407CA01 where U.S. BANK could never produce the promissory Note though they were asked by the Judge several times but never did bring it forth, Exhibit. I. and then after three months and GMAC doing business (Payoff) Judge Valerie Manno Shurr ! on June 25 2010, issued a Issued another Order that changed Zabel and Valerie Manno Schurr's Order from dismissed with Prejudice to suddenly dismissed without Prejudice in an illegal Ex Parte hearing with her and her Business Partner's U.S. Bank/GMAC and Judge Valerier Manno Schurr is now the same Judge with the same Conflicts of Interest rulling on the same case and property with the same business partners against Maurice Symonette concerning the same property this is wide open Crazy! And Sad! That this Court is Strong Arming,. Bullying and just taking our house like gangsters with the Full strength of the Police against the helpless these gangster ways has her now gone and went from a few Million Dollars to now over $20 million Dollars with the same business Partners as a quasi-defense attorney for U.S. BANK her personal investment Partner to make money together. Plaintiff MAURICE SYMONETTE has now subsequently provided the United States Department of Justice (DOJ) on specific newly discovered whistle blower information and records regarding millions of dollars in exposed fraudulent foreclosure claims made by the Defendants U.S. BANK, Clerks and Court officers in this action. Exhibit, O. GMAC does not own the Note.

## MEMORANDUM OF LAW

Exh.6
pg 12

The Defendants maintains timely Constitutional due process civil rights for Florida Rule 2.160 (H) and Federal Rule 60 Relief to close this case with the original Dismissal with Prejudice in our Defendants favor with requirement of Valerie Schurr Recusal based on exposed financial conflicts of interests <u>Fla. Stat.112.312 (8)(9).</u>

*Rule 2.160 (H) and FRCP Rule 60, relief fiom .Judgment Or Order and to Vacate Order* . .

*There is to be no conflict of interest with the Judge and the Plaintiff against DEFENDANTS. LIKE*

*(1) mistake, inadvertence, surprise, or excusable neglect;*

*(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);*

3. Fraud whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an Opposing party

A Judge is expected to Recuse herself according to Fla. Code Jud. Conduct, Canon 3E (1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and pursuant to 28 U.S, C. § 455 Under § 455(a), Recusal is mandatory in "any proceeding in which Judge's impartiality might reasonably be questioned." Under Fla. Code Jud. Conduct, Canon 3E (1) and § 455(b), a judge is expected to disqualify herself whenever any of the five statutorily prescribed criteria can be shown to exist in fact; even if no motion or affidavit seeking such relief has been filed, and regardless of whether a reasonable person would question the judge's impartiality.

Fla. Code Jud. Conduct, Canon 3E(1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and Section 455(b) he shall also disqualify himself in the following circumstancess.

*(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings.*

Exh.6
Pg13

## CONCLUSION

This Motion for Relief by Vacating Order Judgments Florida Rule 2.160 (H)   and Recusal is based on new facts, related to a whistle

(d)(4) "financial interest" means ownership of a legal or equitable interest, however small

blower's information, willful blindness, fraud, misconduct, and discovered evidence unknown at the time of the original Complaint filing Plaintiff could not reasonably know the financial dealings with Defendants of a yet to be assigned judge before the original Complaint filing As previously displayed by his Dismissal Order, due to cited improper financial conflicts of interest, Judge Valerie Schurr was incapable of impartially and without animus against Pro-Se Plaintiff or to exercise unbiased judicial duties required for due process justice in this case knowingly because nobody forgets how and why they get $995,000.00 at the time that we asked THE ACTUAL JUDGE, JUDGE ZABEL to Dismiss our case With Prejudice. So that JUDGE VALERIE MANNO SHURR was paid to and would change the Order to DISMISSAL WITHOUT PREJUDICE!!!

Judge Valerie Schurr has creditor loan history and business with Defendant U.S BANK MERS and GMAC that caused THIS preferential Quid Pro *Quo* treatment by her .sua sponte review and Final Judgment Order. Judge Valerie Shurr has significant exposed investor financial interests in the subject matter in controversy and with Defendants U.S. BANK that will be substantially negatively affected by the outcome of that proceedings when the Plaintiff "ultimately prevails and promotes in paid for adds in the media. Because people can't win when the Judge is on the side of the Banksters to steal property and money off their Prey!

Example of Judges who already recused themselves from U.S. BANK

1. JUDGE DARRIN P. GAYLES Exhibit, P.

Exh J
Pg6

interests *1"Rt"P Rule 6.1  Relief fiom .Judgment .

(b) Grounds for Relief from a Final Judgment. Order, or Proceeding. On motion and just terms the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

3) Fraud whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by

An oppossing party

(c) Timing and Effect of the Motion.

(l) A motion under rule 60 (b) must be made within a reasonable time and for reasons (1) (2) (3)
No more than a year after the entry of the Judgement  or order or the date of the proceeding.

Fed. R. Civ. P. 8. To survive a motion to dismiss, a claim "must contain sufficient factual matter, Accepted as true, "to state a claim to relief that is plausible on its face."

Judge is expected to recuse himself pursuant to 28 U.S. C. § 455 Under § 455(a), recusal is mandatory in "any proceeding in which his impartiality might reasonably be questioned." Under § 455(b), a judge is expected to disqualify himself whenever any of the five statutorily prescribed criteria can be shown to exist in fact; even if no motion or affidavit seeking such relief has been filed, and regardless of whether a reasonable person would question the judge's impartiality.

Section 455(b) he shall also disqualify himself in the following circumstancess.

(4)  He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings

(4)(4)  "financial interest" means ownership of a legal or equitable interest, however small

(June 25, 1948, ch. 646, 62 Stat. 908; Pub. L. 93–512, § 1, Dec. 5, 1974, 88 Stat. 1609; Pub. L. 95–598, title II, § 214(a), (b), Nov. 6, 1978, 92 Stat. 2661; Pub. L. 100–702, title X, § 1007, Nov. 19, 1988, 102 Stat. 4667; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117.)

## CONCLUSIONS

This Motion for Relief and Recusal is based on wholly new facts, related whistle blower information, willful blindness, fraud, misconduct, and discovered evidence unknown at the time of the original Complaint filing Plaintiff could not reasonably know the financial dealings with

**FRANKLINCREDIT**
MANAGEMENT CORPORATION

*Exhibit 6*   **Exh. VV Page 1**

Sent Via First-Class Mail

11/17/2021

LEROY A WILLIAMS
15020 S RIVER DR
MIAMI, FL 33167-1035

Loan Number:     0001920274
Property Address:   15020 S RIVER DR
                    MIAMI, FL 33167-1035

Dear LEROY A WILLIAMS:

To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

This is a legally required notice. We are sending this notice to you because you are behind on your mortgage payment. We want to notify you of possible ways to avoid losing your home. We have a right to invoke foreclosure based on the terms of your mortgage contract. Please read this letter carefully.

Your payment to Franklin Credit Management Corporation, the Servicer of the above-referenced loan acting on behalf of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Certificate Trustee of Bosco Credit II Trust Series 2010-1, is currently delinquent. If you are unable to bring your account current, Franklin Credit Management Corporation offers loss mitigation programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers.

Call us today to learn more about your options and instructions for how to apply.

David Behler
101 HUDSON STREET, 24TH FLOOR
JERSEY CITY, NJ 07302
201-604-4503
Monday through Friday 8:00 AM - 5:00 PM ET

For more information, visit www.franklincredit.com or email us at Documents@franklincredit.com.

If you need help, enclosed are application instructions and a list of loss mitigation programs for which you may be eligible (most are subject to lender approval).

Franklin Credit Management Corporation is a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose.

Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or

W_CFPB_45DAY     Rev. 07/2021
Page 1 of 5

2365265545

Filing # 143079243 E-Filed 02/01/2022 03:42:18 PM

*Exhibit 6*

*Exh. VVV*

Royal Bank of Canada
is Morgan Stanley &
is JP Morgan

Filing # 161312379 E-Filed 11/16/2022 07:00:53 AM                    *Exh. 7-Pg. 1*

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR

## MIAMI DADE COUNTY FLORIDA CIVIL ACTION

U.S. BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR RASC
2005AAHL3,

   Plaintiff

                                           CASE NO: 2010-61928-CA01

v.

MACK WELLS

Defendants,


## MOTION AND AFFIDAVIT FOR RELIEF, RECUSAL, AND RECONSIDER HER ORDER AND REVERT
## BY VACATING HER ORDER AND MEMORANDUM OF LAW


Pursuant to Florida Stat. 112.131, Florida Rule 2.160 (H) and Federal Rules of Civil Procedure Rule 60, Plaintiff MACK WELLS hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the Vivianne Del Rio 05/04/2022 review of the record and Final Judgement Order, Exh. 119 based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibit 0 #) Attached- U.S. BANK Special Situation Property Funds Account Page 42, IFRS 2018 Tables 9-13, SEC Filings- U.S. BANK Florida Subsidiaries, Judge Alan Fine Financial Interests & Property Disclosures).

*Florida Rule 2.160 (H) Says A Judge may Vacate her orders for Conflict of Interest Theodore R. Bundy V. Judge;John A. Rudd Fl. Rule 2.160 (D) (1) Fl. Code Jud. Conduct , Canon 3E(1) A Judge shall disqualify himself where impartiality might reasonably be questioned Rule 2.160 (D) (1) grounds to disqualify is party fears Judge is Biased Fl. Statue 112.312 (8) Judge can't have a conflict of Interest !*

Judge Vivianne Del Rio must Recuse herself for an open obvious Conflict of Interest because she's doing business with US·Bank and helping them to make money so that she can make money by foreclosing and

taking (stealing) our property while acting as the Judge on the case on our property, not on case's Merits but for to make her and them money Illegally. Here's proof: In her Form 6 Affidavit Oath from Tallahassee called FULL AND PUBLIC DISCLOSURE OF FINANCIAL Says:

2. form 6 for 2019 on line 2., Exh. 0. She got $750,215.00 with FRS which is Financed by the SBA. Exh. 1. which is U.S. Bank, Exh. 2.

3. form 6 for 2019' Exh. (0). On line 3 she got, $15,403.00 and on line 4 she got $5,691. doing business with AIG which is J.P. Morgan, Exh. 6, 6A, 6B, 6C, 6D, 6E, 6F, JP Morgan which is U.S. Bancorp, Exh.4, 19. And U.S. Bancorp is U.S. Bank Exh. 5 and 5B.

And on her 2020 Form 6 Full and Public Disclosure of Financial Interest In 2020 on line 2, Exh. 0. Line 2. She got $943,141.00 with FRS which is Financed by the SBA. Exh. 1. which is U.S. Bank, Exh. 2.

3. Exh. (0). On line 3 she got, $15,403.00 and on line 4 she got $5,691. doing business with AIG which is J.P. Morgan, Exh. 6, 6A, 6B, 6C, 6D, 6E, 6F, JP Morgan which is U.S. Bancorp, Exh.4, 19. And U.S. Bancorp is U.S. Bank Exh. 5 and 5B.

4. Exh. (0). And on line 4 she has $44,000 with E-Trade Which is Morgan Stanley Exh.3, and Morgan Stanley is J.P. Morgan, Exh. 87 and Exh. 118, 118A, 118B, 118C and 118D Page 1 and Page 2. which is U.S. Bancorp, (Exh.4, 19). And U.S. Bancorp is U.S. Bank Exh. 5 and 5B.

Exh.7
Pg.3

Which means U.S. Bank is JUDGE VIVIANNE DEL RIO according to her Form 6 signed by her

Affidavit of Financial interest whole way of wealth making money and partners with her in

almost all assets she owns other than her Judge's Salary is U.S. BANK. This is why she has

ruled in favor of U.S. BANK to give a date to sale our house 06/21/2022, Exh. 120. Against

the Rule of Law and without allowing us to talk in the Zoom hearing 05/04/2022, see Exh. 7.

(Video of Hearing gods2.com Video #1), and we know she heard us because the Transcript

could hear us and could hear her and the Transcriber was in a different location from the

Judge and from us in the Zoom Hearing and if he could hear her and us and the Judge can

hear him that means she could hear us so she deliberately ignored us until we screamed

and to listen to our Motion to Dismiss and Reconsider and revert this case back to the

Original Dismissal with Prejudice that was on the Docket before U.S. Banks Motion to reset

the Sale of our Property. See Exh. (8). But instead Judge Vivianne Del Rio referred us to her

assistant and would not hear our Motion. See Exh.9 (Video on gods2.com #2 video of her

assistant talking to us),

WHICH IS ALL U.S. BANK. Who has ruled in favor of US BANK. This is a Horrible Confict of Interest against us and there's more. I have found that our case was directed to other Judges in this sess Pool all with the same Conflict of interest like Judge Valerie Manno Schurr a Judge we had never met jumping into our case after Judge Zabel dismissed U.S Banks Lawsuit against me with Prejudice because they never had or owned the Note and then one year later Judge Valerie Manno Schurr got $995,000 from U.S. Bank according to her Form 6 Financial Disclosure Affidavit, Exh. F. And then suddenly inserted herself into our case without ever meeting us and dismissed the case with Prejudice like Judge Zabel did, Exh. G. So as to avoid the Law which says another Judge cannot change another Judges order in the same Circuit Court so she made the same Order so she could change her own

Exh.7
Pg4

Order to dismiss without Prejudice and got another $,1 million dollar plus $400,000 dollar money asset from GMAC which is U.S. Bank and then she changed her own Order to Dismissed without Prejudice Exh.H. And then received a $2.4 million money asset from Wells Fargo/Wachovia plus a $400,000 dollar money Asset from GMAC which is U.S. Bank Exh.I. According to her form 6 Financial Affidavit to circumvent Judge Zabel's Dismissal with Prejudice! Exh.J. And then these wicked Lawyers Foreclose without notice to us and we went through a 10 year fight see the Docket for the 2010 case which had no notice no assignments, no Note and no Mortgage Correctly to U.S. Bank from Axiom Bank see Exh.K. then Maurice Symonette did a Quite Title Suit and after 10 years Judge Valerie Manno Schurr shows up again and I showed her the Evil which she had done by taking money ($995,000) From GMAC/U.S. Bank to steal our property even though we were making the payments. This is Home Title Fraud in its utmost and when she saw she was caught from her own Form 6 Affidavit and evil Judgments she Recused herself especially after we paid for Newspaper, Ads and Radio TV Commercials Exh. T. Telling on her and knowing that we have turned her over to the FBI and must do as Judge Valarie Manno Schurr did Judge Vivianne Del Rio must do because she has the same conflict of Interests. So she must Recuse and Vacate Her Orders against us, EXxh. I. Exhibit, G.

## FACTS

1. On Dec. 19, 2017, Defendant Judge Valerie Schurr Issued a final Judgment Order Exh. A a n d then Judge Vivianne Del Rio against Plaintiff and Pursuant to Florida Stat. 112.131, Florida Rule 2.160 (H) and Federal Rules of Civil Procedure Rule 60, Plaintiff MACK WELLS hereby files this Motion for Relief & Recusal and Supporting Memorandum regarding the 05/04/2022 of Judge Vivianne Del Rio review of the record and Final Judgement for Foreclosure Sale Date Order, Exh. J. based on the following facts, new information, just terms, judicial misconduct, fraudulent grounds and discovered conflict of personal investment interests on Financial Disclosures of Judges and officers of this Court (Exhibits # B) Attached- U.S. BANK Special Situation Property Funds Account Page 42, IFRS 2018 Tables 9-13, SEC Filings- U.S. BANK Florida Subsidiaries, Judge Vivianne Del Rio & Property Disclosures). This Motion for Relief by vacating order Judgment Florida Rule 2.160 (H) and Recusal is based on new facts, related to a whistle blower's information, willful blindness, fraud, misconduct, and discovered evidence unknown at the time of the original Complaint filing Plaintiff could not reasonably know the financial dealings with Defendants of a yet to be assigned judge before the original Complaint filing As previously displayed by his Dismissal Order, due to cited improper financial conflicts of interest, Judge Samantha Ruiz Cohen was incapable of impartially and without animus against Pro-Se Plaintiff or to exercise unbiased judicial duties required for due process justice in this case.

Exh.7
Pg 5

Judge has creditor loan history and business with Plaintiff U.S. BANK MERS and JP Morgan that caused preferential Quid Pro Quo treatment by her .sua sponte review and Final Judgment Order. Judge Vivianne Del Rio has significant exposed investor financial interests in the subject matter in controversy and with Plaintiff U.S. BANK that will be substantially negatively affected by the outcome of that proceedings when the Defendant "ultimately prevails and promotes in paid for adds in the media. Because people can't win when the Judge is on the side of the Banksters to steal property and money off their Prey!

Example of Judges who already recused themselves from U.S. BANK

1. JUDGE DARRIN P. GAYLES Exhibit, P.
2. THOMAS WILLIAMS Exhibit, Q.
3. JUDGE VALERIE MANNO SCHURR'S RECUSAL Exhibit, R

*Florida Rule 2.160 (H) Says A Judge may Vacate his orders for Conflict of Interest Theodore R. Bundy V. Judge John A. Rudd Fl. Rule 2.160 (D) (1) Fl. Code Jud. Conduct , Canon 3E(1) A Judge shall disqualify himself where impartiality might reasonably be questioned Rule 2.160 (D) (1) grounds to disqualify is party fears Judge is Biased Fl. Statue 112.312 (8) Judge can't have a conflict of Interest!!!*

## FACTUAL BACKGROUND

reasonable person would question the judge's impartiality.

Fla. Code Jud. Conduct, Canon 3E(1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and Section 455(b) She shall also disqualify Herself in the following circumstancess.

*(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings.*

*(d)(4) "financial interest" means ownership of a legal or equitable interest, however small*

## CONCLUSION

Exh.7
Pg6

## REQUIRED RELIEF

Pursuant to Fla. Code Jud. Conduct, Canon 3E(1), Fla. Rule 2.160 (A) (H), Fla. Statute 112.312 (8) and Federal Rules of Civil Procedure Rule 60, Plaintiff requires Relief from the June 25, 2010 Final judgment Order [Exhibit I, based upon the stated facts, just terms, cited misconduct, Rule 60 grounds and newly discovered banking real estate fraud by court officers. Said Reopening Relief would require the vacating of his order and Recusal of Judge Valerie Schurr from this and any future related U.S. BANK banking real estate cases in this District. The Dismissal Order Relief also requires that all parties be reinstated to their prior positions in this action (Dismissal with Prejudice) requiring Clerk issuance of Summons upon the Defendants and allow the filing of a Motion to dismiss the Final Judgment for cause, grounds and reasons stat·

_Mack Wells_

**MACK WELLS**
15020 S. River Dr,
Miami, Fl. 33167

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 12th day of Feb., 2020 a true and correct copy of the foregoing was provided via this Court's electronic filing system to the attorneys of record for amounts due and owing on same mortgage that was dismissed with Prejudice in former case no: 07-12407CA01 where U.S. BANK could never produce the promissory Note though they were asked by the Judge several times but never did bring it forth, Exhibit. I. A judge cannot change another Judge's ORDER! And also on June 25, 2010, Judge Valerie Schurr issued a Judgment order acting as a quasi-defense attorney for U.S. BANK his personal investment Partner to make money together. Defendant MACK WELLS has now subsequently provided the United States Department of Justice (DOJ) on specific newly discovered whistle blower information and records regarding millions of dollars in exposed fraudulent foreclosure claims made by the Defendants U.S. BANK, Clerks and Court officers in this action. Exhibit. O. GMAC Also does not own

Filing # 150908545 E-Filed 06/06/2022 12:24:22 JM

**CONFIDENTIAL**

EX... EX no. 7

| FORM 6 | FULL AND PUBLIC DISCLOSURE | 2020 |
|---|---|---|
| Please print or type your name, mailing address, agency name, and position below. | OF FINANCIAL INTERESTS | FOR OFFICE USE ONLY |

LAST NAME — FIRST NAME — MIDDLE NAME:
del Rio Vivianne

MAILING ADDRESS: [redacted]

CITY [redacted] ZIP COUNTY [redacted]

NAME OF AGENCY: 11th Judicial Circuit

NAME OF OFFICE OR POSITION HELD OR SOUGHT: Circuit Judge

CHECK IF THIS IS A FILING BY A CANDIDATE: ☐

FLORIDA COMMISSION ON ETHICS
JUL 0 6 2021
RECEIVED

PROCESSED

4787

## PART A — NET WORTH

Please enter the value of your net worth as of December 31, 2020 or a more current date. [Note: Net worth is not calculated by subtracting your *reported* liabilities from your *reported* assets, so please see the instructions on page 3.]

My net worth as of **December 31** 20 **20** was $ **1,667,544**

## PART B — ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry; collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use, whether owned or leased.

The aggregate value of my household goods and personal effects (described above) is $ _____

| ASSETS INDIVIDUALLY VALUED AT OVER $1,000: DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| Residence [redacted] | 1,075,000 |
| FRS Retirement Account | 943,141 |
| AIG Deferred Compensation Account | 15,403 |
| E*Trade Individual Brokerage Account | 44,000 |

## PART C — LIABILITIES

| LIABILITIES IN EXCESS OF $1,000 (See instructions on page 4): NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| | |
| | |
| | |

| JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE: NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| | |
| | |
| | |

CE FORM 6 - Effective January 1, 2021
Incorporated by reference in Rule 34-8.002(1), F.A.C.

(Continued on reverse side)

PAGE 1

11:16

Exh. 7-H1

Google

M

Q   frs retirement is the SBA                    ✕

All   News   Shopping   Images   Videos   Maps   B:

**The Florida Retirement System (FRS) Pension Plan, also known as the Defined Benefit Plan, is one of the largest public retirement plans in the U.S. and comprises roughly three-quarters of total assets under State Board of Administration (SBA) management.**

🌐 https://www.sbafla.com › fsb › FRS...                    ⋮

FRS Pension Plan - Florida State Board of Administration

❓About featured snippets       🚩 Feedback

People also ask                                   ⋮

What type of retirement plan is FRS?               ⌄

Who owns Florida Retirement System?                ⌄

Is FRS the same as 401k?                            ⌄

What does FRS stand for in Social Security?         ⌄

Feedback

AA   🔒 Q frs retirement is tl  🎤

‹            ⬆            📖            🗐



Exh. F-141

*Exh. 9* –Exh.H2

## U.S. Bancorp

文A 21 languages ∨

Article   Talk

Read   Edit   View history   Tools ∨

From Wikipedia, the free encyclopedia

"US Bank" redirects here. For other uses, see Bank of the United States.

**U.S. Bancorp** (stylized as us bancorp) is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware.[4] It is the parent company of U.S. Bank National Association, and is the fifth largest banking institution in the United States.[5] The company provides banking, investment, mortgage, trust, and payment services products to individuals, businesses, governmental entities, and other financial institutions. It has 3,106 branches and 4,842 automated teller machines, primarily in the Western and Midwestern United States.[2] It is ranked 117th on the Fortune 500,[6] and it is considered a systemically important bank by the Financial Stability Board. The company also owns Elavon, a processor of credit card transactions for merchants, and Elan Financial Services, a credit card issuer that issues credit card products on behalf of small credit unions and banks across the U.S.[7]

U.S. Bancorp operates under the second-oldest continuous national charter, originally Charter #24, granted in 1863 following the passage of the National Bank Act. Earlier charters have expired as banks were closed or acquired, raising U.S. Bank's charter number from #24 to #2. The oldest national charter, originally granted to the First National Bank of Philadelphia, is held by Wells Fargo, which was obtained upon its merger with Wachovia.[8]

### History   [edit]

The U.S. Bank name first appeared as **United States National Bank of Portland**, established in Portland, Oregon, in 1891.[9] In 1902, it merged with Ainsworth National Bank of Portland, but kept the U.S. National Bank name.[9] It changed its name to the United States National Bank of Oregon in 1964.[9]

The central part of the franchise dates from 1864, with the formation of First National Bank of Minneapolis.[9] In 1929, that bank merged with First National Bank of St. Paul (also formed in 1864) and several smaller Upper Midwest banks to form the First Bank Stock Corporation, which changed its name to First Bank System in 1968.[9]

In the eastern part of the franchise, Farmers and Millers Bank in Milwaukee opened its doors in 1853, growing into the First National Bank of Milwaukee and eventually becoming First Wisconsin and ultimately Firstar Corporation.[9] In Cincinnati, First National Bank of Cincinnati opened for business on July 13, 1863 under National Charter #24—the charter that U.S. Bancorp still operates under today, and one of the oldest active national bank charters in the nation. U.S. Bancorp claims 1863 as its founding date.[9] Despite having started up in the midst of the Civil War, First National Bank of Cincinnati went on to survive many decades to grow into Star Bank.[9]



**U.S. Bancorp**

Corporate headquarters, U.S. Bancorp Center, in Minneapolis

| | |
|---|---|
| Trade name | U.S. Bank |
| Type | Public company |
| Traded as | NYSE: USB ⮺ S&P 100 component |

Exh. 9-H:

Exh

4

principal amount of 3.200% senior notes due 2029.

In addition, Equinix completed a concurrent tender offer for any and all of its outstanding 5.375% senior notes due 2022, 5.375% senior notes due 2023, and 5.750% senior notes due 2025, which were paid for with the proceeds from the senior notes offering.

Goldman Sachs & Co. LLC, BofA Securities, Inc., Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Barclays Capital Inc., Morgan Stanley & Co. LLC, MUFG Securities Americas Inc., RBC Capital Markets, LLC, SMBC Nikko Securities America, Inc., TD Securities (USA) LLC, Deutsche Bank Securities Inc., ING Financial Markets LLC, BNP Paribas Securities Corp., HSBC Securities (USA) Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, PNC Capital Markets LLC, Scotia Capital (USA) Inc., and U.S. Bancorp Investments, Inc. are all the underwriters involved in the offering.

Equinix, an American multinational company headquartered in Redwood City, California, connects more than 9,800 companies directly to their customers and partners inside the world's most interconnected data centers. Today, businesses leverage the Equinix interconnection platform in 52 strategic markets across the Americas, Asia-Pacific, Europe, the Middle East and Africa.

The Davis Polk corporate team included partners Alan F. Denenberg (Picture) and Emily Roberts and associates Ali DeGolia and Caitlin Moyles Cunnane. Partner Rachel D. Kleinberg provided tax advice and associate J. Taylor Arabian provided 1940 Act advice.

Involved fees earner: Taylor Arabian – Davis Polk & Wardwell; Ali DeGolia – Davis Polk & Wardwell; Alan

7:26

WIKIPEDIA

Exh. 9—H 4

# U.S. Bancorp

Article   Talk

文A                                    ☆   ✎

*"US Bank" redirects here. For other uses, see Bank of the United States.*

**U.S. Bancorp** (stylized as **us bancorp**) is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware.[4] It is the parent company of **U.S. Bank National Association**, and is the fifth largest banking institution in the United States.[5] The company provides banking, investment,

AA   🔒 en.m.wikipedia.org   ⟳

<   ⬆   📖   ⧉

Case 1:23-cv-22848-JEM   Document 1-2   Entered on FLSD Docket 07/31/2023   Page 124 of 1

Filing # 172928996 E-Filed 05/11/2023 11:02:02 AM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2010-061928-CA-01
SECTION: CA05
JUDGE: Vivianne Del Rio

**U S Bank (na)**

Plaintiff(s)

vs.

**Williams, Leroy**

Defendant(s)

_____/

**ORDER OF RECUSAL**

· Docket Index Number: _____
Or
Efiling Number: _____   Date Filed: **05/11/2023**
Full Name of Motion: **Order of Recusal**

THIS CAUSE, came before the Court sua sponte, and the Court being fully advised in the premises, it is hereby:

**ORDERED AND ADJUDGED**

1. That the undersigned Circuit Court Judge hereby recuses himself/herself from further consideration of this case.

2. This case shall be reassigned to another section of the Circuit Civil Division in accordance with established procedures.

Case No: 2010-061928-CA-01                                                                        Page 1 of 3

*Exh.8 Pg.2*

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>11th day of May, 2023</u>.

2010-061928-CA-01 *[signature]*

<u>2010-061928-CA-01 05-11-2023 10:49 AM</u>
Hon. Vivianne Del Rio

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**
Altanese Phenelus, yvaldes@miamidade.gov
Carlos Calle, mrstreetsproductions@gmail.com
Carlos Calle, mrstreetsproductions@gmail.com
Carlos Calle, mrstreetsproductions@gmail.com
Giuseppe Salvatore Cataudella, FLeFileTeam@brockandscott.com
Giuseppe Salvatore Cataudella, FL.CourtDocs@brockandscott.com
Giuseppe Salvatore Cataudella, CourtXpress@firmsolutions.us
Harve Humpsy, Courts@Journalist.com
JOHN WESTLEY, TheWomb@USA.com
Jennifer L Warren, jwarren@northmiamifl.gov
Jennifer L Warren, cityattorney@northmiamifl.gov
Jessica Faith Watts, jwatts@quinnlegal.com
Jessica Faith Watts, eservice@quinnlegal.com
Jessica Faith Watts, abliss@quinnlegal.com
Jessica Jo Fagen, lawfirmFL@rauschsturm.com
Jessica Jo Fagen, jfagen@rauschsturm.com
Jessica Jo Fagen, abcfleservice@abclegal.com
Jimmy Keenan Edwards, FLeFileTeam@brockandscott.com
Jimmy Keenan Edwards, FLCourtDocs@brockandscott.com
Jimmy Keenan Edwards, CourtXpress@firmsolutions.us
John Westley Mr., WombTV@gmail.com
Jonathan S Wilinsky, FLeFileTeam@brockandscott.com
Jonathan S Wilinsky, CourtXpress@firmsolutions.us
Jonathan S Wilinsky, FLCourtDocs@brockandscott.com
Jossie Zuniga, jzuniga@jud11.flcourts.org
Julie Anthousis, FLeFileTeam@brockandscott.com

Case No: 2010-061928-CA-01

Page 2 of 3

Exh 9 pg.1

## FORM 6 — FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTERESTS      2011

Please print or type your name, mailing address, agency name, and position below:

| | FOR OFFICE USE ONLY: | COMMISSION ON ETHICS DATE RECEIVED |
|---|---|---|

**LAST NAME — FIRST NAME — MIDDLE NAME:**
Bailey   Jennifer   D.

JUL 0 2 2012

PROCESSED

**MAILING ADDRESS.**
73 W. Flagler St., Room 635

ID Code

**CITY:** Miami, FL   **ZIP:** 33130   **COUNTY:** Miami-Dade

ID No. 14425

**NAME OF AGENCY.**
State Judiciary, 11th Judicial Circuit

Conf. Code

**NAME OF OFFICE OR POSITION HELD OR SOUGHT:**
Circuit Court Judge

P. Req. Code

**CHECK IF THIS IS A FILING BY A CANDIDATE** ☐

### PART A -- NET WORTH

Please enter the value of your net worth as of December 31, 2011, or a more current date. [Note: Net worth is not calculated by subtracting your *reported* liabilities from your *reported* assets, so please see the instructions on page 3.]

My net worth as of ____December 31,____, 20 11 was $ 1,162,817

### PART B — ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry; collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use.

The aggregate value of my household goods and personal effects (described above) is $ 100,000

**ASSETS INDIVIDUALLY VALUED AT OVER $1,000:**

| DESCRIPTION OF ASSET (specific description is required - see instructions page 4) | VALUE OF ASSET |
|---|---|
| Home* | 640,000 |
| Checking Acct. BBT* | 1000 |
| Savings Acct. BBT* | 3280 |
| Ally Bank Certificates of Deposit | 75,110 |
| (see continuation sheet) | |

### PART C — LIABILITIES

**LIABILITIES IN EXCESS OF $1,000 (See Instructions on page 4):**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| Wells Fargo Mortgage, P.O. Box 10335, Des Moines, IA 50306* | 257,738 Exh. #2 ⇐ |
| | |
| | |
| | |

**JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:**

| NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| none | |
| | |
| | |

CE FORM 6 - Effective January 1, 2012  Refer to Rule 34-8.002(1), F.A.C       (Continued on reverse side)                                    PAGE 1

Exh. 9 pg 2

## PART D – INCOME

You may *EITHER* (1) file a complete copy of your 2011 federal income tax return, including all W2's, schedules, and attachments, *OR* (2) file a sworn statement identifying each separate source and amount of income which exceeds $1,000, including secondary sources of income, by completing the remainder of Part D, below.

☐     I elect to file a copy of my 2011 federal income tax return and all W2's, schedules, and attachments.
        [If you check this box and attach a copy of your 2011 tax return, you need not complete the remainder of Part D.]

**PRIMARY SOURCES OF INCOME (See instructions on page 5):**

| NAME OF SOURCE OF INCOME EXCEEDING $1,000 | ADDRESS OF SOURCE OF INCOME | AMOUNT |
|---|---|---|
| State of Florida | 500 S. Duval St., Tallahassee, FL | 142, 177 |
| | | |
| | | |
| | | |

**SECONDARY SOURCES OF INCOME [Major customers, clients, etc., of businesses owned by reporting person—see instructions on page 5]:**

| NAME OF BUSINESS ENTITY | NAME OF MAJOR SOURCES OF BUSINESS' INCOME | ADDRESS OF SOURCE | PRINCIPAL BUSINESS ACTIVITY OF SOURCE |
|---|---|---|---|
| none | | | |
| | | | |
| | | | |

## PART E – INTERESTS IN SPECIFIED BUSINESSES [Instructions on page 5]

| | BUSINESS ENTITY # 1 | BUSINESS ENTITY # 2 | BUSINESS ENTITY # 3 |
|---|---|---|---|
| NAME OF BUSINESS ENTITY | none | | |
| ADDRESS OF BUSINESS ENTITY | | | |
| PRINCIPAL BUSINESS ACTIVITY | | | |
| POSITION HELD WITH ENTITY | | | |
| I OWN MORE THAN A 5% INTEREST IN THE BUSINESS | | | |
| NATURE OF MY OWNERSHIP INTEREST | | | |

**IF ANY OF PARTS A THROUGH E ARE CONTINUED ON A SEPARATE SHEET, PLEASE CHECK HERE** ☑

## OATH

I, the person whose name appears at the beginning of this form, do depose on oath or affirmation and say that the information disclosed on this form and any attachments hereto is true, accurate, and complete

_____
SIGNATURE OF REPORTING OFFICIAL OR CANDIDATE

STATE OF FLORIDA
COUNTY OF _Miami-Dade_

Sworn to (or affirmed) and subscribed before me this __27th__ day of

__June__, 20 _12_ by _Jennifer D. Bailey_

_____
(Signature of Notary Public – State of Florida)
Commission DD 832404
Expires October 20, 2012

_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

Personally Known __✓__    OR    Produced Identification _____

Type of Identification Produced _____

**FILING INSTRUCTIONS** for when and where to file this form are located at the top of page 3.
**INSTRUCTIONS** on who must file this form and how to fill it out begin on page 3.
**OTHER FORMS** you may need to file are described on page 6.

CE FORM 6 - Effective January 1, 2012 Refer to Rule 34-8.002(1), F.A.C.

PAGE 2

**Part B Continuation:**   **Jennifer D. Bailey, Circuit Court Judge, 11th Judicial Circuit, Group 28**

| Description of Asset | Value |
|---|---|
| **Retirement Accounts** | |
| American Century IRA-Heritage | 45,298 |
| American Century IRA-Vista | 11,450 |
| T. Rowe Price Deferred Compensation Acct. | 319,082 |
| | |
| **Mutual Funds** | |
| Morgan Stanley Money Market Fund* | 5220 |
| Invesco CA tax-free Income Y* | 35,476 |
| Invesco CA tax-free income Fund A and B* | 59,901 |
| Morgan Stanley European Equity Fund B* | 21,154 |
| | |
| **Morgan Stanley Unit Investment Trusts** | |
| Unit Van Kampen Investment GRA De Muni CA Ser 1 MPS* | 40,587 |
| | |
| **Stock** | |
| Abbott Laboratories * | 7534 |
| AT & T* | 13,335 |
| Exxon Mobil Corp*. | 33,904 |
| IBM* | 18,388 |
| Medtronic* | 1836 |

*asset/liability jointly owned with husband

COMMISSION ON ETHICS
DATE RECEIVED

JUL 0 2012

COMMISSION ON ETHICS
DATE RECEIVED

JUL 0 2012

COMMISSION ON ETHICS
DATE RECEIVED

JUL 0 2012

## JUDICIAL QUALIFICATIONS COMMISSION FORM 6A
### Canon 6B(2), Code of Judicial Conduct

### GIFT DISCLOSURE

All judicial officers must file with the Commission on Ethics on or before July 1 of each calendar year on the form set forth below a list of all gifts received during the previous calendar year of a value in excess of $100.00, as provided in Canon 5D(5) and Canon 6B(2) of the Code of Judicial Conduct.

NAME: Jennifer D. Bailey                     TELEPHONE: 305-349-7152

ADDRESS: 73 W. Flagler St., Room 635, Miami, FL 33130

POSITION HELD: Circuit Court Judge, Eleventh Judicial Circuit

Please identify all gifts you received during the preceding calendar year of a value in excess of $100.00, as required by Canon 5D(5) and Canon 6B(2) of the Code of Judicial Conduct.

| Source | Value |
|--------|-------|
| None | Zero |
| | |
| | |
| | |
| | |

I certify that the foregoing list is complete, true and correct.

_Jennifer D. Bailey_
JUDGE
OATH

STATE OF FLORIDA
COUNTY OF Miami-Dade

Sworn to (or affirmed) and subscribed before me this 27th day of June, 20 12, by Jennifer D. Bailey (name of person making statement).

(NOTARY SEAL)

_Patricia Frank Hardin_
(Signature of Notary Public-State of Florida)

Patricia Frank Hardin
Commission DD 832404
Expires October 20, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

(Name of Notary Public-Typed, Printed or Stamped)

Personally Known ✓ OR Produced Identification _____
Type of Identification
Produced _____

(ORIGINAL OF THIS FORM FILED WITH COMMISSION ON ETHICS; COPY FILED WITH JUDICIAL QUALIFICATIONS COMMISSION)

04/11

| FORM 6<br>Please print or type your name, mailing address, agency name, and position below: | FULL AND PUBLIC DISCLOSURE<br>OF FINANCIAL INTERESTS | 2021<br>FOR OFFICE USE ONLY: |
|---|---|---|

LAST NAME — FIRST NAME — MIDDLE NAME:
**Lopez Carlos**

MAILING ADDRESS:
**73 West Flagler Street**

**Suite 1110**

| CITY:<br>Miami | ZIP:<br>33130 | COUNTY:<br>Miami Dade |
|---|---|---|

NAME OF AGENCY:
**Eleventh Judicial Circuit**

NAME OF OFFICE OR POSITION HELD OR SOUGHT:
**Circuit Judge, 11th Circuit**

CHECK IF THIS IS A FILING BY A CANDIDATE ☐

**PROCESSED**

**FLORIDA COMMISSION ON ETHICS**

**JUN 27 2022**

**RECEIVED**

276771

## PART A -- NET WORTH

Please enter the value of your net worth as of December 31, 2021 or a more current date. [Note: Net worth is not calculated by subtracting your *reported* liabilities from your *reported* assets, so please see the instructions on page 3.]

My net worth as of _Jauary 31_____, 20 _2022_ was $ _9,309,065_____.

## PART B -- ASSETS

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry; collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use, whether owned or leased.

The aggregate value of my household goods and personal effects (described above) is $ _300,000_____

| ASSETS INDIVIDUALLY VALUED AT OVER $1,000:<br>DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| SEE ATTACHED SPECIFIC DESCRIPTION | |
| | |
| | |
| | |

## PART C -- LIABILITIES

| LIABILITIES IN EXCESS OF $1,000 (See instructions on page 4):<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| SPACE COAST CREDIT UNION | $43,000 |
| UNPAID PORTION RANGE ROVER | |
| P.O. BOX 419001 MELBOURNE , FL 32941 | |
| | |

| JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| REGIONS BANK GUARANTEE ON COMMERCIAL LOAN (CONTINGENT) | $650,000 |
| REGIONS PRIVATE WEALTH MANAGEMENT, 2800 PONCE DE LEON BLVD, | |
| 10TH FLOOR, CORAL GABLES, FL 33134 | |

CE FORM 6 - Effective June 2, 2022
Incorporated by reference in Rule 34-8.002(1), F.A.C.

(Continued on reverse side)

PAGE 1

## PART D -- INCOME

Identify each separate source and amount of income which exceeded $1,000 during the year, including secondary sources of income. Or attach a complete copy of your 2021 federal income tax return, including all W2s, schedules, and attachments. Please redact any social security or account numbers before attaching your returns, as the law requires these documents be posted to the Commission's website.

☐ I elect to file a copy of my 2021 federal income tax return and all W2's, schedules, and attachments.
[If you check this box and attach a copy of your 2020 tax return, you need not complete the remainder of Part D.]

**PRIMARY SOURCES OF INCOME (See instructions on page 5):**

| NAME OF SOURCE OF INCOME EXCEEDING $1,000 | ADDRESS OF SOURCE OF INCOME | AMOUNT |
|---|---|---|
| Rental Property/Mortgage/Interest | See list of Assets | $45,000 |
| | | |

**SECONDARY SOURCES OF INCOME** [Major customers, clients, etc., of businesses owned by reporting person--see instructions on page 5]:

| NAME OF BUSINESS ENTITY | NAME OF MAJOR SOURCES OF BUSINESS' INCOME | ADDRESS OF SOURCE | PRINCIPAL BUSINESS ACTIVITY OF SOURCE |
|---|---|---|---|
| | | | |
| | | | |

## PART E -- INTERESTS IN SPECIFIED BUSINESSES [Instructions on page 6]

| | BUSINESS ENTITY # 1 | BUSINESS ENTITY # 2 | BUSINESS ENTITY # 3 |
|---|---|---|---|
| NAME OF BUSINESS ENTITY | | | |
| ADDRESS OF BUSINESS ENTITY | | | |
| PRINCIPAL BUSINESS ACTIVITY | | | |
| POSITION HELD WITH ENTITY | | | |
| I OWN MORE THAN A 5% INTEREST IN THE BUSINESS | | | |
| NATURE OF MY OWNERSHIP INTEREST | | | |

## PART F - TRAINING

This section applies only to officers required to complete annual ethics training pursuant to section 112.3142, F.S. [See instructions p. 6]

☐ **I CERTIFY THAT I HAVE COMPLETED THE REQUIRED TRAINING.**

### OATH

I, the person whose name appears at the beginning of this form, do depose on oath or affirmation and say that the information disclosed on this form and any attachments hereto is true, accurate, and complete.

_____
SIGNATURE OF REPORTING OFFICIAL OR CANDIDATE

STATE OF FLORIDA
COUNTY OF Miami-Dade

Sworn to (or affirmed) and subscribed before me by means of
☑ physical presence or ☐ online notarization, this 17 day of June, 2022 by Carlos Lopez

_____
(Signature of Notary Public--State of Florida)

Anayansi Sampedro
(Print, Type, or Stamp Commissioned Name)

Personally Known ✓ OR Produced Identification _____
Type of Identification Produced _____

ANAYANSI SAMPEDRO
MY COMMISSION # HH 142527
EXPIRES: June 15, 2025
Bonded Thru Notary Public Underwriters

If a certified public accountant licensed under Chapter 473, or attorney in good standing with the Florida Bar prepared this form for you, he or she must complete the following statement:

I, _____, prepared the CE Form 6 in accordance with Art. II, Sec. 8, Florida Constitution, Section 112.3144, Florida Statutes, and the instructions to the form. Upon my reasonable knowledge and belief, the disclosure herein is true and correct.

_____          _____
Signature                                      Date

**Preparation of this form by a CPA or attorney does not relieve the filer of the responsibility to sign the form under oath.**

IF ANY OF PARTS A THROUGH E ARE CONTINUED ON A SEPARATE SHEET, PLEASE CHECK HERE ☐

PAGE 2

CE FORM 6 - Effective June 2, 2022
Incorporated by reference In Rule 34-8.002(1), F.A.C.

Exh. Copy3

# FORM 6

## FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTEREST

### PART B- ASSETS

Carlos Lopez

Circuit Judge

11th Judicial Circuit

As of January 31, 2022

PART B- ASSETS

ASSETS INDIVIDUALLY VALUED OVER $1,000:

| | |
|---|---|
| Real Estate XXXX Brickell Ave, Unit XXXX, Miami, Fl | $1,250,000 |
| Real Estate 1717 North Bayshore Drive, A4244, Miami, Fl (rental property) | $575,000 |
| Real Estate 1800 NW 24ave, #720, Miami, Fl (rental property) | $200,000 |
| Cash IBERIABANK (Cash & CD) | $2,077,949 |
| 1111 Brickell Ave, Miami, Fl 33131 | |
| Marketable Securities UBS (See Summary) | $311,383 |
| CIM Group, P.O. Box 219312 (Cole Capital) | $255,000 |
| Kansas City, MO 64121 | |
| BBC Realty Holdings LLC- Rental Office at 2333 Brickell Ave | $1,800,000 |
| Suite A-1, Miami, Fl (33.3% owned) | |
| Loan Owed from Caribe Insurance Agency Corp | $125,000 |
| 720 Jeronimo Drive | |
| Coral Gables, Fl 33146 | |

Exh. 10 Pg 4

## CONTINUATION OF PART B (ASSETS)

| | |
|---|---|
| Mortgage and Note owned by Carlos Lopez | $290,000 |
| Property owned by Charles Lebess | |
| 3301 NE 5th Ave, Unit 511, Miami, Fl 33137 | |
| Mortgage and Note owned by Carlos Lopez | $350,000 |
| Property owned by Enrique Chantres | |
| 5224 SW 89 Ave, Miami, Fl 33165 | |
| Mortgage and Note owned by Carlos Lopez | $75,000 |
| Property Owned by Daniel Rodriguez | |
| 5741 SW 114 Ave, Miami, Fl 33175 | |
| Personal Property, Household Furnishings and Art | $185,000 |
| Jewelry | $115,000 |
| Asset Value 2018 Range Rover Sport | $58,000 |
| Security Deposit | $175,000 |
| 808 Brickell Key Drive | |
| Unit 3XXX, Miami, FL 33131 | |
| One Third Interest | $1,400,000 |
| Isabel Lopez Trust ($4,200,000/3) | |
| Florida Retirement System Pension | $66,733 |
| Total: | $9,309,065 |

Exh. 10 pg5

## FORM 6

### FULL AND PUBLIC DISCLOSURE OF FINANCIAL INTEREST

### PART D-INCOME

Carlos Lopez

Circuit Judge

11th Judicial Circuit

As of December 31, 2020

PART D- INCOME

| | |
|---|---|
| Chief Financial of Florida | $160,688 |
| 200 East Gaines Street | |
| Tallahassee, Fl 32399 | |
| | |
| Social Security Administration | $38,940 |
| Interest and Dividends | $5,000 |
| Rental and Income Interest | $45,000 |
| Total: | $249,628 |

Filing # 104726739 E-Filed 03/11/2020 03:36:44 PM          Exh. 18 pg. 1

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO. 2010-061928-CA-01**
**SECTION: CA 05**

U S Bank (na)
     Plaintiff,
vs.

Williams, Leroy
    Defendant.

_____/

### ORDER DENYING MOTION FOR EMERGENCY EX-PARTE HEARING FROM JUDGE BAILEY TO STOP SALE, TO RECUSE, AND VACATE ALL ORDERS

**THIS CAUSE** came before the undersigned Administrative Judge for review, and the Court being fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that said motion is denied. As Administrative Judge, I do not have jurisdiction to vacate, recuse or second-guess another judge's rulings.

     **DONE AND ORDERED** in chambers, at Miami-Dade County, Florida, this 11th day of March, 2020.

_Jennifer D. Bailey_

Jennifer D. Bailey
CIRCUIT COURT JUDGE

No Further Judicial Action Required on THIS MOTION. CLERK TO RECLOSE CASE IF POST JUDGMENT.

Electronic Service List:

Exh. C

Exh. 19 Pg 1

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION**

US BANK, N.A.,
        Plaintiff,

                            CASE NO.    2007-12407-CA
vs.                         DIVISION    32

SPACE FOR RECORDING ONLY. F.S. 695.26

LEROY WILLIAMS; MARK WELLS; FRANKLIN
CREDIT MANAGEMENT CORPORATION; CITY
OF NORTH MIAMI;
            Defendant(s).

**FINAL ORDER DISMISSING CASE, CANCELING FORECLOSURE SALE, CANCELING NOTICE OF
LIS PENDENS, AND SETTING ASIDE FINAL SUMMARY JUDGMENT AND SUBSTITUTING
PHOTOSTATIC COPIES**

THIS CAUSE having come on before the Court, ex parte, pursuant to the Motion filed by the Plaintiff, pursuant

to Section 702.07 Florida Statutes (2005), and the Court being otherwise fully advised in the premises, it is,

ORDERED AND ADJUDGED as follows:

1.      The case be and the same hereby is dismissed, but without prejudice to the future rights of the Plaintiff to

bring an action to foreclose the mortgage which is the subject matter of the instant cause.

2.      All Counts of the Complaint against Defendants: LEROY WILLIAMS; MARK WELLS;

FRANKLIN CREDIT MANAGEMENT CORPORATION; CITY OF NORTH MIAMI; are hereby dismissed.

3.      Any scheduled foreclosure sale is canceled.

FILE NUMBER: F07012148

Serial: 13666522
DOC_ID: M010502





*Exh.f 2*

*Exh. 79 pg 2*

4.     The Notice of Lis Pendens filed by Plaintiff and recorded in the public records of MIAMI-DADE County, Florida, regarding the below-described property:

> LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

be and same hereby is canceled, vacated, discharged and shall be of no further force or effect, and the Clerk is hereby directed to record this Order to reflect same.

5.     The Final Summary Judgment heretofore entered on August 09, 2007, be and the same hereby is set aside and shall be of no further force or effect.

6.     The Plaintiff requests that the original Note and Mortgage be returned to the Plaintiff and photostatic copies shall be substituted in their place.

DONE AND ORDERED in Chambers in MIAMI-DADE County, Florida, this _____ day of _____, 2010.

**JUN 2 3 2010**

VALERIE R. MANNO SCHURR
Circuit Court Judge

**VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE**

Copies furnished to:
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
All parties on the attached service list.
F07012148 - M010502
GMAC-CONV - bhren

Exh. 21 Pg. 1

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
☑ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**DIVISION**
☑ CIVIL
☐ CRIMINAL
☐ OTHER

**EXHIBIT LIST**

**CASE NUMBER**
10-61928-CA 05

FILED FOR RECORD  2017 NOV 30 PM 2:45  CLERK IN CLERK, CIRCUIT & COUNTY CTS MIAMI-DADE COUNTY FLA CIVIL DIVISION

**PLAINTIFF(S)/PETITIONER**
U.S. Bank
Willnae La Croix

**VS. DEFENDANT(S)/RESPONDENT**
Leroy Williams
Maurice Symonette - Pro Se

IN RE: Non-Jury Trial (Foreclosure)

JUDGE John Schlesinger   REPORTER Mya Alvena   DATE NOV 29 2017

| Description of Exhibits | PLT/PET ID | PLT/PET EX. | DEF/RES ID | DEF/RES EX |
|---|---|---|---|---|
| Limited Power of Attorney | | 1 | | |
| Transfer Letter | | 2 | | |
| Original Note | | 3 | | |
| Copy of Mortgage | | 4 | | |
| Assignment of Mortgage | | 5 | | |
| Default Letter | | 6 | | |
| Transaction History | | 7 | | |
| Pooling and Servicing Agreement | | 8 Comp | | |
| Affidavit of Debt | | 9 | | |
| | | | | |
| Clerk Notes: All Exhibits scanned & retained by the Clerk | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

James Kaishos
**COURT CLERK**

**SUPERVISOR**

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Clerk's web address: www.miami-dadeclerk.com

CLK/CT 140 REV. 8/03

PAGE 1 of 2

Document drafted by and
RECORDING REQUESTED BY:
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Attn: Record Services
Waterloo, IA 50702

Filed 11-29 A.D. 2017
Case No: 10-61928-CA 05
HARVEY RUVIN
Clerk Circuit Court

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

The trusts identified on the attached Schedule A (the "Trusts"), by and through U.S. Bank National Association, a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Ocwen Loan Servicing, LLC, ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (10) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements and no power is granted hereunder to take any action that would be adverse to the interests of U.S. Bank National Association. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to Schedule A attached hereto.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

A TRUE COPY

Ocwen Loan Servicing, LLC POA issued by U.S. Bank National Association, as Trustee

HARVEY RUVIN, CLERK

*Exh. 21*
*pg 3*

2. Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3. Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6. Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7. Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8. Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver the following documentation with respect to the sale of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

A TRUE COPY

Ocwen Loan Servicing, LLC POA issued by U.S. Bank National Association, as Trustee   CERTIFICATION ON LAST PAGE

HARVEY RUVIN, CLERK

Exh. 21
Pg 4

## Important Information About This Transfer

**RESPA Notice:** You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late; and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a qualified written request to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reasons for the request.

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

**Qualified Written Request:** Effective with the transfer date, please send all qualified written requests to: Ocwen, ATTN: Customer Care, P.O. Box 1330, Waterloo, IA 50704-1330.

**Optional Insurance:** The transfer of servicing rights may affect the term or the continued availability of mortgage life or disability or any other type of optional insurance. If you have been paying premiums for optional insurance coverage such as accidental death, life or disability, your coverage will likely continue at the same or a comparable premium. If a change of provider is necessary, you will receive new policy information in a separate letter. If Ocwen is not able to continue your coverage, Ocwen or GMACM will notify you in writing.

## Additional Information

**Online Services:** If you were previously using the GMACM website, you should continue to use your same username and password. You will be redirected to ocwen.mortgagebanksite.com to complete the login process. You do not need to re-enroll to continue using the same online payment programs. Any current online payment arrangements will continue uninterrupted through Ocwen.

**Payment by Phone:** If you previously scheduled a payment by phone through GMACM, this deduction will continue as scheduled.

**Automatic Payment:** If you were previously using GMACM's automatic payment service, this program will continue with Ocwen with no lapse in service. If you use a third party payment service, please request they update their records to have payments made to Ocwen Loan Servicing, LLC.

**Payment by Check:** If sending payment by check, please be aware you are authorizing Ocwen to use information on this check to make a one-time electronic debit to the account at the financial institution indicated on the check. This electronic debit will be for the amount on your check and no additional amount will be debited. Please be aware this bank account may be debited the same day Ocwen receives the check.

**Homeowner's Insurance:** Notice will be sent to your insurance carrier to provide the Ocwen address information following the transfer.

**Year-End:** GMACM will provide a 2012 year-end IRS form 1098 statement consistent with how you may have received it in prior years. Ocwen will provide a 2013 year-end IRS form 1098 that will include payments received in 2013 by GMACM and Ocwen.

**Loan Modification:** Ocwen is committed to helping homeowners. If you are currently on a trial modification plan or have a modification review underway, this process will continue. You should continue making your payments as required in the modification plan. If you recently submitted financial documentation to be considered for payment options, it is not necessary to re-send the documents to Ocwen, as the information will automatically transfer.

**Short Sale:** Any previously approved short sale offers or pending short sale negotiations will continue. The original expiration date for a previous short sale approval still applies; if it has expired, the approval is no longer valid.

**Identity Theft Notice:** If you would like to obtain information regarding identity theft, you may contact the Federal Trade Commission at http://www.ftc.gov/bcp/edu/microsites/idtheft/ OR by calling 1-877-ID-THEFT (1-877-438-4338).

**Members of the Military and their Families:** Ocwen is committed to supporting its customers in the military. If you or a member of your family are in the military, please contact Ocwen effective with the transfer date. You may be eligible for certain rights and protections under the Servicemembers Civil Relief Act (SCRA). Even if you are not eligible under SCRA, Ocwen encourages you to contact us if you have questions or problems relating to your mortgage. Call 1-866-961-1412 or email us at Military.Families@mortgagebanksite.com

**Notice Regarding Debt Collection:** This is an attempt to collect a debt, and any information obtained will be used for that purpose, provided if you have an active bankruptcy case or have received a discharge, the following Notice Regarding Bankruptcy applies.

**Notice Regarding Bankruptcy:** If you are a debtor in an active bankruptcy case, this letter is not an attempt to collect either a pre-petition, post-petition or discharged debt, and no action will be taken in willful violation of the Automatic Stay that may be in effect in your bankruptcy case. Furthermore, if you have received a Discharge in a Chapter 7 case, any action taken by GMACM or Ocwen is for the sole purpose of protecting the lien interest in your property and is not an attempt to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice. Finally, if you are in an active Chapter 12 or 13 case, and an Order for Relief from the Automatic Stay has not been issued, you should continue to make regular payments in accordance with your bankruptcy plan.

CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

*Exh. 21*
*Pg 5*

## IMPORTANT INFORMATION

**Schedule of Standard Servicing Fees for Florida**

| Fee Name | Fee Description | Estimated Fee Amount |
|---|---|---|
| Balloon Reset/Cast | Fee required to reset balloon loans or recast a loan when loan documents allow for this function. | $170 - $1200 (includes hard dollar costs which range by county) |
| Broker Price Opinion (BPO) | Brokers or other qualified individuals provide an estimate of the market value of property. | $83.00 - $150.00 |
| Inspection | Inspections are performed to ensure that the property is occupied and appropriately maintained. | $16.50 - $42.00 |
| Late Charges | Penalty charged to the borrower if a payment is received past the grace days. | Fees assessed according to loan documents |
| Non Sufficient Funds (NSF) Fee | Fee charged for a check that was applied to the borrower's account but returned unpaid by the borrower's depository institution (bank, savings bank, etc). | NO CHARGE |
| Pay by Phone | One time charge to a borrower to make a payment using the pay by phone service. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 via phone $12.50 via customer service |
| Payoff Statement | Fee charged when a payoff statement is requested to be mailed or faxed. | NO CHARGE |
| Recording Fee | Fee charged by the county recorder's office to record the release / satisfaction when the loan is paid-in-full. | $10.00 - $12.80 |
| Subordination | Processing/underwriting fee to review new loan details and our existing second lien loan to consider permitting the new loan to have priority, or first lien position, over our existing second lien loan. | $100.00 |
| Wire | Fee assessed for wired payments. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 |

All fees and amounts are subject to change without prior notice. Additional fees and amounts may apply depending on your specific request and the status of your loan.

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

*Exh 21*
*pg 6*

| | |
|---|---|
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX6 | 2006-EMX6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX7 | 2006-EMX7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX8 | 2006-EMX8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX9 | 2006-EMX9 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS1 | 2006-KS1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS2 | 2006-KS2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS3 | 2006-KS3 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS4 | 2006-KS4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS5 | 2006-KS5 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS6 | 2006-KS6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS7 | 2006-KS7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS8 | 2006-KS8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS9 | 2006-KS9 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC1 | 2006-NC1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC2 | 2006-NC2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC3 | 2006-NC3 |
| Residential Accredited Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA2 | 2006-QA2 |
| Residential Accredited Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS2 | 2006-QS2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-RS6 | 2006-RS6 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-RZ5 | 2006-RZ5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S1 | 2006-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S10 | 2006-S10 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S11 | 2006-S11 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S12 | 2006-S12 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S2 | 2006-S2 |

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 21
Pg. 7

| | |
|---|---|
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S3 | 2006-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S4 | 2006-S4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S5 | 2006-S5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S6 | 2006-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S7 | 2006-S7 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S8 | 2006-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S9 | 2006-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA1 | 2006-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA2 | 2006-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA3 | 2006-SA3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA4 | 2006-SA4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-SP4 | 2006-SP4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS1 | 2007-KS1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2 | 2007-KS2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS3 | 2007-KS3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S1 | 2007-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S2 | 2007-S2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S3 | 2007-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S6 | 2007-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S7 | 2007-S7 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S8 | 2007-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S9 | 2007-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA1 | 2007-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA2 | 2007-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA3 | 2007-SA3 |

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 21
pg 8

| | |
|---|---|
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA4 | 2007-SA4 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-1 | BAFC 2006-1 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-5 | BAFC 2006-5 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-4 | BAFC 2007-4 |
| U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-AR7, Mortgage Pass-Through Certificates, Series 2005-AR7 | 2005-GSR-AR7 |
| U.S. Bank National Association, as Trustee for MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1 MORTGAGE PASS-THROUGH CERTIFICATES, Series 2007-1 | 2007-MARM-1 |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-D | 2006-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-A | 2006-A |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-D | 2006-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2007-A | 2007-A |
| US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for | |
| Residential Funding Mortgage Securities II, Inc., Home Equity Loan Pass-Through Certificates, Series 2007-HSA1 | 2007-HSA1 |
| Residential Funding Mortgage Securities II, Inc., Home Equity Loan Pass-Through Certificates, Series 2007-HSA2 | 2007-HSA2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS4 | 2007-KS4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP1 | 2007-RP1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP2 | 2007-RP2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP3 | 2007-RP3 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4 | 2007-RP4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RS1 | 2007-RS1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RS2 | 2007-RS2 |

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh.21
Pg 9.

| | |
|---|---|
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RZ1 | 2007-RZ1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP1 | 2007-SP1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP2 | 2007-SP2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP3 | 2007-SP3 |
| **U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee, for** | |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-3 | BAFC 2005-3 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-4 | BAFC 2005-4 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-5 | BAFC 2005-5 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-6 | BAFC 2005-6 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-7 | BAFC 2005-7 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-8 | BAFC 2005-8 |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-B | 2005-B |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2004-C | 2004-C |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2004-D | 2004-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-E | 2005-E |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-D | 2005-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-C | 2005-C |
| **U.S Bank National Association, as Indenture Trustee for** | |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2008-A | 2008-A |

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. 21
Pg 10

| | |
|---|---|
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS4 | 2005-KS4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS5 | 2005-KS5 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS6 | 2005-KS6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS7 | 2005-KS7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS8 | 2005-KS8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS9 | 2005-KS9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S1 | 2005-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S3 | 2005-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S4 | 2005-S4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S5 | 2005-S5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S6 | 2005-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S8 | 2005-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S9 | 2005-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA1 | 2005-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA2 | 2005-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA3 | 2005-SA3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA4 | 2005-SA4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA5 | 2005-SA5 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC1 | 2006-EFC1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC2 | 2006-EFC2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX1 | 2006-EMX1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX2 | 2006-EMX2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX3 | 2006-EMX3 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX4 | 2006-EMX4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5 | 2006-EMX5 |

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK



## GMAC Mortgage

### Notice of Servicing Transfer and Welcome to Ocwen Loan Servicing, LLC

February 7, 2013

LEROY WILLIAMS
PO BOX 223692
HOLLYWOOD FL 33022-2692

Dear LEROY WILLIAMS,

The servicing of your mortgage loan, that is, the right to collect payments from you, is transferring from your current servicer, GMAC Mortgage ("GMACM") to your new servicer, Ocwen Loan Servicing, LLC ("Ocwen") effective February 16, 2013.

**Your Loan Account Details**
as of 02/04/2013

Account Number: ....937
Property Address: 13020 SOUTH RIVER DRIVE, MIAMI FL 33167
Transfer Date: 02/16/2013
Principal Balance: $448,003.00
Escrow Balance: -$138,948.27
Loan Rate: 6.125%
Next Payment Date: 11/1/2007
Payment Amount: Please refer to your mortgage account statement.

**Ocwen Loan Servicing, LLC**
Customer Care Contact Information:
Phone: 800-746-4622
Web: ocwen.mortgagehelpsite.com
Mail: PO Box 780, Waterloo, IA 50704-0780

### Mortgage Payment Coupon

Ocwen Loan Servicing, LLC

Account Number: ....3937
Due Date: 1/1/2007
Mortgage Payment: See above

LEROY WILLIAMS

OCWEN
PO BOX 6501719
LOUISVILLE, KY 40290-1719

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

* For Internal USE ONLY, NOT a Transaction History *
* For Internal USE ONLY, NOT a Transaction History *

FAKe Home comings Money Default

TRN497CR-02
H2BICE

HOMECOMINGS FINANCIAL,
DETAIL TRANSACTION HISTORY

Pg 12

11:19:19
5/01/07
PAGE: 1

| | | |
|---|---|---|
| LOAN# 3937 INV# 413 | POOL# 0200511 INV INT# 3905 NEXT DUE 1/01/07 | INTEREST RATE 6.125 PRIN.BAL 448,000.00 |
| BORR1 Leroy Williams | TYPE: 03-00 CONVENTION STATUS R TOT.DELQ14,193.29 | SUSP-235B .00 ESC.BAL .00 |
| BORR2 | MSGS: 20 40 #PMT 000006 P&I 9,146.68 | SUSP-SUBS .00 ESC.ADV 22,332.10 |
| PROP: 15020 South River Drive | MAIL: PO BOX 222692 | SUSP-HAZ .00 TOT.PMT 3,401.57 |
| Miami FL 33167 | Hollywood FL 330222692 | SRVFEES .03750 SUSP-FOR .00 P&I 2,296.67 VDIFF .00000 SUSP-MIS .00 ESC.PMT 1,114.90 INT PD TO 12/01/06 P&I SHORT .00 CORP AD .00 |

---TRANSACTION---

| SER | DATE | CODE | ----DESCRIPTION----- | NEXT DUE | -AFTER TRANS.BALANCES- PRINCIPAL ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS &SRV.FEES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 10/27/05 | 8102 | LOAN TRANSFER | 11/05 | 448000.00 .00 | 448000.00- | 448000.00- | .00 | .00 | .00 | |
| | | | S/F REF# | | | | | | | | |
| 11 | 10/31/05 | 3199 | OLD INV 943/0200511 | 11/05 | .00 .00 Eff Dt: 10/31/2005 | 447000.00 Batch: MASSXFER | 448000.00 | .00 | .00 | .00 | |
| | | | S/F TR REF# | | | | | | | | |
| 12 | 10/31/05 | 8199 | NEW INV 413/0200511 | 11/05 | 448000.00 .00 | 448000.00- | 448000.00- | .00 | .00 | .00 | |
| | | | S/F TR REF# | | | | | | | | |
| 13 | 11/16/05 | 1499 | Late Charge | 11/05 | 448000.00 .00 | 114.33 | .00 | .00 | .00 | .00 | 114.33 01 |
| | | | S/F REF# | | | | | | | | |
| 14 | 11/16/05 | 2664 | NON CASH FEE ADJ | 11/05 | 448000.00 .00 | 114.33- | .00 | .00 | .00 | .00 | 114.33-01 |
| | | | S/F WC REF# | | | | | | | | |
| 15 | 11/28/05 | 1325 | PMT-MISC SUSP | 11/05 | 448000.00 .00 | 2286.67 | .00 | .00 | .00 | 2286.67 PP | |
| | | | S/F CK REF# | | | | | | | | |
| 16 | 11/28/05 | 2625 | MISC ADJ | 11/05 | 448000.00 .00 | 2286.67- | .00 | .00 | .00 | 2286.67-PP | |
| | | | S/F CK REF# | | | | | | | | |
| 17 | 11/28/05 | 02 | PAYMENT | 12/05 | 448000.00 .00 | 2286.67 | .00 | 2286.67 | .00 | .00 | 140.00 11 |
| | | | Days since last Paymt on: 10/31/2005 28 | | Eff Dt: 11/28/2005 | Batch: 1128SUS2 | IPT Dt: 11/01/05 | | | | |
| | | | S/F CK REF# | | | | | | | | |
| 18 | 12/06/05 | 1499 | Speed Draft Fee | 12/05 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F REF# | | | | | | | | |
| 19 | 12/06/05 | 02 | PAYMENT | 1/06 | 448000.00 .00 | 2286.67 | .00 | 2286.67 | .00 | .00 | 140.00 11 |
| | | | Days since last Paymt on: 11/28/2005 8 | | Eff Dt: 12/06/2005 | Batch: 1206ACHS | IPT Dt: 12/01/05 | | | | |
| | | | S/F EA REF# | | | | | | | | |
| 20 | 12/06/05 | 1407 | Speed Draft Fee | 1/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C REF# | | | | | | | | |
| 21 | 1/05/06 | 1499 | Speed Draft Fee | 1/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F REF# | | | | | | | | |
| 22 | 1/05/06 | 02 | PAYMENT | 2/06 | 448000.00 .00 | 2286.67 | .00 | 2286.67 | .00 | .00 | 140.00 11 |
| | | | Days since last Paymt on: 12/06/2005 30 | | Eff Dt: 01/05/2006 | Batch: 0105ACHS | IPT Dt: 1/01/06 | | | | |
| | | | S/F EA REF# | | | | | | | | |
| 23 | 1/05/06 | 1407 | Speed Draft Fee | 2/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C REF# | | | | | | | | |
| 24 | 2/13/06 | 1499 | Speed Draft Fee | 2/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F REF# | | | | | | | | |
| 25 | 2/13/06 | 02 | PAYMENT | 3/06 | 448000.00 .00 | 2286.67 | .00 | 2286.67 | .00 | .00 | 140.00 11 |
| | | | Days since last Paymt on: 01/05/2006 37 | | Eff Dt: 02/11/2006 | Batch: 0213ACHS | IPT Dt: 2/01/06 | | | | |
| | | | S/F BA REF# | | | | | | | | |
| 26 | 2/13/06 | 1407 | Speed Draft Fee Effective date: 2/11/06 | 3/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C REF# | | | | | | | | |
| 27 | 3/07/06 | 1499 | Speed Draft Fee | 3/06 | 448000.00 .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |

π       EX (7)

Filed   11-29 A.D. 2011

Case No.   10-61928-CACS

HARVEY RUVIN
Clerk Circuit Court

Exh.21
Pg 13

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3rd FLOOR
TAMPA, FLORIDA 33634

Telephone (813) 251-4766
Telefax (813) 251-1541

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

July 26, 2010

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI, FL  33167

Re:

| | |
|---|---|
| Loan Number | ▓▓▓▓ |
| Mortgage Servicer | GMAC MORTGAGE, LLC |
| Creditor to whom the debt is owed | US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 |
| Property Address | 15020 SOUTH RIVER DRIVE, MIAMI, FL  33167 |
| Our File No | F10051160 |

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 with regards to its interests in the promissory Note and Mortgage executed by LEROY WILLIAMS  on June 30, 2005.  Pursuant to the terms of the promissory Note and Mortgage  our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $661,289.01 which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage.   Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage.  Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlaw.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid.  If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed.

FILE_NUMBER: F10051160

HELLOLETTER

CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK



Loan No.

Mortgagee: LEROY WILLIAMS

Address: 15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

Loan Amount: $ 448,000.00

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

### RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Assistant Secretary,
Axiom Financial Services

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By
Judy Faber, Vice President

Exh 22
pg 1

## AFFIDAVIT

I MAURICE Symonette was There in The Dade County Courthouse on Flagler Street in DownTown MIAMI and witnessed Judge Zabel Sign The Document To Dismiss With Prejudice on 04/06/2009 That was For The Case: 2007-12407-CA01, And I also witness That I saw it on The docket Sign Judge Zabel

Maurice JB

MAURICE Symonette
15020 S. River Dr
Miami, Fla 33167

X Fannie Mitchell
Feb 9, 2022

FANNIE MITCHELL
Notary Public - State of Florida
Commission # GG 360128
My Comm. Expires Jul 29, 2023
Bonded Through National Notary Assn.

Exh. 93

## AFFIDAVIT

I James Buckman was there in The Miami Dade Court House on Flagler street in downtown Miami and I witness Judge Zabel sign The Document to dismiss with Prejudice on 04/06/2009 That was for the case No. 2007-12407-CA04, And I'm also witness That I saw it on the docket signed by Judge Zabel.

James Buckman Jr
15080 S River Dr
Miami Fl 33167

X Fannie Mitchell
Feb 4, 2022

FANNIE MITCHELL
Notary Public - State of Florida
Commission # GG 160128
My Comm. Expires Jul 29, 2021
Bonded Through National Notary Assn.

EXH.26

**Privacy Policy | Feedback**   f Follow 22.4M

Friday,



Home | Showbiz | Femail | Royals | Health | Science | Sports | Politics | U.K. | Money | Video | Travel | Sho|

Breaking News   Australia   Video   Russia-Ukraine   China   Debate   Meghan Markle   Prince Harry   King Charles III   Weather   M

# More than 130 federal judges broke the law and violated ethics by hearing cases involving companies they had a financial interest in over 11 years

- An investigation found that more than 130 judges violated US law by overseeing cases involving companies in which they or their family held direct stock
- The report found that these judges have improperly failed to recuse themselves from 685 US court cases since 2010
- The jurists were appointed by presidents whose terms have spanned seven decades, from Lyndon B. Johnson to Donald J. Trump
- Roughly two-thirds of the 131 jurists' rulings ended up being in favor of their or their family's financial interests
- Of the two-thirds of judges who disclosed stock holdings, about a fifth of them presided over at least one case that involved their stock, the report showed

By ALEX HAMMER FOR DAILYMAIL.COM
PUBLISHED: 18:04 EDT, 28 September 2021 | UPDATED: 18:12 EDT, 28 September 2021

**188** shares    **83** View comments

An investigation found that 131 federal judges violated US law by overseeing cases involving companies in which they or their family held direct stock, **The Wall Street Journal** reported.

The judges failed to recuse themselves from 685 cases across the nation in which they held financial interest since 2010, the investigation revealed.

What's more, when the judges participated in these cases, roughly two-thirds of their rulings ended up being in favor of their or their family's financial interests.

While there are no laws that prohibit judges from owning stocks, the federal jurists' code of conduct demands judges recuse themselves in the event that they hold any semblance of financial interest in a case - or, the 'ownership of a legal or equitable

---

**Site  Web | En1**

## TOP STORIES

**EXCLUSIVE  Tori** Spelling is jealous her mom Candy's relationship with r star Josh Flagg - spoiling him with 1 abroad and lavish Staying at cheap m

**EXCLUSIVE  Lie'** Schreiber, 55, has secretly MARRIED pregnant g in backyard at his Mont Weeks after

▶ 'He is a d( walked am( Cops arres Beach 'seri Heuermann-over-i he'd strike AGAIN suspect 'continue patronize ...

▶ Pink-haired Port| surgeon who perf( sex-change surge( trans CHILDREN a they face lifetime ( infertility, incontin and sexual dissatisfaction...

▶ Want to be wealt| than your neighbo Here's what you w need to be in the t in each US state

▶ DR MICHAEL MOSLEY: Don't let voice age you, pra singing in the sho

Exh 27 p42

**WESTERN UNION**
PAYMENT SERVICES

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Dec. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Nov. 30, 2006 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:45 A.M. Nov. 30, 2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is nessary
This is not a bill. Do not mail payment.
Retain this letter for your records.

*Exh: 27 pg2*

**WESTERN UNION**
**PAYMENT SERVICES**

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Jan. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Dec. 31, 2006 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:40 A.M. Dec. 31, 2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Exhs 27. pg3

**WESTERN UNION**
**PAYMENT SERVICES**

**AXIOM FINANCIAL SERVICES**
**10900 STONE LAKE BLVD SUITE 350**
**AUSTIN TX 78759-5867**

Feb. 1, 2007

**LEROY WILLIAMS**
**15020 SOUTH RIVER DRIVE**
**MIAMI FL 33167**

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Jan. 31, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department at 188-832-7990.
Thank you for your business.

**AXIOM FINANCIAL SERVICES**
**10900 STONE LAKE BLVD SUITE 350**
**AUSTIN TX 78759-5867**

Important information

Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary.
This is not a bill. Do not mail payment.
Retain this letter for your records.

**AXIOM FINANCIAL SERVICES**
**10900 STONE LAKE BLVD SUITE 350**
**AUSTIN TX 78759-5867**

**WESTERN UNION**
**PAYMENT SERVICES**

Mar. 1, 2007

**LEROY WILLIAMS**
**15020 SOUTH RIVER DRIVE**
**MIAMI FL 33167**

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Feb 28, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001970274 |

Dear LEROY WILLIAMS,

Based on your authorization during our telephone conversation on Feb 28, 2007 we have initiated an automated clearing house (ACH) debit to withdraw the amount listed above from your specified bank account to make the payment that corresponds. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department at 188-832-7000.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Don't give out your bank account information over the phone and please never give checks out...
Please make a bill payment check payable to
Retain this letter for your records.

Exh 27 pg5

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10500 Stone Lake Blvd Suite 350
Austin Tx 78759-5967

April 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ######0274 |
| Date of Transaction: | March 30, 2007 |
| Payable To: | Axiom Financial Services |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 11:51 A.M., March 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-892-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5967

important information

Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary.

This is not a bill. Do not mail payment.
Retain this letter for your records.

0047305116730

Exh 27 Pg 6

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

May 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | April 30, 2007 |
| Payable To: | Axion Financial Services |
| Amount of Payment: | $2286.07 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:00 A.M., April 30,2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessy

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

Exh 27 Pg 7

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5867

June 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

Bank:                          WACHOVIA BANK, NA
Bank Account Number:           ******0274
Date of Transaction:           May 30, 2007

Payable To:                    Axiom Financial Services
Amount of Payment:             $2286.67

Customer Reference:            0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:38 A.M., May 30, 2007, we
have initiated an automated clearing house (ACH) debit to withdraw the amount described
above from your specified bank account to make the payment that you requested. Included in
the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please
contact Collection Department, at 186-832-7990.
Thank you for your business.

                               Axiom Financial Services
                               10900 Stone Lake Blvd Suite 350
                               Austin Tx 78759-5867

Important Information:
Don't give out your bank account information over the phone unless you know the company and understand why the
information is necessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

CFN 2014R0447483
OR Bk 29203 Pgs 2867 - 2868; (2pgs)
RECORDED 06/23/2014 16:03:51
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this **18** day of **January**, 20**13**, by first party, Grantor, *Elsie Williams, Maxwell, Larry Williams, James Gallagher, Curtis McNeal* whose post office address is *15020 S. River Dr. Miami Fl. 33167* to second party, Grantee, *Boot Camp Ministries (a tax exempt non-profit Organization)* whose post office address is *15020 S. River Dr. Miami FL. 33167*

WITNESSETH, That the said first party, for good consideration and for the sum of — **Ten dollars** — Dollars ($ **10.00** ) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of **Miami-Dade**, State of **Florida**, to wit:

*Legal Description: 32 52 41 1.19 Ac PB 44-41 Biscayne Gardens Sec F Part 1, Lot 105 Lot Size 100.000 x 575*

*Folio Numbers: 30 2123022 1050*

Page 1

www.socrates.com    © 2004 Socrates Media, LLC

Case 1:24-cv-22413-JEM   Document 1-1   Entered on FLSD Docket 06/24/2024   Page 168 of 359

Exh. 28. Pg2

Assessor's Property Tax Parcel/Account Number(s): _____

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _Clyde McPhatter_____

Printed Name of Witness: _Clyde McPhatter_____

Signature of First Party: _Hale Willem, Mark Wells, James Littlejohn, Leroy Williams, Luthr Menirel___

Printed Name of First Party: _Hale Williams, Mark Wells, James Littlejohn, Leroy Williams, Luthr McNeil_

Address of Witness: _3720 NE 165 St miami FL 33160_____

2nd witness _James Bookman   1822 NE 118th Rd miami Fl_
_James Bookman_

State of _Florida_
County of _Miami DADE_ } ss.

Prepared: _Clyde Ward   15020 S. Riverside Miami FL 33167_
_Clyde WARD_
_mark Wells, James Littlejohn, Leroy williams_

I certify that I know or have satisfactory evidence that _Hale Williams, Luthr McNeil_ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _1-26-2013_   Signature: _Fannie Mitchell_

(Seal or stamp)

Title: _____

My appointment expires: _____

Exh.28 pg4

Assessor's Property Tax Parcel/Account Number(s): _____

**IN WITNESS WHEREOF**, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _____

Printed Name of Witness: _Curtis McNeal._

Signature of First Party: _____

Printed Name of First Party: _Maurice Symonette_

Address of Witness: _15020 S. River dr. Miami Fla - 33167_

2nd witness Jym Littlejohn 3320 NE 165st
Miami, Fla. 33160

Prepared: Mack Wells 15020 S. River dr.
Mack Wells     Miami Fla.

State of _____
County of _____ } ss.

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _1-26-2013_     Signature: _Fannie Mitchell_

(Seal or Stamp)     Title: _____

My appointment expires: _____

Page 2

Exh 28 pg 3

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this __22__ day of __January__, 20_13_,
by first party, Grantor, _Boss Group MiNisTRies (a Tax exempt NoN Profit Organization_
whose post office address is _15030 S. River Dr. Miami F/A .33167_
to second party, Grantee, _Maurice Symonette_
whose post office address is _15020 S. River Dr. Miami Fla. 33167_

_____

WITNESSETH, That the said first party, for good consideration and for the sum of _____
_____ TEN Dollars _____ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of _____
State of _Florida_ to wit:

_Legal Discription 22 52 41 1.19 AC PB_
_44-46 Buscayne Gardens SEE F Part 1 Lot_
_105 Lot Size 100.000 X 515_

_Folio Number: 30 2123022 1050_

www.socrates.com

© 2004, Socrates Media, LLC
LF253WA • Rev. 04/04

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this __29th__ day of __January__, 20__13__,
by first party, Grantor, __Maurice Symonette__
whose post office address is __15 020 S. River dr miami Fla. 33167__
to second party, Grantee, __MACK Walls, Maurice Symonette + Curtis McNeal__
whose post office address is __15000 S. River dr miami FL. 33167__

WITNESSETH, That the said first party, for good consideration and for the sum of _____ __Ten Dollars__ _____ Dollars ($ __10.00__ ) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of _____ State of _____ to wit: __Legal Discription 22 52 41 1.19 AC PB 44-46 Biscayne Gardens See E Part 1 Lot 105 Lot Size 100.000 X 515__

__Folio Number 30 212302210 -50__

Dated __1-29-2013__   Signature __Fannie Mitchell__

(Seal or Stamp)

Title: _____

My appointment expires: _____

Page 2

Assessor's Property Tax Parcel/Account Number(s):

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _James Buckman Jr._

Printed Name of Witness: _James Buckman Jr._

Signature of First Party: _Maurice S._

Printed Name of First Party: _Maurice Symonette_

Address of Witness: _1977 NE 119th Rd Miami Fl 33181_

2nd witness Joshua Nichloson
1977 NE 119th Rd Miami Fl- 33181

State of _Florida_
County of _Miami Dade_ } SS.

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____      Signature: _____

(Seal or Stamp)                      Title: _____

My appointment expires: _____

Dated _1-29-2013_      Signature _Fannie Mitchell_

(Seal or Stamp)        Title: _____

My appointment expires: _____

Exh 29

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.  2019-030415-CA-01
SECTION:  CA 20

JAMES BUCKMAN
    Plaintiff(s),

vs,

LANCASTER MORTGAGE  CO
    Defendant(s).

REASSIGNED BY BLIND
FILING TO SECTION: CA 02
PER ORDER OF ADM. JUDGE
THIS DATE: OCT 17 2019

97429

## ORDER OF RECUSAL

**THIS CAUSE,** came before the Court sua sponte, and the Court being fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED

1. That the undersigned Circuit Court Judge hereby recuses himself from further consideration of this case.

2. This case shall be reassigned to another section of the Circuit Civil Division in accordance with established procedures.

**DONE AND ORDERED** in chambers, at Miami, Dade County, Florida, this 17th day of October, 2019.

William Thomas
**CIRCUIT COURT JUDGE**

William Thomas
Circuit Court Judge

Mailing Service List:
JAMES BUCKMAN, 1977 NE 119TH  RD, MIAMI, FL 33181
MAURICE SYMONETTE, 4711 L J PARKWAY, UNIT  4208, SUGARLAND, TX 77479
LANCASTER MORTGAGE  CO
ONE WEST BANK
EMC MORTGAGE BANKERS LLC
MORTGAGE ELECTRONIC REGISTRATION SYSTEM
DEUTSCHE BANK NATL TR CO
MERS
SERVICING AGREEMENT SERIES RAST 2006 A 8
RESIDENTIAL ASSET SECURITIZATION TR 2006 A8 +

Exh. 30

Loan No:

Mortgagee: LEROY WILLIAMS

Address:  15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

Loan Amount: $46,000.00

## ALLONGE TO NOTE

PAY TO THE ORDER OF

RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Assistant Secretary,
Axiom Financial Services

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By:
Judy Faber, Vice President

MIN #: 100176105062733202
ARU 620017.01

WILLIAMS
Page 1 of 3

STATE OF FLORIDA, COUNTY OF DADE

November 18                21

Al Worrell Clerk #323263
28405376

Exh. 30

Loan No: ▆▆▆▆▆

Mortgagee: LEROY WILLIAMS

Address:   15020 SOUTH RIVER DRIVE
           MIAMI, FL 33167

Loan Amount: $ 446,000.00

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

### RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Assistant Secretary
Axiom Financial Services

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By: Judy Faber
Judy Faber, Vice President

MIN # 100176105062733202
RFC 620017.UFF

WILLIAMS

Page 1 of 1

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and
correct copy of the original as filed in this
office November 18 AD 19 21
HARVEY RUVIN CLERK of Circuit and County Courts

Deputy Clerk   /s/ Winfred Clark #323263
                                    28466376



·15020

CFN 2012R0182835
OR Bk 28033 Ps 1695; (1ps)
RECORDED 03/13/2012 16:05:04
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## CORRECTIVE ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F.S.695.25

MERS phone number: 1-888-679-6377
MIN: 100176105062733202

FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES, ("Assignor") whose address is P.O. Box 2026, Flint, MI 48501, assigned, transferred and conveyed to: U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, ("Assignee") whose address is 1100 Virginia Drive, Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005, and recorded July 29, 2005, in Official Records Book 23623, at Page 3231, of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF , AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

· as the same may have been amended from time to time.

The purpose of this Corrective Assignment of Mortgage is to correct the Assignment of Mortgage recorded on 11/20/2008 at 09:41:11 in 2008R0941616, of the official records of Miami-Dade County, Florida, by Harvey Ruvin, Clerk of Court.

* Changed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES as MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR HOMECOMINGS FINANCIAL LLC is not a valid entity

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this instrument on
Feb 14 _____, 2012.

By: _____
Print Name: Jacqueline Keeley
Title: Vice President

STATE OF Pennsylvania
COUNTY OF Montgomery

The foregoing instrument was acknowledged before me this 14 day of Feb 2012 by Jacqueline Keeley for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR AXIOM FINANCIAL SERVICES who is personally known to me.

Christine Morales
Notary Public:
My commission expires: 1/28/2015

Recording requested by, prepared under the supervision of and return to:
Ken Porter
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F10051160-GMAC MORTGAGE, LLC-

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

[INSERTDOC "M900105.rtf" KEEP_FONT]

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. ___ AD 20__
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk
#199207

F10051160

Book28033/Page1695 CFN#20120182835

Page 1 of 1



CFN 2008R0941616
OR Bk 26657 Pg 3525; (1pg)
RECORDED 11/20/2008 09:41:11
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDDATA ONLY F.S.§695.26

FOR VALUE RECEIVED, on or before April 19, 2007, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC, ("Assignor") whose address is _____ assigned, transferred and conveyed to: U.S. BANK N.A., ("Assignee") whose address is 1100 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated June 30, 2005 and recorded July 29, 2005 in Official Records Book 23623 at Page 3231 of the public records of MIAMI-DADE County, Florida, encumbering the following-described real property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S): LEROY WILLIAMS

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument on October 21, 2008.

Witness
Typed Name  Peggy Hong

Witness
Typed Name  Laurie Riley

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC
By: _____
Typed Name: SHIRLEY EADS
Title: VICE PRESIDENT

Attest:
Typed Name: Jeffrey Stephan
Title: Assistant Secretary

(Affix Corporate Seal)

STATE OF Pennsylvania
COUNTY OF Montgomery

BEFORE ME, the undersigned, personally appeared SHIRLEY EADS and Jeffrey Stephan as Vice President and Assistant Secretary respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC this 21st day of October, 2008.

Notary Public:
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Susan Turner, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Nov. 8, 2011
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Ralph McGrady
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
F07012148-GMAC MORTGAGE, LLC- 7440183937

FILE_NUMBER: F07012148

**\*F07012148\***

DOC_ID: M001100

**\*M001100\***



STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office November 19 AD 20 21
HARVEY RUVIN, CLERK, of Circuit and County Courts.
Deputy Clerk /s/ Wilfred Clark e323263
28469871

Book26657/Page3525     CFN#20080941616          Page 1 of 1

Exh. 33



Return To:
Axiom Financial Services
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

CFN 2005R0793767
OR Bk 23623 Pgs 3231 - 3250 (20pgs)
RECORDED 07/29/2005 12:41:05
MTG DOC TAX 1,568.00
INTANG TAX 896.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This document was prepared by:
Axiom Financial Services
10900 Stonelake Blvd Suite 350
Austin, TX 78759-5867

——————————[Space Above This Line For Recording Data]——————————

## MORTGAGE

MIN 100176105062733202

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2005 together with all Riders to this document.
(B) "Borrower" is LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is Axiom Financial Services

100176105062733                                     0506273320

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010   1/01

-6A(FL) (0005).02
Page 1 of 18      Initials __
VMP MORTGAGE FORMS - (800)521-7291

*This is a Fannie Mae who's Loan 83-3301 Rules you must say you have A Fannie Mae Also Allong*

*Exh. 34*

## Interest Only ADJUSTABLE RATE NOTE

(LIBOR Six-month Index (As Published In
The Wall Street Journal) — Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED
INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN
MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

| | | |
|---|---|---|
| June 30, 2005 | MIAMI | FL |
| | [City] | [State] |

15020 SOUTH RIVER DRIVE
MIAMI, FL 33167
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ $448,000.00 (this amount is called
"Principal"), plus interest, to the order of Lender. Lender is Axiom Financial Services. I will make all
payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of 6.125%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the 1st day of every month, beginning on August 1, 2005. Before the First
Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the
interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a
payment every month as provided below.

Initials: _____
Loan # ▮▮▮▮▮

MIN # 100176105062733202          WILLIAMS
INTNOTE1.UFF                      Page 1 of 7     AHL modified FannieMae 3530 (11/01)

F07012148

Exh. 35



**News**   **Images**   **Videos**   **Books**   **Shopping**

The New York Times
https://www.nytimes.com › business

## U.S. Bank Buys Stake in China

Jun 17, 2005 — Bank of America acquires 9 percent stake in China Construction Bank ... in 2003, making it the least burdened of China's...

Missing: ~~negotiates~~ | Show results with: negotiates



RAND Corporation
https://www.rand.org › 2012/05 › q...

## Questions After the First U.S. Bank Takeover by a Chinese State-Controlled Company

May 15, 2012 — Yet we have doubts about whether the United States has the appropriate framework to analyze them, and ultimately...

Missing: ~~2003 negotiates~~



Reuters
https://www.reuters.com › article › f...

FACTBOX-China to re-open

← → ⌂ ③

**12:30**                                300                        ॥ LTE 💯

G  MBS is Foreign OWNED                🎤 | ⦿

( News )  ( Images )  ( Shopping )  ( Videos )  ( Books )

Among the agency MBS that is foreign-owned, as of June 2020, 69.5 percent was held by just three nations – Japan, Taiwan, and China. Their combined share has increased since 2003 but has remained stable since 2014 .

📄  https://www.ginniemae.gov › ...  [PDF]                    ⋮

Foreign Ownership of agency MBS – Ginnie Mae

❓ About featured snippets        🏳 Feedback

📄  Ginnie Mae (.gov)                                              ⋮
   https://www.ginniemae.gov › ...  [PDF]

Foreign Ownership of Agency MBS

Sep 19, 2022 — Foreign investors have been a consistent source of capital for U.S. Agency mortgag...

24 pages · 902 KB

←              →              🏠              3️⃣

**12:42**
.ıll 5G 100



G   2003 China negotiates to ow.

News | Images | Videos | Books | Shopping

The New York Times
https://www.nytimes.com › business

## U.S. Bank Buys Stake in China

Jun 17, 2005 — Bank of America acquires 9 percent stake in China Construction Bank ... in 2003, making it the least burdened of China's...

Missing: ~~negotiates~~ | Show results with: negotiates



RAND Corporation
https://www.rand.org › 2012/05 › q...

## Questions After the First U.S. Bank Takeover by a Chinese State-Controlled Company

May 15, 2012 — Yet we have doubts about whether the United States has the appropriate framework to analyze them, and ultimately...

Missing: ~~2003 negotiates~~



Reuters
https://www.reuters.com › article › f...

## FACTBOX-China to re-open

←          →          ⌂          [3]

**1:01**  .ıll LTE 100

🔍 cic owns u.s. bank   ⟳   ⬆

---

@ https://financeband.com › is-us-bank-owned-by-china

**Is US bank owned by China? - FinanceBand.com**

Feb 9, 2022 · It is 70 percent owned by the Chinese government through **CIC**, the country's sovereign wealth fund and Huijin, a government run entity set up to invest in Chinese financial firms. Who is **U.S. Bank** owned by? U.S. Bancorp (stylized as us bancorp) is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware.

---

🔶 https://www.cnbc.com › id › 47360297

**Fed Clears Way for Chinese Firms to Buy US Banks - CNBC**

May 9, 2012 · It is 70 percent owned by the Chinese government through **CIC**, the country's sovereign wealth fund and Huijin, a government run entity set up to invest in Chinese financial firms. In the...

---

W https://en.wikipedia.org › wiki › U.S._Bancorp

**U.S. Bancorp - Wikipedia**

**U.S.** Bancorp (stylized as us bancorp) is an American **bank** holding company based in Minneapolis, Minnesota, and incorporated in Delaware. [4] It is the parent company of **U.S. Bank** National Association, and is the fifth largest banking institution in the United States. [5]

---

W https://en.wikipedia.org › wiki › Crédit_Industriel_et_Co...

**Crédit Industriel et Commercial - Wikipedia**

It has been majority owned by Crédit Mutuel, one of the country's top five banking groups, since 1998, and fully owned since 2017. History [ edit] Building at 66, rue de la Victoire in

---

         

Exh. 39

**7:06**　　　　　　　　　　.ıll LTE ⑥⓪

( News )　( Images )　( Videos )　( Books )　( Shopping )

[FRB]　Federal Reserve Board (.gov)
　　　　https://www.federalreserve.gov › ... [PDF]

# BHC Act/CIC

Aug 5, 2008 — CIC is wholly owned by the goverment of China and operates under the direct...

6 pages · 346 KB

You visited this page on 7/25/23.

## People also search for

Q　CIC International Co., Ltd

Q　Who owns China Investment Corporation

Q　CIC China

Q　China Investment Corporation subsidiaries

Q　China Investment Corporation portfolio

Q　China Investment Corporation annual report

🔵　Reuters
　　　https://www.reuters.com › article

# China sovereign fund CIC says

🔒 Q the cic is owned by chinese governme



Exh. 40

/ Pretrial Practice & Discovery / Practice Points

March 30, 2020

**PRACTICE POINTS**

# Withholding Documents on the Basis of an Objection: What to Know about Rule 34(B)(2)(C)

Certain commonplace objection practices are explicitly prohibited by the Federal Rules of Civil Procedure.

By Ashley P. Hayes

Share:

Objecting to discovery requests is a routine but significant part of the discovery process. Objections are critical tools that allow attorneys to protect clients' interests and rights. But certain objection practices



**EXH.41 pg1**

**WESTERN UNION**
**PAYMENT SERVICES**

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Dec. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Nov.30, 2006 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:45 A.M. Nov. 30,2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is nossary.
This is not a bill. Do not mail payment.
Retain this letter for your records.

**EXH.41 pg2**

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867



Jan. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Dec. 31, 2006 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:40 A.M. Dec. 31, 2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is nessary.
This is not a bill. Do not mail payment.
Retain this letter for your records.

**EXH.41 pg3**



AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Feb. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Jan 31, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail. payment.
Retain this letter for your records.

**EXH.41 pg4**

**WESTERN UNION**
**PAYMENT SERVICES**

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Mar. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Feb. 28, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation, we have initiated an automated clearing house (ACH) debit to withdraw the amount deposited above from your specified bank account to make the payment that you requested included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department at 188 832 7090

Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

## EXH.41 pg5

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5367

April 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | March 30, 2007 |
| Payable To: | Axiom Financial Services |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 11:51 A.M., March 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin TX 78759-5867

Important information

Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

**EXH.41 pg6**

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5867

May 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

Bank:                          WACHOVIA BANK, NA
Bank Account Number:           ****0274
Date of Transaction:           April 30, 2007

Payable To:                    Axion Financial Services
Amount of Payment:             $2286.67

Customer Reference:            0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:00 A.M., April 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.

Thank you for your business.
                               Axiom Financial Services
                               10900 Stone Lake Blvd Suite 350
                               Austin Tx 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary.

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

**EXH.41 pg7**

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

June 1, 2007

LEROY   WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | May 30, 2007 |
| Payable To: | Axion Financial Services |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:38 A.M., May 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd Suite 350
Austin Tx 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is nessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

Exh.42

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-ca1

April 1,2010

US Bank, N.A.
    Plaintiff(s)

Vs.

Leroy Williams,
    Defendant(s)

_____/

ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution
Served on April 11,2008. The court finds that (1) notice prescribed by rule 1.40 (e)
Was served on April 11,2008; (2) their was no record activity for the year preceding
Service of the foregoing notice; (3) no stay has been issued or approved by the court
And (4) no party has shown good cause why this action should remain pending.
Accordingly,
IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice
DONE AND ORDERED in chambers, at Miami, dade county, Florida this 31th day of
March, 2010.

APR 06 201        APR 06 2010

CIRCUIT COURT JUDGE

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

CC - All parties

STATE OF FLORIDA: COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original filed in this office _____ 10/22 ____ AD 20 21
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____
                                        MONA BRUNO #79806

Bk 27244 Pg 4193 CFN 20100237159 04/09/2010 12:47:17 Pg 1 of 1 Mia-Dade Cty, FL

Exh. 43
Pg.1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

US BANK, N.A.,
Plaintiff,

CASE NO.      2007-12407-CA
vs.                        DIVISION      32

LEROY WILLIAMS; MARK WELLS; FRANKLIN
CREDIT MANAGEMENT CORPORATION; CITY
OF NORTH MIAMI;
Defendant(s).

SPACE FOR RECORDING ONLY F.S §695.26

## FINAL ORDER DISMISSING CASE, CANCELING FORECLOSURE SALE, CANCELING NOTICE OF LIS PENDENS, AND SETTING ASIDE FINAL SUMMARY JUDGMENT AND SUBSTITUTING PHOTOSTATIC COPIES

THIS CAUSE having come on before the Court, ex parte, pursuant to the Motion filed by the Plaintiff, pursuant to Section 702.07 Florida Statutes (2005), and the Court being otherwise fully advised in the premises, it is,

ORDERED AND ADJUDGED as follows:

1.      The case be and the same hereby is dismissed, but without prejudice to the future rights of the Plaintiff to bring an action to foreclose the mortgage which is the subject matter of the instant cause.

2.      All Counts of the Complaint against Defendants: LEROY WILLIAMS; MARK WELLS; FRANKLIN CREDIT MANAGEMENT CORPORATION; CITY OF NORTH MIAMI; are hereby dismissed.

3.      Any scheduled foreclosure sale is canceled.

FILE_NUMBER: F07012148

Serial: 13666522
DOC_ID: M010502

Exh 43
Pg 2

4.      The Notice of Lis Pendens filed by Plaintiff and recorded in the public records of MIAMI-DADE

County, Florida, regarding the below-described property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO
THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF
THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA,

be and same hereby is canceled, vacated, discharged and shall be of no further force or effect, and the Clerk is hereby

directed to record this Order to reflect same.

5.      The Final Summary Judgment heretofore entered on August 09, 2007, be and the same hereby is set

aside and shall be of no further force or effect.

6.      The Plaintiff requests that the original Note and Mortgage be returned to the Plaintiff and

photostatic copies shall be substituted in their place.

DONE AND ORDERED in Chambers in MIAMI-DADE County, Florida, this _____ day of

_____, 2010.

JUN 23 2010

VALERIE R. MANNO SCHURR
Circuit Court Judge

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

Copies furnished to:
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
All parties on the attached service list.
F07012148 - M010502
GMAC-CONV - shiven



6:47    .ıll LTE 100

Exh. 44

GMAC is
Ally Bank

---

abc https://abcnews.go.com › Business › story?id=7599846...

## GMAC Bank re-brands itself as Ally Bank - ABC News

As of Friday, **GMAC Bank** has become **Ally Bank**, which will offer a variety of savings products, including no-penalty certificates of deposits, online savings accounts and money market accounts. "We are launching a new brand with a new approach of treating customers with total transparency," said **GMAC** Chief Executive Al de Molina.

---

W https://en.wikipedia.org › wiki › Ally_Financial

## Ally Financial - Wikipedia

**Ally** is one of the largest car finance companies in the U.S., providing car financing and leasing for 4.5 million customers and originating 1.4 million car loans annually. It is on the list of largest **banks** in the United States by assets and has 2.0 million depositors. [2]. [1]

---

a https://www.ally.com › help › home-loans › general-sup...

## Ally Home Loans Help Center: General Support FAQs | Ally

About Us Checking & Savings Investing & Retirement Home Help & FAQs Home Loans General Support 1-855-256-2559 Mon - Fri, 9 am - 9 pm ET, Sat 10 am - 4 pm ETMonday through Friday, 9 am - 9 pm ET, Sat 10 am - 4 pm ET General Support FAQs Include your loan number on all supporting documentation.

---

MI https://moneyinc.com › ally-bank

## 20 Things You Didn't Know About Ally Bank - Money Inc

**Ally** Financial was previously known as **GMAC** If you've ever had an auto loan through **GMAC**, then you've already had experience with **Ally Bank**. **GMAC** is the acronym for General Motors Acceptance Corporation. The company is an American holding company that specializes in auto financing and much more.

Exh. 45



Ally is
U.S. Bank

Exh. 46
Pg. 1

QWR ON NEXT PAGE

In the circuit court of the 11th judicial circuit in and For Dade county, florida

US Bank, N.A.
Plaintiff(s)

vs.

Leroy Williams & Mack L. Wells
Defendant

case no: 2010-61928-ca-01

4/11/2011

## Motion to dismiss

because this case has already been dismissed with prejudice under case no 2007-12407ca1 dated 4/1/10 by cc judge Valerie Manno Schurr see ex. A. this new case whose case no is 2010-61928-ca-01 is resjudicata can't be brought up again and the house has been transferred with new owners on deed. The third DCA no 87752 Nov.24th 1987 the people and descendants has a right to be heard and present case the court is obligated to hear and address issues.

Mack L. Wells
15020 S.River Dr.
Miami,Fl 33167

Motion to Keep Case)
dismiss (rest judicator)

Certified Mail No. _____

Re: Qualified Written Request, Formal Protest, and Dispute of Alleged Debt
Validity of Alleged Loan                    and Alleged Loan

Dear Sir / Madam

This letter shall serve as my formal Qualified Written Request to obtain all records and documents pertaining to this loan and my Formal Protest / Dispute of alleged Debt Validity.

Pursuant to RESPA ♣ 6(e)(1)(B) and Reg. X ♣ 3500.21 (f) 2, this letter is a "qualified written request". I have reason to believe certain Truth in Lending disclosures may have been withheld and loan-servicing errors may have occurred. Consequently, please send:

1.   Certified copy of my Promissory Note, including assignment Allonge.
2.   The security instrument, any modifications, endorsements, extensions, addenda, and all information related to items (1) and (2) above.
3.   The complete pay history from date of origination, including any portion of the pay history that originated with prior servicer(s).
4.   Promissory Note Deposit, and Transaction Account records.
5.   Name, address, and contact information of the Promissory Note Document Custodian.

Retention of payment history records are sometimes stipulated by states ranging from seven years to complete life of the loan. If you do not have a portion of the pay history or records requested related to a prior servicer(s). Please forward a copy of this notice to said prior servicer(s), and provide me with the name, address, and phone number of the prior servicer(s)

The above information may be sent by regular mail to the address provided.

Thank you for your cooperation. Please send a letter if you are unable or unwilling to send me this information or if you cannot send it within the twenty business day response requirements.

Very truly yours,

_Mack L Wells_

Mack L. Wells
15820 S. River Dr.
Miami, FL 33167

Exh.46
pg 3

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

US Bank (NA)
, Plaintiff

vs.

Mack L. Wells
Defendants.

2007-12407-CA-01

## OPPOSITION TO PLAINTIFFS MORTGAGE FORECLOSURE COMPLAINT, AND PLEA OF NUL TIEL RECORD

Comes now, Mack L. Wells  I hereby deny the existence of Plaintiff's ownership of the subject Promissory Note or any such record of alleged ownership by the Plaintiff. Under Florida Unfair Trade and Deceptive Practices Act, the Florida Credit Disclosure Act, Fraudulent Concealment, and under the common law of fraud and negligence. My sale and credit documents, including credit applications, promissory notes, and certificates of insurance, were altered, falsified and forged. The forgeries are part of a scheme by the plaintiff and their attorney

to shield the true nature of the transaction; source of funding, illegal use of the Promissory Note and Mortgage", and the improper and misleading reporting of the ownership status of the alleged Promissory Note and Mortgage.

The true construction of that part of the constitution and laws of the United States will confine their operation to evidence only, and will not justify such an alteration in the rules of pleading. The 'effect' to be given to such copies is their 'effect' as evidence, for it [11 U.S. 481, 482] is not pretended that an execution could issue here upon such a record. [T]he record as alleged in this case is not the original, it is not certified or authenticated as a copy; and therefore it can not be offered to the Court upon the plea of Nul Tiel Record, for under that issue this record can not be admitted. The original must be produced and inspected. In every case

Exh46
Pg.4

of debt or contract the form and effect of the plea are determined by the dignity of that debt or contract; in other words by the dignity of the evidence, whether it be of record, by specialty, or simple contract."
**MILLS v. DURYEE, 11 U.S. 481 (1813)**

"NUL TIEL RECORD, pleading. No such record- 2.When a party claims to recover on the evidence of a record, as in an action on scire facias, or when he sets up his defence on matter of record, as a former acquittal or former recovery, the opposite party may plead or, reply nul tiel record, there is no such record; in which case the issue thus raised is called an issue of nul tiel record, and it is tried by the court by the inspec- tion, of the record. Vide 1 Saund. 92, n. 3 12Vin. Ab.188; 1 Phil. Ev. 307,8; Com. Dig. Bail, R. 8 - Certiorari, A 1 Pleader, 2 W 13, 38 - Record, C; 2 McLean, 511; 7 Port. 110; 1 Spencer, 114. Bouviers Law Dictionary 1856 Edition "

"NUL TIEL RECORD. No such record. A plea denying the existence of any such record as that alleged by the plaintiff. It is the general plea in an action of debt on a judgment, *Hoffheimer v. Stiefel*, 17 Misc. 236, 39 N.Y.S. 714; *Watters v. Freeman Bros.*, 16 Ga.App. 595, 85 S.E. 931. Judgment of nul tiel record occurs when some pleading denies the existence of a record and issue is joined thereon; the record being produced is compared by the court with the statement in the pleading which alleges it; and if they correspond, the party asserting its existence obtains judgment; if they do not correspond, the other party obtains judgment of nul tiel record (no such record)." *Black's Law Dict. 4th ed.*

## MEMORANDUMS OF LAW

### MEMORANDUM OF LAW IN SUPPORT OF THE POINT OF LAW THAT PARTY ALLEGING TO BE PLAINTIFF AND CREDITOR MUST PROVE STANDING

### PLAINTIFF BANK HAS NO STANDING TO MAINTAIN THIS ACTION WITHOUT APPEARING AND PRESENTING THE ORIGINAL NOTE TO PROVE STANDING UNDER PLEA OF NUL TIEL RECORD

1. I/we, Mac L Wells : will observe that existing rules of court and law in Florida requires that the Plaintiff Bank in a collection action demonstrate standing to collect by establishing the fact of their beneficial interest in the Promissory Note. In example, in <u>Kane Plaza Associates and Northwestern Mutual</u>

Exh. 46
Pg. 5

Life Insurance Co. v. Chadwick, 486 S.E.2d 465, 126 N.C.App. 661 (N.C.App. 07/01/1997), (See attached "Exhibit "A" a true copy of Kane Plaza, etc.) the North Carolina court of appeals held for Chadwick against collection of a note improperly asserted by the Plaintiff. In pertinent part the court held that:

> "In its first cause of action, Kane Plaza has sought payment of a promissory note. In order to recover on such an instrument, the party seeking relief must show execution, delivery, consideration, demand, and nonpayment. Sam Stockton Grading Co. v. Hall, 111 N.C. App. 630, 632, 433 S.E.2d 7, 8 (1993). **Likewise, that party** [ie: party seeking emforcement] **must be a real party in interest, i.e., it must assert legal rights that will be determined by the litigation.** See N.C.G.S. § 1-57 (1996); N.C.R. Civ. P. 17(a) (1990); Parnell v. Insurance Co., 263 N.C. 445, 448-49, 139 S.E.2d 723, 725 (1965)." See: Kane Plaza, supra, at paragraph 28, etc. [boldface and underlined emphasis added to original text]

2. As in Kane Plaza, the Plaintiff in this case seeking enforcement has utterly failed to assert its standing to collect on this alleged note by production of the said note as evidence of its *bona fide* and *standing as a real party in interest* and *holder* of a beneficial interest in the subject note.

3. As was further made explicit in Kane, supra,

> [t]he note was made payable to "J. M. Kane & Co. or order," and thus constituted an order note, N.C.G.S. § 25-3-110 (1986), which may be negotiated by delivery only upon indorsement on the instrument or a firmly attached writing, N.C.G.S. § 25-3-202 (1986). **Absent the requisite indorsement, no presumption exists that the holder, even if a transferee, qualifies as owner of the note.** G.S. § 25-3-201(3) and Official Comment 8 (1986). See: Kane Plaza, supra, at paragraph 31. [boldface and underlined emphasis added to original text]

4. Again, as in **Kane Plaza**, supra, the problem here is that the Plaintiff has repeatedly ignored my attempts to establish that Plaintiff Bank is the bona fide holder in due course, the real party in interest, and/or the true, correct and lawful holder of beneficial interest in the subject note sufficient to maintain an action in collection. And, as was stated above, the reason believed for Plaintiff's failure is simply because Plaintiff Bank does not possess the Note for the following simple reason that Plaintiff bank does not have an ownership or beneficial interest in the

Exh.46
Pg.6

Note.

5. In short, the Plaintiff Bank has failed utterly to demonstrate standing in the manner required by existing Florida law.

6. Many cases support my argument that Plaintiff Bank in this case has no standing to maintain a collection action on a Note not before the court. For example, and citing the above discussed Kane Plaza case, in Walker v. Sloan, 137 N.C.App. 387, 529 S.E.2d 236 (N.C.App. 04/18/2000) the North Carolina appellant court said in pertinent part...

> "[a] motion to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted challenges the legal sufficiency of the pleading. Kane Plaza Associates v. Chadwick, 126 N.C. App. 661, 486 S.E.2d 465 (1997). Dismissal is warranted "(1) when the face of the complaint reveals that no law supports plaintiff[s'] claim; (2) when the face of the complaint reveals that some fact essential to plaintiff[s'] claim is missing; or (3) when some fact disclosed in the complaint defeats plaintiff[s'] claim." Peterkin v. Columbus County Bd. Of Educ., 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997) (emphasis omitted). In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true. Kane Plaza, 126 N.C. App. At 664, 486 S.E.2d at 467.

7. Further, in Barclays Bank PLC v. Johnson, 499 S.E.2d 768 (N.C.App. 04/30/1998), the North Carolina court of appeals stated in pertinent part, again citing Kane Plaza as follows:

> "[t]o recover on a promissory note, the party seeking relief must show execution, delivery, consideration, demand, and nonpayment. Sam Stockton Grading Co. v. Hall, 111 N.C. App. 630, 632, 433 S.E.2d 7, 8 (1993). Moreover, the party seeking to enforce the promissory note "must be a real party in interest." Kane Plaza Associates v. Chadwick, 126 N.C. App. 661, 664, 486 S.E.2d 465, 467 (1997); N.C. Gen. Stat. § 1-57; N.C. R. Civ. P. 17(a)." See: Barclays Bank, supra. [boldface and underlined emphasis added to original text]

6 of 16

8. And in, Musselwhite v. McNeill, 154 N.C.App. 742, 572 S.E.2d 874 (N.C.App. 12/17/2002, the North Carolina court of appeals held, uniformly with Kane Plaza and Walker, and Barklays Bank, supra, that "...the party seeking to enforce the

Exh 46
Pg 7

promissory note 'must be a real party in interest'." Citing from Kane Plaza. Supra.

9. I/we, Mack Wells , will further Note that like in the Florida MERS cases, each of the above cited cases from North Carolina Courts of Appeal have each apparently relied upon the underlying expressly stated section of the *Uniform Commercial Code* respecting negotiable instruments as codified in North Carolina at N.C. Gen. Stat. § 25-3-109 (1986). Since, it is the *"Uniformity"* of the fundamental law upon which the North Carolina Appellate Court have relied, I am comfortable in citing for its supporting and persuading rational the Pinellas County Florida Circuit Court case of: In re MERS (ie: IN RE MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), (See attached list of Defendants/Case#), which was rendered out of the Circuit Court of Judge Walt Logan on 18 August 2005. (See "Exhibit "B"" already filed into this case and attached to Defendant's Motion To Dismiss, a true copy of the opinion rendered and entered by Judge Walt Logan in the Pinellas County Florida Circuit Court case styled In Re MERS) That consolidated case of some twenty (20) separate cases in which MERS was the moving party in a foreclosure action, the court, on its own motion, initiated a show cause hearing, again on its own motion, to dismiss and held extensive hearings accordingly which in the end found disposition of all twenty (20) cases by dismissal with prejudice for want of MERS standing to proceed in a collection action by foreclosure. See: In Re MERS, supra. As stated in the MERS case in the Pinellas County Florida Circuit Court of Judge Walt Logan:

"[b]ased upon information gained at the return hearing, it appears that the real party in interest in many of these cases is not known at the time Complaint for Mortgage Foreclosure is filed. The concept is foreign to this court. Careful review of the argument presented by attorney Brochin does not convince the Court that MERS is a real party in interest in any sense."

10. The court went on to conclude that

"Based upon the above analysis, the Court finds it appropriate to dismiss with prejudice as to MERS the complaints as not having been filed by the proper party and therefore the Complaints do not state a cause of action and are dismissed. Morales and Dollar Systems, Inc. supra."

11. I/we Mack L.Wells are also comfortable in citing for its

Exh-46
Pg.8

supporting and persuading rational the Miami-Dade County, Florida Circuit Court Case of MERS ie. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., vs ENZO CABRERA, ET AL., (see attached list of defendants case #s) also (see true and correct copy of transcript of that proceeding) which was rendered out of the Circuit Court of Miami-Dade County Florida by Judge Jon I. Gordon on the 28th day of September 2005.(See **Exhibit "C"** attached hereto and made a permanent part of the record in the present case. In these consolidated cases Judge Gordon's Order on page 9 under **SHAM PLEADINGS** states:

> "Now we address the more troubling question of whether MERS has committed fraud upon the Court by knowingly filing pleadings which contain allegations which are clearly false, as a mere pretense set up in bad faith and without color of fact. ""A plea is considered 'sham' when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue.'" See Rhea v. Halkney, 157 So. 190, 193 (Fla.1934).

Further Judge Gordon went on to say in MERS vs. Cabrera Supra:

> "[T] he Court has the inherent authority to present evidence or to call witnesses in the interest of justice and in the ascertainment of the truth. See Ritter v. Jimenez, 343 So. 2d 659 (3d D.C. A. Fla. 1977)."

On page 12 of Judge Gordon's Order Supra, he states:

> "[T]he problem for MERS is obvious; <u>it is not the "owner", ought not to have ever plead it and cannot prove it."</u> MERS v. Cabrera Supra.   **Emphasis Added**

Also on page 15 Supra, Judge Gordon states:

> "The evidence is clear and convincing the MERS's allegations that it "owned" "held" and "possessed" the Mortgage Notes in questions are clearly, palpably and inherently false based upon the plain and conceded facts in this case. The evidence is likewise clear and convincing that MERS at all time prior to making these allegations acted in bad faith knowing them to be false and indeed, it was forewarned of the potential consequences for making such false allegations. The falsity of the allegations is readily apparent from a cursory review of their own documents readily available on their official web site and incorpated by reference into the Amended Complaint in Case # 05-11570. MERS created a world of electronic

Exh. 46
Pg.9

transactions which does not readily integrate into existing Florida law and procedure: it chose to fabricate the facts and to create a charade to give it appearance of proceeding lawfully——in short, the ends justified the means." MERS v. Cabrera Supra. **Emphasis added**

Further in Judge Gordon's order beginning on page page 16 and continues on page 17 in # 4:

"[I]t is ORDER and ADJUDGED as follows: [T]hat the above consolidated actions are hereby dismissed as a sham and/or a frivolous pleading without prejudice..." MERS v. Cabrera Supra. **Emphasis added**

## DECLARATION

As soon as possible an order shall be prepared and submitted to the court for ratification, unless prior to that time, _____ , presents a competent fact witness to produce the Original Promissory Note to prove they are the real party in interest and rebut all other facts presented in this pleading making their statements **Under penalty of perjury**, supporting all the rebutted articles with evidence which would be admissible at trial and prove that their filings are not a "SHAM". Without the proper parties before the court, this honorable court lacks jurisdiction to Proceed and this case should be dismissed with prejudice if Plaintiff fails to appear and produce the Promissory Note in Question under plea of nul tiel record.

**WHEREFORE PREMISES CONSIDERED, I,** requests that this court grant the following relief:   *MacK.L.Wells*

a)  As soon as possible, a hearing should be ordered to examine the Promissory Note in question in this case unless prior to that time, ___ dismiss this case with prejudice,

Exh.46
Pg.10

b) That the court find counsel for Plaintiffs and Plaintiffs guilty of fraud upon the court and at a minimum sanction them for having filed palpably or inherently false pleas into this case they must have known to be untrue,

c) That this court grant dismissal of this case with prejudice as to the Plaintiff re-filing in this case, and

d) That this court grant to *Mac K. L. Wells* any and all other relief to which is just in law and/or in equity, and

e) demand Justice.

Respectfully Prepared and Submitted

by: *M. L. Wells*

Mack Wells
15020 S. River Dr,
By: Miami, FL 33167

**Certificate of service**

I/we, *Mack Wells*, certify that on *April 7*, 20**, I/we caused to be mailed a true and correct copy of the above and foregoing **OPPOSITION TO PLAINTIFFS MORTGAGE FORECLOSURE COMPLAINT, AND PLEA OF NUL TIEL RECORD** by certified mail, return receipt requested to his personal capacity,

US, Bank
1203 Hwy St, Suite 107
Tallahassee, FL 3301

*M. L. Wells*

Mack Wells
15020 S. River Dr,
Miami, FL 33167

Exh. 47



**Chief Judge Laurel M. Isicoff and Judge Mindy A. Mora**

Filing # 176438130 E-Filed 06/29/2023 12:37:34 PM

*Exh. 50*
*P91.*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. BANK, NATIONAL ASSOCIATION, AS   GENERAL JURISDICTION DIVISION
TRUSTEE FOR RASC 2005AHL3,
      Plaintiff,                      CASE NO. 2010-61928-CA-01

vs.

LEROY WILLIAMS; et. al.,
      Defendants.

_____/

**AMENDED NOTICE OF HEARING**
(ALL PARTIES TO APPEAR VIA ZOOM)
*(Amended solely to include Zoom credentials)*

**PLEASE TAKE NOTICE** of the following hearing to be held in the above-captioned matter:

| MATTER: | PLAINTIFF'S MOTION TO RESET FORECLOSURE SALE FOR EARLIEST AVAILABLE FORECLOSURE SALE DATE AND TO DIRECT CLERK NOT TO CANCEL THE FORECLOSURE SALE DUE TO BANKRUPTCY FILING BY ANY ENTITY PURSUANT TO THE BANKRUPTCY COURT'S MAY 2, 2023, ORDER FILED ON MAY 8, 2023 DOCKET ENTRY NO. 291 |
|---|---|
| DATE: | JULY 3, 2023 |
| TIME: | 10:00 AM. |
| JUDGE: | HON. CARLOS LOPEZ |
| LOCATION: | VIRTUAL COURTROOM - ZOOM MEETING<br>Zoom Meeting ID: 95346199352<br>Zoom Dial In Number: +1 786-635-1003<br>Zoom Link: https://zoom.us/j/95346199352 |

**IF YOU ARE A PERSON WITH A DISABILITY WHO NEEDS ANY ACCOMMODATION IN ORDER TO PARTICIPATE IN THIS PROCEEDING, YOU ARE ENTITLED, AT NO COST TO YOU, TO THE PROVISION OF CERTAIN ASSISTANCE. PLEASE CONTACT MARIA E. MIHAIC, THE ELEVENTH JUDICIAL CIRCUIT COURT'S ADA COORDINATOR, LAWSON E. THOMAS COURTHOUSE CENTER, 175 NW 1ST AVE., SUITE 2702, MIAMI, FL 33128, TELEPHONE (305) 349-7175; TDD (305) 349-7174, FAX (305) 349-7355 AT LEAST 7 DAYS BEFORE YOUR SCHEDULED COURT APPEARANCE, OR IMMEDIATELY UPON RECEIVING THIS NOTIFICATION IF THE TIME BEFORE THE SCHEDULED APPEARANCE IS LESS THAN 7 DAYS; IF YOU ARE HEARING OR VOICE IMPAIRED, CALL 711.**

*Exh. 50*
*Pg 2*

I HEREBY CERTIFY that a true and correct copy hereof was served electronically or via U.S. Mail on June 29, 2023 to all persons shown on the following service list.

BROCK & SCOTT, PLLC
Attorney for Plaintiff
4919 Memorial Hwy Suite 135
Tampa, FL 33634
Phone: (813) 251-4766
Fax: (954) 618-6954
FLCourtDocs@brockandscott.com

By _/s/ Justin J. Kelley_
Justin J. Kelley, Esq.
Florida Bar No. 32106

## SERVICE LIST

The following persons were served by e-mail:

Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I
c/o Jessica F. Watts, Esq.
19321 US Highway 19, Suite 512
Clearwater, FL 33764
eservice@quinnlegal.com; Kmiller@quinnlegal.com

Miami-Dade County, Florida
c/o Altanese Phenelus, Esq.
111 NW 1st Street
Miami, FL 33128
yvaldes@miamidade.gov

City of North Miami (City)
Jennifer L. Warren
776 N.E 125th Street
North Miami, FL 33161
cityattorney@northmiamifl.gov

Mack Wells
c/o Nashid Sabir, Esq.
20401 NW 2nd Avenue, Suite 300E
Miami, FL 33169
nashidlaw@gmail.com

U.S. Bank, National Association, as Trustee for RASC 2005AHL3
% Michael L. Eisenband, Esq. & Nicole R. Topper, Esq.
500 E. Broward Blvd., Suite 2100



Exh. 54

5:48   .ıɪɪ 5G⁺ 89

🌐 Blaine Snider - Co-Founder at Trexsta...   ↻   ⬆

All   Images   Videos   News   Maps   Shopping

All regions· ▼   Safe search: moderate ▼   Any time ▼

🔗 https://www.linkedin.com › in › blaine-snider-79a27274
**Blaine Snider - Co-Founder at Trexstays furnished housing - LinkedIn**
**Blaine Snider** Managing partner at **Trexstays** and BBC Real Estate Group, LLC. Los Angeles Metropolitan Area 420 followers 412 connections Join to view profile **Trexstays** RCC riverside About

🔗 https://www.linkedin.com › pub › dir › Blaine › Snider › u...
**7 "Blaine Snider" profiles | LinkedIn**
There are 7 professionals named "**Blaine Snider**", who use LinkedIn to exchange information, ideas, and opportunities. ... Managing partner at **Trexstays** and BBC Real Estate Group, LLC.

🔗 https://www.linkedin.com › pulse › company-profile-furn...
**Company Profile - Furnished Finder - LinkedIn**
**Co-Founder**/CEO @ **Furnished** Finder & KeyCheck Published Jul 30, 2019 + Follow **Furnished** Finder is an online marketplace for traveling professionals to find and book monthly **furnished**...

🔗 https://sr.linkedin.com › posts › blaine-snider-a6958a25...
**Blaine Snider on LinkedIn: #relationshipsmatter #trustandcredibility # ...**
**Blaine Snider's** Post Blaine Snider Logistics Specialist at Alkaios Transportation 6d

‹   ›   🔥   1   ···

Exh.56
Pg 1

## IN THE CIRCUIT COURT OF THE ELEVENTH
### JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
### CIVIL ACTION

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3,
Plaintiff,

**10 - 6 1 9 2 8 CA 0 5**

vs.

CASE NO.
DIVISION

LEROY WILLIAMS, THE UNKNOWN SPOUSE OF LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, HOKE WILLIAMS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I; WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION; MIAMI-DADE COUNTY; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession,
Defendant(s).
_____/

### MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, sues Defendants, LEROY WILLIAMS, THE UNKNOWN SPOUSE OF LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, HOKE WILLIAMS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I; WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION; MIAMI-DADE COUNTY; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession, and alleges:

### COUNT I - MORTGAGE FORECLOSURE

1. This is an in rem action to foreclose a mortgage on real property located and situated in MIAMI-DADE County, Florida.

2. This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, as amended. The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

3. On June 30, 2005, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on July 29, 2005, Official Records Book 23623 at Page 3231, of the Public Records of MIAMI-DADE County, Florida, (All subsequent

Exh. 56
pg. 2

recording references are to the public records of MIAMI-DADE County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4.      Mortgagee shown on the Mortgage attached as an exhibit is the original Mortgagee. Plaintiff is now entitled to enforce Mortgage and Mortgage Note pursuant to Florida Statutes § 673.3011.

5.      The Property is now owned of record by Defendant(s), LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, and HOKE WILLIAMS.

6.      The Mortgage Note and Mortgage are in default. The required installment payment of January 1, 2007, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the January 1, 2007, payment. The last payment received was applied to the December 1, 2006, installment, and no subsequent payments have been applied to the loan.

7.      Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.      Plaintiff must be paid $448,000.00 in principal on the Mortgage Note and Mortgage, together with interest from December 1, 2006, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.      All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.     Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.     The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.     THE UNKNOWN SPOUSE OF LEROY WILLIAMS may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

13.     DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Mortgage recorded in Official Records Book 23623, Page 3251; an Assignment of Mortgage recorded in Official Records Book 25259, Page 4220; an Assignment of Mortgage recorded in Official Records Book 26765, Page 4470, or may otherwise claim an interest in the Property.

14.     WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Home Equity Line of Credit Mortgage recorded in Official Records Book 26023, Page 4882, or may otherwise claim an interest in the Property.

15.     MIAMI-DADE COUNTY may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Code Enforcement Lien recorded in Official Records Book 27018, Page 326; a Code

Exh.56
Pg.3

Enforcement Lien recorded in Official Records Book 26866, Page 3536; a Code Enforcement Lien recorded in Official Records Book 26371, Page 4436; a Code Enforcement Lien recorded in Official Records Book 25988, Page 2508; a Code Enforcement Lien recorded in Official Records Book 25813, Page 2466, or may otherwise claim an interest in the Property.

16.     TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

## COUNT II – REFORMATION - Mortgage

17.     This is an action to reform a Mortgage, which has been recorded in the Public Records of MIAMI-DADE County, Florida. This is an equitable action with no adequate remedy at law.

18.     At all times material to this cause, LEROY WILLIAMS, A SINGLE MAN owned real property in MIAMI-DADE County, Florida, described as follows:

> LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF , AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

This is evidenced by the true and correct copy of the Warranty Deed in the Official Records Book 23623 at Page 3230 attached hereto as an Exhibit.

19.     On June 30, 2005, LEROY WILLIAMS, AN UNMARRIED MAN executed and delivered to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AXIOM FINANCIAL SERVICES a Mortgage that was recorded on July 29, 2005 in Official Records Book 23623, Page 3231 of the Public Records of MIAMI-DADE County, Florida. A true and correct copy of the Mortgage is attached hereto as an Exhibit.

Exh. 36
Pg 4

20.    Inadvertently, and contrary to the clear intentions of the parties to the Mortgage, a scrivener's error resulted from mutual mistake. Consequently, the legal description contained the following underlined and highlighted error:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF , AS RECORDED IN PLAT BOOK 44, PAGE 45, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

**PAGE 45-SHOULD BE PAGE 46**

21.    Based on these errors; the document does not accurately reflect the intentions of the parties to the Mortgage.

22.    Equity requires that the Court reform the legal description to conform with the first legal description referenced in this Count.

23.    The reformation sought will not prejudice any parties to this action.

WHEREFORE, the Plaintiff requests that the Court reform the legal description in the Mortgage to correct the scrivener's error and to reflect the true intentions of the parties.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
(813)  251-4766

By: _____
Robert Schneider
Florida Bar No. 52854
David M. Borrego
Florida Bar No. 36844
Ronald E. Pereira
Florida Bar No. 597872

GMAC-CONV-R-UNASSIGNED

Exh. A pg 6
Exh. 56

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

July 20, 2010

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

Re:
Loan Number:
Mortgage Servicer GMAC MORTGAGE, LLC
Creditor to whom U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR
the debt is owed: RASC 2005AHL3
Property Address: 15020 SOUTH RIVER DRIVE, MIAMI, FL 33167
Our File No.: F10051160

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 with regards to its interests in the promissory Note and Mortgage executed by LEROY WILLIAMS on June 30, 2005. Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

As of the date of this letter, the amount owed to our client is $661,289.01, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage. Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage. Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid. If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed,

FILE_NUMBER: F10051160 HELLOLETTER

Exh. 56

this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Also, upon your written request within thirty (30) days after your receipt of this letter, this law firm will provide you with the name and address of the original creditor, if different from the current creditor. Florida Default Law Group, P.L. is a debt collector. This law firm is attempting to collect a debt, and any information obtained will be used for that purpose.

All written requests should be addressed to Robert Schneider, Florida Default Law Group, P.L., P.O. Box 25018, Tampa, Florida 33622-5018.

This law firm is in the process of filing a Complaint on the promissory Note and Mortgage to foreclose on real estate. The advice in this letter pertains to your dealings with this law firm as a debt collector. It does not affect your dealings with the Court, and in particular, it does not change the time at which you must answer the Complaint. The Summons is a command from the Court, not from this law firm, and you must follow its instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect this law firm's relations with the Court. This law firm may file papers in the suit according to the Court's rules and the judge's instructions.

Finally, if you previously received a discharge in a bankruptcy involving this loan and did not sign a reaffirmation agreement, or if you are currently in an active bankruptcy and in rem stay relief has been granted, then this letter is not an attempt to collect a debt from you personally. This law firm is seeking solely to foreclose the creditor's lien on real estate and this law firm will not be seeking a personal money judgment against you.

If you have questions regarding this matter, please do not hesitate to contact this law firm.

Sincerely,

Florida Default Law Group, P.L.

## NOTICE

**Florida Default Law Group, P.L. is a debt collector. This Firm is attempting to collect a debt, and information obtained may be used for the purpose.**

Exh. A98
Exh. 56

CFN 2005R0793766
OR BK 23623 Pg 3230f (1ps)
RECORDED 07/29/2005 12:41:05
DEED DOC TAX 3,360.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

Prepared by and return to:

Flamingo Title Services, Inc.
1236 SE 4th Avenue
Fort Lauderdale, FL 33316
352-374-4888
File Number: 05a-102
Will Call No.:

_____[Space Above This Line For Recording Data]_____

# Warranty Deed

This Warranty Deed made this 30th day of June, 2005 between JAMES BUCKMAN, a single man whose post office address is 15020 S. River Drive , Miami, FL 33167, grantor, and Leroy Williams, a single man whose post office address is 8152 NW 15 Manor, Fort Lauderdale, FL 33322, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade County, Florida to-wit:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF , AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

Parcel Identification Number: 3021230221050

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.

In Witness Whereof, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: Arretha Robinson

_____(Seal)
JAMES BUCKMAN

Witness Name: Michelle Austin-Wilk

State of Florida
County of Broward

The foregoing instrument was acknowledged before me this 30th day of June, 2005 by JAMES BUCKMAN, who [ ] is personally known or [X] has produced a driver's license as identification.

[Notary Seal]

Notary Public

Printed Name: _____

My Commission Expires: _____

Michelle Austin-Wilks
Commission # DD080925
Expires Dec. 26, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

DoubleTimes

## IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT
### IN AND FOR MIAMI-DADE COUNTY, FLORIDA

## A NOTICE FROM THE COURT REGARDING LAWSUITS TO FORECLOSE MORTGAGES ON HOMES

If you are being sued to foreclose the mortgage on your primary home and your home has a homestead exemption and if you are the person who borrowed the money for the mortgage, you have a right to go to "mediation." At "mediation," you will meet with a Florida Supreme Court certified mediator appointed by the court and also a representative of the company asking to foreclosure your mortgage to see if you and the company suing you can work out an agreement to stop the foreclosure. **The mediator will not be allowed to give you legal advice or to give you an opinion about the lawsuit.** The mediator's job is to remain neutral and not take sides, but to give both sides a chance to talk to each other to see if an agreement can be reached to stop the foreclosure. If you and the company suing you come to an agreement, a settlement agreement will be written up and signed by you and the company suing you. With some limited exceptions, what each side says at the mediation is confidential and the judge will not know what was said at mediation.

**You will not have to pay anything to participate in this mediation program.** To participate in mediation, as soon as practical, you must contact the Collins Center by calling 877-880-4262 between 9:00 a.m. and 5:00 p.m., Monday through Friday.

To participate in mediation, you must also provide financial information to the mediator and meet with an approved foreclosure counselor prior to mediation. You will not be charged any additional amount for meeting with a foreclosure counselor. You may also request certain information from the company suing you before going to mediation.

Collins Center will explain more about the mediation program to you when you call.

If you have attended mediation arranged by Collins Center prior to being served with this lawsuit, and if mediation did not result in a settlement, you may file a motion asking the court to send the case to mediation again if your financial circumstances have changed since the first mediation.

**AS STATED IN THE SUMMONS SERVED ON YOU, YOU OR YOUR LAWYER MUST FILE WITH THE COURT A WRITTEN RESPONSE TO THE COMPLAINT TO FORECLOSE THE MORTGAGE WITHIN 20 DAYS AFTER YOU WERE SERVED. YOU OR YOUR LAWYER MUST ALSO SEND A COPY OF YOUR WRITTEN RESPONSE TO THE PLAINTIFF'S ATTORNEY. <u>YOU MUST TIMELY FILE A WRITTEN RESPONSE TO THE COMPLAINT EVEN IF YOU DECIDE TO PARTICIPATE IN MEDIATION.</u>**

Return To:
Axiom Financial Services
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

This document was prepared by:
Axiom Financial Services
10900 Stonelake Blvd Suite 350
Austin, TX 78759-5867

2005R0793767
OR BK 23623 Pgs 3231 - 3250; (20pgs)
RECORDED 07/29/2005 12:41:05
MTG DOC TAX 1,562.00
INTANG TAX 896.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

— [Space Above This Line For Recording Data] —

## MORTGAGE

MIN 100176105062733202

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2005
together with all Riders to this document.
(B) "Borrower" is LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is Axiom Financial Services

100176105062733                     0506273320

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3010  1/01

-6A(FL) (0005).02
Page 1 of 16          Initials: LW
VMP MORTGAGE FORMS - (800)521-7291

Lender is a
organized and existing under the laws of the State of California
Lender's address is 10900 Stonelake Blvd Suite 350
         Austin, TX 78759-5867

(E) "Note" means the promissory note signed by Borrower and dated June 30, 2005
The Note states that Borrower owes Lender four hundred forty-eight thousand and 00/100
                                                                              Dollars
(U.S. $448,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2035

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

100176105062733                                    0506273320

-6A(FL) (0205)02          Page 2 of 18                Form 3010   1/01

Exhibit A Pg 2
Exh. 56

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County          [Type of Recording Jurisdiction]
of MIAMI-DADE                                                             [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 3021230221050                          which currently has the address of
15020 SOUTH RIVER DRIVE                                                                          [Street]
MIAMI                                                      [City], Florida 33167          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

100176105062733                          0506273320

-6A(FL) (0005) 02                Page 1 of 15          Initials          Form 3010   1/01

Exh. 56

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s):<br>LEROY WILLIAMS | Lender:<br>Axiom Financial Services<br>10900 Stonelake Blvd Suite 350<br>Austin, TX 78759-5867 |
|---|---|
| | Loan #: |

**Property Address:**
15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

**Legal Description:**
LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 45, OF THE PUBLIC RECORDS OF MIAM-DADE COUNTY, FLORIDA.

Initials LW

MIN# 100176105062733202    WILLIAMS    Loan #
AHL 610101.UFF    Page 1 of 1

Exh. A
Exh. 56

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

100176105062733                                              0506273320

-6A(FL) (0005).02                    Page 4 of 16        Initials: _____        Form 3010   1/01

Exh. A
Exh. 56

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

100176105062733

-6A(FL) (0051.02)                    Page 5 of 16          Initials _Lw_          0506273320

Form 3010   1/01

Exh. A
Exh. 56

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

100176105062733

Initials ____

0506273320

-6A(FL) (0005).07

Page 6 of 18

Form 3010   1/01

Exh. A
Exh. 56

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

100176105062723                    0506273320

-6A(FL) (0005) 02          Page 7 of 18          Initials: LW          Form 3010   1/01

Exh. A
Exh. 56

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing. which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

100176105062733                        0506273320

-6A(FL) (0005) 02          Page 8 of 16        Initials: _____        Form 3010   1/01

Exh. 56

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

100176105062723

Initials: LLW

0506273320

-6A(FL) (0005)02

Page 9 of 16

Form 3010   1/01

Exh. A
Exh. 56

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

100176105062733                                         0506273320

-6A(FL) (0005).02                    Page 12 of 16        Initials: _____        Form 3010  1/01

Exh. A

Exh. 56

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

100176105062733                                    0506273320

-6A(FL) (0005).02                    Page 11 of 16        Initials ____        Form 3010  1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

100176105062733                                    0506273320

-6A(FL) (0005)01                  Page 12 of 15        Initials: ___        Form 3010   1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0105).01

100176105062733

Page 13 of 18

0506273320

Form 3010 1/01

Exh. A

Exh. 56

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

100176105062733

Initials:

0506273320

-6A(FL) (0005).02

Page 14 of 16

Form 3010   1/01

Exh. A

Exh. 56

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Carretha Robinson

_____ (Seal)
LEROY WILLIAMS                    -Borrower

8152 NORTH WEST 15 MANNOR
FORT LAUDERDALE, FL 33322
                                  (Address)

Midelle Austin-Willis

_____ (Seal)
                                  -Borrower

                                  (Address)

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

        (Address)                            (Address)

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

        (Address)                            (Address)

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

        (Address)                            (Address)

                    100176105062733              0506273320

-6A(FL) (0005).03         Page 15 of 16         Form 3010  1/01

Book23623/Page3246    CFN#20050793767              Page 16 of 20

Extra
Exh. 56.

STATE OF FLORIDA, Broward                                    County ss:
The foregoing instrument was acknowledged before me this June 30, 2005   by
LEROY WILLIAMS, a single man.

who is personally known to me or who has produced Vaild I D/L          as identification.

Michelle Austin-Wilks
Commission # DD080925
Expires Dec. 26, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

Notary Public

100176105062733        Initials LW        0506273320
-6A(FL) (0305).02        Page 18 of 16                      Form 3010   1/01

Book23623/Page3247    CFN#20050793767              Page 17 of 20

 

EXH A

Exh. 56

## Interest Only ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In The Wall Street Journal)–Rate Caps)

THIS INTEREST ONLY ADJUSTABLE RATE RIDER is made this 30th day of June , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Interest Only Adjustable Rate Note (the "Note") to Axiom Financial Services ("Lender") of the same date and covering the property described in the Security Instrument and located at:

15020 SOUTH RIVER DRIVE
MIAMI, FL 33167
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of July, 2008 , and the adjustable interest rate I will pay may change on the first day of every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"),
as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MIN # 100176105062733202
INTRDR1.UFF

WILLIAMS
Page 1 of 3

Initials: LW
Loan #
AHL modified FannieMae 3138 (1/01)



Exh. 56

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four And Five-eighths percentage points ( 4.625 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest Only Period, and before each Change Date, the Note Holder will determine the amount of my monthly payment by calculating one twelfth (1/12) of the amount of yearly interest due at my new interest rate. During the Interest Only Period, the result of this calculation will be the new amount of my monthly payment.

After the Interest Only Period and before each Change Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. After the Interest Only Period, the result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.625 % or less than 6.125 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage points from the rate of interest I have been paying for the preceding six(6) months. My interest rate will never be greater than 13.125 % or less than 6.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first sixty ( 60 ) payments under this Note are due.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

MIN # 100176105062733202
INTRDR2.UFF

WILLIAMS
Page 2 of 3

Initials: 
Loan #
AHL modified FannieMae 3138 (1/01)

OR BK 3623 PG 3250
LAST PAGE

Exh. 56

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Adjustable Rate Rider.

Leroy Williams                6/28/05

Borrower                Date        Borrower                Date
LEROY WILLIAMS

Borrower                Date        Borrower                Date

Borrower                Date        Borrower                Date

Borrower                Date        Borrower                Date

MIN # 100176105062733202        WILLIAMS                Loan #
INTROR3.UFF                Page 3 of 3        AHL modified FannieMac 3138 (1/01)



Exh. 56

## Interest Only ADJUSTABLE RATE NOTE
(LIBOR Six-month Index (As Published In
The Wall Street Journal) — Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

June 30, 2005                          MIAMI                    FL
                                       [City]                 [State]
                              15020 SOUTH RIVER DRIVE
                                 MIAMI, FL 33167
                                 [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ $448,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Axiom Financial Services. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the 1st day of every month, beginning on August 1, 2005. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

MIN # 100176105062733202          WILLIAMS           Initials: _____
INTNOTE1.UFF                       Page 1 of 7        Loan # ████████
                                   AHL modified FannieMae 3530 (11/01)

F07012148

Exh A
Exh 56

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on July 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 502480 San Diego, CA 92150-2480 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

The first Thirty-Six (36) monthly payments will be in the amount of U.S. $2,286.67, which equals one-twelfth (1/12) of the amount of yearly interest due on the principal at the initial rate. The next Twenty-Four (24) monthly payments will equal one-twelfth (1/12) of the amount of yearly interest due on the principal at the rate determined in accordance with Section 4 of the Note. All of these payments are called the "Interest Only Payments." The period during which these payments are due is called the "Interest Only Period."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Payments of principal may be made in accordance with Section 5 of this Note.

### (C) Monthly Payment Changes

During the Interest Only Period, changes in my monthly payment will reflect changes in the interest rate that I must pay. After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4, and if applicable, Section 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of July, 2008, and the adjustable interest rate I will pay may change on the first day of every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

MIN # 100176105062733202
INTNOTE2.UFF

WILLIAMS
Page 2 of 7

Initials:_____
Loan # ▮▮▮▮▮
AHL modified FannieMae 3530 (11/01)

  

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four And Five-eighths percentage points ( 4.625 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest Only Period, and before each Change Date, the Note Holder will determine the amount of my monthly payment by calculating one twelfth (1/12) of the amount of yearly interest due at my new interest rate. During the Interest Only Period, the result of this calculation will be the new amount of my monthly payment.

After the Interest Only Period and before each Change Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. After the Interest Only Period, the result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.625 % or less than 6.125 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage points from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 13.125 % or less than 6.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first sixty ( 60 ) payments under this Note are due.

MIN # 100176105062733202
INTNOTE3.UFF

WILLIAMS
Page 3 of 7

Initials: _____
Loan # ▄▄▄▄▄
AHL modified FannieMae 3530 (11/01)

  

Exh.56

## 5. BORROWER'S RIGHT TO PREPAY - Prepayment Charge Rider to the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payment after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If the partial Prepayment is made during the Interest Only Period, a portion of any subsequent monthly payment that I make on or before the next Change Date may be applied to reduce the Principal amount of the Note.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

MIN # 100176105062733202
INTNOTE4.UFF

LW

WILLIAMS
Page 4 of 7

Initials: _____
Loan #
AHL modified FannieMae 3530 (11/01)

Exh A

Exh. 5b

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

MIN # 100176105062733202
INTNOTE5.UFF

WILLIAMS
Page 5 of 7

Initials: _____
Loan #
AHL modified FannieMae 3530 (11/01)

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

MIN # 100176105062733202
INTNOTE6.UFF

WILLIAMS
Page 6 of 7

Initials: _____
Loan #
AHL modified FannieMae 3530 (11/01)

Exh. A
Exh. 56

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Adjustable Rate Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Leroy Williams_  6/30/05

| Borrower<br>LEROY WILLIAMS | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

MIN # 100176105062733202
INTNOTE7.UFF

WILLIAMS
Page 7 of 7

Loan #
AHL modified FannieMae 3530 (11/01)

  

## PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 30th day of June, 2005, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as-applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Axiom Financial Services.

### NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT. THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.

### PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments. However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Thirty-six(36) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note. Any prepayments made after said initial Thirty-six (36) month period shall not be subject to any prepayment charge.

| | | | |
|---|---|---|---|
| _Leroy Williams_ 6/20/05 | | | |
| Borrower LEROY WILLIAMS | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Standard - 5 yrs
CA 1st & 2nd - 5 yrs
KS 1st & 2nd - 5 yrs
MIN # 100176105062733202                    WILLIAMS                    Loan # 0506273320
AHL PPR-STD.UFF                    Page 1 of 1

Exh. 67

U S BANK (NA)

    Plaintiff(s),

vs.

WILLIAMS, LEROY
LITTLEJOHN, JAMES
WILLIAMS, HOKE
    Defendant(s).   3-14-12

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR DADE
COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 10- 61928-CA-01
Section No.  05

## NOTICE OF LACK OF PROSECUTION

PLEASE TAKE NOTICE that it appears that on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 10 months immediately preceding service of this notice, and no stay has been issued or approved by the court. Pursuant to rule 1.420(e), if no stay is issued or approved during such 60 day period, this action may be dismissed by the court on its own motion for lack of prosecution at the scheduled hearing set forth below, unless a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending. If record activity occurs within 60 days following the service of this notice, you must provide the court with a copy of the docket showing the record activity attached to your good cause filing or appear at the scheduled hearing.

## NOTICE OF HEARING ON THE COURT'S MOTION
## TO DISMISS FOR LACK OF PROSECUTION

Pursuant to 1.420 of the Fla.R.Civ.P. the parties are hereby directed to appear before the undersigned Judge at __11:00 A.M.__ on the __1st__ day of __JUNE, 2012__ for a hearing on the Court's motion to dismiss the above styled cause for lack of prosecution. The hearing shall take place at the Dade County Courthouse, 73 West Flagler St., Miami, FL 33130 in room _6-3_ before the Honorable __MARC SCHUMACHER__. It shall be the responsibility and burden of proof of the party opposing the motion of dismissal for lack of prosecution to appear at the hearing and to affirmatively demonstrate (1) that there had been record activity within 10 months prior to service of the "Notice" or that the Court had a stay of the action on stipulation or otherwise which was in effect within the 10 months proceeding the notice; or (2) that there had been record activity within 60 days immediately following the service of such notice or that the Court had issued a stay of the action on stipulated or otherwise prior to the expiration of the 60 day period. In the absence of record activity or of any order staying the action as above described, a party must show good cause in writing at least 5 days before the hearing why the action should remain pending.

The failure of the party opposing the motion to appear at the hearing and to timely file a showing of good cause in writing, if required, shall constitute an abandonment of any justified defense to the motion and the above styled action shall be dismissed for lack of prosecution upon further order of Court on the date of the hearing set forth above.

DONE and ORDERED in Chambers at Miami-Dade County, Florida, this _____ day of _____.

MAR 1 9 2012

cc: Counsel/Parties of Record

Circuit Court Judge

Marc Schumacher
Circuit Court Judge

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL. 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Fax (305) 349-7355; at least 7 days before your scheduled court appearance, or immediately upon receiving this notification, if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

452

Exh. 68

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FILED FOR RECORD

U S BANK (NA)

                                    2014 JAN 30  AM 11: 37       CIRCUIT CIVIL DIVISION 05
            Plaintiff(s),
                                    CLERK CIRCUIT COURT
                                    DADE COUNTY, FLA
                                    CIVIL #110
vs.
                                                          CASE NO: 2010-61928-CA-01

LEROY WILLIAMS

            Defendant(s),
_____/

### ORDER TO TAKE ACTION BASED ON LACK OF SERVICE

The Court, sua sponte, finds that the Plaintiff has not perfected service on the Defendant(s) LEROY WILLIAMS, JAMES LITTLEJOHN, HOKE WILLIAMS, and WACHOVIA BANK (NA) within 90 days of filing of the complaint. Plaintiff is hereby placed on notice that it must complete service of process within the next 30 days, to be in compliance with the 120 day time of service proscribed by Rule 1.070 (j), Fla. R. Civ. P. (2013). Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that:

1. Failure to timely comply with this Order may result in the dropping of the party not served with process or the dismissal of the action without prejudice.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this ___ day of January, 2013.

                                                CIRCUIT COURT JUDGE

                                                Marc Schumacher
                                                Circuit Court Judge

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above order was on this day of 27 January, 2013, delivered by U. S. Mail to all parties on the service list.

Filing # 65232736 E-Filed 12/11/2017 03:35:21 PM

*Exh. 69*
*Page 1*

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for RASC 2005AHL3

    Plaintiff,

vs.

Leroy Williams; The Unknown Spouse of Leroy Williams; Littlejohn a/k/a James L. Jolin, James; Unknown Spouse of James Littlejohn AKA James L. Jolin; Hoke Williams; Unknown Spouse of Hoke Williams; Mack Wells; Unknown Spouse of Mack Wells; Curtis McNeil; The Unknown Spouse of Curtis McNeil; Symonette Limited Partnership; Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I; Miami-Dade County, Florida; State of Florida, Department of Revenue; Unifund CCR Partners, G.P.; Suntrust Bank; City of North Miami (City)

    Defendants.

_____/

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

### PLAINTIFF'S MOTION FOR EXTENSION OF TIME

U.S. Bank, National Association, as Trustee for RASC 2005AHL3, hereinafter Plaintiff, by and through its undersigned counsel, hereby files this Motion for Extension of Time to comply with Court Order of November 29, 2017, and in support thereof states as follows:

1. The undersigned represents Plaintiff in the instant action.

2. On November 29, 2017, at the conclusion of Trial, this Court reserved Ruling on the entry of Plaintiff's Final Judgment and requested that Plaintiff file a response to Defendant's

Case No. 2010-61928-CA-01      1 of 4      File # 13-F02868

*Exh. 69*
*Page 2*

pro-se allegations that the prior case filed on this matter was dismissed with prejudice and Defendant argument on standing.

3.      Plaintiff is completing its research and response and request a small extension to file and serve its response, as Plaintiff wants to remain in compliance with the Court Order.

4.      This Motion is made in good faith and not for the purposes of delay. There are currently no pending hearings scheduled on this case at this time.

WHEREFORE, Plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005AHL3, prays this Court for an order granting the Motion for Extension of Time, and such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Extension of Time, was mailed electronically or via U.S. Mail on December 11_____, 2017, to all persons shown on the following service list.

BROCK & SCOTT, PLLC
Attorney for Plaintiff
1501 N.W. 49th Street, Suite 200
Ft. Lauderdale, FL 33309
Phone: (954) 618-6955, ext. 6151
Fax: (954) 618-6954
FLCourtDocs@brockandscott.com

By_____
    Willna LaCroix, Esq.
    Florida Bar No. 54672

The following persons were served by e-mail:

Miami-Dade County, Florida
c/o Altanese Phenelus, Esq.
111 NW 1st Street
Miami, FL 33128
yvaldes@miamidade.gov

Case No. 2010-61928-CA-01                2 of 4                File # 13-F02868

IN THE CIRCUIT COURT OF THE ELEVENTH

JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA

CIVIL ACTION

MAURICE SYMONETTE                              CASE: 2021-10826-CA01

PLAINTIFF                                      DIVISION

VS.

U.S. BANK NATIONAL ASSOCIATION  AS

TRUSTEE FOR RASC2005AHL3

FRANKLIN  CREDIT

DEFENDANTS

_____/

## NOTICE OF  LIS PENDENS

TO THE ABOVE NAMED DEFENDANT (S) WHJOM ND ALL OTHERS WHOM

IT MAY CONCERN: YOU ARFE HEREBY NOTIFIEDTHAT SUIT WAS INSTITUED BY THE ABOVE

NAMED PLAINTIFF, AGAINST THE AGAINST THE ABOVE NAMED DEFENDANT(S) ON 6/27/2023

IN THE ABOVE STYLED CAUSE , INVOLVING THE FOLLOWING DESCRIBED PROPERTY, SITUATED,

LYING AND BEING IN IN MIAMI -DADE  COUNTY FLORIDA, TO WIT:

LEGAL DISCRIPTION 22 52 41  1.19AC PB 44-46 BISCAYNE GARDENS SEE F PART 1 LOT 105 LOT SIZE

100.00 X 515  OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY , FLORIDA RELIEF SOUGHTAS

SUCH PROPERTY IS FOR FORECLOSURE OF MORTGAGE HELD BY PLAINTIFF AGAINST THE

Premises'                          FOLIO NO:30 212 3022 1050

By_____

Pro-Se

Maurice Symonette

15020 S, River Dr

Miami Fla, 33167,

*Exh 73 pg 1*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC.
2005AAHL3,

Plaintiff,

V.                                                   CASE: 2010-61938CA01

MAURICE SYMONETTE and MACK WELLS
And LEROY WILLIAMS, JAMES LITTLEJOHN

Defendants

_____/

FILED FOR RECORD
2018 JAN 22  PM 3:54
CLERK OF CIRCUIT & COUNTY CTS
MIAMI-DADE COUNTY, FLA.
CIVIL DIVISION

MOTION TO RECONSIDER

COMES NOW DEFENDANTS WITH MOTION TO RECONSIDER BECAUSE
YOU ARE SUBSTITUTING FOR JUDGE SCHLESINGER WHO WE ASKED IN OUR
MOTION FOR TIME BECAUSE HE ORDERED US BANK TO EXPLAIN WHY THEY
BELIEVED THEY HAD STANDING BECAUSE WE SHOWED THE JUDGE THAT THEY
HAD NO STANDING. THE JUDGE GAVE US BANK TEN DAYS TO DO A
MEMORANDUM AND GAVE US FIVE DAYS TO RESPOND AND TOLD BANK AND
DEFENDANTS GET IT IN IN TIME NO EXCUSES. WELL THEY DIDN'T GET IT IN ON
TIME. WE LET TWO DAYS AFTER BEING LATE GO BY AND WE THEN PUT IN A
MOTION FOR DEFAULT, THEN THE NEXT DAY THE JUDGE'S STRANGE ORDER
AGAINST DEFENDANTS, WHO NOW IS YOUR CLERK THAT THE JUDGE WAS GIVEN
TO EVEN THOUGH I TOLD THAT CLERK THAT THE JUDGE WHO AT FIRST AGREED
TO DO THAT STRANGE ORDER. UNTIL THE JUDGE HEARD SYMONETTE'S
ARGUMENT ON STANDING (THE BANK TRIED STOP SYMONETTE FROM TALKING
AND THE JUDGE OVERULED THE BANK. THEN AFTER HEARING ARGUMENT THE
DEFERED THAT ORDER UNTIL THE BANK DID THEIR TEN DAY MEMORANDUM
EXH. A. YET THE DEFENDANTS DEFAULTED U.S. BANK AND THEN SUDDENLY

Exh. 73
Pg. 2

THE STRANGE JUDGEMENT THAT THE JUDGE DEFERRED UNTIL THE BANK AND DEFENDANTS DID THEIR MEMORANDUM. BUT JUDGE SCHLESNGER WITH NO REFRENCE AT ALL TO BANKS LATE MEMORANDUM OR OUR MOTION FOR DEFAULT WAS PUT IN, BUT AS IF NO ORDER FOR THE TEN DAYS GIVEN FOR THE BANK TO DO THEIR MEMORANDUM WHICH THE JUDGE NEVER ANSWERED AND THE JUDGE NEVER ANSWERED BANK'S MOTION FOR EXTENTION OF TIME AND THE JUDGE NEVER ANSWERED THE DEFENDANTS MOTION FOR DEFAULT. JUDGE SCHENSENGER JUST APPARENTLY GAVE THE STRANGE ORDER TO SALE DEFENDANTS'S HOME. THEN DEFENDANTS ASKED FOR AN EMERGENCY HEARING TO ASK JUDGE SCHLENSENGER TO GIVE US TIME TO RESPOND TO BANK'S MEMORANDUM LIKE THEY GAVE THEMSELVES EXTRA TIME TO DO THEIR MEMORANDUM. SO THE JUDGE GAVE US THE EMERGENCY HEARING TO GIVE OUR EXTENTION. THEN THE JUDGE REMOVED HIMSELF FROM OUR CASE SO NOW BANK IS WINNING BY JUDGE SCHLESENGER REMOVING HIMSELF FROM THE CASE TO ILLEGALLY STOP DEFENDANTS FROM EXERCISING THEIR RIGHT TO MAKE THE BANK PROVE STANDING AND TO SHOW THE ORIGINAL NOTES WHICH THE DEFENDANTS NOR ANY JUDGE HAVE EVER SEEN TIL THIS DAY. THE CLERK WHO WE ARE NOW SUEING TOLD DEFENDANTS THEY DESTROYED THE FILE AND WOULD NOT LET US SEE THE FILE AND WE HAVE NEVER SEEN THE ORIGINAL NOTE. SO NOW DEFENDANTS NOW GET YOU AS THE SUBSTITUTE JUDGE ACTING FOR JUDGE SCHLENENGER BUT NW DEFENENDANTS HAVE BEEN TRICKED BECAUSE WE ASKED THE COURT FOR TIME TO ANSWER BANK'S MEMORANDUM YOU THE COURT GAVE US THE DEFENDANTS THE FIVE DAYS TO ANSWER THE MEMORANDUM THEN WHEN WE STOOD BEFORE THE COURT WHO IS SUPPOSED TO BE ACTING FOR SCHLESENGER BUT YOUR ANSER IS YOU CAN'T CHANGE JUDGE SCHLESENGER'S ORDER BUT YOU ARE JUDGE SCHLESEGER THWT'S WHHAT YOU ARE SUPPOSE RULE ON THE MERRITS OF OUR MOTION BUT INSTEAD BATE AND SWITCHED US FROM A FAIR RULING ON OUR MOTIONS TO NOW YOU CAN'T CHANGE HIS ORDER TO NOW ONLY GIVING DEFENDANTS SIXTY DAYS TO ILLEGALLY FORECLOSE OUR HOME.

THIS IS ONE OF THE MOST EVIL SICK THING EVER. THE ORIGINAL BANK IS NOT FORECLOSING ON DEFENDANTS TO HIDE THE TAXS THEY DIDN'T PAY (RIMIC) AND THEIR ILLEGALLITY OF SELLING THE NOTE ON THE MARKET THEREBY GETTING THE NOTE PAID OFF MORE THAN TWICE FROM THEIR INSURANCE AND BY THE SALE OF THE NOTE ON THE MARKET AND TURNED INTO A STOCK. ALL WHILE KNOWING THAT THE GAAP, FASB, FAS 140 RULE SAYS THAT ONCE THE NOTE IS SOLD ON THE MARKET THE NOTE MUST BE DESTROYED OR BURNED AND CAN'T BE FORECLOSED, SOLD OR ASSIGNED BECAUSE THE NOTE CAN'T EXHIST WHILE THE STOCK EXHIST BECAUSE THAT IS DOUBLE DIPPING. AND THE PROOF THAT THEY KNOW THEY SOLD THE NOTE, IS ATTY'S PRODUCED A

Exh. 73 pg3

POOLING AND SERVICING AGREEMENT (PSA) WHICH IS AN S. E. C. NOTE SOLD ON THE MARKET SERVICING AGREEMENT. SO NOW A NEW BANK CALLED U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005 AHL3 THAT ACCORDING TO THE SEC.GOV RECORDS THAT TRUST DOSEN'T EXHIST WHICH VOIDS THE TRUSTEE (U.S. BANK) AND THE LAW SAYS YOU A LAYER CAN'T REPRESENT A DEAD OR NON EXCISTING TRUST. BUT ALL THIS DONE TO GIVE DEFENDANT'S HOME TO A TRUST THAT DOES NOT EXHIST AND TO ATTYS. LUKE 11:45-56, EZE. 38:11-12 & EZE. 34:8-11&31 DEFENDANTS ARE UNPROTECTED (NO WALL OF PROTECTION= NO LAW) FROM THESE LIFE STEALING THEIVES AND THEY WILL BE PROSECUTED ALONG WITH THE JUDGE WHO MUST BE REVEALED AND MOVED OUT OF THE WAY (PUNISHED) 2THESS. 2:1-11 THEREFORE THE DEFENDANTS DEMAND THAT THIS MOTION BE ANSWERED WITH FINDINGS AND FACTS BY THE JUDGE AND WE DEMAND THE A COPIE OF THE JUDGE'S BOND TO HOLD JUDGE RESPONSIBLE         YOU SAID

THAT YOU WOULD GIVE US FIVE DAYS TO ANSWER THE PLAINTIFFS TRIAL MEMORANDUM WAS FOR US DEFENDANTS TO GIVE A SHOW OF CAUSE AS TO WHY THE PLAINTIFFS SHOULD NOT BE ABLE TO FORECLOSE ON US WHICH IS THE REASON WHY WE ARE HERE. AND SO WE ASK THE JUDGE IN THE REAL INTEREST OF JUSTICE TO RECONSIDER AND STOP THIS HOUSE THEIVING CANNIBALISM AND RULE ON THE TRUE MERRITS OF OUR MOTION TO STOP U.S. BANK FORECLOSURE AND DISMISS THIS CASE FOREVER WITH PREJUDICE AS IT IS ALREADY DISMISSED WITH PREJUDICE! NEVER THE LESS THERE ARE EXCEPTIONS TO THAT ALSO IN RULE 60(b) READS

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

Exh.B pg4

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) **Timing and Effect of the Motion.**
(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.
(d) **Other Powers to Grant Relief.** This rule does not limit a court's power to:
(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

(e) **Bills and Writs Abolished.** The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

See (Jennifer Prescott v. State of Florida)

---

**CERTIFICATE OF SERVICE**

I MAURICE SYMONETTE DO CERTIFY THAT A TRUE AND CORRECT COPY WAS SENT TO:

BROCK AND SCOTT, PLLC Attorney for Plaintiff 1501 NW 49th St. Ste. 200, Ft. Lauderdale

Fl. 33309 Phone: (954) 618-6955, ext.,6152.     Date,   1/   / 2018

MAURICE SYMONETTE
15020 S. River dr.
Miami, Fl. 33167

MACK WELLS
15020 S. RIVER DRIVE
MIAMI, FL. 33167

LEROY WILLIAMS
15020 S. River dr
Miami, Fl. 33167

Exh. 74/?

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for RASC
2005AHL3

        Plaintiff,

vs.

Leroy Williams; The Unknown Spouse of Leroy
Williams; Littlejohn a/k/a James L. Jolin, James;
Unknown Spouse of James Littlejohn AKA James L.
Jolin; Hoke Williams; Unknown Spouse of Hoke
Williams; Mack Wells; Unknown Spouse of Mack
Wells; Curtis McNeil; The Unknown Spouse of Curtis
McNeil; Symonette Limited Partnership; Deutsche Bank
National Trust Company, as Trustee for Franklin Credit
Trust Series I; Miami-Dade County, Florida; State of
Florida, Department of Revenue; Unifund CCR
Partners, G.P.; Suntrust Bank; City of North Miami
(City); U.S. Bank, National Association, as Trustee for
RASC 2005AHL3

        Defendants.

_____/

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

## ORDER ON THE PLAINTIFF'S MOTION TO RESET FORECLOSURE SALE

THIS CAUSE having come before the Court on the Plaintiff's Motion to Reset Foreclosure Sale,
and the Court having heard argument of the parties, having reviewed the file and, being otherwise duly
advised, it is

ORDERED AND ADJUDGED:

The Plaintiff's Motion to Reset Foreclosure Sale is hereby GRANTED.

The clerk is directed to reset the foreclosure sale for April 16, 2019 at 9am, by electronic sale at
www.miamidade.realforeclose.com.

Case No. 2010-61928-CA-01

File # 13-F02868

*CID324698   *EFD100088
*                          *

*Exh 74*
*Pg2*

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 02/25/19.

THOMAS J. REBULL
CIRCUIT JUDGE

> **No Further Judicial Action Required on THIS MOTION**
> **CLERK TO RECLOSE CASE IF POST JUDGMENT**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Case No. 2010-61928-CA-01                    File # 13-F02868

Exh 74 pg 3

### IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
### IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for RASC 2005AHL3

        Plaintiff,

vs.

Leroy Williams, et al.,

        Defendants.

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

_____/

### ORDER ON THE PLAINTIFF'S MOTION TO VACATE THE FORECLOSURE SALE
### OF NOVEMBER 13, 2018

THIS CAUSE having come before the Court on the Plaintiff's Motion to Vacate the November 13, 2018 Foreclosure Sale, and the Court having heard argument of parties, having reviewed the file and the Court being otherwise duly advised, it is thereupon,

    ORDERED AND ADJUDGED:

The Plaintiff's Motion to Vacate the Foreclosure Sale is hereby GRANTED.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/28/18.

MIGUEL M DE LA O
CIRCUIT JUDGE

> No Further Judicial Action Required on **THIS MOTION**
> **CLERK TO RECLOSE CASE IF POST JUDGMENT**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or

2010-61928-CA-01

File # 13-F02868

Exh. 75

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

CASE NO.: 2010-CA-61928

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR RASC 2005AHL3,

     Plaintiff,

v.

LEROY WILLIAMS, *et al.*,

     Defendants.

_____/

### ORDER ON DEFENDANT'S AMENDED MOTION TO DISMISS
### FORECLOSURE COMPLAINT

**THIS CAUSE** having come before the Court upon Defendant's Motion to Dismiss

Foreclosure Complaint, the Court having heard oral argument on said Motion and the Court being

otherwise duly advised in the premises, it is hereupon:

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Foreclosure

Complaint is hereby **GRANTED/DENIED:**

Denied.

_____

_____

_____

_____

DONE and ORDERED in Chambers in Miami, Miami-Dade County, Florida, on

November 19th, 2019.

_____
Circuit Court Judge

**VERONICA A. DIAZ**

Daniel Hawks – FBN 69104

140383.04630/122217991v.1

Mack Wells – Defendant

Filing # 108422892 E-Filed 06/04/2020 07:51:29 PM

Exh. 76
Pg. 1

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY FLORIDA CIVIL ACTION

U'S. BANK N.A. AS TRUSTEE FOR RASC 2005 AHLS.

Plaintiff

CASE: 2010-61928-CA01

v.

MACK WELLS

Defendants

_____ /

## MOTION TO CANCEL SALE DATE

COMES NOW MACK WELLS WITH MOTION TO CANCEL SALE DATE ON MY PROPERTY THAT WAS SET FOR JUNE 24TH 2020, DUE TO THE FACT THAT FHA EXTENDED THE FORECLOSURE AND EVICTION MORATORIUM TO STOP ALL EVICTIONS THROUGH THE MONTH OF JUNE 30TH / 2020 AND U.S. BANK N.A. HAS ALSO ENTERED A MOTION TO CANCEL THE SALE DATE ALSO FOR THE SAME REASONS, AMID THE COVID 19 CRISIS, ALONG WITH OTHER AGENCIES LIKE FREDDIE MAC AND FANNIE MAE etc. SEE EXHIBITS A THROUGH I, IN WHICH THEY (U.S. BANK) THEM SELVES SENT IN TO THE COURT AND TO THE DEFENDANTS ON MAY 29, 2020, ASKING TO CANCEL THE SALE DATE.

EXh. 76
Pg2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT BY U.S. MAIL OR E-FILE TO BROCK & SCOTT, PLLC ATTORNEY FOR PLAINTIFF 2001 NW 64TH ST. SUITE 130 FT. LAUD. FL. 33309 PH: 813-324-2200 X4729 FAX: 954 618-6954 KaraFredrickson@brockandscott.com.

*Mack Wells*

MACK WELLS
15020 S. RIVER DR,
MIAMI FL 33167

Exhibit 5

Brock & Scott, PLLC
PO Box 9115
Temecula, CA  92589-9115



2353957786

Send Correspondence to:
Brock &amp; Scott, PLLC
2001 NW 64th Street
Suite 130
Ft. Lauderdale, FL  33309

20200529-201

Unknown Spouse of Hoke Williams
15020 South River Drive
Miami, FL  33167

2353957796

Exh. C #

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for
RASC 2005AHL3

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

Plaintiff,

vs.

Leroy Williams; et al.,

Defendants.

_____/

## MOTION TO CANCEL FORECLOSURE SALE SCHEDULED FOR JUNE 24, 2020

Plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005AHL3 moves to cancel the mortgage foreclosure sale and states:

1. The Complaint in this action was filed on December 6, 2010.

2. On March 26, 2020 this Court entered an Order on Motion to Cancel and Reset Foreclosure Sale Scheduled for April 6, 2020 pursuant to which a foreclosure sale was scheduled for June 24, 2020.

3. On May 14, 2020, Governor Desantis issued Executive Order 20-121 which extended foreclosure and eviction moratoriums until June 2, 2020. See Exhibit "A".

4. On May 14, 2020, HUD issued Mortgagee Letter 20-066 which extended the moratorium issued under mortgagee letter 2020-04 for borrowers with FHA insured single family mortgages through June 30, 2020. See Exhibit "B".

5. On May 14, 2020, Freddie Mac issued Bulletin 2020-16 extending the foreclosure moratorium through June 30, 2020. See Exhibit "C"

6. On May 14, 2020, Fannie Mae issued Lender Letter LL-2020-02 extending the suspension on foreclosures through June 30, 2020. See Exhibit "D".

7. On May 14, 2020, the Veteran's Benefit Administration (the "VA"), issued Circular 26-20-18, which extended the moratorium on foreclosures and evictions until June 30, 2020. See Exhibit "E".

8. On May 14, 2020, the USDA extended the foreclosure and eviction moratorium through June 30, 2020. See Exhibit "F".

9. The subject loan is a conventional loan and Plaintiff is seeking to stay in line with the federal guidelines on moving the action and is seeking to cancel sale.

Case No. 2010-61928-CA-01                                      File # 13-F02868

Exh. 76 pg5

10.     If this Court cancels the foreclosure sale, Plaintiff moves that it be reset upon further motion of Plaintiff and order of the court.

WHEREFORE, Plaintiff prays this Court for an Order to Cancel Foreclosure Sale, and such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy hereof was served electronically or via U.S. Mail on May 29, 2020 to all persons shown on the following service list.

BROCK & SCOTT, PLLC
Attorney for Plaintiff
2001 NW 64th St, Suite 130
Ft. Lauderdale, FL 33309
Phone: (813) 342-2200 x4729
Fax: (954) 618-6954
Kara.Fredrickson@brockandscott.com

By___/s/ Kara Fredrickson_____
Kara Fredrickson, Esq.
Florida Bar No. 85427

## SERVICE LIST

The following persons were served by e-mail:

Miami-Dade County, Florida
c/o Altanese Phenelus, Esq.
111 NW 1st Street
Miami, FL 33128
yvaldes@miamidade.gov

City of North Miami (City)
Jennifer L. Warren
776 N.E 125th Street
North Miami, FL 33161
cityattorney@northmiamifl.gov

U.S. Bank, National Association, as Trustee for RASC 2005AHL3
% Michael L. Eisenband, Esq. & Nicole R. Topper, Esq.
500 E. Broward Blvd., Suite 2100
Fort Lauderdale, FL 33394
BRFLeservice@BlankRome.com; MEisenband@BlankRome.com; NTopper@BlankRome.com

Case No. 2010-61928-CA-01                                    File # 13-F02868

Exh. 1b pg6

The following persons were served by U.S. mail:

Hoke Williams
15020 S RIVER DR
MIAMI, FL 33167-1035

Unifund CCR Partners, G.P.
c/o CT Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I
c/o Legal Department
1761 E. St. Andrew Place
· Santa Ana, CA 92705

Unknown Spouse of Hoke Williams
15020 South River Drive
Miami, FL 33167

Unknown Spouse of James Littlejohn AKA James L. Jolin
8152 NW 15th Manor, Apt FC2R
Plantation, FL 33322

Littlejohn a/k/a James L. Jolin, James
L/K/A 15020 South River Drive
Miami, FL 33167

Suntrust Bank
c/o Alisha Smith, R.A.
40 Technology Parkway South, Suite 300
Norcross, GA 30092

State of Florida, Department of Revenue
C/o Executive Director, a registered agent or any other person authorized to accept service of proccess
2450 Shumard Oak Boulevard
Tallahassee, FL 32399

LEROY WILLIAMS
8152 NW 15TH MNR
APT FC2R
PLANTATION, FL 33322-5422

 Case No. 2010-61928-CA-01

File # 13-F02868

Exh. 16 pg 7

Unknown Spouse of Mack Wells
15020 South River Drive
Miami, FL 33167

The Unknown Spouse of Leroy Williams
L/K/A 15020 South River Drive
Miami, FL 33167

The Unknown Spouse of Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Mack Wells
L/K/A 15020 South River Drive
Miami, FL 33167

Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Symonette Limited Partnership
L/K/A 15020 South River Drive
Miami, FL 33167

Case No. 2010-61928-CA-01                                    File # 13-F02868

*Exh. 76*
*Exh. D* # *pg8*

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 20-121
### (Limited Extension of Mortgage Foreclosure and Eviction Relief)

**WHEREAS,** Executive Order 20-94 expires on May 17, 2020, unless extended.

**NOW, THEREFORE, I, RON DESANTIS,** as Governor of Florida, by virtue of the authority vested in me by Article IV, Section (1)(a) of the Florida Constitution, Chapter 252, Florida Statutes, and all other applicable laws, promulgate the following Executive Order to take immediate effect:

Section 1. I hereby extend Executive Order 20-94 until 12:01 a.m. on June 2, 2020.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed, at Tallahassee, this 14th day of May, 2020.

RON DESANTIS, GOVERNOR

ATTEST:

SECRETARY OF STATE



2020 MAY 14 AM 8:36   FILED



*Exh 76*

*Exb. E Pg 9*

5/21/2020     FHA Extends Foreclosure and Eviction Moratorium for Single Family Homeowners and Remote Work Flexibilities for Lenders and Apprai...

    HUD.GOV

Home / Press Room / Press Releases / HUD No. 20-066

# HUD COVID-19 Resources and Fact Sheets

Tweet

| | |
|---|---|
| HUD No. 20-066 | **FOR RELEASE** |
| HUD Public Affairs | Thursday |
| (202) 708-0685 | May 14, 2020 |

## FHA EXTENDS FORECLOSURE AND EVICTION MORATORIUM FOR SINGLE FAMILY HOMEOWNERS AND REMOTE
## WORK FLEXIBILITIES FOR LENDERS AND APPRAISERS
*Extensions Through June Provide Peace of Mind to Struggling Homeowners While Supporting New Mortgage Originations During COVID-19 Recovery*

WASHINGTON - Today, the Federal Housing Administration (FHA) announced an extension of its foreclosure and eviction moratorium through June 30, 2020, for homeowners with FHA-insured Single Family mortgages, while also supporting new FHA-insured mortgage originations through an extension of temporary policy flexibilities for lenders and appraisers. The extensions will support the President's economic recovery efforts as the Nation continues to work to defeat the COVID-19 invisible enemy.

FHA's Single Family foreclosure and eviction moratorium extension announced today applies to homeowners with FHA-insured Title II Single Family forward and Home Equity Conversion (reverse) mortgages, and directs mortgage servicers to:

- Halt all new foreclosure actions and suspend all foreclosure actions currently in process, excluding legally vacant or abandoned properties; and

- Cease all evictions of persons from FHA-insured Single Family properties, excluding actions to evict occupants of legally vacant or abandoned properties.





https://www.hud.gov/press/press_releases_media_advisories/HUD_No_20_066                                    1/3

Exh.76
Pg.10

5/21/2020        FHA Extends Foreclosure and Eviction Moratorium for Single Family Homeowners and Remote Work Flexibilities for Lenders and Apprai...

Additionally, the Single Family mortgage origination policy extensions announced today allow alternatives for lenders to re-verify a borrower's employment, and for appraisers to conduct desktop or exterior-only appraisals, to continue through June 30, 2020. These temporary measures allow lenders and appraisers to continue their necessary work for new FHA-insured mortgages in light of social distancing requirements.

"We made it clear at the beginning of this pandemic that no American should have to worry about losing their home amidst a crisis. Today's announcement ensures that commitment," said U.S. Department of Housing and Urban Development Secretary Ben Carson. "While we have made great strides in fighting this virus, the fact remains that many Americans are still struggling as we work diligently to get our economy back on sound footing, which I have full confidence we will do through the leadership of the President."

"For those among the over 8.1 million single family homeowners with FHA-insured mortgages who need assistance, our highest priority is to ensure that they have the time through the foreclosure moratorium, and the assistance they need through special COVID-19 mortgage forbearance, to remain in their homes long-term," said HUD Deputy Secretary and Federal Housing Commissioner Brian Montgomery. "At the same time, extending our policy flexibilities will ensure that affordable FHA-insured mortgage financing continues to remain available to support first-time and other homebuyers, and the Nation's housing market."

Homeowners with FHA-insured mortgages must continue to make their mortgage payments during the foreclosure and eviction moratorium if they are able to do so, or seek mortgage payment forbearance pursuant to the CARES Act from their mortgage servicer, to avoid future foreclosure actions when the moratorium expires.

Pursuant to the CARES Act, FHA requires mortgage servicers to:

- Offer borrowers with FHA-insured mortgages up to six months or more of delayed mortgage payment forbearance when the borrower requests it. FHA does not require a lump sum payment at the end of the forbearance period.

- Assess borrowers who receive COVID-19 forbearance for its special COVID-19 National Emergency Standalone Partial Claim before the end of the forbearance period. The COVID-19 National Emergency Standalone Partial Claim puts all deferred mortgage payment amounts owed into a junior lien which is only repaid when the borrower sells the home, refinances the mortgage, or the mortgage is otherwise extinguished.

### 

*HUD's mission is to create strong, sustainable, inclusive communities and quality affordable homes for all. More information about HUD and its programs is available at www.hud.gov and https://espanol.hud.gov.*

*For information about Opportunity Zones visit: https://opportunityzones.hud.gov/*

*You can also connect with HUD on social media and follow Secretary Carson on Twitter and Facebook or sign up for news alerts on HUD's Email List.*



Exh. 76
Pg 11

5/21/2020          FHA Extends Foreclosure and Eviction Moratorium for Single Family Homeowners and Remote Work Flexibilities for Lenders and Apprai...



Exb. Exh. 76
F# P g 12

## Freddie Mac
Single-Family

# Bulletin

**TO: Freddie Mac Servicers**

**May 14, 2020 | 2020-16**

## SUBJECT: TEMPORARY SERVICING GUIDANCE RELATED TO COVID-19

Bulletins 2020-4, 2020-7 and 2020-10 provided temporary Servicer guidance in response to the National Emergency Declaration resulting from the outbreak and spread of COVID-19. As we continue to monitor and assess the situation, and in response to Servicer questions, with this Bulletin we are providing additional clarity on the following items:

- Extension to the COVID-19 foreclosure moratorium

- Property inspections for delinquent Mortgages

- EDR reminder – reporting Mortgages impacted by COVID-19

- Property valuations for short sales and deeds-in-lieu of foreclosure

- HAMP good standing for Mortgages on a COVID-19 forbearance plan, repayment plan, or COVID-19 Payment Deferral

- National Emergency Declaration effective date

## EFFECTIVE DATE

All of the changes announced in this Bulletin are effective immediately unless otherwise noted.

## EXTENSION TO THE COVID-19 FORECLOSURE MORATORIUM

We are extending the foreclosure moratorium announced in Bulletins 2020-4 and 2020-10. Servicers must suspend all foreclosure actions, including foreclosure sales, through June 30, 2020. This includes initiation of any judicial or non-judicial foreclosure process, move for foreclosure judgment or order of sale. This foreclosure suspension does not apply to Mortgages on properties that have been determined to be vacant or abandoned.

## PROPERTY INSPECTIONS FOR DELINQUENT MORTGAGES

In Bulletin 2020-7, we announced that Freddie Mac was temporarily relieving Servicers from their responsibility to complete property inspections for delinquent Mortgages as described in Section 9202.12 as a result of the COVID-19 pandemic. With this Bulletin we are expanding upon our previous announcement. Effective immediately, Servicers **must not** complete property inspections on a Mortgaged Premises where the Borrower is experiencing a hardship related to COVID-19 unless as of the effective date of the National Emergency declaration effective date (March 1, 2020):

- The Mortgage was delinquent, and

- The property was confirmed to be vacant or abandoned.

For a Mortgaged Premises where the Mortgage was delinquent and the property was confirmed to be vacant or abandoned, the Servicer must complete delinquent property inspections in accordance with Bulletin 2020-7.

## EDR REMINDER – REPORTING MORTGAGES IMPACTED BY COVID-19

As a reminder, Servicers must notify Freddie Mac when a Borrower has a COVID-19 related hardship, in accordance with our requirements as described in Bulletin 2020-4, by reporting **default reason code 032**. Additionally, if a Mortgage is subject to a COVID-19 related hardship and is on an active forbearance plan, required reporting (in compliance with our




Exh. 76
pg 13



Electronic Default Reporting requirements) **must include both default reason code 032 and default action code 09, forbearance.**

## PROPERTY VALUATIONS FOR SHORT SALES AND DEEDS-IN-LIEU OF FORECLOSURE

When obtaining a property valuation as part of a short sale or deed-in-lieu of foreclosure, Freddie Mac requires the Servicer to use an interior property valuation that Freddie Mac provides, as described in Sections 9208.5(a) and 9209.5(a). Due to the COVID-19 pandemic, we are temporarily using external valuations in some cases. In these instances, Servicers must use the valuation we provide, even if it is not an internal valuation.

## HAMP GOOD STANDING FOR MORTGAGES ON A COVID-19 FORBEARANCE PLAN AND TRANSITION TO A REPAYMENT PLAN OR A COVID-19 PAYMENT DEFERRAL

If the Borrower's Mortgage was previously modified under the Home Affordable Modification Program[SM] (HAMP[®]) and the Borrower is in "good standing" when they entered into a COVID-19 forbearance plan, then the Borrower will not lose good standing while on the active forbearance plan, even if the Borrower becomes more than 90 days delinquent. Additionally, the Borrower will not lose "good standing" if they transition directly from a COVID-19 forbearance plan to:

- A reinstatement; or
- An active repayment plan, or
- A settled COVID-19 Payment Deferral

If the Borrower successfully transitions directly from a COVID-19 forbearance plan to a reinstatement, repayment plan or COVID-19 Payment Deferral, the Borrower will not lose good standing while the relief option is active or upon completing the relief option to become current. If the COVID-19 forbearance plan expires without transitioning directly to one of these solutions, or if the Borrower does not successfully reinstate the Mortgage as a result of one of these options, then the Borrower will lose "good standing."

## NATIONAL EMERGENCY DECLARATION EFFECTIVE DATE

In Bulletins 2020-4 and 2020-7, we communicated the following requirement as relates to evaluations for Borrowers with a COVID-19 related hardship for the Extend Modification, the Capitalization and Extension Modification (Cap and Extend), and streamlined Flex Modification evaluations for Borrowers:

- The Borrower must have been current or less than 31 days delinquent (i.e., must not have missed more than one monthly payment) as of the date of the National Emergency Declaration related to COVID-19, March 13, 2020

Effective immediately, we are revising this requirement to reflect the following:

- The Borrower must have been current or less than 31 days delinquent (i.e., must not have missed more than one monthly payment) as of the date of the COVID-19 National Emergency Declaration effective date, March 1, 2020

This change also applies to Extend Modification and Cap and Extend Modification evaluations described in the "Borrower Contact Requirements and Loss Mitigation Hierarchy" section in Bulletin 2020-4, and to any other previous reference to the March 13 date. As a reminder, per Bulletin 2020-15 the Extend Modification and the Cap and Extend will be replaced in the COVID-19 evaluation hierarchy for all evaluations conducted on and after July 1, 2020.

## ADDITIONAL RESOURCES

We encourage Servicers to review the following COVID-19 resources:

- Freddie Mac Single-Family web page on **COVID-19 resources**
- Freddie Mac **Servicing FAQs** on COVID-19
- **Joint guidance and FAQs** for Servicers during the COVID-19 crisis issued by federal and State regulators, including the Consumer Financial Protection Bureau

## GUIDE UPDATES

The Guide will not be updated at this time to reflect these changes.



## CONCLUSION

We appreciate the support that Servicers continue to extend to Borrowers coping with hardships attributed to COVID-19. If you have any questions about the changes announced in this Bulletin, please contact your Freddie Mac representative or call the Customer Support Contact Center at 800-FREDDIE.

Sincerely,

Bill Maguire
Vice President, Servicing Portfolio Management

*Exh. 76*
*pg 15*
*Exb. G #*

**⟨⚇⟩ Fannie Mae**

# Lender Letter (LL-2020-02)

Updated May 14, 2020
Apr. 29, 2020
Apr. 8, 2020
Mar. 25, 2020
Mar. 18, 2020

## To: All Fannie Mae Single-Family Servicers
## Impact of COVID-19 on Servicing

We are actively monitoring reports about the spread of COVID-19 (coronavirus) in the United States and understand that there may be concerns about its potential impact on borrowers. At the direction of the Federal Housing Finance Agency (FHFA) and in alignment with Freddie Mac, we are communicating temporary policies in this Lender Letter to enable servicers to better assist borrowers impacted by COVID-19. The policies in this Lender Letter are effective immediately and are effective until Fannie Mae provides further notice, unless otherwise stated.

We are releasing information to our servicers as quickly as possible and will update and republish this Lender Letter as new guidance becomes available.

Additions to Lender Letter on May 14, 2020

- Reclassification of MBS mortgage loans: Updating our reclassification process for mortgage loans pooled under the Amended and Restated 2007 Single-Family Master Trust Agreement in response to the Coronavirus Aid, Relief, and Economic Security Act on Mar. 27, 2020 ("CARES Act"), when a borrower impacted by COVID-19 is provided a forbearance plan.

Additions to Lender Letter on Apr. 29, 2020

- Principal & interest advances on delinquent mortgage loans: In response to a recent news release from FHFA, we are informing servicers of our intent to limit servicer obligations to advance scheduled monthly principal and interest payments for certain delinquent loans.

Additions to Lender Letter on Apr. 8, 2020

- Complying with law: In response to the recent enactment of the CARES Act, we are updating certain servicing requirements and reminding servicers of their responsibility to comply with law.

Additions to Lender Letter on Mar. 25, 2020, updated Apr. 8, 2020, May 14, 2020

- Attempting to establish QRPC: Reminding servicers of acceptable methods in attempting to achieve quality right party contact (QRPC). UPDATED Apr. 8, 2020 in response to the CARES Act to clarify the servicers responsibilities related to achieving QRPC for a borrower impacted by COVID-19 for a forbearance plan.

- Reporting a reason for delinquency code: Providing a specific "reason for delinquency" code for use in reporting a delinquent mortgage loan associated with a borrower impacted by COVID-19 to Fannie Mae.

- Property inspections and preservation: Providing flexibility with regard to inspections and preservation in light of COVID-19 concerns. UPDATED May 14, 2020 to clarify when the servicer must not complete property inspections and preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19.

- Submission of financial statements and reports: Extending the deadline for submission of financial statements and Form 582 to Apr. 30, 2020.





© 2020 Fannie Mae   LL-2020-02   Page 1 of 8

Exh. 76
Pg 16



Lender Letter content published Mar. 18, 2020, updated Mar. 25, 2020, Apr. 8, 2020, May 14, 2020

- **Forbearance plan terms:** Expanding eligibility for a forbearance plan for borrowers impacted by COVID-19. **UPDATED Apr. 8, 2020** in response to the CARES Act to clarify the servicers responsibilities related to providing a forbearance plan to a borrower impacted by COVID-19.

- **Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan:** Clarifying the mortgage loan modifications that must be considered near the conclusion of a forbearance plan term. **UPDATED Mar. 25, 2020** to require that a borrower be evaluated for payment deferral prior to these mortgage loan modifications. **UPDATED Apr. 8, 2020** to eliminate the requirement that the servicer determine the occupancy status of the property when achieving QRPC and evaluating a borrower impacted by COVID-19 for a workout option prior to expiration of the forbearance plan. **UPDATED May 14, 2020** to clarify the evaluation hierarchy with the introduction of COVID-19 payment deferral and to reflect the effective date of the National Emergency declaration related to COVID-19 in the eligibility criteria (rather than the declaration date of Mar. 13).

- **Credit bureau reporting:** Clarifying that servicers must suspend credit reporting when the hardship is related to COVID-19. **UPDATED Apr. 8, 2020** to require that the servicer comply with the requirements of the Fair Credit Reporting Act ("FCRA"), as amended by the CARES Act for borrowers affected by the COVID-19 pandemic.

- **Suspension of foreclosure activities and certain bankruptcy requirements:** Instructing servicers to not allow any foreclosure sales within the next 60 days. **UPDATED Apr. 8, 2020** to require that the servicer suspend foreclosure-related activities in accordance with the requirements of the CARES Act and suspend the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases. **UPDATED May 14, 2020** to extend the suspension of foreclosure-related activities and the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases.

- **Additional resources:** Providing information about our Disaster Response Network as a reference for Fannie Mae borrowers and a listing of COVID-19 policy communications and resources.

## Reclassification of MBS mortgage loans

The Amended and Restated 2007 Single-Family Master Trust Agreement (the "2007 Trust Agreement") applies to MBS mortgage loans with pool issue dates on or after June 1, 2007 through December 1, 2008. As described in F-1-26, Reclassifying or Voluntary Repurchasing an MBS Mortgage Loan and in accordance with the 2007 Trust Agreement, we remove such mortgage loans from the MBS pool after the sixth consecutive month of continuing forbearance. Selection for reclassification is based on the servicer's monthly delinquency status reporting to Fannie Mae.

In response to the CARES Act, we are updating our reclassification process for mortgage loans in these MBS pools when a borrower impacted by COVID-19 is provided a forbearance plan. Such mortgage loans will not be removed from the MBS pool for the duration of the forbearance plan under the CARES Act, in accordance with the 2007 Trust Agreement, which permits mortgage loans to remain in trust longer than six consecutive months when the forbearance plan is required by applicable law.

These changes will be effective beginning with the June 2020 monthly delinquency status reporting cycle and will apply when the servicer reports delinquency status code 09 (Forbearance) and reason for delinquency code 022 (Energy-Environment Costs), as reassigned pursuant to this Lender Letter for reporting a hardship associated with COVID-19.

## The following content was published Apr. 29, 2020.

## Principal & interest advances on delinquent mortgage loans

*Servicing Guide* A2-1-01, General Servicer Duties and Responsibilities requires the servicer of a scheduled/scheduled or scheduled/actual remittance type mortgage loan to remit funds to us when scheduled to be remitted even when these funds are not ily collected. The servicer is required to remit the scheduled funds until the mortgage loan becomes current, is removed from



our active accounting records, or is purchased from the MBS trust, as applicable.

In response to the national emergency, FHFA published a News Release on Apr. 21, 2020, *FHFA Addresses Servicer Liquidity Concerns, Announces Four Month Advance Obligation Limit for Loans in Forbearance*, aligning policies between Fannie Mae and Freddie Mac to limit servicer obligations to advance scheduled monthly payments to four months for scheduled/scheduled remittance type mortgage loans. We are currently evaluating operational changes to discontinue servicer advances of scheduled remittances of principal and interest payments for delinquent scheduled/scheduled remittance mortgage loans (delinquency advances) after the four consecutive missed monthly payments for mortgage loans serviced under the special servicing option. These changes will become effective for Aug. 2020 remittance activity (based on Jul. 2020 reporting activity). Additional guidance will be provided in the coming weeks.

## The following content was published Apr. 8, 2020.

### Complying with law

In response to the CARES Act, Fannie Mae is updating requirements relating to forbearance plans, achieving QRPC with a borrower in regards to a forbearance plan, credit bureau reporting, and suspension of foreclosure activities and certain bankruptcy requirements. Servicers are reminded that in accordance with *Servicing Guide A2-1-08, Compliance with Requirements and Laws*, they must comply with applicable law even where a provision of the *Servicing Guide* may conflict with applicable law.

## The following content was published Mar. 25, 2020. Attempting to establish QRPC
### UPDATED Apr. 8, 2020

As described in *Servicing Guide D2-2-01, Achieving Quality Right Party Contact with a Borrower*, QRPC is a uniform standard for communicating with the borrower, co-borrower, or a trusted advisor (collectively referred to as "borrower") about resolution of the mortgage loan delinquency. We reaffirm the applicability of QRPC when working with a borrower impacted by COVID-19 to ensure the servicer understands the borrower's circumstances and determines the best possible workout option for resolving the borrower's delinquency. In the event that the servicer is unable to achieve full QRPC and offers a forbearance plan to a borrower impacted by COVID-19 in compliance with the CARES Act, the servicer is considered to be in compliance with our *Servicing Guide*.

In response to servicer inquiries and in accordance with *Servicing Guide A4-2.1-04, Establishing Contact with the Borrower*, among other requirements, the servicer is authorized to use various outreach methods to contact the borrower as permitted by applicable law, including, but not limited to:

- mail,
- email,
- texting, and
- voice response unit technology.

### Reporting a reason for delinquency code

The servicer must report delinquency status information to Fannie Mae through Fannie Mae's servicing solutions system in accordance with *Servicing Guide D2-4-01, Reporting a Delinquent Mortgage Loan to Fannie Mae*. For all mortgage loans that are greater than 30 days delinquent, the servicer must advise us of the action it plans to take or has taken until the mortgage loan becomes current (or liquidated) by reporting, among other information, the reason for delinquency.

In an effort to enable us to identify mortgage loans where the borrower has experienced a hardship associated with COVID-19 while not resulting in a systems impact for us or you, the servicer must report reason for delinquency code 022, Energy- Environment Costs, when reporting the delinquency status of such mortgage loans to us . For mortgage loans where the servicer would have reported reason for delinquency code 022, Energy-Environment Costs, the servicer must now use reason for delinquency code 007, Excessive Obligations.

### erty inspections and preservation UPDATED May 14, 2020

Exh. 76
Pg 18



As a result of the impact of COVID-19, we are temporarily providing flexibility with respect to the completion of property inspections and preservation, including:

- Inspections for properties securing a delinquent mortgage loan as described in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections;

- inspections related to hazard loss repairs as described in *Servicing Guide* B-5-01, Insured Loss Events; and

- property preservation activities as described in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings.

The following table describes when the servicer must not conduct property inspections and property preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19, depending on the status of the mortgage loan at the time of the effective date of the National Emergency declaration related to COVID-19.

| If on March 1, 2020, the mortgage loan was... | Then the servicer must... |
|---|---|
| current or less than 30 days delinquent and the borrower becomes delinquent | not complete property inspections during the forbearance plan or an active post-forbearance plan workout option. |
| delinquent and the property was not vacant or abandoned | |
| delinquent and the property was reported as vacant or abandoned | follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections and property preservation requirements in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings. |

> **NOTE:** *For mortgage loans that are delinquent and not on a forbearance plan, servicers must continue to follow the inspection requirements in in Inspecting a Property Securing a Delinquent Mortgage Loan in Servicing Guide D2-2-10, Requirements for Performing Property Inspections.*

If the mortgage loan is not brought current upon expiration of the forbearance plan, or if the borrower is not approved for a post-forbearance workout option as determined based on QRPC, the servicer must follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections.

If the servicer is unable to complete a property inspection or property preservation activity in accordance with the *Servicing Guide*, it must document their efforts and the reason for any exception in the mortgage loan file.

> **NOTE:** *The servicer's inability to complete property inspections due to COVID-19 related impacts must not impact the servicer's disbursement of insurance loss proceeds.*

As a reminder, *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections authorizes a curbside (drive-by) inspection if there is potential danger to the inspector. Additionally, the *Property Preservation Matrix and Reference Guide* authorizes servicers to utilize alternative data or other means available to determine occupancy status when inspection results are unknown due to lack of access.

For additional questions, contact

- Property_Preservation@fanniemae.com regarding property inspections for delinquent mortgage loans

- Hazard_Loss@fanniemae.com regarding hazard loss inspections

## Submission of financial statements and reports

*elling Guide* A4-2-01, sellers/servicers must submit financial statements and the *Lender Record Information* (Form 582) within



Exh. 76
pg19



90 days after the end of their fiscal year. While we encourage submission of this information in a timely manner and by the Mar. 31, 2020 deadline (for those with a Dec. 31 fiscal-year end), we are extending the due date to Apr. 30, 2020.

## The following content was published Mar. 18, 2020.

### Forbearance plan terms UPDATED Apr. 8, 2020

With the Mar. 18, 2020 Lender Letter, we communicated that servicers must achieve QRPC with the borrower prior to offering a forbearance plan, that the property securing the mortgage loan may be either a principal residence, a second home, or an investment property, and that the servicer must otherwise follow the requirements in *Servicing Guide* D2-3.2-01, Forbearance Plan. In response to the CARES Act, the servicer must approve forbearance plans for borrowers impacted by COVID-19 in accordance with the CARES Act.

The CARES Act states that a forbearance plan must be provided to any borrower who requests a forbearance with an attestation of the financial hardship caused by the COVID-19 emergency; and no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required. Such a borrower must be provided an initial forbearance plan for a period up to 180 days, and that forbearance period may be extended for up to an additional 180 days at the request of the borrower. In accordance with the *Servicing Guide* D2-3.2-01, Forbearance Plan, the servicer may provide an initial forbearance period, and any extended forbearance period, in separate, shorter increments. If the borrower's COVID-19 related hardship has not been resolved during an incremental forbearance period, the servicer must extend the borrower's forbearance period, not to exceed 12 months total. For a borrower impacted by COVID-19, we are temporarily eliminating the requirement that the servicer must receive our prior written approval for a forbearance plan that would result in the mortgage loan becoming greater than 12 months delinquent.

As a reminder, servicers must inform the borrower that the payments which are the subject of a forbearance plan have only been delayed or reduced, not forgiven, and that once the forbearance plan is complete, one of the following must occur:

- the mortgage loan must be brought current through a reinstatement,
- the borrower is approved for another workout option,
- the mortgage loan is paid in full, or
- the servicer refers the mortgage loan to foreclosure in accordance with applicable law.

The servicer must also inform the borrower that he or she may shorten a forbearance plan term at any time to reduce the amount of payments which are being delayed or reduced.

As stated in the *Servicing Guide* D2-3.2-01, Forbearance Plan, the forbearance plan terms must be provided to the borrower using the appropriate Evaluation Notice, which must be revised in accordance with applicable law. In addition, the servicer must document in the individual mortgage loan file the borrower's request for forbearance and attestation as to a financial hardship caused by the COVID-19 emergency, and the terms of the initial and any extended forbearance, including the duration of the forbearance period.

### Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan UPDATED May 14, 2020

For borrowers who have received a forbearance plan in response to COVID-19, the servicer must begin attempts to contact the borrower no later than 30 days prior to the expiration of the forbearance plan term, and must continue outreach attempts until either QRPC is achieved or the forbearance plan term has expired. When evaluating the borrower for a workout option prior to expiration of the forbearance plan, we are providing flexibility with regard to achieving QRPC. We are eliminating the requirement that the servicer determine the occupancy status of the property and will consider the servicer obtaining the following as achieving QRPC for purposes of evaluating a borrower who has experienced a hardship resulting from COVID-19:

- determining the reason for the delinquency and whether it is temporary or permanent in nature;



© 2020 Fannie Mae   LL-2020-02   Page 5 of 8

Exh. 76
pg 20



- determining whether or not the borrower has the ability to repay the mortgage loan debt;
- educating the borrower on the availability of workout options, as appropriate; and
- obtaining a commitment from the borrower to resolve the delinquency.

With LL-2017-09R we introduced the Fannie Mae Extend Modification for Disaster Relief (Extend Mod), a temporary post-disaster forbearance mortgage loan modification, as well as the order of evaluation for Extend Mod and other post-forbearance mortgage loan modifications when the property securing the mortgage loan or the borrower's place of employment is located in a FEMA-Declared Disaster Area eligible for Individual Assistance. While COVID-19 is not a disaster as defined in the *Servicing Guide*, with this Lender Letter, we are extending the availability of these post-disaster forbearance mortgage loan modifications to borrowers impacted by COVID-19. The servicer must analyze each case carefully in accordance with the requirements in the following table before determining which mortgage loan modification is most appropriate for the borrower.

| If the servicer is... | And... | Then the servicer must evaluate the borrower for... |
|---|---|---|
| able to establish QRPC with the borrower during the forbearance plan | determines that the borrower is capable of maintaining the current contractual monthly PITI payment, including any escrow amounts disbursed by the servicer during the forbearance plan term and escrow shortage needed to pay future escrow that is required to be repaid by the borrower over the 60-month escrow repayment period | an Extend Mod; and if eligible, offer the borrower the Extend Mod. The servicer must disclose how the escrow analysis was determined, and that disbursed escrow amounts will not be capitalized but will be added to the escrow shortage needed to pay future escrow amounts resulting in an increase of the borrower's current contractual monthly PITI payment over the 60-month escrow repayment period. |
| | determines that the borrower can maintain the current contractual monthly PITI payment, but cannot manage the additional escrow repayment obligation to cover amounts disbursed by the servicer during the forbearance plan term | a Fannie Mae Cap and Extend Modification for Disaster Relief; and if eligible, offer the borrower a Fannie Mae Cap and Extend Modification for Disaster Relief (see D2-3.2-05, Fannie Mae Cap and Extend Modification for Disaster Relief). |
| | determines that the borrower is not capable of maintaining the current contractual monthly PITI payment | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-06, Fannie Mae Flex Modification); and if eligible, offer a Fannie Mae Flex Modification. |
| not able to establish QRPC during the forbearance plan | the mortgage loan is 90 or more days delinquent | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-06, Fannie Mae Flex Modification); and if eligible, solicit the borrower for a Fannie Mae Flex Modification. |

© 2020 Fannie Mae   LL-2020-02   Page 6 of 8



For these mortgage loan modifications, the following changes to the eligibility criteria apply:

| Current Requirement | Requirement for Borrowers Impacted by COVID-19 |
|---|---|
| The property securing the mortgage loan or the borrower's place of employment must be located in a FEMA-Declared Disaster Area eligible for Individual Assistance. | The borrower must have experienced a hardship resulting from COVID-19 (for example, unemployment, reduction in regular work hours, or illness of a borrower/co-borrower or dependent family member), which has impacted their ability to make their monthly mortgage loan payment.<br><br>N O T E: *The servicer is not required to obtain documentation of the borrower's hardship.* |
| The mortgage loan must have been current or less than 31 days delinquent when the disaster occurred | The mortgage loan must have been current or less than 31 days delinquent as of Mar. 1, 2020, the effective date of the National Emergency declaration related to COVID-19. |

N O T E: *The servicer must make appropriate changes to the Flex Modification Solicitation Cover Letter and Evaluation Notices, including the applicable Frequently Asked Questions, when using for a borrower impacted by COVID-19.*

In Lender Letter LL-2020-07, *COVID-19 Payment Deferral* we introduced COVID-19 payment deferral, a new home retention workout option jointly developed with Freddie Mac at the direction of FHFA, to assist borrowers who have resolved their COVID-19 related hardship. Once the servicer implements COVID-19 payment deferral, it must evaluate borrowers impacted by COVID-19 for a COVID-19 payment deferral in accordance with the eligibility requirements and evaluation hierarchy described in Lender Letter LL-2020-07, *COVID-19 Payment Deferral*. This supersedes our guidance on Mar. 25, 2020 which instructed that once the servicer implemented payment deferral, to evaluate borrowers impacted by COVID-19 for a payment deferral in accordance with the eligibility requirements and workout option hierarchy described in Lender Letter LL-2020-05, *Payment Deferral* prior to evaluating the borrower for a post-forbearance mortgage loan modification as described above.

## Credit bureau reporting UPDATED Apr. 8, 2020

In response to the CARES Act, we are acknowledging that the servicer must report the status of the mortgage loan to the credit bureaus in accordance with the FCRA, including as amended by the CARES Act, for borrowers affected by the COVID-19 emergency. This supersedes our guidance on Mar. 18, 2020, which instructed servicers to suspend reporting the status of a mortgage loan to credit bureaus during an active forbearance plan, or a repayment plan or Trial Period Plan where the borrower is making the required payments as agreed, even though payments are past due, as long as the delinquency is related to a hardship resulting from COVID-19.

## Suspension of foreclosure activities and certain bankruptcy requirements UPDATED May 14, 2020

On Mar. 18, 2020, we instructed servicers that they must suspend all foreclosure sales for the next 60 days, unless the property securing the mortgage loan had been determined to be vacant or abandoned.

In response to the CARES Act, on Apr. 8, 2020, we acknowledged that the servicer was required to suspend foreclosure-related activities in accordance with the requirements of the CARES Act, which provides: "Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on Mar. 18, 2020."

We are extending the suspension of foreclosure-related activities through June 30, 2020. During the period of the extension, servicers may not, except with respect to a vacant or abandoned property, initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure sale. This suspension does not apply to mortgage loans secured by properties that have been determined to be vacant or abandoned.

···· ··nerally require servicers to file motions for relief from the automatic stay in bankruptcy cases upon certain milestones. In ·f the CARES Act and other impacts resulting from the COVID 19 National Emergency, on Apr. 8, 2020, we temporarily

*Exh. 76 pg 22*



relieved servicers of the obligation to meet these timelines. We are continuing this temporary suspension. Servicers must continue to work with their bankruptcy counsel to determine the appropriate time to file such motions.

## Use of Fannie Mae's Disaster Response Network

Our Disaster Response Network (DRN) is operational and can be used to assist borrowers who are financially impacted by COVID-19. The DRN has trained financial counselors who will work with borrowers to create a workable budget based upon the borrower's present financial situation and assist in explaining options including obtaining unemployment benefits and any new special assistance. We encourage servicers to refer Fannie Mae borrowers to our Disaster Response Network at 1-877-542-9723.

## Additional resources

As a reminder, we have published other Lender Letters and helpful information regarding policies related to COVID-19.

- LL-2020-03, Impact of COVID-19 on Originations
- LL-2020-04, Impact of COVID-19 on Appraisals
- COVID-19 Frequently Asked Questions (Selling)
- Ask Poli Selling

- LL-2020-06, Selling Loans in Forbearance Due to COVID-19
- LL-2020-07, COVID-19 Payment Deferral
- COVID-19 Frequently Asked Questions (Servicing)
- Ask Poli Servicing

We will continue to monitor the situation and alert you of any additional policy updates. Servicers who have questions about this Announcement should contact their Fannie Mae Account Team, Portfolio Manager, or Fannie Mae's Single-Family Servicer Support Center at 1-800-2FANNIE (1-800-232-6643).



*Exhibit H* Exh.7(p) 23

| | |
|---|---|
| Veterans Benefits Administration | Circular 26-20-18 |
| Department of Veterans Affairs | May 14, 2020 |
| Washington DC | |

### Extended Foreclosure Moratorium for Borrowers Affected by COVID-19

1. <u>Background and Purpose.</u> On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act), Public Law 116-136. The CARES Act protects borrowers with Federally-backed mortgage loans who are experiencing financial hardship due to the COVID-19 national emergency. The purpose of this Circular is to extend the foreclosure moratorium.

2. <u>Moratorium on Foreclosure.</u> The CARES Act prohibited loan servicers from initiating any judicial or non-judicial foreclosure process for the 60-day period beginning March 18, 2020. In light of the ongoing COVID-19 national emergency and its impact on Veteran borrowers, properties secured by VA-guaranteed loans are subject to a moratorium on foreclosure through June 30, 2020. The moratorium applies to the initiation of foreclosures, and to the completion of foreclosures in process.

3. <u>Rescission:</u> This Circular is rescinded April 1, 2021.

By Direction of the Under Secretary for Benefits

Jeffrey F. London
Executive Director, Loan Guaranty Service

Distribution: CO: RPC 2024
SS (26A1) FLD: VBAFS, 1 each (Reproduce and distribute based on RPC 2024)



(LOCAL REPRODUCTION AUTHORIZED)

*Exh. 76*

*Exh. I  Pg. 24*

## SFH Guaranteed Servicing

May 14, 2020

## Foreclosure Moratorium Extension and Additional Guidance for Servicing Loans Impacted by COVID-19

The purpose of this announcement is to inform lenders of additional guidance to provide support to borrowers impacted by the Presidentially declared COVID-19 National Emergency.

### Moratorium Extension:

The 60-day foreclosure and eviction moratorium announced by USDA, Single Family Housing Guaranteed Loan Program (SFHGLP) on March 19th, is extended until June 30, 2020.

The moratorium extension does not apply in cases where the servicer has documented the property is vacant or abandoned.

### Forbearance Requirements:

Lenders should continue to provide impacted borrowers relief in accordance with the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) by offering forbearance of the borrowers guaranteed loan payment for up to 180 days. In addition, the initial forbearance period may be extended up to an additional 180 days at the borrower's request. Lenders should outline potential solutions that may be available at the end of the forbearance payment and explain to borrowers that a lump sum payment of the arrearage will not be required.

During the forbearance options outlined above, no accrual of fees, penalties or interest may be charged to the borrower beyond the amounts calculated as if the borrower had made all contractual payments in a timely fashion.

Lenders may approve the initial 180 day COVID-19 Forbearance no later than October 30, 2020.

### Post Forbearance Options for Borrowers Impacted by COVID-19:

Upon completion of the forbearance, the lender shall work with the borrower to determine if they can resume making regular payments and, if so, either offer an affordable repayment plan or term extension to defer any missed payments to the end of the loan. If the borrower is unable to resume making regular payments, the lender should evaluate the borrower for all available loss mitigation options outlined in HB-1-3555. The special relief measured that are outlined in Chapter 18 Section "Assistance in Natural Disasters" will apply. These options include Term Extensions, Capitalization and Term Extensions, and a Mortgage Recovery Advance.

Questions regarding program policy and this announcement may be directed to the National Office Division at sfhelpServicing@usda.gov or (202) 720-1452.

Thank you for your support of the Single-Family Housing Guaranteed Loan Program!

Links to websites:



EXHIBIT 16
Pg 25

*SFHGLP Lending Partner Webpage:* https://www.rd.usda.gov/page/sfh-guaranteed-lender

*SFHGLP webpage:* https://www.rd.usda.gov/programs-services/single-family-housing-guaranteed-loan-program

*USDA LINC Training and Resource Library:*

https://www.rd.usda.gov/programs-services/lenders/usda-linc-training-resource-library

*Procedure Notices:* https://www.rd.usda.gov/resources/directives/procedures-notices

## Help Resources

**Policy Questions**
Customer Service Center
Phone: 866-550-5887
Single Family Housing Guaranteed Loan Division
Phone: 202-720-1452

**USDA ITS Service Desk Support Center**
For e-Authentication assistance
Email: eAuthHelpDesk@ftc.usda.gov
Phone: 800-457-3642, option 1 (USDA e-Authentication issues)

**Rural Development Help Desk**
For GUS system, outage or functionality assistance
Email: RD.HD@STL.USDA.GOV

Phone: 800-457-3642, option 2 (USDA Applications); then option 2 (Rural Development)



Filing # 148936017 E-Filed 05/04/2022 12:23:16 PM

Exh. 77 pg. 1

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2010-061928-CA-01
SECTION: CA05
JUDGE: Vivianne Del Rio

**U S Bank (na)**

Plaintiff(s)

vs.

**Williams, Leroy**

Defendant(s)

_____/

### ORDER GRANTING MOTION TO RESET FORECLOSURE SALE

**THIS CAUSE** having come before the Court via a zoom hearing on May 4, 2022 on the Plaintiff's Motion to Reset Foreclosure Sale, and the Court having reviewed the file and being otherwise duly advised, it is

**ORDERED AND ADJUDGED:**

The Plaintiff's Motion to Reset Foreclosure Sale is hereby **GRANTED**.

The clerk is directed to reset the foreclosure sale for **June 21, 2022**, by electronic sale at www.miamidade.realforeclose.com beginning at 9:00 AM.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 4th day of May, 2022.

2010-061928-CA-01 05-04-2022 12:11 PM
Hon. Vivianne Del Rio

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2010-061928-CA-01                                                        Page 1 of 3

Case 1:24-cv-22413-JEM Document 1-1 Entered on FLSD Docket 06/24/2024 Page 288 of 359

Case 1:23-cv-22848-JEM Document 1-2 Entered on FLSD Docket 07/31/2023 Page 283 of 300

Exh 77 pg 2

┌─────────────────────────────────────────────────────────────┐
│ No. Further Judicial Action Required on **THIS MOTION**       │
│                                                              │
│ CLERK TO **RECLOSE** CASE IF POST JUDGMENT                   │
└─────────────────────────────────────────────────────────────┘

**Electronically Served:**
Altanese Phenelus, yvaldes@miamidade.gov
Giuseppe Salvatore Cataudella, FLeFileTeam@brockandscott.com
Giuseppe Salvatore Cataudella, FL.CourtDocs@brockandscott.com
Giuseppe Salvatore Cataudella, CourtXpress@firmsolutions.us
Harve Humpsy, Courts@Journalist.com
JOHN WESTLEY, TheWomb@USA.com
Jennifer L Warren, jwarren@northmiamifl.gov
Jennifer L Warren, cityattorney@northmiamifl.gov
Jessica Faith Watts, jwatts@quinnlegal.com
Jessica Faith Watts, eservice@quinnlegal.com
Jessica Faith Watts, kmiller@quinnlegal.com
Jessica J Fagen, lawfirmFL@rsieh.com
Jessica J Fagen, jfagen@rsieh.com
Jimmy Keenan Edwards, FLeFileTeam@brockandscott.com
Jimmy Keenan Edwards, FLCourtDocs@brockandscott.com
Jimmy Keenan Edwards, CourtXpress@firmsolutions.us
John Westley Mr., WombTV@gmail.com
Jonathan S Wilinsky, FLeFileTeam@brockandscott.com
Jonathan S Wilinsky, CourtXpress@firmsolutions.us
Jonathan S Wilinsky, FLCourtDocs@brockandscott.com
Julie Anthousis, FLeFileTeam@brockandscott.com
Julie Anthousis, FLCourtDocs@brockandscott.com
Julie Anthousis, CourtXpress@firmsolutions.us
Kara Leah Fredrickson, FLeFileTeam@brockandscott.com
Kara Leah Fredrickson, FL.CourtDocs@brockandscott.com
Kara Leah Fredrickson, CourtXpress@firmsolutions.us
Laura Ashley Jackson, FLeFileTeam@brockandscott.com
Laura Ashley Jackson, CourtXpress@firmsolutions.us
Laura Ashley Jackson, FLCourtDocs@brockandscott.com
Mehwish A. Yousuf, FLeFileTeam@brockandscott.com
Mehwish A. Yousuf, FLCourtDocs@brockandscott.com
Mehwish A. Yousuf, CourtXpress@firmsolutions.us
Michael R Esposito, Michael.Esposito@BlankRome.com
Michael R Esposito, BRFLeservice@blankrome.com
Nicole R Topper Esq, ntopper@blankrome.com
Shaib Y Rios, FLeFileTeam@brockandscott.com
Shaib Y Rios, FLCourtDocs@brockandscott.com

Case No: 2010-061928-CA-01

Page 2 of 3

Exh. 77 pg 3

Shaib Y Rios, CourtXpress@firmsolutions.us
Stephen Christopher Wilson, scwilson862007@yahoo.com
Stephen Christopher Wilson, Stephen@bpinjury.com
Stephen Christopher Wilson, Natasha@bpinjury.com
Tania Bartolini, tania@salaslawfirmpa.com
Tania Bartolini, jp@salaslawfirmpa.com
Tania Bartolini, dianne@salaslawfirmpa.com
William Henry Stafford III, william.stafford@myfloridalegal.com
William Henry Stafford III, Teresa.pope@myfloridalegal.com
Willnae Lacroix, FLeFileTeam@brockandscott.com
Willnae Lacroix, FLCourtDocs@brockandscott.com
Willnae Lacroix, courtxpress@FirmSolutions.us
maurice symonette, BigBOSS@Clerk.com
maurice symonette, BIGBOSS1043@yahoo.com
maurice symonette, boss1@clerk.com

**Physically Served:**

Case No: 2010-061928-CA-01                                        Page 3 of 3

CM/ECF LIVE - U.S. Bankruptcy Court:flsb

*Exh. 78* Page 1 of 2

United States Bankruptcy Court
Southern District of Florida

*2010- 06928-CH-01*
*061928*

FILED FOR REC...

2018 MAR 16 PM 12:31

MARIA ADROVER

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 03/16/2018 at 09:39 AM and filed on 03/16/2018.

**Kurt Marin and Symonette Limited Partners T**
2035 Linton Lake Dr. #1
Delray Beach, FL 33445
Tax ID / EIN: 82-6988353

**CANCELLED IN ODYSSEY**

**MAR 16 2018**

**FILED 03/16/2018 9:25 AM**

The bankruptcy trustee is:

**Nicole Testa Mehdipour**
United States Bankruptcy Trustee
200 East Broward Blvd.
Suite 1110
Ft Lauderdale, FL 33301
954-858-5880

**CANCELLED ON R/A MAR 16 2018**

Certified to be a true and correct copy of the original.
Joseph Falzone, Clerk
U.S. Bankruptcy Court
Southern District of Florida
By:_____
Deputy Clerk
Date:____ 2 16 18

The case was assigned case number 18-13032-EPK to Judge Erik P. Kimball.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.flsb.uscourts.gov or at the Clerk's Office, , .

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Joseph Falzone
Clerk, U.S. Bankruptcy Court

CM/ECF LIVE - U.S. Bankruptcy Court:flsb

*Ex W 2*

Page 1 of 1

United States Bankruptcy Court
Southern District of Florida

10-6192BCA01

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed
below was filed under Chapter 7 of the United
States Bankruptcy Code, entered on 11/13/2018 at
09:06 AM and filed on 11/13/2018.

**Mack L. Wells**
15020 S. River DR
Miami, FL 331167
786-344-0499
SSN / ITIN: ███████

FILED
11/13/2018
8:53 AM

The bankruptcy trustee is:

**Soneet Kapila**
www.kapilatrustee.com
PO Box 14213
Ft Lauderdale, FL 33302
954-761-8707

The case was assigned case number 18-24091-RAM to Judge Robert A Mark.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.flsb.uscourts.gov or at the Clerk's Office, , .

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

Certified to be a true and correct copy
of the original.
Joseph Falzone, Clerk
U.S. Bankruptcy Court
Southern District of Florida
By: _____
Deputy Clerk
Date: 11-13-2018

**Joseph Falzone**
**Clerk, U.S. Bankruptcy**
**Court**

https://ecf.flsb.circ11.dcn/cgi-bin/NoticeOfFiling.pl?740281

11/13/2018

Filing # 82568059 E-Filed 12/26/2018 04:37:16 PM                                         *Exh.* 80*



2001 NW 64ᵗʰ Street, Suite 130
Ft. Lauderdale, FL 33309
Phone: 954.618.6955
Fax: 954.618.6953

## B&S File: 13-F02868

## County:  Miami-Dade

## Court Case Number: 2010-61928-CA-01

## Document Name: Motion to Vacate and Reschedule Sale



4/12/2019                                    CM/ECF LIVE - U.S. Bankruptcy Court:flsb                            *Exh. 80*

United States Bankruptcy Court
Southern District of Florida

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 7 of the United States Bankruptcy Code,
entered on 11/13/2018 at 09:06 AM and filed on 11/13/2018.

**Mack L. Wells**
15020 S. River DR
Miami, FL 33167
786-344-0499
SSN / ITIN: xxx-xx▓▓▓▓



The bankruptcy trustee is:

**Soneet Kapila**
www.kapilatrustee.com
PO Box 14213
Ft Lauderdale, FL 33302
954-761-8707

The case was assigned case number 18-24091-RAM to Judge Robert A Mark.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page www.flsb.uscourts.gov or at the Clerk's Office, , .

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Joseph Falzone**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 04/12/2019 13:08:20 | | |
| PACER | BS493511:3759437:0 | Client Code: |

https://ecf.flsb.uscourts.gov/cgi-bin/NoticeOfFiling.pl?740281                                                    1/2

*Exh. "81*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for
RASC 2005AHL3

        Plaintiff,

vs.

Leroy Williams, et al.,

        Defendants.

_____/

GENERAL JURISDICTION DIVISION

Case No. 2010-61928-CA-01

## PLAINTIFF'S MOTION TO VACATE THE NOVEMBER 13, 2018 SALE AND RESCHEDULE THE FORECLOSURE SALE

The Plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005AHL3, moves to Vacate the November 13, 2018 mortgage foreclosure sale because:

1. On December 19, 2017, this Court entered a Final Judgment of Foreclosure pursuant to which a foreclosure sale was scheduled for November 13, 2018.

2. The Borrower filed a Chapter 7 Bankruptcy on November 13, 2018 at 8:53 AM in the Southern District of Florida with case number 18-24091-RAM. See exhibit "A"

3. The sale was held on November 13, 2018 in violation of the automatic stay and the property was sold to the Plaintiff.

WHEREFORE, Plaintiff prays this Court for an Order to Vacate the November 13, 2018 Sale, and such other and further relief as this Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof was served electronically or via U.S. Mail on ___December 27___, 2018 to all persons shown on the following service list.

By: _Giuseppe Cataudella_
Giuseppe Cataudella, Esq., FL Bar # 88976
FLCourtDocs@brockandscott.com
(954) 618-6955 x6108
Brock & Scott, PLLC
2001 NW 64th St, Suite 130
Ft. Lauderdale, FL 33309
Fax (954) 618-6953
Attorneys for Plaintiff

2010-61928-CA-01

File # 13-F02868

*Exh. 81*

*Page 1*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2021-CA-910826

MAURICE SYMONETTE,
JAMES BUCKMAN,

                      Plaintiff(s),

      v.

U.S. BANK NATIONAL ASSOCIATION
FRANKLYN MANAGEMENT CORPORATION,
                    Defendant(s).
------------------------------------------------

                      November 16, 2022

                      9:34 a.m.

Motion to Reconsider Proceeding, held via Zoom,

taken by MADELINE TAVANI, a Notary Public on behalf

of the State of New York.

*Exh 81 pg2*

APPEARANCES:

HONORABLE VIVIANNE DEL RIO

JESSICA WATTS, ESQ., ATTORNEY FOR FRANKLYN CREDIT MANAGEMENT ASSOCIATION

MAC WELL

JAMES BUCKMAN, PLAINTIFF

MR. WELL:  This is -- we're here with the motion to reconsider reverted Judge's Zaybar's orders of dismissal with prejudice on our case. And we're asking for the -- you, Judge Valerie to recuse yourself for your past judgments and --

MR. BUCKMAN:  Excuse me, ma'am, he's -- he's sick right now and he can't really talk.

I'm the witness, I was his witness to the case but he's -- he's very sick right now. And we might have to take him to the hospital. Like we were supposed to take him already but he's very sick, and this is the guy that's in the -- that's -- that's doing this case.

So I can't -- we need to know if we can ask for another date because we gotta get him a lawyer to talk because he can't even talk right now.  He's in a wheelchair and he's sick.

MR. WELL:  Yes.  Hello?

CLERK:  One second, one second.  The Judge will be right with you.  Okay.

THE COURT:  Is the audio working?

CLERK:  Yes, Judge.

THE COURT:  The one in my -- the one in my office stopped working.

CLERK:  Just sit there. Stick this in your ear.

THE COURT:  Can you just --

MR. WELL:  Did you hear us, Your Honor?

CLERK:  They have it like that, Judge.

THE COURT:  Okay.  No, but I mean we're --

MR. WELL:  Can you hear us, Your Honor?

MS. BONINI:  Gentlemen --

MR. WELL:  This is my witness, Ms --

MS. BONINI:  Gentlemen, one moment please, one moment.  Thank you.

MR. WELL:  All right.

THE COURT:  All right.  Sorry about that. All right.  This is -- I called the case of U.S. National Bank Association versus Leroy Williams.

CLERK:  Excuse me, the judge has --

THE COURT:  Can they hear me?

CLERK:  Yes.

MS. WATTS:  Yes, Judge, we can hear you.

MS. BONINI:  Your Honor, we can hear you. Yes, Judge.

THE COURT:  Okay great.

CLERK:  That's the case that I called and it's the Plaintiff's motion to reset the

MGR REPORTING, INC.
1-844-MGR-RPTG

5

foreclosure sale.

MR. BUCKMAN:  Your Honor, he's very sick. We need -- we need to get him a lawyer because he can't even talk right now.

THE COURT:  Who is -- who is he?

MR. WELL:  Mac Well.

MR. BUCKMAN:  Mac Well.

THE COURT:  Okay.  And --

MR. WELL:  I'm in a lot of pain right now.

THE COURT:  Okay.  And I'm sorry, are you the person who is residing at that residence right now?

MR. WELL:  Yes, yes.

THE COURT:  Okay.  All right.

So you're asking The Court to set the sale out -- you need 60 days, would that -- would that be sufficient?

MR. WELL:  No.  We're asking -- we're -- we're going against the sale because U.S. Bank does not own -- absolutely don't own the note and we just found this out.

THE COURT:  Okay.  All right.  Listen, listen, listen.

MR. BUCKMAN:  Let me finish first, let me finish.

The judge that did that judgment, Valerie Manno Schurr recused herself from that and reverted everything back to the original judge's order, which was Judge Bell who dismissed it with prejudice. And when she -- she said she never even signed that dismissal without prejudice that gives them the right to do the foreclosure.

So she didn't sign it, so I got her on video and you can -- I got the video right here where you can hear the judge herself say --

THE COURT: Okay. I'm -- I'm so sorry, I have to cut you off.

I'm in the middle of a trial and today all I'm going to do is I'm going to set a date far in the future to allow you to get representation and to -- if you'd like to bring a motion and have a hearing, we can do that.

But -- but right now, is not -- is not, unfortunately, the time to do that.

MR. WELL: Well --

THE COURT: You will be heard, you will be heard, but -- but not right now. So --

MR. BUCKMAN: But he's here and coherent can you not make a sale date until we get an

MGR REPORTING, INC.
1-844-MGR-RPTC



United States Bankruptcy Court
Southern District of Florida

**Notice of Bankruptcy Case Filing**

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 03/16/2023 at 2:28 PM and filed on 03/16/2023.

**Mack Lewis Wells, Jr.**
221 W 27 Street
Riviera, FL 33404
(786) 613-2619
SSN / ITIN: xxx-xx-2348
*aka* **Mack Wells**

The bankruptcy trustee is:

**Deborah Menotte**
POB 211087
West Palm Beach, FL 33421
(561) 795-9640

The case was assigned case number 23-12048-MAM to Judge Mindy A Mora.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.flsb.uscourts.gov or at the Clerk's Office, , .

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Joseph Falzone
Clerk, U.S. Bankruptcy Court

of 2                                                                    3/16/2023, 2:47 PM

Exh. 
84 Pg. 1

# AFFIDAVIT

I MICAHIEL NICHLOSON, JAMES BUCKMAN, AND RICKY V. WELCH SAW MAURICE SYMONETTE TALK TO A REPRESENTATIVE WHO SAID HE WAS FROM TREXSTAYS AND HE WANTED TO BUY OUR HOUSE FOR 2 MILLION DOLLARS TO AVOID COURT PROCEEDINGS AND THE NEWS PAPER AND MAURICE SAID NO.

*Micahiel Nichoson*

MICAHIEL NICHLOSON

15020 SOUTH RIVER DR.

MIAMI, FLA. 33167

*Judytte Joseph* NOTARIZED THIS LETTER ON BEHALF OF MACK WELLS JR. WHO SIGN BEFORE ME ON THIS 17TH DAY OF JULY, 2023 WHICH PRODUCED FLORIDA DRIVER LICENSE TO SHOW IDENTIFICATION WHICH EXPIRES 6/25/2028.

JUDYTTE JOSEPH
Notary Public
State of Florida
Comm# HH317684
Expires 12/12/2026

Exh. 84 Pg. 2

I JAMES BUCKMAN, RICKY V. WELCH AND MICAHIEL NICHLOSON SAW MAURICE SYMONETTE TALK TO A REPRESENTATIVE WHO SAID HE WAS FROM TREXSTAYS AND HE WANTED TO BUY OUR HOUSE FOR 2 MILLION DOLLARS TO AVOID COURT PROCEEDINGS AND THE NEWS PAPER AND MAURICE SAID NO.

JAMES BUCKMAN

15020 SOUTH R. DRIVE

MIAMI, FLA. 33167

Judytte Joseph NOTARIZED THIS LETTER ON BEHALF OF MACK WELLS JR. WHO SIGN BEFORE ME ON THIS 17TH DAY OF JULY, 2023 WHICH PRODUCED FLORIDA DRIVER LICENSE TO SHOW IDENTIFICATION WHICH EXPIRES 6/25/2028.

JUDYTTE JOSEPH
Notary Public
State of Florida
Comm# HH317684
Expires 12/12/2026

Exh. 83

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR RASC AHL3,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS (MERS), AXIOM FINANCIAL
SERVICES, RESIDENTIAL FUNDING
CORPORATION

Plaintiff,

V.                                                      CASE: 2010-61928-CA01

MACK WELLS

Defendants,

## CONSENT TO REMOVAL

1. Defendant James Littlejohn is familiar with the terms of the Notice of Removal of Defendant Mack Wells.

2. Without conceding that service was proper, the undersigned Defendant hereby consents to the removal of this action to this Court from the Court of Common Pleas of Dade County.

3. By filling this Consent, the Defendant does not waive and expressly reserves all defenses, including without limitation any defense of lack of personal jurisdiction.

Dated: July 26, 2023                 By:_____
                                              JAMES LITTLEJOHN

*Exh. 89 pg 3*

## AFFIDAVIT

I RICKY V. WELCH, MICAHIEL NICHLOSON, AND JAMES BUCKMAN SAW MAURICE SYMONETTE TALK TO A REPRESENTATIVE WHO SAID HE WAS FROM TREXSTAYS AND HE WANTED TO BUY OUR HOUSE FOR 2 MILLION DOLLARS TO AVOID COURT PROCEEDINGS AND THE NEWS PAPER AND MAURICE SAID NO.

RICKY V. WELCH

15020 SOUTH R. DR.

MIAMI, FLA. 33167

_____ NOTARIZED THIS LETTER ON BEHALF OF MACK WELLS JR.

WHO SIGN BEFORE ME ON THIS 17TH DAY OF JULY, 2023 WHICH PRODUCED FLORIDA

DRIVER LICENSE TO SHOW IDENTIFICATION WHICH EXPIRES 6/25/2028.

JUDYTTE JOSEPH
Notary Public
State of Florida
Comm# HH317684
Expires 12/12/2026

Exh A

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-ca1

U.S. Bank N.A.
Plaintiff(s)

vs.

Leroy Williams
Defendant(s)

ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution. Served on April 11 2008. The court finds that (1) notice prescribed by rule 1.40 (e) was served on April 11 2008, (2) their was no record activity for the year preceding service of the foregoing notice (3) no stay has been issued or approved by the court And (4) no party has shown a good cause why this action should remain pending. Accordingly.

IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice DONE AND ORDERED in chambers at Miami dade county Florida this 31th day of March 2009.

SARAH I ZABEL
Circuit Court Judge

EXHIBIT B

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2007-12407-cal

US Bank, N.A.
Plaintiff(s)

April 1, 2010

Vs.

Leroy Williams
Defendant(s)

## ORDER OF DISMISSAL WITH PREJUDICE

This action was heard on the defendants motion to dismiss for lack of prosecution Served on April 11, 2008. The court finds that (1) notice prescribed by rule 1.40 (e) Was served on April 11, 2008; (2) their was no record activity for the year preceding Service of the foregoing notice; (3) no stay has been issued or approved by the court And (4) no party has shown good cause why this action should remain pending. Accordingly,

IT IS ORDERED That this action is Dismissed for lack of Prosecution with Prejudice DONE AND ORDERED in chambers, at Miami, dade county, Florida this 31th day of March, 2010.

APR 06 2010       APR 06 2010

CIRCUIT COURT JUDGE

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

CC. All parties

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Bk 27244 Pg 4193 CFN 20100237159 04/09/2010 12:47:17 Pg 1 of 1 Mia-Dade Cty, FL

3

ORDE

Exh. C pg. 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

US BANK, N.A.,
    Plaintiff,

                    CASE NO.      2007-12407-CA
vs.                 DIVISION      32

SPACE FOR RECORDING ONLY F.S.14.2676

LEROY WILLIAMS; MARK WELLS; FRANKLIN
CREDIT MANAGEMENT CORPORATION; CITY
OF NORTH MIAMI;
            Defendant(s).

_____/

## FINAL ORDER DISMISSING CASE, CANCELING FORECLOSURE SALE, CANCELING NOTICE OF LIS PENDENS, AND SETTING ASIDE FINAL SUMMARY JUDGMENT AND SUBSTITUTING PHOTOSTATIC COPIES

THIS CAUSE having come on before the Court, ex parte, pursuant to the Motion filed by the Plaintiff, pursuant to Section 702.07 Florida Statutes (2005), and the Court being otherwise fully advised in the premises, it is,

ORDERED AND ADJUDGED as follows:

1.    The case be and the same hereby is dismissed, but without prejudice to the future rights of the Plaintiff to bring an action to foreclose the mortgage which is the subject matter of the instant cause.

2.    All Counts of the Complaint against Defendants: LEROY WILLIAMS; MARK WELLS; FRANKLIN CREDIT MANAGEMENT CORPORATION; CITY OF NORTH MIAMI; are hereby dismissed.

3.    Any scheduled foreclosure sale is canceled.

FILE_NUMBER: F07012148

Serial: 13666522
DOC_ID: M010502







Exh. C pg 2

4.    The Notice of Lis Pendens filed by Plaintiff and recorded in the public records of MIAMI-DADE

County, Florida, regarding the below-described property:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO
THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF
THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

be and same hereby is canceled, vacated, discharged and shall be of no further force or effect, and the Clerk is hereby

directed to record this Order to reflect same.

5.    The Final Summary Judgment heretofore entered on August 09, 2007, be and the same hereby is set

aside and shall be of no further force or effect.

6.    The Plaintiff requests that the original Note and Mortgage be returned to the Plaintiff and

photostatic copies shall be substituted in their place.

DONE AND ORDERED in Chambers in MIAMI-DADE County, Florida, this _____ day of

_____, 2010.

JUN 2 3 2010

VALERIE R. MANNO SCHURR
Circuit Court Judge

VALERIE MANNO SCHURR
CIRCUIT COURT JUDGE

Copies furnished to:
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
All parties on the attached service list.
F07012148 - M010502
GMAC-CONV-abiven



Bk 27343 Pg 950 CFN 20100451678 07/06/2010 15:32:32 Pg 2 of 3 Mia-Dade Cty, FL

ExhC pg 3

Service List

LEROY WILLIAMS
15020 South River Drive
Miami, FL 33167

FRANKLIN CREDIT MANAGEMENT CORPORATION
C/o Corporation Service Company
1201 Hays St. Suite 105
Tallahassee, FL 32301-2525

CITY OF NORTH MIAMI
c/o V. Lynn Whitfield, Esq.
776 NE 125th Street
North Miami, FL 33161

MARK WELLS
15020 South River Drive
Miami, FL 33167

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original filed in this office _____ 7/22 _____ AD 20 11
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____

Bk 27343 Pg 951 CFN 20100451678 07/06/2010 15:32:32 Pg 3 of 3 Mia-Dade Cty, FL

The Chief Clerk says there's no order from admins judge or Chief Judge For Valerie Manno Sharr on 2010 Case as Seen on the 2010 Docket. Click Red below to listen



The Chief Clerk says there's no order from administ...
Judge or Chief Judge For Valerie Manno Shurr on th...
2010 Case as seen on the 2010 Docket. Click Red Bu...
below to listen



# The Chief Clerk says there's no order from admin Judge or Chief Judge For Valerie Manno Shurr on 2010 Case as seen on the 2010 Docket. Click Red below to listen

## Administrative Orders of The Chief Judge



Exhibit E

DOCKET #1

EXHIBIT C

3/7/2014

Miami-Dade County Clerk - Civil / Probate Justice System - Docket Information

0 item(s) in Basket

Home    Online Services    About us    Contact us

# HARVEY RUVIN
## CLERK of the COURTS
### MIAMI-DADE COUNTY FLORIDA

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS

**ALL PARTIES**
**US BANK (NA) vs WILLIAMS, LEROY**
Click on BOOK/PAGE of a particular docket to see the image if it is available.

START A NEW SEARCH

Case Number (LOCAL): 2007-12407-CA-01        Dockets Retrieved: 48        Filing Date: 04/26/2007
Case Number (STATE): 13-2007-CA-012407-0000-01                              Judicial Section: 32

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 04/07/2011 | | LETTER OF CORRESPONDENCE | FROM MACK L WELLS |
| 11/04/2010 | | NO FURTHER JUDICIAL ACTION | ORDER FILED IN CASE # 00-9186 CA01 AND IN SHARE DRIVE |
| 10/14/2010 | | MOTION | TO VACATE LAST ORDER & RETAIN ORIG. ORDER |
| 09/28/2010 | | MOTION TO VACATE DISMISSAL | |
| 08/06/2010 | | TEXT | RE'D ORIGINAL NOTE AND MORTGAGE |
| 06/25/2010 | 27343 / 949 Pages 3 | COURT ORDER | BK:27343 PG:0949 VACATING, DISMISSING, CXL SALE, RELEASE LIS PENDENS, ETC |
| 06/20/2010 | | MOTION | ATY:00071675 R: 5058 TO DISMISS CASE CANCEL FORECLOSURE SALE ETC. |
| 06/18/2010 | | FINAL DISPOSITION DOCUMENT | |
| 04/07/2010 | 27244 / 4193 Pages 1 | COURT ORDER | BK:27244 PG:4193 OF DISMISSAL |
| 04/07/2009 | | TEXT | DISMISS FOR LACK OF PROSECUTION WITH PREJUDICE |
| 09/09/2008 | | OBJECTION | TO WRITTEN DISCOVERY, MTN TO STRIKE OR ...ETC |
| 09/09/2008 | | NOTICE | THAT PLTFF HAS RESPONDED TO DEFENDANT...ETC |
| 08/15/2008 | | LETTER OF CORRESPONDENCE | FROM MACK WELLS TO DISMISS FR LACK OF PROSECUTION |
| 08/15/2008 | | LETTER OF CORRESPONDENCE | FROM MACK WELLS TO DISMISS FOR LACK OF PROSECUTION |
| 09/17/2007 | 25944 / 542 Pages 2 | COURT ORDER | BK:25944 PG:0542 CANCELING FORECLOSURE SALE |
| 09/14/2007 | | PROOF OF PUBLICATION | PUB DATE |
| 09/14/2007 | | PROOF OF PUBLICATION | PUB DATE :08/31/200 |
| 09/12/2007 | | MOTION | TO CANCEL FORECLOSURE SALE |
| 09/10/2007 | | MOTION | ATY:88888888 R: 145184 SET ASIDE FJUD AND RECONSIDER STAY |

Judge Zabel Dismissal with Prejudice

https://www2.miami-dadeclerk.com/civil/Search.aspx

Exh. E pg. 2

3/7/2014

Miami-Dade County Clerk - Civil / Probate Justice System - Docket Information

| Date | | Type | Description |
|---|---|---|---|
| 09/10/2007 | | TEXT | $50 FEE PD/RCPT# 45184 |
| 08/30/2007 | | NOTICE OF SALE | |
| 08/24/2007 | | TEXT | WRITTEN REQUEST, DISPUT VALIDITY OF ALLEGED LOAN |
| 08/14/2007 | | CERTIFICATE OF MAILING FINAL JUDGMENT | |
| 08/13/2007 | | NOTICE OF FILING | ORIGINAL MORTGAGE AND ORIGINAL NOTE |
| 08/13/2007 | | NOTICE OF FILING | AFFIDAVIT OF AMOUNTS DUE AND OWING |
| 08/13/2007 | | TEXT | FINAL DISPOSITION FORM |
| 08/13/2007 | | TEXT | SALE DATE 09-14-2007 |
| 08/09/2007 | 25872 / 4163 Pages 8 | FINAL JUDGMENT | J S 491500.11 BK:25872 PG:4163 DN01 DN02 DN03 DN04 |
| 07/26/2007 | | DEFAULT | DN03 |
| 07/26/2007 | | NOTICE OF DEFAULT NOT ENTERED | DN01 DN02 E |
| 07/19/2007 | | NOTICE OF HEARING | MOTIONS 08/09/2007 10:00 AM |
| 07/19/2007 | | MOTION FOR DEFAULT | |
| 07/19/2007 | | MOTION FOR SUMMARY JUDGMENT | |
| 07/19/2007 | | NON-MILITARY AFFIDAVIT | |
| 06/12/2007 | | SERVICE RETURNED | |
| 06/12/2007 | | SERVICE RETURNED | BADGE # 1552 P 05/23/2007 DN02 |
| 06/12/2007 | | TEXT | BADGE # 1552 P 05/12/2007 DN01 |
| 06/12/2007 | | SERVICE RETURNED | SUMMONS RTD NON-SERVED UNK SPOUSE OF WILLIAMS |
| 06/12/2007 | | TEXT | BADGE # 118 P 05/02/2007 DN03 |
| 06/12/2007 | | TEXT | SERVICE RTD SERVED TENANT |
| 06/12/2007 | | SERVICE RETURNED | SERVICE RTD SERVED TENANT |
| 06/06/2007 | | TEXT | BADGE # 1300 P 05/01/2007 DN04 |
| 06/06/2007 | | TEXT | OPPOS. TO PLNFS MORT.FORECLOSURE COMPLT ETC. |
| 05/23/2007 | | ANSWER | WRITTEN REQU FORMAL PROTEST &DISPUTE ETC. |
| 04/30/2007 | 25576 / 1873 Pages 1 | LIS PENDENS | ATTORNEY:00314021 DN04 |
| 04/26/2007 | | COMPLAINT | BK:25576 PG:1873 |
| 04/26/2007 | | CIVIL COVER | |
| 04/26/2007 | | SUMMONS ISSUED | DN01 DN02 DN03 DN04 |

BACK TO SEARCH RESULTS

ALL PARTIES

START A NEW SEARCH

S0142977

www.2miami-dadeclerk.com/civil/Search.aspx

Exh. F

Loan No: [redacted]

Mortgagee: LEROY WILLIAMS

Address: 15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

Loan Amount: $ 448,000.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Assistant Secretary
Axiom Financial Services

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By: Judy Faber
Judy Faber, Vice President

MIN # 100176105962733202
ANL 620012.UFF

WILLIAMS
Page 1 of 1

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office.
November 18 AD 21
HARVEY RUVIN, CLERK of Circuit and County Courts
Deputy Clerk /s/ Wilfred Clarke373263
2946537E

Filing # 142403620 E-Filed 01/21/2022 11:32:41 AM

Exhibit G

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2021-010826-CA-01
SECTION: CA25
JUDGE: Valerie R. Manno Schurr

MAURICE SYMONETTE

Plaintiff(s)

vs.

U.S. BANK NATIONAL ASSOCIATION (TR) et al

Defendant(s)

_____/

## ORDER OF RECUSAL

THIS CAUSE, came before the Court sua sponte, and the Court being fully advised in the premises, it is hereby:

### ORDERED AND ADJUDGED

1. That the undersigned Circuit Court Judge hereby recuses herself from further consideration of this case.

2. This case shall be reassigned to another section of the Circuit Civil Division in accordance with established procedures.

DONE and ORDERED in Chambers at Miami-Dade County, Florida on this 21st day of January, 2022.

2021-010826-CA-01 01-21-2022 11:24 AM
Hon. Valerie R. Manno Schurr

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2021-010826-CA-01

Page 1 of 2

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Erin Mae Rose Quinn, kmiller@quinnlegal.com
Erin Mae Rose Quinn, eservice@quinnlegal.com
Erin Mae Rose Quinn, equinn@quinnlegal.com
Jessica F. Watts, eservice@quinnlegal.com
Jessica F. Watts, kmiller@quinnlegal.com
Jessica Faith Watts, jwatts@bowenquinn.com
Jessica Faith Watts, eservice@bowenquinn.com
Michael Esposito, MEsposito@BlankRome.com
Michael Esposito, BRFLeservice@BlankRome.com
Michael R Esposito, Michael.Esposito@BlankRome.com
Michael R Esposito, BRFLeservice@blankrome.com
Nicole Topper, NTopper@BlankRome.com
Nicole Topper, BRFLeservice@blankrome.com
maurice symonette, BigBOSS@Clerk.com
maurice symonette, BIGBOSS1043@yahoo.com
maurice symonette, boss1@clerk.com

**Physically Served:**

Exh. H

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
☑ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION | | | | CASE NUMBER |
| --- | --- | --- | --- | --- |
| ☑ CIVIL ☐ CRIMINAL ☐ OTHER | | EXHIBIT LIST | | 10-61928-CA 05 |

| PLAINTIFF(S)/PETITIONER | VS. DEFENDANT(S)/RESPONDENT | FILED FOR RECORD |
| --- | --- | --- |
| U.S. Bank | Leroy Williams | 2017 NOV 30 PH 2:42 |
| Willnae La Croix | Maurice Symonette - Pro Se | CLERK IN CLERK, CIRCUIT & COUNTY CTS MIAMI-DADE COUNTY, FLA CIVIL DIVISION |

IN RE: Non Jury Trial (Foreclosure)

JUDGE John Schlesinger     REPORTER Mya Alvena     DATE NOV 29 2017

| Description of Exhibits | PLT/PET ID | PLT/PET EX | DEF/RES ID | DEF/RES EX |
| --- | --- | --- | --- | --- |
| Limited Power of Attorney | | 1 | | |
| Trustee Letter | | 2 | | |
| Original Note | | 3 | | |
| Copy of Mortgage | | 4 | | |
| Assignment of Mortgage | | 5 | | |
| Default Letter | | 6 | | |
| Transaction History | | 7 | | |
| Pooling and Servicing Agreement | | 8 Comp | | |
| Affidavit of Debt | | 9 | | |
| | | | | |
| Clerk Notes: All Exhibits Scanned & retained by the Clerk | | | | |

| | | |
| --- | --- | --- |
| James Katsilos | | A TRUE COPY |
| COURT CLERK | SUPERVISOR | CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK |

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3,
Plaintiff,

10-61928 CA 05

vs.

CASE NO.
DIVISION

LEROY WILLIAMS, THE UNKNOWN SPOUSE OF LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, HOKE WILLIAMS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I; WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION; MIAMI-DADE COUNTY; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession,
Defendant(s).

_____/

## MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3, sues Defendants, LEROY WILLIAMS, THE UNKNOWN SPOUSE OF LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, HOKE WILLIAMS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I; WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION; MIAMI-DADE COUNTY; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession, and alleges:

## COUNT I - MORTGAGE FORECLOSURE

1. This is an in rem action to foreclose a mortgage on real property located and situated in MIAMI-DADE County, Florida.

2. This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, as amended. The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

3. On June 30, 2005, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on July 29, 2005, Official Records Book 23623 at Page 3231, of the Public Records of MIAMI-DADE County, Florida, (All subsequent

recording references are to the public records of MIAMI-DADE County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4.    Mortgagee shown on the Mortgage attached as an exhibit is the original Mortgagee. Plaintiff is now entitled to enforce Mortgage and Mortgage Note pursuant to Florida Statutes § 673.3011.

5.    The Property is now owned of record by Defendant(s), LEROY WILLIAMS, JAMES LITTLEJOHN A/K/A JAMES L. JOLIN, and HOKE WILLIAMS.

6.    The Mortgage Note and Mortgage are in default. The required installment payment of January 1, 2007, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the January 1, 2007, payment. The last payment received was applied to the December 1, 2006, installment, and no subsequent payments have been applied to the loan.

7.    Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.    Plaintiff must be paid $448,000.00 in principal on the Mortgage Note and Mortgage, together with interest from December 1, 2006, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.    All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.    Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.    The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.    THE UNKNOWN SPOUSE OF LEROY WILLIAMS may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

13.    DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Mortgage recorded in Official Records Book 23623, Page 3251; an Assignment of Mortgage recorded in Official Records Book 25259, Page 4220; an Assignment of Mortgage recorded in Official Records Book 26765, Page 4470, or may otherwise claim an interest in the Property.

14.    WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO WACHOVIA BANK, NATIONAL ASSOCIATION may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Home Equity Line of Credit Mortgage recorded in Official Records Book 26023, Page 4882, or may otherwise claim an interest in the Property.

15.    MIAMI-DADE COUNTY may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Code Enforcement Lien recorded in Official Records Book 27018, Page 326; a Code

*Exh.I pg=*
*Exh.56*
*Pg.*

Enforcement Lien recorded in Official Records Book 26866, Page 3536; a Code Enforcement Lien recorded in Official Records Book 26371, Page 4436; a Code Enforcement Lien recorded in Official Records Book 25988, Page 2508; a Code Enforcement Lien recorded in Official Records Book 25813, Page 2466, or may otherwise claim an interest in the Property.

16.   TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

<div align="center">COUNT II – REFORMATION - Mortgage</div>

17.   This is an action to reform a Mortgage, which has been recorded in the Public Records of MIAMI-DADE County, Florida. This is an equitable action with no adequate remedy at law.

18.   At all times material to this cause, LEROY WILLIAMS, A SINGLE MAN owned real property in MIAMI-DADE County, Florida, described as follows:

LOT 105, BISCAYNE GARDENS SECTION F PART I, ACCORDING TO THE PLAT THEREOF , AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

This is evidenced by the true and correct copy of the Warranty Deed in the Official Records Book 23623 at Page 3230 attached hereto as an Exhibit.

19.   On June 30, 2005, LEROY WILLIAMS, AN UNMARRIED MAN executed and delivered to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR AXIOM FINANCIAL SERVICES a Mortgage that was recorded on July 29, 2005 in Official Records Book 23623, Page 3231 of the Public Records of MIAMI-DADE County, Florida. A true and correct copy of the Mortgage is attached hereto as an Exhibit.

*Exh. 1 pg. 4*

20. Inadvertently, and contrary to the clear intentions of the parties to the Mortgage, a scrivener's error resulted from mutual mistake. Consequently, the legal description contained the following underlined and highlighted error:

> LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 45, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

**PAGE 45-SHOULD BE PAGE 46**

21. Based on these errors; the document does not accurately reflect the intentions of the parties to the Mortgage.

22. Equity requires that the Court reform the legal description to conform with the first legal description referenced in this Count.

23. The reformation sought will not prejudice any parties to this action.

WHEREFORE, the Plaintiff requests that the Court reform the legal description in the Mortgage to correct the scrivener's error and to reflect the true intentions of the parties.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____
Robert Schneider
Florida Bar No. 52854
David M. Borrego
Florida Bar No. 36844
Ronald E. Pereira
Florida Bar No. 597872

GMAC-CONV-R-UNASSIGNED

EX.A.6

**FORM 6    FULL AND PUBLIC DISCLOSURE OF**
**FINANCIAL INTERESTS**                                                2008

|  |  |
|---|---|
| AUTO-3-DIGIT 331 T2 P2 6<br>Hon Valerie R. Manno Schurr<br>Circuit Judge<br>Judicial Circuit (11th)<br>Elected Constitutional Officer<br>Dade County Courthouse Rm 1105<br>73 W Flagler St<br>Miami, FL  33130-1731 | COMMISSION ON ETHICS<br>DATE RECEIVED<br>JUN 8 2009 |

PROCESSED

ID Code

ID No   210380

Cont. Code

P. Reg. Code

Manno Schurr, Valerie R.

CHECK IF THIS IS A FILING BY A CANDIDATE ☐

**PART A — NET WORTH**

Please enter the value of your net worth as of December 31, 2008, or a more current date. (Note: Net worth is not calculated by subtracting your reported liabilities from your reported assets, so please see the instructions on page 3.)

My net worth as of December 31, 2008 was $ 2,800,357.00

**PART B — ASSETS**

**HOUSEHOLD GOODS AND PERSONAL EFFECTS:**
Household goods and personal effects may be reported in a lump sum if their aggregate value exceeds $1,000. This category includes any of the following, if not held for investment purposes: jewelry, collections of stamps, guns, and numismatic items; art objects; household equipment and furnishings; clothing; other household items; and vehicles for personal use.

The aggregate value of my household goods and personal effects (described above) is $ 150,000.00

| ASSETS INDIVIDUALLY VALUED AT OVER $1,000:<br>DESCRIPTION OF ASSET (specific description is required - see instructions p.4) | VALUE OF ASSET |
|---|---|
| Home located in Miami-Dade (former residence) | 700,000.00 |
| Home located in Miami-Dade (residence) | 2,400,000.00 |
| Vail Colorado Condominium / Eagle County Colorado | $ 300,000.00 |
| Bank Accounts/Stocks/Bonds/Pension Accounts | $ 600,000.00 |
| Mercedes Benz - 300 mL | $ 25,000.00 |

**PART C — LIABILITIES**

| LIABILITIES IN EXCESS OF $1,000:<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| GMAC Mortgage (former residence) P.O. Box 900119, Louisville, Ky | 91,438.00 |
| GMAC Mortgage (residence) (1st & 2nd Mort) P.O. Box 4622, Waterloo, IA | 995,000.00 |
| Wells Fargo Home Mortgage (Vail property) P.O. Box 650769, Dallas, Tx | 120,000.00 |
| Huntington National Bank (Mercedes) P.O. Box 182579, Columbus, Ohio 43218-2579 | 9,205.00 |

| JOINT AND SEVERAL LIABILITIES NOT REPORTED ABOVE:<br>NAME AND ADDRESS OF CREDITOR | AMOUNT OF LIABILITY |
|---|---|
| None |  |
|  |  |
|  |  |

CE FORM 6 - Eff. 1/2009                    (Continued on reverse side)                    PAGE 1

Exh. K pg. 1

~~Exh.00 pg. 1~~

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

**WESTERN UNION**
**PAYMENT SERVICES**

Dec. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

Bank:                          WACHOVIA BANK, NA
Bank Account Number:           ******0274
Date of Transaction:           Nov. 30, 2006

Payable To:                    AXIOM FINANCIAL SERVICES
Amount of Payment:             $2286.67

Customer Reference:            0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:45 A.M. Nov. 30, 2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail payment.
Retain this letter for your records.

*Exh. K pg. 2*

~~Exh. K pg. 2~~

**WESTERN UNION**

PAYMENT SERVICES

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Jan. 1, 2006

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WA |
| Bank Account Number: | *** |
| Date of Transaction: | Dec. |
| | |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| | |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:40 A.M. Dec. 31, 2006, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary
This is not a bill. Do not mail payment.
Retain this letter for your records.

Exh. K Pg.3



PAYMENT SERVICES

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867

Feb. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

**PAYMENT DESCRIPTION**

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | *****0274 |
| Date of Transaction: | Jan. 31, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD. SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone, unless you know the company, and understand why the information is necessary.
This is not a bill. Do not mail payment.
Retain this letter for your records.

Exh.K Pg.4

**AXIOM FINANCIAL SERVICES**
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867



**PAYMENT SERVICES**

Feb. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | Jan. 31, 2007 |
| Payable To: | AXIOM FINANCIAL SERVICES |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 9:00 A.M. Jan. 31, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD. SUITE 350
AUSTIN TX 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary.
This is not a bill. Do not mail payment.
Retain this letter for your records.

Exh K pg.5

AXIOM FINANCIAL SERVICES
10900 STONE LAKE BLVD SUITE 350
AUSTIN TX 78759-5867


WESTERN UNION
PAYMENT SERVICES

Mar. 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

Bank:                      WACHOVIA BANK, NA.
Bank Account Number:       *******0274
Date of Transaction:       Feb.28, 2007

Payable To:                AXIOM FINANCIAL SERVICES
Amount of Payment:         $2286.67

Customer Reference:        0001920274

Dear LEROY WILLIAMS.

Based on your authorization during our telephone conversation on _____ we
have initiated an automated clearing house (ACH) debit to withdraw the amount indicated
above from your specified bank account to make the payment that you requested. Included in
the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above please
contact Collection Department, at 188.832-7060
Thank you for your business

                           AXIOM FINANCIAL SERVICES
                           10900 STONE LAKE BLVD SUITE 350
                           AUSTIN TX 78759-5867

Don't give out your bank account information over the phone, unless you initiated the contact.
This is not a bill. Do not send payment.
Retain this for your records.

Exh. K pg 6

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

WESTERN UNION
PAYMENT SERVICES

April 1, 2007

LEROY  WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI, FL 33167

PAYMENT DESCRIPTION

Bank:                           WACHOVIA BANK, NA.
Bank Account Number:            *******0274
Date of Transaction:            March 30, 2007

Payable To:                     Axiom Financial Services
Amount of Payment:              $2286.67

Customer Reference:             0001920274

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 11:51 A.M., March 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-831-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd, Suite 350
Austin Tx 78759-5867

Important information
Don't give out your bank account information over the phone unless you know the company and understand why the information  is necessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

Exh. K Pg. 7

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

**WESTERN UNION**
PAYMENT SERVICES

May 1, 2007

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | April 30, 2007 |
| Payable To: | Axion Financial Services |
| Amount of Payment: | $2286.67 |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:00 A.M., April 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd, Suite 350
Austin Tx 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is nessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

*Exh. K. pg. 8*

**WESTERN UNION**
**PAYMENT SERVICES**

Axiom Financial Services
10900 Stone lake Blvd Suite 350
Austin Tx 78759-5867

June 1, 2007

LEROY    WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI FL 33167

PAYMENT DESCRIPTION

| | |
|---|---|
| Bank: | WACHOVIA BANK, NA |
| Bank Account Number: | ******0274 |
| Date of Transaction: | May 30, 2007 |
| | |
| Payable To: | Axion Financial Services |
| Amount of Payment: | $2286.67 |
| | |
| Customer Reference: | 0001920274 |

Dear LEROY WILLIAMS:

Based on your authorization during our telephone conversation at 10:38 A.M., May 30, 2007, we have initiated an automated clearing house (ACH) debit to withdraw the amount described above from your specified bank account to make the payment that you requested. Included in the payment amount is the $8.00 service fee that you also authorized.

If you have questions, or wish to make corrections to the information listed above, please contact Collection Department, at 188-832-7990.
Thank you for your business.

Axiom Financial Services
10900 Stone Lake Blvd. Suite 350
Austin Tx 78759-5867

Important Information
Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary

This is not a bill. Do not mail payment.
Retain this letter for your records.

004730A0116730

Filing # 65341895 E-Filed 12/13/2017 01:30:51 PM

*Exh.L pg.1*



**BROCK & SCOTT**
PLLC

CURTIS HERBERT
ADMITTED IN FLORIDA

JESSICA J. FAGEN
ADMITTED IN FLORIDA

THOMAS E. BROCK
ADMITTED IN NORTH CAROLINA

GREGORY A. SCOTT
ADMITTED IN NORTH CAROLINA

JAMES P. BONNER
ADMITTED IN NORTH CAROLINA

1501 NW 49TH STREET, SUITE 200
FT. LAUDERDALE, FL 33309
954.618.6955
FAX 954.618.6953

December 12, 2017

The Honorable John Schlesinger
Miami-Dade County Courthouse

Re: U.S. Bank, National Association, as Trustee for RASC 2005AHL3 v. Hoke Williams.

Case No.: 2010-61928-CA-01
File No.: 13-F02868

The Honorable Judge Schlesinger:

Pursuant to your Honor's instructions from the Non-Jury Trial that took place on November 29, 2017, enclosed please find a copy of Plaintiff's Trial Memorandum.

Thank you for your time, consideration and cooperation in this matter.

Respectfully,,

Willnae LaCroix, Esq.
FLCourtDocs@brockandscott.com
(954) 618-6955 x6151

Enclosures

CHARLOTTE, NC 704.643.6002 FAX 704.369.0760 • RALEIGH, NC 919.872.5458 FAX 919.572.5167 • WILMINGTON, NC 910-452-4020 FAX 910-452-7760
WINSTON-SALEM, NC 336.354.1200 FAX 336.354.1205 • COLUMBIA, SC 803.454.3540 FAX 803.454.3541 • FRANKLIN, TN 615.771.5143 FAX 615.771.5395

*Exh.L pg.2*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

U.S. Bank, National Association, as Trustee for
RASC 2005AHL3,

GENERAL JURISDICTION DIVISION

Plaintiff,

Case No. 2010-61928-CA-01

vs.

Leroy Williams; The Unknown Spouse of Leroy
Williams; Littlejohn a/k/a James L. Jolin, James;
Unknown Spouse of James Littlejohn AKA James L.
Jolin; Hoke Williams; Unknown Spouse of Hoke
Williams; Mack Wells; Unknown Spouse of Mack
Wells; Curtis McNeil; The Unknown Spouse of
Curtis McNeil; Symonette Limited Partnership;
Deutsche Bank National Trust Company, as Trustee
for Franklin Credit Trust Series I; Miami-Dade
County, Florida; State of Florida, Department of
Revenue; Unifund CCR Partners, G.P.; Suntrust
Bank; City of North Miami (City);

Defendants.

_____/

## PLAINTIFF'S TRIAL MEMORANDUM

Plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005AHL3, by and through the
undersigned counsel, hereby files its Trial Memorandum, pursuant to this Court's Trial Order
dated November 29, 2017 and further states as follows:

**Whether Plaintiff's Prior Foreclosure Case No. 2007-12407-CA-01 was Dismissed
with Prejudice, And Whether there contained an Order Precluding Plaintiff from re-filing
a Foreclosure Action on the subject Note and Mortgage.**

1. Plaintiff's filed this current Foreclosure action on December 06, 2010 on the subject Note
   and Mortgage.

2. On said action, all Defendants were properly served.

3. At the Trial that occurred on November 29, 2017, Defendants, brought forth an allegation
   that the Court on a prior foreclosure action, case No. 2007-12407-CA-01, entered an
   Order Dismissing the Foreclosure Action with Prejudice and precluding Plaintiff from
   filing any other action on the subject Note and Mortgage.

*Exh. L pg. 5*

4. Defendants allegation is without merit. Defendants are correct, in that there was a previous foreclosure action filed on April 26, 2007, case No. 2007-12407-CA-01. However, Defendants are incorrect in their allegations that an Order was entered precluding Plaintiff from instituting further Foreclosure action on the subject Note and Mortgage.

5. In respect to Case No. 2007-12407-CA-01, on August 9, 2007, this Court entered Final Judgment in Plaintiff's favor. The sale of the property was scheduled to occur on September 14, 2007. Attached hereto as Exhibit "A" the Final Judgment.

6. The Original Note and Mortgage was filed on August 13, 2007.

7. Subsequent to the entry of the Final Judgment of Foreclosure, a Motion was filed on September 12, 2007, to Cancel the Foreclosure sale that was scheduled for September 17, 2007. An Order was entered on September 17, 2007, canceling the Foreclosure Sale. Attached hereto as Exhibit "B", Order Canceling Sale.

8. After the cancelation of the Foreclosure Sale, Defendant, Mack Wells on August 15, 2008 filed a Motion to Dismiss the action due to Lack of Prosecution. The Court Docket reflects that on September 9, 2008, a Notice was filed by Plaintiff responding to Defendant, Mack Wells Motion to Dismiss for Lack of Prosecution.

9. Nevertheless, on April 07, 2010, this Court entered an Order Dismissing Case No. 2007-12407-CA-01, With Prejudice for Lack of Prosecution. Attached hereto as Exhibit "C", Order Dismissing Case for Lack of Prosecution.

10. The Dismissal that was entered on April 07, 2010, on Case No. 2007-12407-CA-01 was only due to Lack of Prosecution.

11. On June 20, 2010, Plaintiff's counsel the time, filed a Motion to Dismiss the Case, Cancel Foreclosure Sale, Cancel Notice of Lis Pendens, And Setting Aside Final Summary Judgment. On June 25, 2010, this Court entered an Order Granting the Dismissal of the Case. The Order further states that Plaintiff's Action was dismissed Without Prejudice and that Plaintiff retain future rights to bring an action to foreclose the mortgage, which is the subject of the instant action. Attached hereto as Exhibit "D", Order of Dismissal Dated June 25, 2010.

12. On October 14, 2010, a Motion was filed to Vacate the Last Order of Dismissal, entered on June 25, 2010 and retained the initial Dismissal Order entered on April 07, 2010. On

Exh. L pg.4

November 4, 2010, the Clerk's docket indicates, "No Further Judicial Action", was needed, as such the Dismissal Order that was entered on June 25, 2010 that dismissed Case No. 2007-12407-CA-01 Without Prejudice and retains, Plaintiff's right to seek further foreclosure action on the same Note and Mortgage remained in effect.

13. The Dismissal with Prejudice Order that was entered on April 4, 2010 that Defendants keep referring too, was no longer in effect, once the Court entered the June 25, 2010 Dismissal Order. That Order took precedent and no other Order of Dismissal is in place for Case No. 2007-12407-CA-01.

14. Defendants, allegation that an Order was entered barring Plaintiff from filing further actions on the same Note and Mortgage because Plaintiff failed to comply with a Request by the Court for Plaintiff to file the Note and Mortgage, is incorrect. It is clear that Defendants misinterpreted what occurred in the prior matter. There exist no Dismissal Order that precludes Plaintiff from filing a new action on the subject Note and Mortgage,

15. Plaintiff properly filed this instant action, as such Defendants allegation has no merits and nothing precludes Plaintiff from proceeding with this subject Foreclosure action.

**Whether Plaintiff's Current Action is Barred by Statute of Limitation:**

Defendants allege that Plaintiff's current Foreclosure action is barred by the five (5) year statute of limitation. Defendants allegation is misinterpreting. Defendants allegation is based on a dismissal of a prior action to foreclose the subject Mortgage Loan, Case No. 2007-12407-CA-01, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Prior Foreclosure Action"). While, Defendants are correct that the prior action was dismissed. The prior action was dismissed without prejudice. Furthermore, the Dismissal Order entered on June 25, 2010, in Case No. 2007-12407-CA-01, not only retained Plaintiff's future rights to foreclose on the same Note and Mortgage, Plaintiff also filed this current action well within the (5) year time-frame of both the default of the loan contract which was January 1, 2007 and the

*Exh. L pg. 5*

dismissal of the prior action, which was on June 25, 2010. Plaintiff's current Foreclosure action was filed on June 25, 2010.

Defendants allegations incorrectly states that Plaintiff's current foreclosure action is barred.

In *Bartram v. US. Bank, NA., 211* So. 3d 1009, 1019 (Fla. 2016), reh'g *denied sub nom. Bartram v. US.Bank Nat'l Ass'n, 42* Fla. L. Weekly S326 (Fla. Mar. 16, 2017), the Florida Supreme Court decided the effect of attempted—but not completed—acceleration.[2]  A mortgage is an installment contract, and *Bartram held* that a new cause of action accrues with each default on an installment as it comes due. *Bartram, 211* So. 3d at 1019; *see also Singleton v. Grammar Assocs., 882* So. 2d 1004, 1008 (Fla. 2004); *Isaacs v. Deutsch, 80* So. 2d 657 (Fla. 1955). Because Florida has a five-year limitation on the right to seek foreclosure, each missed payment commences a new, five-year period in which the lender may seek to foreclose based on that default.

The borrower in *Bartram argued* that because the lender attempted to accelerate the borrower's loan in the first foreclosure action, all the borrower's future installment obligations collapsed into one, presently due lump sum. Therefore, the borrower argued, the five-year statute of limitations accrued on all the payments at that time, and the lender lost its ability to foreclose after five years. The critical issue in *Bartram, thus*, was whether the attempted acceleration changed the continuing installment obligation to a one-time lump-sum obligation.

The *Bartram Court* decided that the attempted—but uncompleted—acceleration in the first action does not change the installment nature of a borrower's obligation. *See, e.g., Bartram, 211* So. 3d at 1022 ("Therefore, the Bank's *attempted* prior acceleration in a foreclosure action that was involuntarily dismissed did not trigger the statute of limitations to bar future foreclosure actions based on separate defaults.") (emphasis added); *see also Singleton, 882* So. 2d at 1006 (rejecting "the view that an election to accelerate puts all future installment payments in issue....", as held by *Staler v. Cherry Hill Developers, Inc., 150* So. 2d 468 (Fla. 2d DCA 1963)); Olympia *Mortgage Corp. v.Pugh, 774* So. 2d 863, 866 (Fla. 4th DCA 2000) ("We disagree that the election to accelerate placed future installments at issue."). Accordingly, it is settled law that borrowers continue to owe monthly payments even after an attempted but incomplete acceleration, and that each monthly default gives rise to a new accrual date for the five-year statute of limitations for foreclosure.

Accordingly, the statute of limitations does not bar this action or any amounts sought in this action, all of which became due within five years of the filing of the Complaint. Thus, Defendants allegation fails and Plaintiff is entitled to proceed with the subject action.

Exh.L pg.6

**Whether Plaintiff Had Standing:**

Defendants at Trial argued that Plaintiff lacked Standing to pursue this action, due to an Assignment of Mortgage. If this Court recalls, Plaintiff presented evidence, such as the Original Note containing a specific endorsement to Plaintiff, Plaintiff's MLS report, The Pooling and Servicing's agreement, as well as testimony by Plaintiff's witness that Plaintiff was in possession of the specifically endorsed Original Note, prior to the filing of the subject foreclosure action. The evidence and testimony presented were admitted without objection. Plaintiff at Trial, ask the Court to take Judicial Notice of the Recorded Assignment of Mortgage, but those documents were not Plaintiff's reliance to establish standing.

"In its broadest sense, standing is no more than having, or representing one who has, 'a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *Kumar Corp. Nopal Lines, Ltd.* 462 So.2d 1178, 1182 (Fla. 3rd DCA 1985) (quoting *Sierra Club v. Morton,* 405 U.S. 727, 731 (1972)). In a mortgage foreclosure context, "standing is broader than just actual ownership of the beneficial interest in the note." *Mortgage Electronic Registration Systems, Inc. v. Azize,* 965 So.2d 151, 153 (Fla. 2nd DCA 2007).

Florida courts and statutes have long provided for the holder of the note as having standing to seek enforcement of the note. (See generally: *Mortgage Electronic Registration Systems, Inc. v. Azize,* 965 So.2d 151 (Fla. 2nd DCA 2007); *Riggs v. Aurora Loan Services, LLC,* 36 So.3d 932 (Fla. 4th DCA 2010); Section 673.2011, 673.2051(2), 673.3011 and 671.201(21)(a), Fla.Stat.)

The Florida Supreme Court has long recognized that:

"An action on a bill or note payable to bearer, or endorsed in blank, may be maintained in the name of the nominal holder who is not the owner by the owner's consent; and *that possession by such nominal holder is prima facie sufficient evidence of his right to sue, and cannot be rebutted by proof that he has no beneficial interest, or by anything else but proof of mala fides.*" (emphasis added) McCallum *v. Driggs,* 35 Fla. 277, 17 So. 407 (Fla. 1895)

Courts have recently and consistently held: "[t]he party that holds the note and mortgage in question has standing to bring and maintain a foreclosure action." *Deutsche Bank Nat'l Trust Co. v. Lippi,* 78 So.3d 81, 84 (Fla. 5th DCA 2012); The Florida Supreme Court has long recognized that:

an action on a bill or note payable to bearer, or endorsed in blank, may be maintained in the name of the nominal holder who is not the owner by the owner's consent; and that possession by such nominal holder is *prima facie* sufficient evidence of his right to sue, and cannot be rebutted by proof that he has no beneficial interest, or by anything else but proof of *mala fides.*

Exh. L pg 7

*City of Lakeland v. Select Tenures, Inc.*, 176 So. 274, 276-77 (Fla. 1937).

Plaintiff is a holder of the note by virtue of possession. Fla. Stat. § 671.201(21)(a) defines 'holder' as 'The person in possession of a negotiable instrument that is *payable* either *to bearer* or to an identified person that is the person in possession.' Fla. Stat. § 671.201(21)(a) (emphasis added). As a holder of the note, Plaintiff is entitled to enforce it. Fla. Stat. § 673.3011 defines a 'person entitled to enforce' an instrument as '(1) The holder of the instrument.

Since Plaintiff is in possession of the note, it is a holder and is entitled to enforce the note under the Uniform Commercial Code and *City of Lakeland*, above, 176 So. at 276-77.

Finally, it is indisputable in Florida that 'the mortgage follows the note'. *First National Bank of Quincy v. Guyton*, 72 So. 460 (Fla. 1916); *Johns v. Gillian*, 184 So. 140 (Fla. 1938).

An assignment of mortgage is not required pursuant to the Florida Supreme Court ruling in the controlling authority on this issue in the case of *J.J. Johns v. Sam Gillian*, 134 Fla. 575 (Fla. 1938), "[even] if the note ... secured by a mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it...."See also, *WM Specialty Mortgage, LLC v. Salomon*, 874 So. 2d 680 (Fla. 4th DCA 2004) (upholding a retrospective Assignment of Mortgage which recited that the assignment took place previous to the Assignment document being signed and notarized). Consequently, Defendants allegation as to standing should be stricken and Defendants request for a Directed Verdict should be appropriately denied.

Lastly, Plaintiff introduced into evidence, which was admitted without objection, the Payment History associated with the subject loan. A payment history showing payments received or non-received, is sufficient, to establish that the Plaintiff has the right to enforce the Note and Mortgage. *Peuguero v. Bank of America*, 169 So. 3d 1198 (4th DCA 2015) (The loan payment history admitted into evidence, reflects taxes and other fees associated with the mortgage property in the time prior to the filing of the original complaint is a "...noteworthy factor in

Exh.L pg 8

determining standing, as financial institutions are not known to incur expenses on behalf of properties for which they do not hold an interest.")

Further, reasonings, Defendants' request for directed verdict should be denied and Plaintiff's request for entry of Final Judgment in Plaintiff's favor should be granted.

## CONCLUSION:

Plaintiff is entitled to entry of final judgment of foreclosure because it has demonstrated that there was no prior dismissal that barred Plaintiff from filing and proceeding with the subject foreclosure action. Further, Plaintiff has demonstrated its standing as the Holder of the Note, and even as a Non-Holder with the rights to enforce the Note. Plaintiff's position is supported by the evidence that was admitted into evidence at Trial, including the Original Note, Original Mortgage, MLS, Pooling and Servicing, Breach Letter, Payment History, and Judgment Figures, and the corroborated competent testimony of the witness given at trial.

I HEREBY CERTIFY that a true and correct copy hereof was served electronically or via U.S. Mail on ___December 13___, 2017, to all persons shown on the following service list.

Respectfully submitted,

BROCK & SCOTT, PLLC
Attorney for Plaintiff
1501 N.W. 49th Street, Suite 200
Ft. Lauderdale, FL 33309
Phone: (954) 618-6955, ext. 6151
Fax: (954) 618-6954
FLCourtDocs@brockandscott.com

By_____
Willmae LaCroix, Esq.
Florida Bar No. 54672

Exh L. pg. 9

## SERVICE LIST

The following persons were served by e-mail:

Miami-Dade County, Florida
c/o Altanese Phenelus, Esq.
111 NW 1st Street
Miami, FL 33128
yvaldes@miamidade.gov

City of North Miami (City)
Jennifer L. Warren
776 N.E 125th Street
North Miami, FL 33161
cityattorney@northmiamifl.gov

The following persons were served by U.S. mail:

Hoke Williams
L/K/A 15020 South River Drive
Miami, FL 33167

Unifund CCR Partners, G.P.
c/o CT Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

Deutsche Bank National Trust Company, as Trustee for Franklin Credit Trust Series I
c/o Legal Department
1761 E. St. Andrew Place
Santa Ana, CA 92705

Unknown Spouse of Hoke Williams
15020 South River Drive
Miami, FL 33167

Unknown Spouse of James Littlejohn AKA James L. Jolin
8152 NW 15th Manor, Apt FC2R
Plantation, FL 33322

Littlejohn a/k/a James L. Jolin, James
L/K/A 15020 South River Drive
Miami, FL 33167

Case No. 2010-61928-CA-01          8 of 9          File # 13-F02868

Exh. L pg. 16

Suntrust Bank
c/o Alisha Smith, R.A.
40 Technology Parkway South, Suite 300
Norcross, GA 30092

State of Florida, Department of Revenue
C/o Executive Director, a registered agent or any other person authorized to accept service of
proccess
2450 Shumard Oak Boulevard
Tallahassee, FL 32399

Leroy Williams
8152 NW 15th Manor, Apt. FC2R
Plantation, FL 33322

Unknown Spouse of Mack Wells
15020 South River Drive
Miami, FL 33167

The Unknown Spouse of Leroy Williams
L/K/A 15020 South River Drive
Miami, FL 33167

The Unknown Spouse of Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Mack Wells
L/K/A 15020 South River Drive
Miami, FL 33167

Curtis McNeil
L/K/A 15020 South River Drive
Miami, FL 33167

Symonette Limited Partnership
L/K/A 15020 South River Drive
Miami, FL 33167

*Exh. M*

CFN 2007R0432062 OR BK 25576 Pg 1873; (1pg)
RECORDED 04/30/2007 09:57:45
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

**IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA
CIVIL ACTION**

US BANK, N.A.,

      **Plaintiff**

VS.          **DIVISION**

**0 7 - 1 2 4 0 7 CA 3 2**

SPACE FOR RECORDING ONLY F.S.§695.26

LEROY WILLIAMS; THE UNKNOWN SPOUSE OF LEROY WILLIAMS; MARK WELLS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; FRANKLIN CREDIT MANAGEMENT CORPORATION; CITY OF NORTH MIAMI; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession
      Defendant(s).

**NOTICE OF LIS PENDENS**

To the above-named Defendant(s) and all others whom it may concern:

You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose a

mortgage recorded in Official Records Book 23623, Page 3231, on the following property in DADE County, Florida:

LOT 105, BISCAYNE GARDENS SECTION F PART 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 44, PAGE 46, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Dated this *25* day of *April*, 2007.

      Echevarria, Codilis & Stawiarski
      P.O. Box 25018
      Tampa, Florida 33622-5018
      (813) 251-4766

      By: _____
      Nikolay Kolev
      FLORIDA BAR NO. 0028005
      E.Tyler Samsing
      FLORIDA BAR NO. 0028380

FIDHOMECOMIN-CONV-R-mherrera

*Exh. N*

**IN __ CIRCUIT COURT OF THE ELEVENTH__**
**JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, __RIDA**

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3,

    Plaintiff,

vs.

    CASE NO.:    **10- 6 1 9 2 8 CA 0 5**
    DIVISION:

LEROY WILLIAMS , et al,

    Defendant(s).

**PLAINTIFF'S CERTIFICATION SETTLEMENT AUTHORITY**
(Residence Is Not Homestead)

    In compliance with Administrative Order 2010-03 A1, the undersigned attorney certifies that following person or entity has full authority to negotiate a settlement of this case with the borrower without further consultation:

SEE CHART
1100 Virginia Drive
Fort Washington, PA 19034
Telephone:
Fax:
Email:
File Number: F10051160

**Notice to Defendants: Because of privacy laws and rules, the plaintiff will only be able to negotiate a modification of the loan with the named borrower on the underlying debt.**

    I certify a copy of this certification was served on defendants with the summons.
Dated this _30_ day of _____November_____, 2010.

                         Florida Default Law Group, P.L.
                         P.O. Box 25018
                         Tampa, Florida  33622-5018
                         (813)  251-4766

                         By: _____
                         Robert Schneider
                         Florida Bar No. 52854
                         David M. Borrego
                         Florida Bar No. 36844
                         Ronald E. Pereira
                         Florida Bar No. 597872

F10051160

Exh. O

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3rd FLOOR
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

July 20, 2010

LEROY WILLIAMS
15020 SOUTH RIVER DRIVE
MIAMI, FL  33167

Re

Loan Number  ▇▇▇▇▇▇▇
Mortgage Servicer  GMAC MORTGAGE, LLC
Creditor to whom  U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR
the debt is owed:  RASC 2005AHL3
Property Address:  15020 SOUTH RIVER DRIVE, MIAMI, FL  33167
Our File No  F10051160

Dear Borrower:

The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RASC 2005AHL3 with regards to its interests in the promissory Note and Mortgage executed by LEROY WILLIAMS  on June 30, 2005  Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due

As of the date of this letter, the amount owed to our client is $651,289.01, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage    Additional interest will accrue after the date of this letter.

This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage. Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client services@defaultlawfl com

Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid.  If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed,

FILE NUMBER: F10051160

HELLOLETTER

CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

Exh. Q

Contact/Case # _PD24061418?594_



DISTRICT/UNIT

☑ Offense Report
☐ Crash Report
☐ Contact Only—
   No Report Written

Date/Time of Contact

_10469 O. Campos_
Name/Rank/ID #

TELEPHONE

_6/14/24_
DATE REPORTED

An Internationally
Accredited
Police Agency

☐ CASE REPORT     ☐ CONTACT INFO.

Accident reports will be available for purchase by you or your insurance company at www.AuthorizeTransaction.com. A copy of this report may also be obtained from the Central Records Bureau of the Miami-Dade Police Department, 9105 N.W. 25 St., Miami, Florida 33172, from Monday through Friday, 9:00 a.m. to 5:30 p.m. It is suggested you call (305) 471-2085 to verify that it is available for release. No other information will be given over the telephone in reference to the report. Reports may also be obtained by mailing a stamped, self-addressed envelope with your request, to the above address.

32.15.01-58
114.01-432 Rev. 7/13

_1502 S. River Dr._
Address of Occurrence

When recorded return to: _____   *Exh 03 pg 1*

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this _____26____ day of JANUARY_____ ,20*13*.

by first party, Grantor, _____MAURICE Symonette_____

whose post office address is *15020 S. River DR. Miami Fla. 33167*

to second party, Grantee, *Maurice Simonette, MAck Wells and Curtis McNeal*

whose post office address is *15020 S. River DR. Miami Fla. 33167*

WITNESSETH, That the said first party, for good consideration and for the sum of _____

_____ TEN Dollars _____ Dollars ($ *10.00* )

paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of *Miami Dade*

State of *Florida*  to wit: _____

*Legal Discription 22 52 41 1.19 AC PB*
*44-46 Biscayne Gardens Sec F Part 1 Lot*
*105 Lot Size 100.000 X 515*

*Folio Number 30 2123022 1050*

www.socrates.com

© 2004, Socrates Media, LLC
LF298WA • Rev. 03/04

*Exh. 03 pg. 2*

Assessor's Property Tax Parcel/Account Number(s): _____

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _Clyde McPhatter_

Printed Name of Witness: _Clyde McPhatter_

Signature of First Party: _Maurice S._

Printed Name of First Party: _Maurice Symonette_

Address of Witness: _15020 S. River Dr. Miami Fla. 33167_

Second Witness: _James Littlejohn_ 1972 NR 119th rd.
_James Littlejohn_  Miami, Fln. 33181

State of _Florida_
County of _Miami Dade_ } SS.

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _1-26-2013_       Signature: _Jannie Mitchell_

(Seal or Stamp)              Title: _____

                             My appointment expires: _____

© 2004, Socrates Media, LLC

Page 2

Exh.I page1

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this __22__ day of _January_ , 2013.
by first party, Grantor, _Bass Group Ministries (a Tax exempt Non Profit Organization_
whose post office address is _15020 S. River Dr. Miami, Fla. 33167_
to second party, Grantee, _Maurice Symonette_
whose post office address is _15020 S. River Dr. Miami Fla. 33167_

WITNESSETH, That the said first party, for good consideration and for the sum of _____
_TEN Dollars_ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of _____
State of _Florida_ to wit:

_Legal Description 22 52 41 1.19 AC PB_
_44-46 Biscayne Gardens SEE F Part 1 Lot_
_105 Lot Size 100.000 X 515_

_Folio Number: 30 2123 022 1050_

Page 1

Prepared by Mack Wells 15020 South River Dr. Miami FL 33167

Mack Wells

Exh. O pg-2

Assessor's Property Tax Parcel/Account Number(s): _____

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _Curtis_____

Printed Name of Witness: _Curtis Menerl_

Signature of First Party: _Maurice S._

Printed Name of First Party: _Maurice Symonette_

Address of Witness: _15020 S. River Dr. Miami FL. 33167_

2nd Witness James Littlejohn 3320 NE 165th St. Miami FL 33160

James Littlejohn

State of _Florida_
County of _Miami Dade_ ] ss.

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _1-20-2013_          Signature _Fannie Mitchell_

                              Title: _____

                              My appointment expires: _____

Page 2

11

Exh. 2 pg 1
Exh. 02 pg 1

CFN  2014R0447483
OR Bk 29203 Pgs 2867 - 2868; (2pgs)
RECORDED 06/23/2014 14:03:51
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this _18_ day of _January_ , 20 13 ,
by first party, Grantor, _Edith Wickham, Grace Walker Lorange Williams, James Gillespie, Cirlo Mabson_
whose post office address is _15080 S. Rouse Dr. Miami FL 33167_
to second party, Grantee _Best Gays Christian Center non-Profit Organization_
whose post office address is _15020 S. River Dr. Miami FL 33167_

WITNESSETH, That the said first party, for good consideration and for the sum of _— Ten dollars —_
_____ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the
said second party forever, all the right, title, interest and claim which the said first party has in and to the following described
parcel of land, and improvements and appurtenances thereto in the County of _Miami-Dade_ ,
State of _Florida_ to wit: _____

_Legal Description: 3 58 41 1.19 Ac PB_
_44-41 Biscayne Gardens Sec E Part 1 Lot_
_105 Lot Size 100.000 x 575_

_Folio Number: 30 2123022.1050_

Page 1

© 2006, Summit Media, LLC

Book29203/Page2867   CFN#20140447483   Page 1 of 2

12                    LAST PAGE

Exh. 02 pg. 2

Assessor's Property Tax Parcel/Account Number(s): _____

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _Clyde McPhatter_

Printed Name of Witness: _Clyde McPhatter_

Signature of First Party: _____

Printed Name of First Party: _____

Address of Witness: _3720 NE 165 st miami FL 33160_

2nd witness _James Backman_   1972 NE 118th rd miami FL.

State of FLORIDA
County of _Miami DADE_ }ss.

Prepared: _Clyde Ward_  15020 S. River dr
                                   miami FL 33167

Clyde Ward
2nd wit: _____ Leroy Wilker

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (title), trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Date: _1-26-2013_                Signature _Fannie Mitchell_

(Seal or Stamp)                   Title: _____

                                  My appointment expires: _____

Page 2

© 2011, Docucom Media, LLC

OCT-12-2005 14:51     DEPARTMENT OF STATE     850 245 6259   P.02

## OATH OF OFFICE

Exh.R pg.1

# STATE OF FLORIDA

COUNTY OF _Miami - Dade_

    I, DO SOLEMNLY SWEAR (OR AFFIRM) that I will support, protect and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of

_the office of Circuit Judge, Eleventh Judicial Circuit, Group 76_

on which I am now about to enter, so help me God.

### UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING OATH AND THAT THE FACTS STATED IN IT ARE TRUE.

**(1)** _____     _October 14, 2005_

Signature                                   Date Signed

## ACCEPTANCE

**SECRETARY OF STATE**
**500 South Bronough Street, Room 316**
**TALLAHASSEE, FLORIDA 32399-0250**

    I accept the office of _Circuit Judge, Eleventh Judicial_
_Circuit, Group 76_. The above is the oath of office taken by me.

In addition to the above office I also hold the office of _N/A_.

My mailing address is: ☑ home ☐ office

**(2)** ███████████████     **(3)** _____
Street or Post Office Box                  Sign as you desire commission issued

███████████████     _SPENCER EIG_
City, State, Zip Code                    Print or type name as signed above

Person taking oath sign on line (1) above. Sign acceptance on line numbered (3) after giving address on line (2).

DS-DE 56 (rev.2/04)

# OATH OF OFFICE

### STATE OF FLORIDA

86609

Exh.R pg.2

FILED

09 SEP 15 A:11: 35

County of _Miami - Dade_

I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of

_Circuit Judge_

(Office)

on which I am now about to enter, so help me God.

_Signature_

Sworn to and subscribed before me this _12_ day of _September 2008_

Signature of Officer Administering Oath or of Notary Public – State of Florida)

_Carli R. Rodon_

Print, Type, or Stamp Commissioned Name of Notary Public

Personally Known ☑ OR Produced Identification ☐

Type of Identification Produced _____

CARLI R. RODON
Notary Public - State of Florida
My Commission Expires Sep 3, 2011
Commission # DD 719783
Bonded Through National Notary Assn.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# ACCEPTANCE

I accept the office of _Circuit Judge_

_____. The above is the Oath of Office taken by me.

In addition to the above office I also hold the office of ___none___.

Mailing Address: ☐ Home ☑ Office    Signature:

_1351 N.W. 12th Street_          _Spencer Eig_
Street or Post Office Box        Print name as you desire commission issued

_Miami, FL 33125_
City, State, Zip Code            Signature

DS-DE 56 (Rev. 05/07)

Exh.R pg.3

# OATH OF OFFICE

(Art. II. § 5(b), Fla. Const.)

RECEIVED
DEPARTMENT

2014 OCT 29  AM 10: 25

DIVISION OF ELECTIONS

**STATE OF FLORIDA**

County of _Miami - Dade_

I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of

_Circuit Judge_

(Title of Office)

on which I am now about to enter, so help me God.

[NOTE: If you affirm, you may omit the words "so help me God." *See* § 92.52, Fla. Stat.]

Signature

Sworn to and subscribed before me this _9_ day of _October_, _2014_

Signature of Officer Administering Oath or of Notary Public

_Alina M. MacDonald_
Print, Type, or Stamp Commissioned Name of Notary Public

Personally Known ☑ OR      Produced Identification ☐

Type of Identification Produced _____

ALINA M. MACDONALD
MY COMMISSION # EE 97618
EXPIRES: March 26, 2015

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# ACCEPTANCE

I accept the office listed in the above Oath of Office.

Mailing Address: ☑ Home  ☐ Office

▮▮▮▮▮▮▮▮▮▮▮▮
Street or Post Office Box

▮▮▮▮▮▮▮▮▮▮
City, State, Zip Code

_Spencer Eig_
Print name as you desire commission issued

Signature

DS-DE 56 (Rev. 02/10)

# OATH OF OFFICE

RECEIVED

(Art. II. § 5(b), Fla. Const.)

**STATE OF FLORIDA**

2020 AUG 10  AM 10: 33

County of Miami-Dade

DIVISION OF ELECTIONS
TALLAHASSEE, FL

I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of

**Judge of the Eleventh Judicial Circuit**

(Title of Office)

on which I am now about to enter, so help me God.

[NOTE: If you affirm, you may omit the words "so help me God." *See* § 92.52, Fla. Stat.]

*Signature*

Sworn to and subscribed before me by means of __X__ physical presence or ___ online notarization, this _6_ day of _August_, _2020_

RAUL CHAVARRIA
Commission # GG 953280
Expires March 6, 2024
Bonded Thru Budget Notary Services

*Signature of Officer Administering Oath or of Notary Public*

*Raul Chavarria*

*Print, Type, or Stamp Commissioned Name of Notary Public*

Personally Known ☐ OR Produced Identification ☒

Type of Identification Produced _Florida Driver License_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# ACCEPTANCE

I accept the office listed in the above Oath of Office.

Mailing Address: ☐ Home ☑ Office

**73 West Flagler Street**

**Spencer Eig**

Street or Post Office Box

Print Name

**Miami, FL 33130**

City, State, Zip Code

Signature

DS-DE 56 (Rev. 02/20)

shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, *which shall effect the removal and the State court shall proceed no further unless and until the case is remanded*." 28 U.S.C. §1446(d). In this case, the filing of the notice of removal on Oct. 13, 2023 instituted the automatic stay, based on removal, under case number 23-CV-22640-JEM in federal court.


WE CERTIFY THAT THIS IS A TRUE EMERGENCY BECAUSE THEY HAD THE SALE WHILE WE WERE IN THE FEDERAL NOTICE OF REMOVAL AND NOW THEY ARE ASKING THE SHERIFF TO COME AND EVICT BY MAY 31ST,2024. Which is 10 days from the Notice the Notice they filed.

_____
MACK WELLS
15020 S. RIVER DR.
MIAMI FL. 33167


_____
MAURICE SYMONETTE
15020 S. RIVER DR.
MIAMI FL. 33167

NEW Notice of Removal

- The COL and with intimidation violation of fed. stay

- forging fed. Judges signature

- The Sheriffs dept. Refusing to accept fed stay & fed law cease and desist

- Sheriff said that our Fed. Case does not exist on Camera.

- the clerks office lied and said that we never objected to the foreclosure when we actually did and actually had a hearing & kicking us out of the Sheriff office because he asked her the Email address

- Blocked off Jetcki charity party at my house harrased us all day, Discriminated against us allowed white people to throw parties would not allow us to throw our parties

and stopped me from going to my own house.
+ fed rule 28 USC 1446 (b)

Clerk would not allow our filing to go in & file.

one clerk said our Writ of Replevin was wrong, and would not allow US to file it

Police officer refused to give us our CWCT and we had to go back and the Supervisor allowed us to get it.

Charge @ Lt. Buchanan
file New Notice of Removal
LEASE Agreement Joel, MEEK -Beniah
-Signature Stuff
VMS 500
COL
OBJ to sale
Eig Stuff

Illegally stopping the party

Defendant **JASON BEMBRY**          Case Number **2019 CF 1022 A**

## JUDGMENT FOR FINES, COSTS, FEES AND SURCHARGES

**IT IS THE JUDGMENT AND ORDER OF THE COURT THAT DEFENDANT IS LIABLE FOR AND SHALL PAY THE FOLLOWING:**

1. **$2100** as a fine pursuant to §775.083, F.S.
2. **$105** as the 5% surcharge required by §938.04, F.S..
3. $20.00 as a court cost pursuant to §938.06, F.S. (Crime Stopper Trust Fund).
4. $3.00 as a court cost pursuant to §938.01(1) F.S. (Criminal Justice Trust Fund).
5. $50.00 pursuant to §938.03, F.S. (Crimes Compensation Trust Fund).
6. ☒ $225.00 (felony) or ☐ $60.00 (misd.) pursuant to §938.05, F.S. (Local Government Criminal Justice Trust Fund).
7. ☐ $2.00 as a court cost pursuant to § 938.15, F.S. (County Criminal Justice Education) (County Code 7-26).
8. ☒ $2.00 as a court cost pursuant to §938.15, F.S. (City Criminal Justice Education) (City Code Sect 1-8).
9. ☒ $50.00 (felony) or ☐ $20.00 (misd.) as a court cost pursuant to §775.083(2) F.S. (County Crime Prevention).
10. $65.00 as a court cost pursuant to §939.185, F.S. (County Additional Court Cost). County, Fl., Code §7-24
11. $3.00 as a court cost pursuant to §938.19 F.S. (Teen Court Assessment). Leon County, Fl., Code §7-26
12. ☒ $50.00 as an application fee pursuant to §27.52(1)(b), F.S.(Indigent Criminal Defense Trust Fund) if the Defendant applied for a Public Defender and the fee has not been paid in full. The first $50.00 collected by the clerk shall be applied toward satisfaction of this fee.
13. ☐ If checked, the Defendant shall pay $135.00 as costs pursuant to §938.07, F.S. (Driving or Boating Under the Influence).
14. ☐ If checked, the Defendant shall pay $15.00 as costs pursuant to §938.13, F.S. (Misd. Drug Alcohol Assessment)
15. ☐ If checked, the Defendant shall pay $5.00 as an additional fine pursuant to §316.061(1) F.S. (Leaving the Scene)

   **If checked, the defendant shall pay the following as additional statutorily mandated surcharges:**

16. ☒ $201.00 as a surcharge and condition of supervision pursuant to §938.08, F.S. (Domestic Violence Trust Fund). X 4 (per ct)
17. ☒ $151.00 as a surcharge and condition of supervision pursuant to §938.085, F.S. (Rape Crisis Program Trust Fund). X 4 X 4 (per ct)
18. ☒ $151.00 as costs pursuant to §938.10, F.S. (Children & Family Services Child Advocacy Trust Fund). X 7 (per ct)
19. ☐ $1,001 Criminal Use of Personal ID (817.568(12)), regardless of adjudication.
20. ☐ $5,000 Prostitution Penalty §796.07(2)(f), regardless of adjudication.
21. ☒ $100.00 (mandatory) ☐ $50.00, or the higher of documented costs of $_____ for prosecution pursuant to §938.27(8), F.S., payable to the Leon County Clerk's Office. To be paid pursuant to the terms of the Clerk's collection program. ☐ or Reduced to a Civil Judgment.
22. ☐ Court Appointed Attorney Fee: $_____
23. ☒ $100.00 (mandatory) ☐ $50.00, or the higher costs of $_____ for indigent legal assistance pursuant to §938.29(1), F.S. ☐ Or Reduced to a Civil Judgment.

   ☐ **IF CHECKED, THE DEFENDANT IS ORDERED TO PAY THE FOLLOWING DISCRETIONARY COSTS:**

24. $_____ as additional fine pursuant to §775.0835(1), F.S.. (Optional Fine for the Crimes Compensation Trust Fund).
25. ☐ $100.00 FDLE Operating Trust Fund fee, pursuant to §943.25. If checked Reduced to a Civil Judgment
26. ☐ If checked, the Defendant shall pay $7.00 as costs pursuant to §318.18(14) F.S. (Replacement of Fine Revenue Fund) §316 violations only
27. ☐ If checked, the Defendant shall pay $30.00 as costs pursuant to §318.18 (13)(a) (Court Facilities Fund)
28. ☐ If checked, the Defendant shall pay $3.00 as costs pursuant to §318.18 (17) (State Law Enforcement Radio System)
29. ☐ A sum of $_____ for the cost of collecting the DNA sample required by s. 943.325, Florida Statutes.
30. ☐ Jury Costs of $100
31. ☐ SAO Diversion Fees: $ _____
32. ☐ SAO Insufficient Funds Fee
33. ☐ Outstanding Drug Court Fees: $_____
34. ☐ If checked, discretionary fines are reduced to Judgment, for which let execution issue.
35. ☐ OTHER: _____

$ __5338_____ TOTAL Fine, if any, and Statutorily Mandated Costs, Fees and Surcharges
$ _____ Court Costs Reduced to Civil Judgment    $ _____ Application Fee Reduced to Civil Judgment
$ _____ Court Costs/Fines Deferred    $ _____ Fine Reduced to Civil Judgment

☐ IF CHECKED, PAYMENT PLAN SET UP _____